Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Suite 600
Phoenix, AZ  85004-2322
TELEPHONE 602-229-5200

John M. O'Neal (015945)
John.ONeal@quarles.com

*Attorney for Defendant Mountainside Fitness Acquisition, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chet Michael Wilson, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>Mountainside Fitness Acquisition, LLC<br><br>Defendant. | NO. 2:25-cv-01481-MTL<br><br>**DEFENDANT MOUNTAINSIDE FITNESS ACQUISITION LLC'S MOTION TO DISMISS** |

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Mountainside Fitness Acquisition, LLC ("Mountainside") moves to dismiss Plaintiff's Complaint [Dkt. 1] with prejudice for failure to state a cause of action against Mountainside. In the alternative, Mountainside requests that the Court dismiss Plaintiff's claims for treble damages and injunctive relief. This Motion is based on the attached Memorandum of Points and Authorities and all pleadings and papers in the Court's record. A certification under LR 12.1(c) is attached as Exhibit "A".

**I.     INTRODUCTION**

Plaintiff alleges that Mountainside violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (the "TCPA") by sending unsolicited text messages to his cellular telephone number while that number was registered on the National Do Not Call ("DNC") Registry. [Dkt. 1 at ¶¶ 9-10, 16]. Rather than replying "stop" as directed in Mountainside's alleged messages [Dkt. 1 at ¶ 19], Plaintiff instead filed this class action claiming that

Mountainside violated the TCPA by failing to comply with the DNC regulations set forth in 47 C.F.R. § 64.1200(c)(2).[1] Plaintiff's Complaint should be dismissed for several reasons.

*First*, Plaintiff cannot state a claim that Mountainside violated the DNC regulations because those regulations apply only to communications sent to "residential" telephone numbers, not cell phones. *See* 47 U.S.C. § 227(c)(1); 47 C.F.R. § 64.1200(c). A cellular telephone number is not a residential telephone number, and Congress expressly drafted the TCPA to treat cellular and residential numbers differently. In 2003, the FCC, unilaterally and in conflict with the TCPA's plain language, decided that the DNC regulations in § 64.1200(c) also applied to wireless telephone numbers (the "2003 Order"). *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*,

---

[1] The present putative class action is one in a string of nearly 50 putative class actions Plaintiff has filed in the last year. When a business attempts to text who it believes to be its customer, the texts reach Plaintiff, who then files a class action lawsuit. *See Wilson v. Consumer Cellular Inc.*, 2:25-cv-00745 (D. Ariz.); *Wilson v. Amp Fit, Inc.*, 5:25-cv-05656 (N.D. Cal.); *Wilson v. AUM Ins. Servs. LLC*, 3:25-cv-00260 (N.D. Cal.); *Wilson v. BlendJet Inc*, 2:25-cv-00278 (E.D. Cal.); *Wilson v. FuturHealth, Inc.*, 3:25-cv-00157 (S.D. Cal.); *Wilson v. Kaiser Found. Health Plan, Inc.*, 3:25-cv-00802 (N.D. Cal.); *Wilson v. KUIU, LLC*, 2:25-cv-00212 (E.D. Cal.); *Wilson v. Medvidi Inc.*, 5:25-cv-03996 (N.D. Cal.); *Wilson v. Fleet Fin.*, No. 1:25- CV-00340 (D. Colo.); *Wilson v. Easy Spirit, LLC*, 3:25-cv-00112 (D. Conn.); *Wilson v. Craftie Fox, Inc.*, 1:25-cv-22069 (S.D. Fla.); *Wilson v. Credit Suite, Inc.*, No. 8-24-CV-02711 (M.D. Fla.); *Wilson v. Disability Help Grp. LLC*, 0:24-cv-62319 (S.D. Fla.); *Wilson v. Icon Creative Consulting, Inc.*, 1:24-cv-25119 (S.D. Fla.); *Wilson v. Pharmacenter LLC*, 0:25-cv-60212 (S.D. Fla.); *Wilson v. Trajector, Inc.*, 1:25-cv-00023 (N.D. Fla.); *Wilson v. Club 1 Hotels, LLC*, 1:25-cv-00003 (N.D. Ill.); *Wilson v. The Sav. Bank Mut. Life Ins. Co. of Mass.*, 1:24-cv-12950 (D. Mass.); *Wilson v. Lower, LLC*, 1:24-cv-03665 (D. Md.); *Wilson v. Better Mortg. Corp.*, 1:25-cv-05503 (S.D.N.Y); *Wilson v. Roman Health Ventures Inc.*, 1:25-cv-03479 (S.D.N.Y.); *Wilson v. LeafFilter North, LLC*, 2:25-cv-00039 (S.D. Ohio); *Wilson v. LeafFilter North, LLC*, 5:25-cv-00522 (N.D. Ohio); *Wilson v. Blue Moon Fabrics, Inc.*, No. 6:25-CV-00333 (D. Or.); *Wilson v. Centennial Med. Grp. East, LLC*, 6:25-cv-00043 (D. Or.); *Wilson v. CMRE Fin. Servs. Inc.*, No. 6:25-CV-00152 (D. Or.); *Wilson v. Hard Eight Nutrition LLC*, 6:25-cv-00144 (D. Or.); *Wilson v. Finmax Smart Cap., LLC*, No. 6:25-CV-00173 (D. Or.); *Wilson v. Inogen, Inc.*, 6:25-cv-01168 (D. Or.); *Wilson v. MAH Grp., Inc.*, 6:25-cv-00855 (D. Or.); *Wilson v. Nationstar Mortg., LLC*, No. 6:24-CV-01855 (D. Or.); *Wilson v. Norco, Inc.*, 6:25-cv-00410 (D. Or.); *Wilson v. PacifiCorp*, No. 6:24-CV-01956 (D. Or.); *Wilson v. Pro. Credit Serv.*, 6:24-cv-01826 (D. Or.); *Wilson v. S. Oregon Credit Serv.*, Inc., No. 1:24-CV-02087 (D. Or.); *Wilson v. Elevate Patient Fin. Sols.*, No. 4:24-CV-04285 (S.D. Tex.); *Wilson v. Altria Grp. Distrib. Co.*, No. 1:24-CV-01917 (E.D. Va.); *Wilson v. Zillow, Inc.*, No. 2:25-CV-0048 (W.D. Wash.); *Wilson v. Avid Ratings, Inc.*, 3:24-cv-00782 (W.D. Wis.); *Wilson v. Fairway Indep. Mortg. Corp.*, 3:24-cv-00924 (W.D. Wis.).

CG Docket No. 02-278, 18 FCC Rcd. 14014 (July 3, 2003). Thereafter, courts, believing they were bound by the FCC's interpretation under the Hobbs Act, largely deferred to the 2003 Order and allowed § 227(c)(5) claims for calls to wireless numbers.

The landscape has now shifted. The Supreme Court has recently confirmed that the Hobbs Act does not require courts to automatically adopt the FCC's interpretation of the TCPA. Rather, district courts must independently determine the TCPA's meaning under ordinary principles of statutory interpretation. Applying its own independent analysis, this Court should conclude that 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) do not apply to text messages to cellular telephones, decline to adopt the FCC's flawed interpretation, and dismiss Plaintiff's claims with prejudice.

*Second*, Plaintiff fails to plead facts to suggest that treble damages are appropriate here because the complaint is devoid of allegations that Mountainside "willfully or knowingly" violated the TCPA. Therefore, the Court should dismiss Plaintiff's request for treble damages under the TCPA.

*Third*, Plaintiff fails to plead facts sufficient to demonstrate entitlement to injunctive relief considering that Plaintiff has not alleged the receipt of any Mountainside text messages since May 31, 2024. [Dkt. 1 at ¶ 19]. Thus, there is no risk of imminent harm, and Plaintiff has an adequate legal remedy. Hence, the Court should dismiss Plaintiff's request for injunctive relief.

## II.   LEGAL STANDARD

Under Rule 12(b)(6), dismissal is proper if, assuming the truth of all materials facts pled in the complaint, the moving party is nonetheless entitled to judgment as a matter of law. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, brackets and citations omitted). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). While factual allegations in the complaint are taken as true for purposes of a motion to dismiss, conclusory allegations of law are insufficient. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).

III. **ARGUMENT**

    A. **Plaintiff's Claim Fails Because Section 227(c) and Its Implementing Regulations Apply Only to "Residential Telephone Subscribers," Not Cellular Numbers**

Plaintiff cannot bring suit under 47 U.S.C. § 227(c) for the alleged text messages because that section of the TCPA applies to residential (not cellular) phone subscribers only. Since Plaintiff admits he received the text messages at issue on his cellular telephone number, the Court should dismiss his claims with prejudice.

In Section 227(c)(1), Congress authorized the FCC to create a do-not-call ("DNC") registry "to protect ***residential telephone subscribers'*** privacy rights," by creating a database of phone numbers of "***residential subscribers*** who object to receiving telephone solicitations[.]" 47 U.S.C. §§ 227(c)(1) & (c)(3) (emphasis added). Section 227(c)(2) further authorizes the FCC to "prescribe regulations to implement methods and procedures for protecting the privacy rights described in" § 227(c)(1) as it pertains to "***residential telephone subscribers***" only. Section 227(c)(5) provides a private right of action to anyone who receives more than one telephone call within a 12-month period in violation of the regulations prescribed under Section 227(c). 47 C.F.R. § 64.1200(c)(2) states that no one shall initiate a telephone solicitation to a "***residential telephone subscriber*** who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2) (emphasis added). Neither § 227(c) nor the implementing regulation under § 64.1200(c)(2) applies to text messages because the provisions restrict calls made to

"residential" telephones only, not calls made to cell phone lines.

It is readily apparent that Congress understood and appreciated the difference between residential and cellular phone lines and deliberately treated the phone lines differently under the statute.

***First***, the TCPA's plain language is unambiguous and distinguishes between "residential" and "cellular" telephone lines throughout the statute. For example, Congress enacted separate provisions under the TCPA to restrict calls made using "an artificial or prerecorded voice" for calls to cellular telephone lines (*see* § 227(b)(1)(A)(iii)) and residential telephone lines (*see* § 227(b)(1)(B)). Similarly, in Section 227(b)(2)(H), Congress permitted the FCC to enact regulation limiting the number and duration of debt collection calls made to a number assigned to a "cellular telephone service," but omitted any reference to calls to residential telephone lines. Section 227(c) and its implementing regulation under 47 C.F.R. § 64.1200(c) apply to calls a *residential telephone subscribers* only and say nothing about cellular phone subscribers.

This language demonstrates that Congress knew how to refer to cellular telephones and that it chose not to include cellular telephone subscribers within the scope of Section 227(c). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted); *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) ("A familiar principle of statutory construction ... is that a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute."); *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to***, its silence is controlling***.") (emphasis added).[2]

---

[2] Indeed, the term "cellular telephone service" is used 3 times and the phrases "text message" and/or "text messaging service" are used 16 times in the TCPA, and not one of those 19 combined instances appears in Section 227(c)(1) or Section 227(c)(5), the sections that serve as the basis for Plaintiff's claim.

- 5 -

***Second***, at the time Congress enacted the TCPA, it understood that "residential telephone," meant a landline in the home. In 1991, the residential telephone was a fixture of the home—anchored to kitchen walls and hallway tables, ringing loudly into shared family spaces. At that time, the most applicable dictionary definition for "residence" was "[a] house where one's home is; a dwelling house." *Residence*, Black's Law Dictionary, Sixth Edition (1990). The dictionary in print then defined the word "residential" to mean "of, relating to, or connected with residence or residences." *Residential*, Webster's Third New International Dictionary (1981). Thus, a "residential telephone" is by its terms a telephone connected with a residence. A cell phone, which is mobile and not connected to a house, fixed abode, or dwelling, is not "residential" under the definitions provided by dictionaries current when the TCPA was enacted. Clearly, the ordinary meaning of "residential telephone" at that time was a landline service located within a household, and not a mobile or cellular device.³

***Third***, the congressional record further bolster's Congress's obvious intent to treat cellular and residential lines differently. Senator Ernest Hollings, an original sponsor of the TCPA, referred to phones "purchased for the convenience of the ***individual home-owner*** and the need to protect such individuals' privacy specifically ***in the home***." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1234 (9th Cir. 2022) (Ikuta, J. dissenting in part) (emphasis added). Senator Lloyd Bentsen, a co-sponsor of the TCPA, differentiated between "unsolicited automated calls to the home" and "automated calls to . . . cellular telephones." *See* 137 Cong. Rec. 30824 (1991) (statement of Sen. Bentsen). Senator Bentsen also listed "home, business, and cellular telephones" as separate types of telephones. *Id*. Other statements made when Congress was considering the TCPA confirm the common

---

³ In support of this interpretation, the TCPA's do-not-call provisions could not have even considered text messages. When the statute was enacted in 1991, text messages did not yet exist. The first text message ever sent was transmitted more than a year later in December 1992. Rose Eveleth, *The First Text Message, Sent Twenty Years Ago, Was 'Merry Christmas'*, Smithsonian Magazine (Dec. 5, 2012), https://www.smithsonianmag.com/smart-news/the-first-text-messagesent-twenty-years-ago-was-merry-christmas-152311567 (last accessed June 30, 2025).

1  understanding that residential telephones were (and still are) distinct from cell phones. For
2  example, the director of the Congressional Budget Office ("CBO") in 1991 understood the
3  TCPA differentiated between cellular devices and residential phone lines, finding Section
4  227(b) operated to ban "all prerecorded or automatically-dialed telephone calls" both to
5  "cellular telephone numbers," and "to residential subscribers." S. Rep. No. 102-178, at 7
6  (1991).

7  **Fourth**, the FCC's decision to create an entirely separate rule, over thirty years later,
8  under 47 C.F.R. § 64.1200(e) to explicitly prohibit calls to wireless numbers on the DNC
9  registry demonstrates that the agency understood that the TCPA intended to treat cellular
10 lines and residential lines differently. *Compare* 47 C.F.R. § 64.1200(c) (tracking the
11 language used in § 227(c) of the TCPA to prohibit calls made to "residential telephone
12 subscribers") *with* § 64.1200(e) (making "applicable" the restrictions under subsection (c)
13 to calls to "wireless telephone numbers").

14 At bottom, the TCPA means today what it meant when it was enacted. *See Mattox v.*
15 *United States*, 156 U.S. 237, 244 (1895); *Loper Bright Enters. v. Raimondo,* 603 U.S. 369,
16 400 (2024) ("That is the whole point of having written statutes; 'every statute's meaning is
17 fixed at the time of enactment.'"). The statutory language of the TCPA at the time of its
18 enactment, contemporaneous definitions of relevant terms, and the legislative history of the
19 TCPA confirm that Congress understood – and intended – "residential telephone
20 subscribers" to mean individuals using landline telephones in the home, not users of mobile
21 or cellular devices. While technology has admittedly advanced since the TCPA was enacted
22 in 1991, and many people no longer have landlines in their homes, it is not a court's role to
23 "try to keep a statute up to date." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637,
24 642 (7th Cir. 2012).

25 Because Congress intended "residential telephone" to mean a landline phone and
26 intentionally omitted any reference to cellular telephones in Section 227(c), Plaintiff's claim
27 under Section 227(c) fails as a matter of law because he predicates his claims entirely on
28

1  text messages to his cellular telephone.

2        **B.**      **The FCC's 2003 Order Expanding § 227(c)'s reach to cellular telephones is inconsistent with the TCPA's plain statutory text**

4        As a threshold matter, the Court is not bound by the FCC's 2003 Order purporting to expand the DNC regulations to "wireless" numbers because the rule directly conflicts with § 227(c), and the FCC therefore had no authority to unilaterally expand the TCPA's scope beyond what Congress provided.

      In its 2003 Order, the FCC held that wireless users may receive the protections specifically assigned to residential subscribers. *See* 2003 Order, at 14116. Not only did the FCC determine that a wireless subscriber may register their number on the DNC "to benefit from the full range of TCPA protections," but it also created a presumption that wireless numbers on the DNC are "residential subscribers." *Id.* at 14039. The FCC "believe[d] it [was] more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *Id*. at 14175. In reaching this interpretation, the FCC expressly relied on the autodialer provision of the TCPA contained within § 227(b)—not the DNC provision in § 227(c)—to conclude that "the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA and the Do-Not-Call Act." *Id.* at 14037.

      The FCC exceeded Congress's mandate by relying on § 227*(b)* to expand liability under § 227*(c)*. Section 227(b)(2) authorizes the FCC to "prescribe regulations to implement" the TCPA's prohibition on robocalls, which is not at issue in this case. 47 U.S.C. § 227(b)(2). The agency's power to engage in rulemaking concerning the DNC provisions flows instead from § 227(c)(2), which narrowly directs the FCC to "prescribe regulations to implement methods and procedures for protecting the privacy rights described in [§ 227(c)(1)]," concerning the "need to protect ***residential telephone subscribers*** *'* privacy rights to avoid receiving telephone solicitations to which they object." *Id*. §§ 227(c)(1) and (c)(2) (emphasis added). Nothing in § 227(c) references calls to

1  wireless or cell phone subscribers. Because the FCC cannot "decree[] a duty that the statute
2  does not require and that the statute does not empower [the agency] to impose," the 2003
3  Order is not authorized by § 227(c). *Nat'l Ass'n of Broads. v. FCC*, 39 F.4th 817, 819-20
4  (D.C. Cir. 2022) ("A generic grant of rulemaking authority to fill gaps . . . does not allow
5  the FCC to alter the specific choices Congress made."); *see also Vote Solar v. City of*
6  *Farmington*, 2 F.4th 1285, 1289 (10th Cir. 2021) ("At the level of plain meaning, it seems
7  to us a non sequitur to claim that a[n] [agency] can 'implement' a [statute] by issuing a
8  regulation that is inconsistent with that [statute].").

9        Consequently, Plaintiff cannot rely on the FCC's 2003 order to state a claim for relief
10 under § 227(c). Even if the FCC could lawfully require telemarketers to comply with the
11 DNC regulations for residential and wireless subscribers alike, Congress only created a
12 cause of action for *residential* telephone subscribers under § 227(c)(5). *See* 47 U.S.C. §§
13 227(c)(1) & (c)(5). "[A] regulation may invoke a private right of action that Congress
14 through statutory text created, but it may not create a right that Congress has not." *Alexander*
15 *v. Sandoval*, 532 U.S. 275, 291 (2001). Thus, the FCC's 2003 Order does not and cannot
16 give rise to a private remedy under 47 U.S.C. § 227(c) for text messages to Plaintiff's
17 cellular telephone because "[t]he rulemaking power granted to an administrative agency
18 charged with the administration of a federal statute is not the power to make law," but rather
19 "to carry into effect the will of Congress as expressed by the statute." *Santa Fe Indus., Inc.*
20 *v. Green*, 430 U.S. 462, 472 (1977) (internal quotations and citations omitted); *see also*
21 *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("[T]he fact that a federal statute
22 has been violated and some person harmed does not automatically give rise to a private
23 cause of action in favor of that person.").

24       **C.**    **Post-*Loper* and *McLaughlin*, the FCC's 2003 Order Does Not Bind the Court and The Court Must Independently Interpret the TCPA Without Deference to the FCC's Prior Rules**

26       Even if the FCC had acted within the scope of its authority when issuing the 2003
27 Order, the Court is no longer obligated to defer to the FCC's interpretations in wake of
28

1  *Loper Bright* and *McLaughlin Chiropractic Assocs. Inc. v. McKesson Corp.*, 606 U.S. \_\_\_\_,
2  145 S. Ct. 2006 (2025).

3        In *Loper Bright*, the Supreme Court overturned prior law "demand[ing] that courts
4  mechanically afford binding deference to agency interpretations, including those that have
5  been inconsistent over time." 603 U.S. at 399. The Supreme Court ruled that "agency
6  interpretations" and "delegations of authority" do not relieve courts of their "obligation to
7  independently interpret the statute." *Id*. at 400. In *McLaughlin*, the Supreme Court ruled
8  that the Hobbs Act does not preclude district courts from reviewing or invalidating the
9  FCC's orders under the TCPA. 145 S. Ct. at *2034-23 ("The District Court is not bound by
10 the FCC's interpretation of the TCPA. **The District Court should interpret the statute as**
11 **courts traditionally do** under ordinary principles of statutory interpretation, affording
12 appropriate respect to the agency's interpretation." (emphasis added)). As such, this Court
13 is no longer bound to the FCC's interpretations of the TCPA and is instead obligated to
14 independently analyze and interpret the statute.

15       Plaintiff may argue that the Ninth Circuit's decision in *Chennette* requires this Court
16 to accept that Section 227(c) applies to wireless telephone lines. This is incorrect post-*Loper*
17 and *McLaughlin*. In *Chennette*, the Ninth Circuit relied exclusively on the FCC's 2003
18 Order to find that Section 227(c) applied to cell phones. 50 F.4th at 1223 (noting that "[i]n
19 the view of the FCC, expressed in the 2003 TCPA Order, 'it is more consistent with the
20 overall intent of the TCPA to allow wireless subscribers to benefit from the full range of
21 TCPA protections . . . .'").[4] The court did not conduct the independent statutory analysis of
22 Section 227(c) required by *McLaughlin* but instead deferred entirely to the FCC's
23 interpretation of the TCPA. *Id.* at 1224. ("[I]n the view of the FCC, a subscriber's use of a
24 residential phone (including a presumptively residential cell phone) in connection with a
25 home-based business does not necessarily take an otherwise residential subscriber outside
26 the protection of § 227(c)."). The court further stated that it would continue to refer to the

---

[4] Notably, the defendants also ***conceded*** that cell phones could be 'residential' for purposes of § 227(c). *Id.* at 1223-25.

- 10 -

1  FCC on this issue in "the future" if the FCC "interpret[s] § 227(c) differently," and promised
2  that "[i]f the FCC does so, we will of course defer to its interpretation" based on *Chevron*.
3  *Id*. at 1225. As the Supreme Court made clear in *Loper* and *McLaughlin*, such blind
4  deference is no longer required.

5       Instead, this Court must conduct its own analysis of Section 227(c). "In enforcement
6  proceedings, a district court must independently determine for itself whether the agency's
7  interpretation of a statute is correct." *McLaughlin*, 145 S. Ct. at 2015. Rather than defer to
8  the FCC's untenable 2003 Order, the Could should instead apply ordinary principles of
9  statutory interpretation in deciding this issue. While Plaintiff correctly notes that Congress'
10 intent in passing the TCPA was to afford relief to those who have "suffered an intrusion
11 upon their domestic peace" [Dkt. 1 at ¶ 8], an interpretation of the TCPA that expands the
12 statute's coverage beyond its plain terms has been rejected by the Supreme Court. *See*
13 *Facebook, Inc. v. Duguid*, 592 U.S. 395, 408 (2021) ("That Congress was broadly
14 concerned about intrusive telemarketing practices . . . does not mean it adopted a broad
15 [definition of the statutory provisions]").

16      As demonstrated above, Congress' intent is clear, and a simple reading of Section
17 227(c) supports a construction of "residential telephone" that does not include cellular
18 telephones. Considering the statutory structure and text of the TCPA, it is evident that
19 Congress did not intend for the term "residential telephone subscriber" in Section 227(c) to
20 include cellular telephone users. When Congress granted the FCC authority to create the
21 DNC Registry via section 227(c)(3), Congress intentionally withheld from the FCC any
22 authority to create a registry that included cellular telephone numbers. Consequently, the
23 protections offered to numbers on the DNC Registry, *see* 47 C.F.R. § 64.1200(c)(2), do not
24 apply to cellular telephone numbers.

25      Further, the TCPA repeatedly distinguishes between "cellular" and "residential"
26 lines, using precise language when referring to each. The omission of cellular or mobile
27 devices in Section 227(c), in the face of consistent statutory distinction elsewhere, reflects
28

an intentional legislative choice. Under well-established principles of statutory interpretation, courts must give meaning to this choice. Consequently, the Court should join with the numerous courts across the county that have rejected Section 227(c)(5) claims based on communications with a cellular line.[5]

---

[5] *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 152 n.4 (S.D. Cal. 2019) ("[T]he Court notes that [plaintiff] has not alleged a violation of [the do-not-call rules] because he alleges calls were placed to his cell phone, not to a 'residential telephone subscriber.'"), *class partially decertified*, No. 17-cv-00986, 2020 WL 4582686 (S.D. Cal. Aug. 10, 2020); *Turizo v. Subway Franchisee Adver. Fund Trust Ltd.*, 603 F. Supp. 3d 1334, 1341 (S.D. Fla. 2022) ("[B]y its very terms, the DNC Registry's protections apply to 'residential telephone subscribers,'" but "the FCC expands section 227(c)(5)'s right of action to cellular telephone subscribers—without any congressional grant of authority to do so"); *Strange v. Doe #1*, No. 19-1096, 2020 WL 2476545, at *3 (W.D. La. May 12, 2020*)*; *Gaker v. Q3M Ins. Sols.*, 3:22-CV-00296-RJC-DSC, 2023 WL 2472649 at *3 (W.D.N.C. Feb. 8, 2023) ("In sum, the authority rests with Congress to amend the TCPA and bring cell phones within [the protections of Section 227(c)]."); *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019) ("The Court, therefore, is not convinced that Congress and the FCC, through the TCPA and its regulations, intended to protect 'cellular telephone subscribers' along with "'residential telephone subscribers.'"); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 3:18-cv-00518, 2021 WL 1946645, at *4 (M.D. Tenn. May 14, 2021) (dismissing Section 227(c) claim brought for calls to a cell phone because Section 227(c) applies only to "residential telephone subscribers"); *Cunningham v. McDonald*, No. 3:15-cv-215, 2018 WL 6737418, at *2 (M.D. Tenn. Nov. 5, 2018); *Cunningham v. Sunshine Consulting Grp., LLC*, No. 3:16-2921, 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018); *Cunningham v. Polselli*, No. 15-00847, 2017 WL 10666120, at *1 (M.D. Tenn. Aug. 16, 2017); *Cunningham v. Rapid Cap. Funding, LLC/RCF*, No. 3:16-cv-02629, 2017 WL 3574451, at *2–3 (M.D. Tenn. July 27, 2017); *Cunningham v. Spectrum Tax Relief, LLC*, No. 3:16-2283, 2017 WL 3222559, at *3 (M.D. Tenn. July 7, 2017); *Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-cv-00121, 2022 WL 17546957, at *7–8 (E.D. Tex. Oct. 20, 2022) (noting that courts finding that the TCPA's do-not-call rules do not encompass cell phones represents the "majority of the persuasive precedent"), *report and recommendation adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022); *Cunningham v. Creative Edge Mktg. LLC*, No. 4:19-cv-00669, 2021 WL 2792353, at *4 (E.D. Tex. June 16, 2021); *Callier v. GreenSky, Inc.*, EP-20-CV-00304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021) (finding that Section 227(c) claims did not apply to cell phones); *Cunningham v. Matrix Fin. Servs., LLC*, No. 4:19-cv-00896, 2021 WL 1233466, at *16 (E.D. Tex. Feb. 12, 2021*), R. & R. rejected on other grounds*, 531 F. Supp. 3d 1164 (E.D. Tex. 2021); *Cunningham v. Britereal Mgmt., Inc.*, 2020 WL 7391693, at *7 (E.D. Tex. Nov. 20, 2020), *report and recommendation adopted*, 2020 WL 7388415 (E.D. Tex. Dec. 16, 2020) ("Taking Section 227(c)(5) and Section 64.1200(d) together, the private right of action created by TCPA Section 227(c)(5) is 'limited to redress for violations of the regulations that concern residential telephone subscribers"—not cell phones.'" (quoting *Cunningham v. Politi*, No. 4:18-cv-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr 26, 2019)); *Cunningham v. Arco Media, Inc.,* No. 4:19-cv-00901, 2020 WL 2310021, at *4 (E.D. Tex. Apr. 3, 2020), *R. & R. adopted*, 2020 WL 2306589 (E.D. Tex. May 8, 2020); *Cunningham v. Air Voice, Inc.*, No. 4:19-cv-00096, 2020 WL 9936139, at *5 (E.D. Tex. Feb. 14, 2020), *R. & R. adopted*, 2020 WL 1433948 (E.D. Tex. Mar. 24, 2020); *Politi*, 2019 WL 2519702, at *4; *cf. Moore v. Triumph CSR Acquisition, LLC*, No. 23-CV-4659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023) ("A residential phone is a home phone that is hard-wired into the building. It means a land-line. It is *residential* in a very literal sense.").

Cases holding otherwise largely reflexively defer to the FCC's interpretation without addressing the statutory distinction between residential and cell phone lines or concluded that district courts "must afford the 2003 Order deference" due to the Hobbs Act, even if the court disagreed with the FCC's interpretation based on the a "straightforward" reading of the statute.[6] These cases stand at odds with the Supreme Court's mandate in *McLaughlin* that district courts interpret the TCPA using ordinary principles of statutory interpretation.

In sum, Plaintiff received the complained-of text messages on his cell phone, not a "residential telephone" within the meaning of Section 227(c). Thus, Section 227(c)(5) is inapplicable. Accordingly, this Court should dismiss Plaintiff's claim under Section 227(c) because Plaintiff's claim fails as a matter of law, and the Complaint should be dismissed.

### D. Likewise, Text Messages Are Not Telephone Calls Under Section 227(c)(5)

Section 227(c)(5) provides a private right of action by a "person who has received more than one ***telephone call*** within any 12-month period by or on behalf of the same entity" in violation of the regulations prescribed under Section 227(c). 47 U.S.C. § 227(c)(5) (emphasis added). The phrases "text message" and "SMS message" are wholly absent from

---

[6] *See, e.g.*, *Radvansky v. Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1318 (N.D. Ga. Aug. 13, 2024) (discussing the FCC's 2003 Order and explaining, "[a]t first glance, this case seems to turn on how the Court interprets the term 'residential telephone.' Not so fast— remember the Hobbs Act applies. . . . This standard is binding law that the Court must follow unless and until the [appellate court] decides to revisit the issue. So, there is not much for this Court to do."); *see also Turizo*, 603 F. Supp. 3d at 1341-42 (explaining that the district court could not review the 2003 Order in light of precedent holding that under the Hobbs Act); *Buxton v. Full Sail, LLC*, 6:24-CV-747-JSS-DCI, 2024 WL 5057222 at *3 (M.D. Fla. Dec. 10, 2024) ("[T]his court lacks jurisdiction to entertain Defendants' argument that the FCC exceeded its authority when it defined residential subscribers to include cell phone users."); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1121 n.6 (W.D. Mo. 2020) ("'[T]he Hobbs Act provides that the courts of appeals have exclusive jurisdiction to determine the validity of FCC orders.' Therefore, the Court 'must interpret the regulation in a manner consistent with its plain language and the FCC's interpretation.'" (citations omitted)); *Hudson v. Palm Beach Tan, Inc.*, 1:23CV486(WO)(JEP), 2024 WL 4190513, at *5 n.4 (M.D.N.C. Aug. 12, 2024) ("Given the Hobbs Act's provisions, this Court lacks jurisdiction to review the 2003 FCC Order. This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones.").

1    Section 227(c)(5) and its implementing regulations, 47 C.F.R. § 64.1200(c) and (d). Only
2    the terms "call", "telephone call", and "artificial or prerecorded-voice telephone call"
3    appear in Section 227(c) and its implementing regulations. 47 U.S.C. § 227(c)(1)(D), (c)(5);
4    47 C.F.R. § 64.1200(c)(2)(iii), (d).[7]

5         Nevertheless, the FCC interpreted the term "telephone call" to include text messages
6    in its 2003 Order. "We affirm that under the TCPA, it is unlawful to make *any call* using
7    an automatic telephone dialing system … [t]his encompasses both voice calls and text calls
8    to wireless numbers including, for example, [SMS] calls." 2003 Order, at 14116. This is
9    another example of the 2003 Order's overreach. Section 227(c)(5) of the TCPA includes
10   "telephone call" and does not mention text messages or SMS messages, and nowhere does
11   the TCPA define "telephone call" to include text and/or SMS messages.

12        Section 227(c)(5) simultaneously explicitly refers to a "telephone call", a term not
13   defined in the statute itself and remains silent as to its application to text messages. As stated
14   above, text messaging was not an available technology in 1991, and thus "telephone call"
15   would not have included text or SMS messages. Therefore, under a plain reading, Section
16   227(c)(5) does not regulate text messages. *See West v. Hoy*, 126 F.4th 567, 575 (7th Cir.
17   2025) (stating a court's "inquiry begins with the statutory text, and ends there as well if the
18   text is unambiguous."); *see also Loper Bright*, 603 U.S. at 400 ("In the business of statutory
19   interpretation, if [an interpretation] is not the best, it is not permissible."). It is not for the
20   court to legislate by reading into TCPA something that plainly is not there. *Loper Bright,*
21   603 U.S. at 403. Indeed, at least one court has held that text messages are not telephone
22   calls for the purposes of Section 227(c) in the wake of *McLaughlin*. *See Joseph Jones et al.*
23   *v. Blackstone Med. Servs., LLC*, No. 1:24-CV-01074-JEH-RLH, 2025 WL 2042764 (C.D.
24   Ill. July 21, 2025).

25        Accordingly, under a plain and unambiguous reading of the statutory text, Section

---

[7] In contrast, the FCC clearly indicated its intent to regulate text messages under 47 C.F.R. § 64.1200(a) which was implemented under Section 227(b) only. *See* 47 C.F.R. § 64.1200(a)(9) ("As used in this paragraph (a)(9), the term 'call' includes a text message, including a short message service (SMS) call.").

1  227(c)(5) does not apply to text messages, and any interpretation to the contrary exceeds
2  the statute's scope. Because Plaintiff's Complaint relies solely on the receipt of text
3  messages, it fails as a matter of law and should be dismissed.

      **E.**      **Even if Section 227(c)(5) applies to text messages to cellular telephones, the FCC's 2003 Order did not create a private right of action under Section 227(c)**

The FCC's 2003 Order could not create a private right of action under Section 227(c)(5) because the FCC promulgated the order outside of the 2003 Order well after its limited regulatory window.

A cause of action under Section 227(c)(5) arises only when an entity violates "the regulations prescribed under [Section 227(c)]." 47 U.S.C. § 227(c)(5). The FCC was required to "conclude the rulemaking proceeding" authorized under section 227(c)(1) by September 20, 1992. *Id.* § 227(c)(2). As such, by the express terms of the statute, only violations of regulations created prior to September 20, 1992, give rise to a private right of action under section 227(c)(5).

This limited grant of rulemaking authority was an intentional choice by Congress—one that it did not make in other sections of the TCPA. *See* 47 U.S.C. § 227(b)(2) (granting the FCC authority to adopt rules under section 227(b) with no temporal limitations); *Russello* 464 U.S. at 23. And Congress knows how to provide the FCC additional time to create rules implementing the TCPA—in fact, it did so in 2018 with respect to the FCC's rulemaking authority under subsection 227(e). *See* Consolidated Appropriations Act of 2018, Pub. L. 115-141, 132 Stat. 348, 1092 (removing the requirement that rules implementing section 227(e) be promulgated "[n]ot later than 6 months after the date of enactment of the Truth in Caller ID Act of 2009").

Allowing the private right of action under section 227(c)(5) to encompass claims based on FCC rules adopted after September 20, 1992, including the 2003 Order, would render Congress's intentional choice to limit the FCC's rulemaking authority under section 227(c) meaningless, a result which must be avoided by this Court. *See United States v.*

*Berkos*, 543 F.3d 392, 396–97 (7th Cir. 2008) ("We avoid interpreting a statute in a way that renders a word or phrase redundant or meaningless.").

    **F.    Plaintiff's Conclusory Allegations Fail to Support a Claim for Treble Damages**

Plaintiff also has failed to adequately plead facts to support entitlement to treble damages under the TCPA. The TCPA allows for an award of treble damages for violations done "willfully or knowingly." 47 U.S.C. § 227(c)(5). Plaintiff requests such relief on the basis that Mountainside "knew, or should have known" that Plaintiff's number was registered on the DNC. [Dkt. 1 at ¶¶ 26, 41].

Courts routinely refuse to award treble damages for TCPA violations based on conclusory allegations that a defendant's behavior was knowing or willful. *See, e.g., Graham v. Nat'l Web Design, LLC*, No. 20-cv-1575 (KMM/BRT), 2022 WL 190760, at *5 (D. Minn. Jan. 21, 2022) (finding that conclusory allegations of willfulness and knowledge did not support an award of treble damages at default judgment stage); *Lenhardt v. Dem. Nat'l Comm.*, 2022 WL 110814, at *5 (D. Kan. Jan. 12, 2022) (refusing to treble damages on plaintiff's motion for default judgment because "conclusory allegations of willful or knowing TCPA violations 'are legal in nature, and as such need not be accepted as true'") (citations and internal quotations omitted). Plaintiff here offers no factual assertions or evidence by which the Court can deduce that Mountainside's actions were willful, aside from the conclusory allegation described above. Accordingly, Plaintiff's request for treble damages should be dismissed.

    **G.    Plaintiff Fails to Allege Ongoing Harm Warranting Injunctive Relief**

The decision whether to grant a preliminary injunction involves the application of a four-factor test. "To obtain a preliminary injunction, a plaintiff must establish that (1) it is likely to prevail on the merits of its substantive claims, (2) it is likely to suffer imminent, irreparable harm absent an injunction, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest." *All. for the Wild Rockies v. Petrick*, 68 F.4th 475,

490 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiff's request for injunctive relief fails because he does not plead facts sufficient to support each of these elements.

Most notably, Plaintiff has not alleged that Mountainside sent him any text messages since May 31, 2024, over fourteen months ago. [*See* Dkt. 1 at ¶ 19]. This temporal gap undermines Plaintiff's ability to complain that he is "likely to suffer imminent, irreparable harm absent an injunction," as required under *Winter*. Without allegations of ongoing or imminent future violations, Plaintiff's claim of irreparable harm is speculative at best. Moreover, absent ongoing conduct, the balance of equities and public interest considerations do not weigh in favor of injunctive relief. An injunction is an extraordinary remedy, and Plaintiff's failure to allege continuing harm or a real threat of future violations suggests that such relief is not warranted. The Court should therefore dismiss Plaintiff's claim for injunctive relief.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's allegations fail to state a claim under the TCPA as a matter of law, and the Court should dismiss this action with prejudice.

RESPECTFULLY SUBMITTED this 25th day of July, 2025

> QUARLES & BRADY LLP
> One Renaissance Square
> Two North Central Avenue
> Suite 600
> Phoenix, AZ  85004-2322
>
> By: */s/ John M. O'Neal*
>     John M. O'Neal
>
> *Attorney for Defendant Mountainside Fitness Acquisition LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2025, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court through the U.S. District Court Electronic Court Filing System, which caused notice of such filing to be sent electronically to the registered attorneys of record.

                                                 /s/ Debra L. Hitchens