Quarles & Brady LLP
One Renaissance Square
Two North Central Avenue
Suite 600
Phoenix, AZ 85004-2322
TELEPHONE 602-229-5200

John M. O'Neal (015945)
John.ONeal@quarles.com
Zachary S. Foster (FL #111980) (*admitted Pro Hac Vice*)
Zachary.Foster@quarles.com
John H. Contrera (039704)
Jack.Contrera@quarles.com

*Attorneys for Defendant Mountainside Fitness Acquisition, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chet Michael Wilson, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br>Mountainside Fitness Acquisition, LLC<br><br>Defendant. | NO. 2:25-cv-01481-MTL<br><br>**DEFENDANT MOUNTAINSIDE FITNESS ACQUISITION, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS** |

Defendant Mountainside Fitness Acquisition, LLC ("Mountainside") hereby submits this Reply in support of its *Motion to Dismiss Plaintiff's Complaint* [Dkt. 13] (the "Motion") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I. **INTRODUCTION**

47 U.S.C. § 227(c)(5) ("§ 227(c)(5)") only allows a private right of action for the receipt of *telephone calls* – not text messages. Plaintiff's case hinges on rewriting § 227(c)(5) to have "telephone call" also mean "text message" because Plaintiff only claims he received text messages from Mountainside. The statute does not define the terms "call" or "telephone call." However, the plain and ordinary meaning of those terms makes clear they do not extend to text messages. This issue is fatal to Plaintiff's claims, and the Court

should dismiss them with prejudice.[1]

## II. TEXT MESSAGES ARE NOT TELEPHONE CALLS UNDER § 227(C)(5).

As an initial matter, Mountainside asks the Court to follow the Supreme Court's direction in *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 400 (2024) and *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146 (2025) and independently interpret the TCPA under ordinary principles of statutory interpretation.[2] Plaintiff argues against this position by relying extensively on past FCC interpretations of the TCPA and cases deferring to those interpretations that predate one or both decisions. But because the Supreme Court fundamentally altered the level of deference courts owe to agency interpretations when interpreting a statute, Plaintiff's attempt to anchor its arguments in outdated FCC orders and derivative case law is misplaced. As the Court made clear in *McLaughlin*, district courts "must independently determine for itself whether the agency's interpretation of a statute is correct[,]" and are not bound by an agency's interpretation. 606 U.S. at 155. And as stated in *Loper Bright*, "the role of the reviewing court . . . is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." 603 U.S. at 395. Consequently, prior case law that reflexively deferred to FCC interpretations of § 227(c) – like those put forward by Plaintiff – is no longer controlling, and this Court must perform its own interpretation of § 227(c) – which neither it, nor the Ninth Circuit, has yet undertaken.

Plaintiff's basis for rewriting § 227(c)(5) rests on three principal arguments. *First*, Plaintiff asserts that § 227(c) broadly authorizes the FCC to regulate telephone solicitations

---

[1] In its Motion, Mountainside demonstrated that Plaintiff's cellular device is insufficient to meet the requirements of a "residential" telephone number under 47 U.S.C. § 227(c)(1) [*See* Dkt. 13 at 4–13.] This defect remains dispositive notwithstanding Plaintiff's arguments otherwise. However, given Plaintiff's focus in his *Opposition to Defendant's Motion to Dismiss* (the "Opposition") on the argument that "telephone call" encompasses text messages, Mountainside will focus its arguments in this Reply on those issues.

[2] *See Loper Bright*, 603 U.S. at 389 ("Undoubtedly questions of statutory interpretation . . . are for the courts to resolve, giving appropriate weight to the judgment of those whose special duty is to administer the questioned statute.") (quoting *N.L.R.B. v. Hearst Publications*, 322 U.S. 111, 130–131 (1944)); *McLaughlin*, 606 U.S. at 168 ("The District Court should interpret the statute as courts traditionally do under ordinary principles of statutory interpretation . . ..").

of every kind, including text messages. *Second*, Plaintiff contends that the statutory term "call" encompasses text messages. *Third*, Plaintiff argues that, even if some ambiguity remained, the FCC's prior interpretation of "call" as including text messages should be given controlling weight. Each of these arguments is fundamentally flawed and inconsistent with § 227(c)(5)'s plain language. At bottom, Plaintiff asks the Court to rewrite the statute to say, "text message," when Congress wrote only "telephone call." Because Plaintiff's interpretation neither approximates reality nor squares with the plain meaning of the statute, the Court should dismiss Plaintiff's claims with prejudice.

### A.   Plaintiff Cannot Expand § 227(c)(5) to Incorporate Nonexistent Language.

§ 227(c)(5) authorizes a "person who has received more than one telephone call within any 12-month period" to bring an action for violations of the FCC's regulations implementing the Do Not Call ("DNC") provisions. Plaintiff suggests that Congress' use of the term "telephone call" was merely incidental and that, because other provisions of the TCPA authorized the FCC to regulate "telephone solicitations," the Court should expansively read the private right of action in § 227(c)(5) to include text messages. [*See* Dkt. 17 at 11.] But Plaintiff's argument turns statutory interpretation on its head. It is well established that, for interpretation, "[the] legislature says . . . what it means and means . . . what it says." *Dodd v. United States,* 545 U.S. 353, 357, (2005).[3] And when Congress created a private right of action in § 227(c)(5), it deliberately limited that remedy to ***telephone calls***.

Plaintiff attempts to overcome this limitation by citing *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012), to argue that Congress "presumably" referred to the terms "call" or "message" "disjunctively in order to capture the broadest possible range of potential communication mediums." [Dkt. 13 at 12.] But *Davis* stands for the unremarkable

---

[3] *See also Connecticut Nat. Bank v. Germain,* 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981))).

proposition that a statute which uses disjunctive language to list violative conduct indicates that violating one prong of the list is sufficient to sustain a claim. *Davis*, 691 F.3d at 1166 (finding that the defendant may violate California's Unfair Competition Law by acting unlawfully *or* unfairly *or* fraudulently). That is not the case here. § 227(c)(5) does not list alternative prongs of liability in disjunctive form. Instead, it narrowly authorizes a private right of action where a plaintiff has received "more than one telephone call" within a twelve-month period. The operative term is singular and specific: ***telephone call***. Hence, Plaintiff's proposed "presumption" is based merely on his own say-so and contravenes the basic canons of construction.[4]

Next, Plaintiff attempts to sidestep the clear terms of § 227(c)(5) by importing broader definitional language from elsewhere in the TCPA and stretching the statute to equate "telephone call" with "telephone solicitation."[5] To defend this reading, Plaintiff cites *Salazar v. Nat'l Basketball Ass'n* 118 F.4th 533, 550 (2d Cir. 2024) for the proposition that "[t]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." [Dkt. 17, at 12.] However, Plaintiff ignores the sentence immediately preceding the language he quotes, which explains that "the statute's express terms control." *Id.* (quoting *Bostock v. Clayton County, Georgia*, 590 U.S. 644, 653 (2020) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit.")). Here, there is no "broad and inclusive definition" of "telephone call." The statute says what it says – it's no contest.

Accordingly, the invocation of "call or message" and "telephone solicitation" elsewhere in the TCPA does not override § 227(c)(5)'s plain text. The statute means what

---

[4] It is true that presumptions have their place in statutory interpretation, "but only to the extent that they approximate reality." *Loper Bright*, 603 U.S. at 399. Statutory ambiguity "does not reflect a congressional intent that an agency, as opposed to a court, resolve the resulting interpretive question." *Id.* at 373.

[5] As Plaintiff writes, "[Section 227(c)] *does* explicitly cover any 'telephone solicitation,' which is broadly defined to include any 'call or message.' 47 U.S.C. § 227(a)(4). That broad and inclusive definition governs[.]" (emphasis in original). [Dkt. 17, at 12.]

it says: the private cause of action is limited to **telephone calls.** And neither *HSBC Bank* nor *Salazar* support Plaintiff's attempt to expand statutory language as he sees fit.

### B. Interpreting "Telephone Call" to Encompass Text Messages Contradicts the Statute's Plain Meaning.

Under the principles of statutory interpretation, unless words are otherwise defined, they "will be interpreted as taking their ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014). The terms "call" and "text message" have distinct and widely understood meanings to the ordinary person. That distinction is precisely why Plaintiff is forced into awkward phrasing in its Complaint—using terms such as "telephone solicitation call" to describe text messages— to bridge a gap that Congress itself did not close. [Dkt. 17 ¶ 38.] But courts do not erase ordinary linguistic distinctions, nor rewrite statutes, to accommodate such strained usage.

To get around this roadblock, Plaintiff claims that "[i]t is well established that the word 'call' in the TCPA includes text messages." [Dkt. 17 at 13.] But the Ninth Circuit has not directly addressed whether Congress intended § 227(c) of the TCPA to apply to text messages and has not weighed this issue under the *Loper Bright* and *McLaughlin* framework. And although several Ninth Circuit cases involve text message communications and the TCPA, including § 227(c), none squarely resolve the statutory question at issue here. Rather, courts throughout the Ninth Circuit (and all the cases upon which Plaintiff makes his argument) rely on FCC orders and the holding in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009).[6] But *Satterfield* does not control here. Rather, that case

---

[6] *See Dawson v. Porch.com*, 2024 WL 4765159, at *3–4 (W.D. Wash. 2024) (relying entirely on the 2003 Order, found that arguing texts are not calls under the TCPA "flies in the face of binding authority"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) finding the FCC's interpretation of a text message is a "call" is reasonable, applying *Chevron* and quoting *Satterfield*, 569 F.3d at 954 (holding that the FCC's interpretation that a text message is a "call" under the TCPA is reasonable); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 985–86 (9th Cir. 2023) (relying on *Van Patten* to state, among other things, "[w]e have held that the receipt of unsolicited phone calls or text messages in violation of the TCPA is 'a concrete injury in fact sufficient to confer Article III standing.' quoting *Van Patten*, 847 F.3d at 1043); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd but criticized*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016)

1  involved a TCPA claim arising under § 227(b)—text messages sent using an automatic
2  telephone dialing system—not § 227(c). *Satterfield*, 569 F.3d at 950. The Ninth Circuit does
3  not reference § 227(c) anywhere in its opinion. More importantly, *Satterfield* suffers from
4  the same flaw as other pre-*McLaughlin* decisions: the court reflexively deferred to the
5  FCC's interpretation that a text message was a "call" under the TCPA based on
6  *Chevron* deference, which is now abrogated by *Loper Bright* and *McLaughlin*.[7][8]

7  Unable to overcome *Satterfield*'s limitations, Plaintiff pivots from non-binding case
8  law, and draws from nearby TCPA provisions to argue the definition of "call" is "especially
9  clear" from the language of the statute. [Dkt. 17 at 13.] Plaintiff emphasizes that § 227(c)
10 references "calls" only once outside of § 227(c)(5)—in § 227(c)(1)(D).[9] *Id.* According to
11 Plaintiff, because § 227(c)(1)(D) instructs the FCC to consider "further restrict[ing]
12 telephone solicitations, including those calls exempted under subsection (a)(3)," the
13 statute's reference to "calls" necessarily incorporates the statutory definition of "telephone
14 solicitation" in § 227(a)(4)—which includes both a "telephone call or message." From this,
15 Plaintiff concludes that "call" in § 227(c)(5) must also sweep in text messages.

16 This reasoning falls apart under modest scrutiny. § 227(c)(1)(D) itself demonstrates
17 the distinction by referring to "calls" as a ***subset*** within the broader category of "telephone
18 solicitations." Congress's word choice is deliberate: it granted the FCC broad regulatory

---

20 (stating "[f]irst, this Court already applies the TCPA to text messages." (citing *Satterfield,* 569 F.3d at 951–52)).

21 [7] *See Satterfield,* 569 F.3d at 952–53 ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A) . . . This interpretation has the force of law and is therefore entitled to *Chevron* deference if (1) 'call' is not defined by the TCPA and (3) if the FCC's interpretation of the statute is reasonable.").

[8] Plaintiff also cites *Wilson v. Skopos Fin.*, LLC, 2025 WL 2029274 (D. Or. July 21, 2025), to argue text messages are indistinguishable from voice calls in terms of privacy invasion and should therefore be covered under Section 227(c). [Dkt. 17 at 12.] However, *Skopos* also cited to *Satterfield,* and relied almost entirely on FCC rules and regulations to determine that the text messages sent in violation of the DNC Registry gave rise to a cause of action under Section 227(c)(5).

[9] 47 U.S.C. § 227(c)(1)(D) (The FCC shall "consider whether there is a need for additional Commission authority to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, propose specific restrictions to the Congress.").

1  authority over solicitations in § 227(c)(1), but in creating the private right of action in § 227(c)(5), it confined that remedy to "telephone calls." The Court must give effect to that narrower operative language.

Tellingly, Plaintiff can do little more than hand-waving in a footnote in response to the recent holding from the Northern District of Florida in *Davis v. CVS Pharmacy, Inc.*, 2025 WL 2491195 at *3–4 (N.D. Fla. Aug. 26, 2025). There, the district court held a text message is not a "telephone call" within the meaning of § 227(c)(5) and accordingly dismissed the plaintiff's TCPA claim. The court emphasized that "no ordinary person would think of a text message as a 'telephone call,'" and found "[t]his conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Id*. at *1. Moreover, the *Davis* court rejected the plaintiff's reliance on FCC guidance and broader statutory language found in other sections of the TCPA. *Id*. at *2.

Plaintiff's attempts to distinguish *Davis* amount to arguing that § 227(c)(5)'s use of "call . . . is immaterial" and for that reason, *Davis*' "restrictive interpretation of § 227(c)(5) is unpersuasive." [Dkt. 17 at 14 fn. 16.] Plaintiff does not explain why he deems the district court's reasoning "unpersuasive" or "immaterial." And, indeed, as the Court in *Davis* noted, the textual difference between § 227(c)(5) and other provisions of the TCPA is ***material***. Congress' deliberate choice to define "telephone solicitation" in § 227(a)(4) does not simply carry over into § 227(c)(5) because that suits Plaintiff's purposes. Congress' decision to limit the private right of action under § 227(c) to telephone calls matters. Congress could easily have used the term "telephone solicitation," or the broad "call *or message*" as it did elsewhere in the statute. It did not. And where Congress includes particular language in one section of a statute but omits it in another section of the same Act, ***it is generally presumed that Congress acts intentionally and purposely*** in the disparate inclusion or exclusion. *See, e.g. Russello v. United States*, 464 U.S. 16, 23 (1983).[10]

---

[10] *See also City & Cnty. of San Francisco, California v. Envtl. Prot. Agency,* 604 U.S. 334, 344 (2025) (quoting *Rusello* and stating "[w]e have invoked this canon time and time again. We cannot believe that Congress omitted the term . . . simply because it wanted to save ink or assumed that regulators and interested parties would understand that the omission of the term was inconsequential." (internal citations omitted)); *Gallardo v. Marstiller*, 596 U.S.

In summary, while Congress broadly defined "telephone solicitation", it expressly limited the private right of action in § 227(c)(5) to "calls," not messages. Reading "text message" into § 227(c)(5) requires rewriting "call" into "call *or message*." The fact that Congress chose not to mirror that expansive language in § 227(c)(5) supports the inference that private enforcement here is narrower—only actual "calls."[11] When the statutory text is clear, it governs—and here § 227(c)(5) says telephone call, not text message. *See West v. Hoy*, 126 F.4th 567, 575 (7th Cir. 2025) (stating a court's "inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

### C. Recent Decisions Undermine Plaintiff's Reliance on FCC Guidance.

Applying the framework set forth in *Loper Bright* and *McLaughlin*, a district court in Illinois recently concluded that § 227(c)(5) does not apply to text messages. *See Jones*, 2025 WL 2042764 at *5. The *Jones* court reasoned the statutory language in § 227(c) and its implementing regulations consistently refer to "calls," "telephone calls," and "prerecorded voice messages," without any mention of text messages. *Id*. at *12. It further emphasized that Congress enacted the TCPA in 1991—before text messaging was prevalent—and has never amended the statute to include such communications. *Id*. at *13. Thus, under a plain reading, § 227(c) does not regulate text messages. *Id*. Moreover, the *Jones* court rejected arguments nearly identical to those advanced by Plaintiff. Namely, that prior FCC guidance, when read in conjunction with other statutory provisions and their implementing regulations, supports extending § 227(c) to text messages. Like Plaintiff, the plaintiff in *Jones* relied on several FCC Orders, including the 2003 Order (which Plaintiff primarily cites), and pointed to § 227(b) and its implementing regulation, 47 C.F.R. §

---

420, 429–430, (2022); *Salinas v. Railroad Retirement Bd.*, 592 U.S. 188 (2021); *Azar v. Allina Health Services*, 587 U.S. 566, 576–577 (2019) (holding same); *Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 441 (2023) (Courts "ordinarily aim to 'giv[e] effect to every clause and word of a statute.'" quoting *Microsoft Corp. v. i4i L.P.*, 564 U.S. 91, 106 (2011)).

[11] *See Jones v. Blackstone Med. Services, LLC*, 1:24-CV-01074-JEH-RLH, 2025 WL 2042764 at *5 (C.D. Ill. July 21, 2025) ("It is not for a court to legislate by reading into the TCPA something that is not there. It is for Congress to respond to the issues presented in this case and to address the realities of today's technology (and the intrusions caused therefrom) which is commonplace in American life in 2025." (internal citations omitted)).

64.1200(e), to argue that text messages fall within the scope of § 227(c).[12] The *Jones* court rejected this argument. It found the FCC guidance and related provisions address text messages *only in the limited context of § 227(b), not* § 227(c). And the *Jones* court therefore declined to extend § 227(c) beyond its plain language to encompass text messages.[13]

### D. Adopting Plaintiff's Logic Extends § 227(c)(5) Endlessly.

Plaintiff's core assertion is that text messages are calls under § 227(c) because a "call" means any attempt to communicate with a person via telephone. Beyond ignoring basic principles of statutory construction, this interpretation is untenably expansive and would collapse any principled limit on the statute's scope. Push notifications through smartphone applications, direct messages through social media phone-based applications (like Instagram, Snapchat, and particularly messaging apps like WhatsApp), and email messages received on a smartphone are all attempts to communicate with a person via telephone and would therefore meet Plaintiff's proposed definition of "telephone call" under § 227(c)(5). Indeed, the delivery of those notifications to users' phones are nearly indistinguishable from texts. That result is irreconcilable with the statutory text and would create an unworkable standard of enforcement. Expanding "telephone calls" to cover text messages would not only contradict the plain language of the statute, but also obliterate the distinction between calls and all other forms of digital messaging—a result neither the

---

[12] *See, e.g.,* Dkt. 17 at 13 ("Mountainside doesn't dispute that text messages can be sent 'in violation of the regulations.' 47 U.S.C. § 227(c)(5). The FCC's regulations explicitly say so. *See* 47 C.F.R. § 64.1200(e)."); *Id.* at 15 ("That's why the FCC first determined that 'call' includes text messages in the § 227(b) context, and only more recently memorialized in a formal regulation that 'call' has the same meaning in the Do Not Call List context. *See* 47 C.F.R. § 64.1200(e); 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 7, 2023); 38 FCC Rcd. 12247, 12256–57 ¶ 26 (2023)."); *Id.* at 16 ("Even if the statute left room to doubt that a text message can be an actionable violation of the Do Not Call List provisions (which it doesn't), the FCC's longstanding interpretation of the word 'call' should still carry the day.").

[13] *See Jones*, 2025 WL 2042764 at *5 ("While the Court affords a certain amount of respect to the FCC's interpretation of the terms used in the TCPA, the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages . . . [t]he "ordinary" principle of statutory interpretation – to start with the text of the statute to ascertain its plain meaning – provides the answer." (citing *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) (Scalia, J., concurring in judgment))).

1  TCPA nor Congress contemplated nor permits.

### III. SECTION 227(c) APPLIES ONLY TO RESIDENTIAL PHONE SUBSCRIBERS, NOT TO CELLULAR DEVICES.

Text messages are not telephone calls under Section 227(c). That fact alone is fatal to Plaintiff's case and warrants dismissal of its Complaint. Nevertheless, as demonstrated in Mountainside's Motion, Plaintiff's argument alternatively fails because Section 227(c) and its implementing regulations apply *only* to "residential telephone subscribers." *See* 47 U.S.C. §§ 227(c)(1) & (c)(3); 47 C.F.R. § 64.1200(c)(2). Just as Congress intentionally limited the private right of action in Section 227(c)(5) to "telephone calls," the TCPA's language is unambiguous and distinguishes between "residential" and "cellular" telephone lines throughout the statute.[14]

### IV. PLAINTIFF'S ALLEGATIONS FAIL TO SUPPORT A CLAIM FOR INJUNCTIVE RELIEF OR TREBLE DAMAGES.

Plaintiff's argument for injunctive relief is limited to a single footnote. [Dkt. 17, at 17 fn 20][15] and does not address *Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006), which requires than make conclusory statements to survive a motion to dismiss. *Id.*[16] Plaintiff has not alleged that Mountainside sent him any text messages **since May 31, 2024**, some sixteen months ago. [See Dkt. 1 at ¶ 19]. This temporal gap undermines Plaintiff's claim that he is "likely to suffer imminent, irreparable harm absent an injunction," as required under *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Without allegations of ongoing or imminent future violations, Plaintiff' fails to make a showing of a

---

[14] *See*, *e.g.,* 47 U.S.C. § 227(b)(1) (providing separate provisions under the TCPA that restrict calls made using "an artificial or prerecorded voice" for calls to cellular telephone lines (§ 227(b)(1)(A)(iii)) and residential telephone lines (§ 227(b)(1)(B)).

[15] *Wijesinha v. Bluegreen Vacations Unlimited*, 2019 WL 3409487 (S.D. Fla. 2019).

[16] *See Elend*, 471 F.3d at 1207 ("[A] prayer for injunctive and declaratory relief requires an assessment, at the stage of determining standing, of whether the plaintiff has sufficiently shown a real and immediate threat of future harm."); *see also Zononi v. CHW Grp., Inc.*, 2023 WL 2667941 at *5 (S.D. Fla. Mar. 7, 2023) (Any plaintiff seeking injunctive relief in federal court "must demonstrate that he is likely to suffer future injury . . . at the hands of the defendant" and that "the relief the plaintiff seeks will likely prevent such injury from occurring." (quoting *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203-04 (11th Cir. 1991)).

likelihood of future harm stemming from Mountainside's violation of the TCPA.[17]

As to Plaintiff's request for treble damages under § 227(c)(5), Plaintiff's Complaint contains only threadbare allegations that Mountainside's "violations were willful or knowing" and that "[b]ecause such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5)." [Dkt. 1 at ¶¶ 39, 41]. Although district courts in this Circuit are divided on whether such conclusory allegations are sufficient to survive a motion to dismiss, several courts within this district have denied treble damages where a plaintiff has "not put forth evidence that [a Defendant] has previously violated the TCPA or that non-trebled damages are insufficient to deter future TCPA violations." *See Crews v. Blackrock Debt Relief Corp.*, 2025 WL 2107627 at *4 (D. Ariz. July 28, 2025); *Crews v. Sun Sols. AZ LLC*, 2024 WL 2923709 at *7 (D. Ariz. June 10, 2024).[18] These cases align more closely with the alleged facts of this case.

## V. **CONCLUSION.**

For the foregoing reasons, Plaintiff's allegations fail to state a claim under the TCPA as a matter of law, and the Court should dismiss this action with prejudice.

RESPECTFULLY SUBMITTED this 6th day of October, 2025.

    QUARLES & BRADY LLP
    One Renaissance Square
    Two North Central Avenue, Suite 600
    Phoenix, AZ  85004-2322


    By: */s/ John M. O'Neal*
        John M. O'Neal

    *Attorney for Defendant Mountainside Fitness Acquisition LLC*

---

[17] *See Wright v. Serv. Emps. Int'l Union Loc. 503,* 48 F.4th 1112, 1118-19 (9th Cir. 2022) ("When a plaintiff's standing is grounded entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that [s]he will again be wronged in a similar way.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018)).

[18] And other courts have concluded that conclusory allegations of willful or knowing TCPA violations "are legal in nature, 'and as such need not be accepted as true at the motion to dismiss stage. *See Lenhardt v. Democratic Nat'l Comm.,* 2022 WL 110814 at *5 (D. Kan. Jan. 12, 2022); *Castro v. Cap. One Servs., LLC,* 2017 WL 4776973, at *5 (M.D. Fla. Aug. 3, 2017); *Dores v. One Main Fin.*, 2016 WL 3511744, at *3 (E.D. Va. June 1, 2016).

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2025, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court through the U.S. District Court Electronic Court Filing System, which caused notice of such filing to be sent electronically to the registered attorneys of record.

          */s/ Debra L. Hitchens*