**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chet Michael Wilson, | No. CV-25-01481-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Mountainside Fitness Acquisition LLC, | |
| Defendant. | |

The issue before the Court is whether the Telephone Consumer Protection Act ("TCPA") and implementing regulations by the Federal Communications Commission ("FCC") apply to text messages sent by Defendant Mountainside Fitness Acquisition LLC ("Mountainside") to Plaintiff Chet Wilson in this putative class action. Mountainside filed a motion to dismiss the complaint, arguing among other things that text messages sent to cell phone users are not within the scope of the TCPA and implementing regulations. (Doc. 13.) Mountainside's motion will be denied.

## I.      BACKGROUND

Wilson filed his Class Action Complaint in May 2025. (Doc. 1.) In it, he alleges Mountainside "routinely violates 47 C.F.R. § 64.1200(c) and, in turn, [the TCPA], by delivering, or causing to be delivered, more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry . . . without prior express invitation or permission." (*Id.* at 1 ¶ 2.) Wilson further alleges he received such text messages from Mountainside in May 2024, and he had

1    not given Mountainside consent to send a text message or "request[ed] information or
2    promotional materials" from Mountainside. (*Id.* at 3-5 ¶¶ 9, 18, 23-24.) In the complaint,
3    Wilson proposes a putative class and asserts one claim for violation of the TCPA, 47 U.S.C.
4    § 227. (*Id.* at 6 ¶ 28, 8.)

5              Mountainside filed a motion to dismiss, arguing that Wilson failed to state a claim
6    because (1) his cited regulations do not apply to text messages sent to cell phone users; (2)
7    he "fail[ed] to plead facts to suggest that treble damages are appropriate" because there is
8    no allegation Mountainside "willfully or knowingly" violated the TCPA; and (3) he
9    "fail[ed] to plead facts sufficient to demonstrate entitlement to injunctive relief considering
10   that [he] has not alleged the receipt of any Mountainside text messages since May 31,
11   2024." (Doc. 13 at 2-3.) As for the first argument, Mountainside further argues that the
12   "FCC's 2003 Order purporting to expand . . . regulations to 'wireless' numbers" and text
13   messages is in direct conflict with the TCPA text and "exceeded Congress's mandate." (*Id.*
14   at 8-9, 13-15.)

15             In response, Wilson argues that text messages to cell phones fit within the scope of
16   the TCPA because the term "telephone solicitations" include telephone calls *and* messages
17   and "residential" includes cell phones for personal use. (Doc. 17 at 3-6, 11-16.) Wilson
18   claims that legislative history supports his argument (*id.* at 6-8), but in the very least,
19   Congress "intended" that the FCC's judgment would control (*id.* at 8-10). As for
20   Mountainside's other arguments, Wilson argues that dismissal of remedies is not proper
21   for a Rule 12(b)(6) motion. (*Id.* at 16-17.)

22             Mountainside filed its reply brief (Doc. 20) and, since then, the parties have filed
23   several notices of supplemental authority (Docs. 21, 22, 24, 26; *see also* Doc. 23 (response
24   to Doc. 22).)

25   **II.    LEGAL STANDARD**

26             A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to
27   state a claim upon which relief can be granted "tests the legal sufficiency of a claim."
28   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "if

1  there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under
2  a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.
3  2011) (citation modified).

4      A complaint must assert sufficient factual allegations that, when taken as true, "state
5  a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
6  Plausibility is more than a mere possibility; a plaintiff is required to provide "more than
7  labels and conclusions, and a formulaic recitation of the elements of a cause of action will
8  not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the
9  sufficiency of a complaint, the well-pled factual allegations are taken as true and construed
10 in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th
11 Cir. 2009).

12 **III.    DISCUSSION**

13     **A.    Application of 47 U.S.C. § 227(c) to Text Messages Sent to Cell Phone**
14         **Users**

15     Section 227(c) extends a private right of action to a "person who has received more
16 than one telephone call within any 12-month period by or on behalf of the same entity in
17 violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5).
18 Wilson contends Mountainside violated 47 C.F.R. § 64.1200(c) (Doc. 1 at 1 ¶ 2), which
19 provides that "[n]o person or entity shall initiate any telephone solicitation to" (1) a
20 "residential telephone subscriber before the hour of 8 a.m. or after 9 p.m." or (2) a
21 "residential telephone subscriber who has registered his or her telephone number on the
22 national do-not-call registry."[1] Section 227 generally defines "telephone solicitation" as
23 the "initiation of a telephone call or message for the purpose of encouraging the purchase
24 or rental of, or investment in, property, goods, or services, which is transmitted to any
25 person," with some exceptions. 47 U.S.C. § 227(a)(4). It does not define "residential
26 telephone subscriber." *See generally id.* § 227(a).

27

28

---

[1]    If the person or entity "can demonstrate that the violation is the result of error and that as part of its routine business practice, it meets [certain] standards," the person or entity "will not be liable." 47 C.F.R. § 64.1200(c)(2).

Courts have diverged on their conclusions, as the parties' notices of supplemental authority demonstrate. (*See* Docs. 21, 22, 24, 26.) The first group holds that "telephone call" is broad enough to encompass text messages. *See, e.g.*, *Wilson v. Better Mortg. Corp.*, — F. Supp. 3d —, 2025 WL 3493815, at *5-9 (S.D.N.Y. 2025); *Mujahid v. Newity, LLC*, No. 25 C 8012, 2025 WL 3140725, at *1-3 (N.D. Ill. Nov. 10, 2025); *Wilson v. MEDVIDI Inc.*, No. 5:25-cv-03996-BLF, 2025 WL 2856295, at *2-4 (N.D. Cal. Oct. 7, 2025). The second holds that the plain meaning of "telephone call" excludes text messages because text messages did not then exist when that provision of the TCPA was enacted in 1991, and English users today understand that telephone calls are distinct from text messages. *See, e.g.*, *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 2:25-cv-05093-JLS-BFM, 2025 WL 3549868, at *1-2 (C.D. Cal. Dec. 3, 2025); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 8:25-cv-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025).

## 1.    Impact of *Satterfield v. Simon & Schuster, Inc.*

Some courts in this Circuit have held that the Ninth Circuit's decision in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) is controlling on this issue. *See Dilanyan*, 2025 WL 3549868, at *3. In *Satterfield*, the Ninth Circuit considered the FCC's interpretation of "call" as including text messages for purposes of § 227(b)(1)(A)(iii), a different subsection of the TCPA. 569 F.3d at 950, 952-54. Applying the now-defunct *Chevron* deference analysis, the court determined that the TCPA was "silent as to whether a text message is a call" and that the FCC's interpretation as including text messages was reasonable and afforded deference because that interpretation was "consistent with the dictionary's definition of call" and the purpose of the TCPA. *Id.* at 953-54.

But *Chevron* deference is no longer the law. In 2024, the Supreme Court overruled *Chevron* and held that courts have a duty under the Administrative Procedures Act to "decide all relevant questions of law" and "interpret . . . statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 411-12 (2024) (alteration in original) (quoting 5 U.S.C. § 706). In *Loper Bright*, however, the Supreme Court stated that it did "not call into question prior cases that relied on the *Chevron* framework" and that the "holdings of those

cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis*." *Id.* at 412.

Relying on this statement by the Supreme Court, the Ninth Circuit has held that its precedent continues to bind future cases even if that precedent relied on *Chevron*. *See Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1087 (9th Cir. 2025) (stating that "the holdings of [its] prior cases in which *Chevron* deference was applied remain precedential until overruled"); *Lopez v. Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024); *see also Alvidrez Quezada v. Bondi*, No. 24-1929, 2025 WL 1576797, at *2 n.4 (9th Cir. June 4, 2025) (per curiam) ("Petitioner argues that the Ninth Circuit's endorsement of the *Pickering* rule was based on *Chevron* deference and should thus be revisited in light of [*Loper Bright*]. But *Loper Bright* did not call into question prior cases that relied on the *Chevron* framework." (quotation marks omitted)); *Puac-Puac v. Bondi*, No. 24-2820, 2025 WL 1088530, at *1 (9th Cir. Apr. 11, 2025) (per curiam) (stating "we are bound by our prior precedent" and citing *Loper Bright*); *Bartolo v. Garland*, No. 23-1578, 2025 WL 32825, at *2 (9th Cir. Jan. 6, 2025) (per curiam) (holding that previous precedent relying on *Chevron* "remain[ed] precedential authority" because it was not "clearly irreconcilable" with *Loper Bright* and in light of the "clear directive" that *Loper Bright* did not call into question cases that relied on *Chevron* (citation omitted)).

Lower courts in this circuit have followed suit. *See Dilanyan*, 2025 WL 3549868, at *3 (reasoning *Satterfield* remains good law even though it relied on *Chevron*, and the decision was not "clearly irreconcilable" with *Loper Bright* such that the court could deem it non-binding); *United States v. Rosas-Ramirez*, No. 5:18-cr-00053-EJD-1, 2025 WL 2614982, at *6 (N.D. Cal. Sep. 10, 2025) ("[W]hile the Ninth Circuit may consider revisiting its line of cases relying on BIA decisions, it is not for this Court to decide whether *Loper* abrogated *Bastide-Hernandez* and *Karingithi*."); *Cortes v. ProDrivers W., Inc.*, No. 2:25-cv-02451-SB-JPR, 2025 WL 2004506, at *2 (C.D. Cal. June 9, 2025) ("*IBT* . . . is not clearly irreconcilable with *Loper Bright* and remains binding on this Court. . . . Plaintiff's request that this Court disregard *IBT* due to its reliance on *Chevron* is . . . directly at odds

with *Loper Bright*, as reaffirmed by the Ninth Circuit." (quotation marks omitted)); *Andrewphillip E. v. Dudek*, No. 24cv108-LR, 2025 WL 874788, at *12 (S.D. Cal. Mar. 20, 2025) (rejecting argument that Ninth Circuit case law was "invalid" after *Loper Bright*).

In light of the Ninth Circuit's treatment of its *Chevron*-reliant precedent after *Loper Bright*, the Court concludes that *Satterfield* is still binding. Text messages are properly within the ambit of "call" for purposes of § 227(b)(1), so the issue for this case is whether the holding in *Satterfield* also applies to "telephone call" in § 227(c)(5).

The Court concludes that *Satterfield* necessarily applies to § 227(c)(5) because almost the same terminology is used—"telephone call." *Compare* 47 U.S.C. § 227(b)(1)(A)(iii), *with id.* § 227(c)(5).[2] Though Mountainside argues that the Ninth Circuit did "not reference § 227(c) anywhere" in *Satterfield* (Doc. 20 at 6), the reasoning in *Satterfield* equally applies to § 227(c)(5): (1) the relevant dictionary definition of "call" meant "to communicate with or try to get into communication with a person by a telephone," which reasonably extends to text messages because "[i]t is undisputed that text messaging is a form of communication used primarily between telephones"; and (2) the purpose of the TCPA is to "protect the privacy interests of telephone subscribers," which also applies to text messages because "a voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954. Indeed, the Ninth Circuit did not cabin its holding to § 227(b)(1), but held that "a text message is a 'call' within the meaning of the *TCPA*." *Id.* at 952 (emphasis added). And, of course, when Congress uses a term in one part of a statute, it is axiomatic that the same term in a different part of the same statute is generally given the same meaning. *Monsalvo v. Bondi*, 604 U.S. 712, 726 (2025) ("[I]dentical words and phrases within the same statute should normally be given the same meaning." (quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007))); *N. Plains Res. Council v. U.S. E.P.A.*, 645 F.2d

---

[2]    At oral argument, Mountainside argued that *Satterfield* cannot apply to § 227(c) in part because *Satterfield* relied on the 2003 FCC Order, and this Order only applied to § 227(b). Even assuming Mountainside is correct, the Ninth Circuit has deferred to the 2003 FCC Order in its interpretation of § 227(c), so this argument is not persuasive. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223-25 (9th Cir. 2022).

1349, 1355 (9th Cir. 1981) ("It is an accepted rule of statutory construction that the same word or phrase is presumed to have the same meaning when used in different parts of a statute. That presumption, however, may be rebutted if the same word or phrase is used in different parts of a statute with manifestly different intent." (citation and quotation marks omitted).).[3]

Because Ninth Circuit precedent compels the result that text messages fall within § 227(c), the Court need not address the parties' arguments requesting that the Court consider the statutory and regulatory landscape anew. (*See* Doc. 13 at 4-15; Doc. 17 at 3-10.)

The Court notes, however, that if it were writing on a blank slate, it would find Mountainside's arguments persuasive. Even though a definition of "call" at the time the TCPA provisions were enacted was broad enough to include text messages, *see Satterfield*, 569 F.3d at 953-54, this is not dispositive as to whether the plain and ordinary meaning of "telephone call" in 1991 encompassed text messages. Dictionary definitions can sometimes "admit of more than one interpretation," *United States v. Maciel-Alcala*, 612 F.3d 1092, 1096 (9th Cir. 2010), and "[i]n law as in life . . . the same words, placed in different contexts, sometimes mean different things," *Yates v. United States*, 574 U.S. 528, 537 (2015). "[O]rient[ing] ourselves to the time of the statute's adoption," *Bostock v. Clayton County*, 590 U.S. 644, 655 (2020), telephone calls could not have included text messages because text messages did not exist, *Satterfield*, 569 F.3d at 954 ("[T]his law was enacted in 1991 when text messaging was not available."). The plain and ordinary meaning of

---

[3]    At oral argument, Mountainside argued that the word "call" used in § 227(b)(1) is different from the word "telephone call" used in § 227(c)(5). First, only one subsection in § 227(b)(1) uses "call" by itself, 47 U.S.C. § 227(b)(1)(A); another in the same subsection uses "telephone call," the same word used in § 227(c)(5), *see id.* § 227(b)(1)(B). Second, another subsection in the TCPA suggests that both "call" and "telephone call" are "calls" encompassed within § 227(b) and (c) and that such terms are therefore used interchangeably to mean the same thing. *See id.* § 227(h)(2)(A)(i) (requiring the FCC to provide a report to Congress including the number of complaints "alleging that a consumer received a *call* in violation of *subsection (b) or (c)*" (emphases added)). Although that subsection was added later, to read these subsections together harmoniously means that "telephone call" has the same meaning as "call." Finally, even setting aside these statutory clues, the use of "telephone call" as opposed to "call" is a distinction without a difference, particularly in the context of the TCPA, which concerns communications by telephone.

telephone call in 1991 thus could not have also meant text messages. *Cf. New Prime Inc. v. Oliveira*, 586 U.S. 105, 114-15 (2019) (interpreting "contract of employment" to include independent contractors because at the time of enactment, "most people . . . would have understood" the statute in that manner, as "a 'contract of employment' usually meant nothing more than an agreement to perform work," even though the use in modern times "might call to mind only agreements between employers and employees"); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 16 (2012) ("In their full context, words mean what they conveyed to reasonable people at the time they were written—with the understanding that general terms may embrace later technological innovations."). It may be that Congress intended "telephone call" to be broad enough to embrace later technological advancements, but it is undisputed that in 1991 the word "telephone call" would not have also conveyed "text message" to reasonable people at that time. Scalia & Garner, *supra*, at 16.

Additionally, the TCPA itself indicates that a telephone call means something distinct from a text message. *See Bostock*, 590 U.S. at 656 ("The question isn't just what [the word] meant, but what [the statute] says about it."). Take, for example, that Congress defined "telephone solicitation" to include a "telephone call *or message*," 47 U.S.C. § 227(a)(4) (emphasis added), but did not use the broader "telephone solicitation" in its prohibitions in § 227(c)(5).[4] The statutory definition of "telephone solicitation" indicates that "telephone call" means something different than a telephone message, and reading "telephone call" to include messages would render this language superfluous. *See In re Amex-Protein Dev. Corp.*, 504 F.2d 1056, 1058 (9th Cir. 1974) ("It is a matter of basic statutory construction that statutes are to be given such effect that no clause, sentence or word is rendered superfluous, void, contradictory, or insignificant." (quotation marks omitted)). Further, that Congress chose not to use the broader "telephone solicitation"

---

[4]    Although the tail end of § 227(c)(5) discusses an affirmative defense for those with internal procedures to "effectively prevent telephone solicitations," that the same subsection of § 227(c) uses different terms—"telephone call" vs. "telephone solicitation"—suggests that the use of "telephone call" in the prohibitions of § 227(c)(5) was intentional. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012).

language in its prohibitions indicates its use of the narrower "telephone call"—which, again, is set apart from a "telephone message"—was intentional. *See* 47 U.S.C. § 227(c)(1)(D) (instructing the FCC to "consider whether there is a need for additional Commission authority to further restrict telephone *solicitations*, including those *calls* exempted under subsection (a)(3)" (emphases added)); *see also Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally.").

Take also that Congress has since amended the TCPA to include prohibitions involving text messages, *see* 47 U.S.C. § 227(e)(1), (e)(8)(A)-(B), including definitions of "text message," *id.* § 227(e)(8)(C), and "text message service," *id.* § 227(e)(8)(D). True, the subsequent history is not dispositive as to whether "telephone call" includes text messages. *Cf. Bostock*, 590 U.S. at 670 ("[S]peculation about why a later Congress declined to adopt new legislation offers a particularly dangerous basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt."); *see also* 47 U.S.C. § 227(i)(1)(A) (requesting FCC to establish a process in which a private entity may share information relating to "a call made or *a text message sent* in violation of *subsection (b)*" (emphases added)); *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). But the later addition of "text message" and new definitions for it—with no change to "telephone call" in § 227(c)(5)—does not mean nothing. If Congress adopted the broader definition of "telephone call" to include text messages, then it begs the question of why it did not repeat the same language in later amendments. *See Rodriguez v. Sony Comput. Ent. Am., LLC*, 801 F.3d 1045, 1052 (9th Cir. 2015) ("We also presume that when Congress amends a statute, it is knowledgeable about judicial decisions interpreting the prior legislation, and when judicial interpretations have settled the meaning of an existing statutory provision, *repetition* of the same language in a new statute indicates, as a general matter, the intent to

incorporate its judicial interpretations as well." (emphasis added) (citation omitted)). That Congress did not do so is an indication that "telephone call" again means something different from a "text message," as "text message" would be rendered superfluous if it was already subsumed within "telephone call." *See* 47 U.S.C. § 227(e)(8)(B) (defining "caller identification service" as a service designed to provide origination information for "a *call* made using a voice service *or a text message* sent using a text message service" (emphases added)); *Sebelius*, 567 U.S. at 544; *Amex-Protein Dev. Corp.*, 504 F.2d at 1058.

Again and ultimately, the Court need not come to a definite conclusion in light of *Satterfield*'s continued status as binding authority. Regardless of whether Mountainside is correct as a matter of statutory construction, the Court is bound by the Ninth Circuit's decisions. *See Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981) ("District courts are bound by the law of their own circuit . . . . no matter how egregiously in error they may feel their own circuit to be."). Mountainside must therefore take up its arguments with the Ninth Circuit. For purposes of this case, its arguments are foreclosed.

### 2.    Whether the TCPA Extends to Cell Phone Users

The next question is whether the TCPA and relevant federal regulations include text messages to a residential cell phone user within their scope. Again, Wilson asserts that Mountainside violated 47 C.F.R. § 64.1200(c), (Doc. 1 at 1 ¶ 2), which prohibits a "person or entity" from "initiat[ing] any telephone solicitation" to residential telephone subscribers. 47 C.F.R. § 64.1200(c). As mentioned, "telephone solicitation" is defined as a "telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person" and that which does not fall within several exceptions. 47 U.S.C. § 227(a)(4). And as explained above, a "telephone call" includes text messages within its scope. *Monsalvo*, 604 U.S. at 726; *Satterfield*, 569 F.3d at 952. The regulation thus includes text messages, but Mountainside argues that residential telephone subscribers only include landline users, not cell phone users. (*See* Doc. 13 at 4-8.)

The Ninth Circuit has relied on FCC regulations and orders in determining that cell

phone users are presumptively residential for purposes of § 227(c), unless the defendants overcame the presumption by showing that the cell phone was used as a business line. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022). In *Chennette*, "plaintiffs who [had] their cell phone numbers on the national do-not-call registry allege[d] additional claims under § 227(c)." *Id.* at 1223. The Ninth Circuit noted that the FCC had extended these regulations to wireless subscribers and "concluded that a cell phone is presumptively residential." *Id.* at 1223, 1225. Plaintiff cell phone users thus were presumptively "residential" and had statutory standing to sue under § 227(c). *Id.* at 1225; *see also id.* at 1226 (Bress, J., concurring) ("Section 227(c) of the TCPA applies to 'residential telephone subscribers.' The FCC has passed regulations making clear that 'wireless telephone numbers' qualify as 'residential telephone subscribers.'" (citations omitted)); *id.* at 1227 ("[I]t is clear that binding FCC rulings require that the TCPA's protections for residential telephone subscribers extend to wireless users . . . ."); *id.* at 1231 ("The majority opinion is correct to conclude that wireless users may be 'residential subscribers' depending on how they use their phones."). Although this decision appears to have applied *Chevron* reasoning and deferred to the FCC's interpretations, *see id.* at 1225 (majority opinion) ("The FCC is free in future regulations or orders to interpret § 227(c) differently. If the FCC does so, we will of course defer to its interpretation, provided that the interpretation is consistent with a reasonable understanding of the statutory language."), *Chennette* is nevertheless binding[5] even if it did apply *Chevron*. *Murillo-Chavez*, 128 F.4th at 1087;

---

[5]     Mountainside argues the Supreme Court's decision in *McLaughlin Chiropractic Associates, Inc. v. McKesson Corporation*, 606 U.S. 146 (2025), seemingly requires the Court to decline to abide by the Ninth Circuit's decisions. (*See* Doc. 13 at 10-11.) Mountainside does not explain how the Ninth Circuit decisions are "clearly irreconcilable" with *McLaughlin*, as is required for this Court to disregard them. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). In stating that district courts are not bound by an agency's interpretation, *McLaughlin* cited *Loper Bright*, which already provided that decisions relying on *Chevron* remain good law and subject to *stare decisis*. *McLaughlin*, 606 U.S. at 155; *Loper Bright*, 603 U.S. at 412. In any event, the Supreme Court noted in *McLaughlin* that "if the district court in the enforcement proceeding sits in the same circuit as the court of appeals that decided a pre-enforcement suit, the district court may be bound under principles of vertical *stare decisis* to adhere to the court of appeals holding." *McLaughlin*, 606 U.S. at 155 n.3. Thus, the Supreme Court contemplated that, even following its holding, district courts could be bound by circuit precedent, and the Supreme Court did not require district courts to disregard such precedent. *McLaughlin* does not serve as a basis for this Court to disregard *Satterfield* or *Chennette* as "clearly irreconcilable."

1    *Lopez*, 116 F.4th at 1045. Cell phone users that are presumptively residential may bring

2    suit under § 227(c), according to *Chennette*. Mountainside's argument that neither § 227(c)

3    nor the implementing regulations extend to cell phone users is thus foreclosed, subject to

4    the Ninth Circuit revisiting its holding in light of *Loper Bright*.[6]

5                        **3.     Timeliness of 2003 FCC Order**

6              Mountainside next argues that even if § 227(c)(5) includes text messages sent to a

7    cell phone user within its scope, the 2003 FCC Order "could not create a private right of

8    action under Section 227(c)(5) because the FCC promulgated the order . . . well after its

9    limited regulatory window" of September 20, 1992. (Doc. 13 at 15.) But as Wilson notes,

10   (Doc. 17 at 10), "if a statute does not specify a consequence for noncompliance with

11   statutory timing provisions, the federal courts will not in the ordinary course impose their

12   own coercive sanction." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 159 (2003) (citation

13   omitted); *see also Regions Hosp. v. Shalala*, 522 U.S. 448, 459 n.3 (1998) (noting that,

14   even though the Secretary of Health and Human Services was statutorily required to

15   "report" to Congress by a certain date and the Secretary "miss[ed] the deadline by some

16   years," the "Secretary's failure to meet the deadline, a not uncommon occurrence when

17   heavy loads are thrust on administrators," did "not mean that official lacked power to act

18   beyond it"). Wilson also argues that Congress later extended the time for the FCC to

19   promulgate regulations pertaining to the Do-Not-Call Registry, and the 2003 FCC Order

20   was issued within that timeframe. (Doc. 17 at 10 n.12.)

21            Mountainside did not respond to these arguments in its reply brief, suggesting it

22   abandoned its argument that the 2003 FCC Order was untimely. *See Obrien v. Bisignano*,

23   142 F.4th 687, 694 n.6 (9th Cir. 2025) ("[E]ven where there is, strictly speaking, no

24   procedural default or forfeiture, a party's failure in a reply brief to respond to a particular

---

25
26   *See Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (noting the "high standard" for
     precedent to be "clearly irreconcilable" with intervening authority).
     [6]       In light of these conclusions, the Court need not address Mountainside's arguments
27   that the 2003 FCC Order is inconsistent with the text of the TCPA and, post-*Loper-Bright*,
     non-binding. (Doc. 13 at 8-13.) The Ninth Circuit has deferred to the 2003 FCC Order in
28   both *Satterfield* and *Chennette*, *Chennette*, 50 F.4th at 1223-25; *Satterfield*, 569 F.3d at
     952-54, and as already explained, even after *Loper Bright*, these decisions are binding.

                                             - 12 -

argument raised in an opponent's answering briefing may nonetheless be construed as an *abandonment* of certain arguments or claims."); *see also Schmidt v. County of San Diego*, No. 23-cv-0899-W-DDL, 2024 WL 4308793, at *14 (S.D. Cal. Sep. 26, 2024) ("Defendants' reply does not address Plaintiffs' contention, presumably abandoning the argument."). The Court thus does not further address Mountainside's argument.

### B.    Request for Treble Damages

Mountainside next argues that Wilson has not pled sufficient facts to support a claim for treble damages under the TCPA, because Wilson alleged Mountainside's knowledge in a conclusory fashion. (Doc. 13 at 16.) To the extent a Rule 12(b)(6) motion is a proper vehicle through which to challenge a requested remedy, (*compare* Doc. 17 at 17, *with* Doc. 20 at 11), the Court agrees with Wilson that he has plausibly alleged facts suggesting he is entitled to pursue treble damages. Wilson alleged that he received several text messages from Mountainside even though his cell phone number has been on the National Do Not Call Registry for more than 30 days prior to receiving the messages and though he did not request information from Mountainside. (Doc. 1 at 4-5 ¶¶ 16, 19, 24.) This is sufficient at this stage to plausibly allege that the text messages were sent in willful or knowing violation of the TCPA.

### C.    Injunctive Relief

Finally, Mountainside argues that Wilson does not have standing to pursue injunctive relief because he has not shown he is likely to suffer "ongoing or imminent future violations." (*See* Doc. 13 at 17; Doc. 20 at 10-11.) Mountainside notes that, per the complaint, Wilson received text messages in May 2024 but not since then. (Doc. 13 at 17; Doc. 1 at 4 ¶ 18.)

Courts "must assure [themselves] that the constitutional standing requirements are satisfied before proceeding to the merits." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Id.* To establish standing, a plaintiff must "demonstrate that he has suffered an injury-in-fact, that the injury is traceable

1    to the [defendant's] actions, and that the injury can be redressed by a favorable decision."

2    *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). The

3    "injury-in-fact" must be (1) "concrete and particularized" and (2) "actual or imminent"

4    rather than "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

5    (1992).

6        To pursue injunctive relief, the plaintiff must also "demonstrate a real and

7    immediate threat of repeated injury in the future." *Chapman*, 631 F.3d at 946 (quotation

8    marks omitted). The repeated injury must be "similar" to any injury he suffered previously.

9    *See id.* at 948 (citation omitted). Past harms "do not in themselves amount to a real and

10   immediate threat of injury necessary to make out a case or controversy," but they can serve

11   as "evidence bearing on whether there is a real and immediate threat of repeated injury."

12   *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004) (citation

13   modified). In other words, a "person exposed to a risk of future harm may pursue forward-

14   looking, injunctive relief to *prevent* the harm from occurring, at least so long as the risk of

15   harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413,

16   435 (2021) (emphasis added).

17       That said, the elements for Article III standing "must be supported in the same way

18   as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner

19   and degree of evidence required at the successive stages of the litigation." *Jones v. L.A.*

20   *Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (quoting *Lujan*, 504 U.S. at 561).

21   "Thus, at the pleadings stage, the plaintiff must allege sufficient facts that, taken as true,

22   demonstrate each element of Article III standing." *Id.* (citation modified). If the facts are

23   sufficient for Article III standing at the pleadings stage, the parties can again raise standing

24   at the summary judgment stage, where "a plaintiff must offer evidence and specific facts

25   demonstrating each element of Article III standing." *Id.* at 1058 (quotation marks omitted).

26       The Court finds that, at this stage, Wilson has alleged facts sufficient to provide him

27   with Article III standing to pursue injunctive relief. Wilson alleged that Mountainside sent

28   him several text messages, despite that his phone number was already on the National Do

Not Call Registry and that he had not requested any promotional or advertising materials. (Doc. 1 at 4-5 ¶¶ 16, 18-19, 23-24.) In other words, Wilson had already taken necessary steps to prevent Mountainside from sending him unwanted text messages. Although these text messages occurred in May 2024, there is nothing to indicate that Mountainside could not again send him messages at any time, since it was not already deterred in May 2024. *See Fortyune*, 364 F.3d at 1081. And Mountainside, who has complete control over its internal practices and actions, cannot transform Wilson's Article III standing burden at the pleadings stage into the burden to prove a negative. The parties may again raise this issue at summary judgment if discovery reveals that there is indeed no real threat of repeated injury. *See Jones*, 74 F.4th at 1058.

## IV.     CONCLUSION

Accordingly,

**IT IS ORDERED** denying Mountainside's motion to dismiss (Doc. 13).

**IT IS FURTHER ORDERED** that an order setting a Rule 16 scheduling conference will issue by separate order.

Dated this 9th day of January, 2026.

Michael T. Liburdi
United States District Judge