*Wilson v. Mountainside Fitness Acquisition, LLC*
Exhibit List to Watstein Declaration ISO Motion to Deny Class Certification

| Exhibit | Short Title | Description |
|---|---|---|
| A | PACER Search | PACER search results for Chet Wilson |
| B | Wilson Case List | Attorney-created list of federal cases filed by Wilson |
| C | Proposed *PacifiCorp* Agreement | Proposed settlement agreement that is the basis for the joint motion for preliminary approval of class settlement in *Wilson v. PacifiCorp* (D. Or.) |
| D | Wilson Dep. | Deposition transcript of Wilson, *Wilson v. Skopos Fin.* (D. Or.) |
| E | May 6, 2026 Post | Screenshot of May 6, 2026 Facebook post ("holes need filled" video) |
| F | Feb. 17, 2026 Post | Screenshots of Feb. 17, 2026 Facebook post (regarding Facebook ban) |
| G | Feb. 27, 2026 Post | Screenshot of Feb. 27, 2026 Facebook post (regarding ancestry) |
| H | Oct. 30, 2025 Post | Screenshot of October 30, 2025 Facebook post (regarding reparations) |
| I | Oct. 23, 2025 Post | Screenshot of October 23, 2025 Facebook post (regarding parents of transgender children) |
| J | July 10, 2014 Post | Screenshot of July 10, 2014 Facebook post (regarding NW Hour Share and evading taxes) |
| K | Wilson Decl. | Declaration of Chet Michael Wilson in Opposition to Motion to Deny Class Certification, filed in *Wilson v. Freeway*, No. 6:25-cv-1869 (D. Or. July 13, 2026) |
| L | Dec. 19, 2025 Post | Screenshot of December 19, 2025 Facebook post (broadcasting phone number) |
| M | Discovery Resps. | Plaintiff's Responses to Mountainside's Interrogatories and Certificate of Service |
| N | Heidarpour Decl. | Declaration of Andrew Heidarpour filed in *In re Subpoena to Heidarpour Law Firm, PLLC*, No. 1:26-mc-99 (D.D.C. June 24, 2026) |
| O | HLF Emails | Relevant emails exchanged with HLF counsel (June 12–14, 2026) |
| P | 2024 CFA | Contingent Fee Agreement (executed October 4, 2024) |
| Q | 2025 CFA | Contingent Fee Agreement (executed August 29, 2025) |
| R | Decl. of Authenticity | Declaration of Authenticity accompanying discovery responses in *Robertson v. Plain-English Media* |
| S | Robertson June 2024 CFA | Contingent Fee Agreement between Robertson and HLF (executed June 4, 2024) |
| T | Robertson Aug. 2024 Agreement | Class Action Authorization between Robertson, Kaufman, Paronich, and Heidarpour (executed August 2, 2024) |
| U | Robertson Settlement Statements | Settlement statements signed by Erin Robertson (allocation of fee award and release of attorneys) |
| V | July 7, 2026 Post | Screenshot of July 7, 2026 Threads post ("stay there f@g-hat beak nose . . . .") |
| W | Shechter Decl. | Declaration of Neal Shechter in Support of Defendant's Opposition to Plaintiff's Second Motion for Attorney's Fees and Other Sanctions, *Wilson v. MAH Group, Inc.*, No. 6:25-cv-855 (D. Or.) |

# EXHIBIT A

An official website of the United States government.   Here's how you know. ⌄



Party Search Results

**Search Criteria:** Party Search; Last Name: [wilson]; First Name: [chet]; Party Role: [PLA]
**Result Count:** 85 (2 pages)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 2:2025cv00212 | Wilson v. KUIU, LLC | CALIFORNIA EASTERN DISTRICT COURT | 01/15/2025 | 08/22/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv00278 | Wilson v. BlendJet Inc. | CALIFORNIA EASTERN DISTRICT COURT | 01/23/2025 | 03/10/2025 |
| Wilson, Chet Michael (pla) | 3:2025cv00260 | Wilson v. AUM Insurance Services LLC | CALIFORNIA NORTHERN DISTRICT COURT | 01/07/2025 | 08/11/2025 |
| Wilson, Chet Michael (pla) | 3:2025cv00802 | Wilson v. Kaiser Foundation Health Plan, Inc. | CALIFORNIA NORTHERN DISTRICT COURT | 01/23/2025 | 01/27/2026 |
| Wilson, Chet Michael (pla) | 5:2025cv03996 | Wilson v. MEDVIDI INC | CALIFORNIA NORTHERN DISTRICT COURT | 05/08/2025 | 03/06/2026 |
| Wilson, Chet Michael (pla) | 5:2025cv05656 | Wilson v. AMP FIT, INC. | CALIFORNIA NORTHERN DISTRICT COURT | 07/06/2025 | 09/25/2025 |
| Wilson, Chet Michael (pla) | 4:2026cv00039 | Wilson v. Autoweb, Inc. | CALIFORNIA NORTHERN DISTRICT COURT | 01/04/2026 | 04/15/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv00157 | Wilson v. FuturHealth, Inc. | CALIFORNIA SOUTHERN DISTRICT COURT | 01/23/2025 | 01/12/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv03648 | Wilson v. Mortgage One, Inc. | CALIFORNIA SOUTHERN DISTRICT COURT | 12/17/2025 | 05/22/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv00340 | Wilson v. Fleet Financial, Inc. | COLORADO DISTRICT COURT | 01/31/2025 | 02/10/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv00112 | Wilson v. Easy Spirit, LLC | CONNECTICUT DISTRICT COURT | 01/22/2025 | 07/02/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv01417 | Wilson v. Inbox Health Corp. | CONNECTICUT DISTRICT COURT | 09/02/2025 | 02/04/2026 |
| Wilson, Chet Michael (pla) | 8:2024cv02711 | Wilson v. Credit Suite Inc. | FLORIDA MIDDLE DISTRICT COURT | 11/21/2024 | 07/17/2025 |
| WILSON, CHET MICHAEL (pla) | 1:2025cv00023 | WILSON v. TRAJECTOR INC | FLORIDA NORTHERN DISTRICT COURT | 01/23/2025 | 07/30/2025 |
| Wilson, Chet Michael (pla) | 0:2024cv62319 | Wilson v. Disability Help Group LLC | FLORIDA SOUTHERN DISTRICT COURT | 12/07/2024 | 03/04/2026 |
| Wilson, Chet Michael (pla) | 1:2024cv25117 | Wilson v. Icon Creative Consulting, Inc. | FLORIDA SOUTHERN DISTRICT COURT | 12/30/2024 | 12/30/2024 |
| Wilson, Chet Michael (pla) | 1:2024cv25119 | Wilson v. Icon Creative Consulting, Inc. | FLORIDA SOUTHERN DISTRICT COURT | 12/30/2024 | 03/07/2025 |
| Wilson, Chet Michael (pla) | 0:2025cv60212 | Wilson v. Pharmacenter LLC | FLORIDA SOUTHERN DISTRICT COURT | 02/06/2025 | 01/22/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv22069 | Wilson v. Craftie Fox, Inc. | FLORIDA SOUTHERN DISTRICT COURT | 05/05/2025 | 07/24/2025 |
| Wilson, Chet Michael (pla) | 0:2025cv61793 | Wilson v. Vozzcom, Inc. | FLORIDA SOUTHERN DISTRICT COURT | 09/05/2025 | 06/15/2026 |

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 1:2025cv24103 | Wilson v. MIA Aesthetics Holdings, LLC | FLORIDA SOUTHERN DISTRICT COURT | 09/09/2025 | 04/22/2026 |
| Wilson, Chet Michael (pla) | 9:2025cv81268 | Wilson v. Salespromis, LLC | FLORIDA SOUTHERN DISTRICT COURT | 10/14/2025 | |
| Wilson, Chet Michael (pla) | 9:2026cv80334 | Wilson v. AMS Moving Inc. | FLORIDA SOUTHERN DISTRICT COURT | 03/25/2026 | 06/01/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv04023 | Wilson v. Atlanta Medical Day Spa and Surgery Center, LLC | GEORGIA NORTHERN DISTRICT COURT | 07/21/2025 | |
| Wilson, Chet Michael (pla) | 1:2025cv00003 | Wilson v. Club 1 Hotels, LLC | ILLINOIS NORTHERN DISTRICT COURT | 01/02/2025 | 04/23/2025 |
| Wilson, Chet Michael (pla) | 1:2025cv10578 | Wilson v. Disability Services of America, LLC | ILLINOIS NORTHERN DISTRICT COURT | 09/03/2025 | 12/02/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv01810 | Wilson v. McNeil & Meyers Receivables Management Group, LLC | LOUISIANA EASTERN DISTRICT COURT | 09/04/2025 | 01/26/2026 |
| Wilson, Chet (pla) | 3:2025cv01471 | Wilson v. Lumen Technologies Inc | LOUISIANA WESTERN DISTRICT COURT | 10/02/2025 | 01/27/2026 |
| Wilson, Chet Michael (pla) | 1:2024cv12950 | Wilson v. The Savings Bank Mutual Life Insurance Company of Massachusetts | MASSACHUSETTS DISTRICT COURT | 11/26/2024 | 09/12/2025 |
| Wilson, Chet (pla) | 1:2025cv12393 | Taylor et al v. Savvy Insurance Solutions, LLC | MASSACHUSETTS DISTRICT COURT | 08/29/2025 | 01/21/2026 |
| Wilson, Chet Michael (pla) | 1:2026cv11420 | Wilson v. Wayfair Inc. | MASSACHUSETTS DISTRICT COURT | 03/24/2026 | |
| Wilson, Chet Michael (pla) | 1:2026cv11489 | Wilson v. Staples, Inc. | MASSACHUSETTS DISTRICT COURT | 03/29/2026 | 06/01/2026 |
| Wilson, Chet Michael (pla) | 1:2024cv03665 | Wilson v. Lower, LLC | MARYLAND DISTRICT COURT | 12/18/2024 | 05/15/2025 |
| Wilson, Chet Michael (pla) | 8:2026cv00025 | Wilson v. The HELOC Company LLC | MARYLAND DISTRICT COURT | 01/05/2026 | |
| WILSON, CHET (pla) | 1:2025cv00719 | WILSON v. NATIONAL GENERAL INSURANCE COMPANY | NORTH CAROLINA MIDDLE DISTRICT COURT | 08/07/2025 | 07/16/2026 |
| WILSON, CHET MICHAEL (pla) | 1:2025cv15811 | ALMONTE v. MRS BPO LLC | NEW JERSEY DISTRICT COURT | 09/19/2025 | |
| Wilson, Chet (pla) | 1:2025cv06357 | Wilson v. Coverright Insurance Services Inc. | NEW YORK EASTERN DISTRICT COURT | 11/17/2025 | 04/02/2026 |
| Wilson, Chet Michael (pla) | 1:2026cv00009 | Wilson v. Dealmed Medical Supplies, LLC | NEW YORK EASTERN DISTRICT COURT | 01/02/2026 | 05/21/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv01075 | Wilson v. Liberty Home Guard LLC | NEW YORK NORTHERN DISTRICT COURT | 08/11/2025 | 01/14/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv03479 | Wilson v. Roman Health Ventures Inc. | NEW YORK SOUTHERN DISTRICT COURT | 04/27/2025 | 10/06/2025 |
| Wilson, Chet Michael (pla) | 1:2025cv05503 | Wilson v. Better Mortgage Corp. | NEW YORK SOUTHERN DISTRICT COURT | 07/02/2025 | 07/01/2026 |
| Wilson, Chet Michael (pla) | 1:2025cv07246 | Wilson v. Lifestation, Inc. | NEW YORK SOUTHERN DISTRICT COURT | 08/30/2025 | 07/23/2026 |
| Wilson, Chet Michael (pla) | 3:2026cv00207 | Wilson v. General Audit Corp. | OHIO NORTHERN DISTRICT COURT | 01/27/2026 | |
| Wilson, Chet Michael (pla) | 2:2025cv00039 | Wilson et al v. LeafFilter North, LLC | OHIO SOUTHERN DISTRICT COURT | 01/16/2025 | 03/17/2025 |

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 2:2025cv00872 | Wilson v. Roof Max Technologies LLC | OHIO SOUTHERN DISTRICT COURT | 08/06/2025 | 11/05/2025 |
| Wilson, Chet Michael (pla) | 6:2024cv01826 | Wilson v. Professional Credit Service | OREGON DISTRICT COURT | 10/31/2024 | 01/30/2025 |
| Wilson, Chet Michael (pla) | 6:2024cv01855 | Wilson v. Nationstar Mortgage LLC | OREGON DISTRICT COURT | 11/07/2024 | |
| Wilson, Chet Michael (pla) | 6:2024cv01956 | Wilson v. PacifiCorp | OREGON DISTRICT COURT | 11/21/2024 | |
| Wilson, Chet Michael (pla) | 1:2024cv02087 | Wilson v. Southern Oregon Credit Service, Inc. | OREGON DISTRICT COURT | 12/17/2024 | 05/15/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv00043 | Wilson v. Centennial Medical Group East, LLC | OREGON DISTRICT COURT | 01/09/2025 | 04/09/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv00144 | Wilson v. Hard Eight Nutrition LLC | OREGON DISTRICT COURT | 01/28/2025 | 06/30/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv00152 | WILSON v. CMRE FINANCIAL SERVICES, INC. | OREGON DISTRICT COURT | 01/28/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv00173 | Wilson v. Finmax Smart Capital LLC | OREGON DISTRICT COURT | 01/31/2025 | 01/26/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv00410 | Wilson v. Norco, Inc. | OREGON DISTRICT COURT | 03/09/2025 | 08/06/2025 |

| **PACER Service Center** | 07/29/2026 23:09:48 |
|---|---|
| **User** | rebeccarhym |
| **Client Code** | |
| **Description** | All Court Types Party Search |
| | All Courts; Name wilson, chet; Role pla; All Courts; Date Filed on or after 01/01/2024; Jurisdiction CV; Page: 1 |
| **Billable Pages** | 1 ($0.10) |

PACER FAQ                              Privacy & Security                              Contact Us

**PACER Service Center**
(800) 676-6856
pacer@psc.uscourts.gov

This site is maintained by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary.

An official website of the United States government.   Here's how you know. ⌄



Party Search Results

**Search Criteria:** Party Search; Last Name: [wilson]; First Name: [chet]; Party Role: [PLA]
**Result Count:** 85 (2 pages)
**Current Page:** 1

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 6:2025cv00333 | Wilson v. Blue Moon Fabrics, Inc. | OREGON DISTRICT COURT | 02/27/2025 | 04/28/2025 |
| Wilson, Chet (pla) | 6:2025cv00376 | Wilson v. Skopos Financial, LLC | OREGON DISTRICT COURT | 03/04/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv00855 | Wilson v. MAH Group, Inc. | OREGON DISTRICT COURT | 05/19/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv01168 | Wilson v. Inogen, Inc. | OREGON DISTRICT COURT | 07/06/2025 | 12/10/2025 |
| Wilson, Chet Michael (pla) | 6:2025cv01331 | Wilson v. Home Warranty of America, Inc. | OREGON DISTRICT COURT | 07/29/2025 | 01/29/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv01703 | Wilson v. TPH Paralegal Professional Corporation | OREGON DISTRICT COURT | 09/23/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv01716 | Wilson v. Get Away Today, Inc. | OREGON DISTRICT COURT | 09/23/2025 | 10/22/2025 |
| Wilson, Chet Michael (pla) | 3:2025cv01741 | Wilson v. AMP FIT, INC. | OREGON DISTRICT COURT | 09/25/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv01869 | Wilson v. Freeway Insurance Services of America, LLC | OREGON DISTRICT COURT | 10/12/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv01870 | Wilson v. GameChanger247, LLC | OREGON DISTRICT COURT | 10/12/2025 | |
| Wilson, Chet Michael (pla) | 6:2025cv02036 | Wilson v. Cirkul Inc. | OREGON DISTRICT COURT | 11/02/2025 | 07/14/2026 |
| Wilson, Chet Michael (pla) | 6:2025cv02052 | Wilson v. Continental Tire the Americas, LLC | OREGON DISTRICT COURT | 11/04/2025 | 02/18/2026 |
| Wilson, Chet Michael (pla) | 6:2026cv00019 | Wilson v. AnyTime Fitness Franchisor, LLC et al | OREGON DISTRICT COURT | 01/06/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00344 | Wilson v. Pyxis Solutions | OREGON DISTRICT COURT | 02/22/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00345 | Wilson v. HomeLand Insurance LLC | OREGON DISTRICT COURT | 02/22/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00666 | Wilson v. Medical Air Services Associates, Inc. | OREGON DISTRICT COURT | 04/03/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00667 | Wilson v. Cascades Insurance, LLC | OREGON DISTRICT COURT | 04/03/2026 | |
| Wilson, Chet Michael (pla) | 6:2026cv00668 | Wilson v. Umpqua Health Alliance, LLC | OREGON DISTRICT COURT | 04/03/2026 | |
| WILSON, CHET (pla) | 2:2025cv04845 | WILSON v. MONARCH RECOVERY MANAGEMENT, INC. | PENNSYLVANIA EASTERN DISTRICT COURT | 08/24/2025 | 07/14/2026 |
| Wilson, Chet Michael (pla) | 3:2025cv01042 | Wilson v. Nissan North America, Inc. | TENNESSEE MIDDLE DISTRICT COURT | 09/16/2025 | |
| Wilson, Chet Michael (pla) | 2:2025cv02347 | Johnson v. American Home Shield Corporation | TENNESSEE WESTERN DISTRICT COURT | 03/27/2025 | 12/23/2025 |
| Wilson, Chet Michael (pla) | 1:2024cv01917 | Wilson v. Altria Group Distribution Company | VIRGINIA EASTERN DISTRICT COURT | 10/29/2024 | 06/03/2025 |
| Wilson, Chet Michael (pla) | 1:2024cv02339 | Johnson v. American Home Shield Corporation | VIRGINIA EASTERN DISTRICT COURT | 12/20/2024 | 03/26/2025 |

| Party Name | Case Number | Case Title | Court | Date Filed | Date Closed |
|---|---|---|---|---|---|
| Wilson, Chet Michael (pla) | 1:2026cv03003 | Wilson v. Yakima Valley Farm Workers Clinic | WASHINGTON EASTERN DISTRICT COURT | 01/07/2026 | 05/27/2026 |
| Wilson, Chet Michael (pla) | 2:2025cv00048 | Wilson v. Zillow Inc | WASHINGTON WESTERN DISTRICT COURT | 01/08/2025 | 07/08/2025 |
| Wilson, Chet Michael (pla) | 3:2025cv05808 | Wilson v. TRA Medical Imaging Foundation | WASHINGTON WESTERN DISTRICT COURT | 09/10/2025 | |
| Wilson, Chet Michael (pla) | 2:2025cv01197 | Wilson v. Tabak Law LLC | WISCONSIN EASTERN DISTRICT COURT | 08/11/2025 | 10/29/2025 |
| Wilson, Chet Michael (pla) | 3:2024cv00782 | Wilson, Chet v. Avid Ratings, Inc. | WISCONSIN WESTERN DISTRICT COURT | 11/04/2024 | 06/02/2025 |
| Wilson, Chet Michael (pla) | 3:2024cv00924 | Wilson, Chet v. Fairway Independent Mortgage Corp. | WISCONSIN WESTERN DISTRICT COURT | 12/27/2024 | 08/07/2025 |
| Wilson, Chet Michael (pla) | 2:2025cv00745 | Wilson v. Consumer Cellular Incorporated | ARIZONA DISTRICT COURT | 03/04/2025 | 04/23/2026 |
| Wilson, Chet Michael (pla) | 2:2025cv01481 | Wilson v. Mountainside Fitness Acquisition LLC | ARIZONA DISTRICT COURT | 05/01/2025 | |

| PACER Service Center | | 07/29/2026 23:10:39 |
|---|---|---|
| **User** | rebeccarhym | |
| **Client Code** | | |
| **Description** | All Court Types Party Search | |
| | All Courts; Name wilson, chet; Role pla; All Courts; Date Filed on or after 01/01/2024; Jurisdiction CV; Page: 2 | |
| **Billable Pages** | 1 ($0.10) | |

PACER FAQ                                    Privacy & Security                                    Contact Us

**PACER Service Center**
(800) 676-6856
pacer@psc.uscourts.gov

This site is maintained by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary.

# EXHIBIT B

| Case Caption | Date Filed | Court | Disposition | Plaintiff's Attorney | CIP? |
|---|---|---|---|---|---|
| Wilson v. Altria Grp. Distr. Co., No. 1:24-cv-1917 | 2024-10-29 | E.D. Va | Notice of Settlement 05/13/2025 Notice of voluntary dismissal 06/02/2025 | Anthony Paronich, Dana Oliver, Avi Kaufman | |
| Wilson v. Prof. Credit Serv., No. 6:24-cv-1826 | 2024-10-31 | D. Or. | Stipulation of dismissal 01/29/2025 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Elevate Patient Fin. Sols., LLC, No. 4:24-cv-4285 | 2024-11-04 | S.D. Tex. | Notice of settlement 05/07/2025 Dismissed 05/29/2025 | Anthony Paronich | CIP NOT FILED, even though there was court order to file |
| Wilson v. Avid Ratings, Inc., No. 3:24-cv-782 | 2024-11-04 | W.D. Wis. | Stipulation of dismissal 06/02/2025 | Anthony Paronich | |
| Wilson v. Nationstar Mortg. LLC, No. 6:24-cv-1855 | 2024-11-07 | D. Or. | Pending before J. McShane | Anthony Paronich, Andrew Perrong, Dana Oliver | |
| Wilson v. PacifiCorp, No. 6:24-cv-1956 | 2024-11-21 | D. Or. | Consent Motion for Preliminary Approval of Class Action Settlement filed 06/09/2026 Pending before J. McShane | Anthony Paronich, Dana Oliver, Avi Kaufman, James Stranch, IV, Nathan Ring, Alex Phillips | |
| Wilson v. Credit Suite Inc., No. 8:24-cv-2711 | 2024-11-21 | M.D. Fla. | Stipulation of dismissal 07/14/2025 | Avi and Rachel Kaufman | |
| Wilson v. The Savings Bank Mutual Life Ins. Co. of Mass., No. 1:24-cv-12950 | 2024-11-26 | D. Mass. | Notice of settlement 09/11/2025 Stipulation of dismissal 09/17/2025 | Anthony Paronich | |
| Wilson v. Disability Help Grp., No. 0:24-cv-62319 | 2024-12-07 | S.D. Fla. | Stipulation of dismissal 03/03/2026 | Avi and Rachel Kaufman, Dana Oliver | |
| Wilson v. S. Or. Credit Serv., Inc., No. 1:24-cv-2087 | 2024-12-17 | D. Or. | Stipulation of dismissal 05/07/2026 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Lower, No. 1:24-cv-3665 | 2024-12-18 | D. Md. | Notice of settlement 05/02/2025 Stipulation of dismissal 05/15/2025 | Anthony Paronich, John Thomas McGowan, Jr. | CIP NOT FILED |
| Johnson & Wilson v. Am. Home Shield Corp., No. 1:24-cv-2339 | 2024-12-20 | E.D. Va. / W.D. Tenn | Transferred to W.D. Tenn. 03/26/2025 Stipulation of dismissal 12/23/2025 | Anthony Paronich, William Robinson, III | |
| Wilson v. Fairway Independent Mortg. Corp., No. 3:24-cv-924 | 2024-12-27 | W.D. Wis. | Stipulation of dismissal 07/30/2025 | Anthony Paronich | |
| Wilson v. Icon Creative Consulting, Inc., No. 1:24-cv-25119 | 2024-12-30 | S.D. Fla. | Notice of voluntary dismissal 02/19/2025 | Avi and Rachel Kaufman | |
| Wilson v. Club 1 Hotels, LLC, No. 1:25-cv-3 | 2025-01-02 | N.D. Ill. | Notice of voluntary dismissal 04/23/2025 | Anthony Paronich | |
| Wilson v. AUM Ins. Servs. LLC, No. 3:25-cv-260 | 2025-01-07 | N.D. Cal. | Notice of voluntary dismissal 08/10/2025 | Anthony Paronich, Dana Oliver | CIP NOT FILED |
| Wilson v. Zillow, No. 2:25-cv-48 | 2025-01-08 | W.D. Wash. | Notice of resolution 05/19/2025 Notice of voluntary dismissal 07/07/2025 | Avi Kaufman, Eric Draluck | |
| Wilson v. Cent. Med. Grp. E., LLC, No. 6:25-cv-43 | 2025-01-09 | D. Or. | Stipulation of dismissal 04/07/2026 | Anthony Paronich, Andrew Perrong, Dana Oliver | |
| Wilson v. KUIU, LLC, No. 2:25-cv-212 | 2025-01-15 | E.D. Cal. | Notice of voluntary dismissal 08/22/2025 | Anthony Paronich, Dana Oliver | |
| Wilson v. LeafFilter N., LLC, No. 2:25-cv-39 | 2025-01-16 | S.D. Ohio | Transferred to N.D. Ohio 03/17/2025 Stipulation of dismissal 05/07/2025 (settled) | Anthony Paronich, Brian Giles | |
| Wilson v. Easy Spirit, LLC, No. 3:25-cv-112 | 2025-01-22 | D. Conn. | Stip of dismissal 05/26/2026 | Anthony Paronich | |
| Wilson v. FuturHealth, Inc., No. 3:25-cv-157 | 2025-01-23 | S.D. Cal. | Notice of settlement 10/28/2025 Order of dismissal 01/12/2026 | Rachel Kaufman | |
| Wilson v. Blendjet Inc., No. 2:25-cv-278 | 2025-01-23 | E.D. Cal. | Notice of voluntary dismissal 03/07/2025 | Anthony Paronich, Dana Oliver | |
| Wilson v. Kaiser Found. Health Plan, Inc., No. 3:25-cv-802 | 2025-01-23 | N.D. Cal. | Stipulation of dismissal 01/26/2026 | Rachel Kaufman, Dana Oliver | CIP FILED, Heidarpour not listed |
| Wilson v. Trajector Inc., No. 1:25-cv-23 | 2025-01-23 | N.D. Fla. | Notice of settlement 06/26/2025 Stipulation of dismissal 07/29/2025 | Avi Kaufman | |
| Wilson v. Hard Eight Nutrition LLC, No. 6:25-cv-144 | 2025-01-28 | D. Or. | Stipulation of dismissal 06/30/2026 | Anthony Paronich, Andrew Perrong | |
| Wilson v. CMRE Fin. Servs., Inc., No. 6:25-cv-152 | 2025-01-28 | D. Or. | Stipulation of dismissal 05/01/2026 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Fleet Fin., Inc., No. 1:25-cv-340 | 2025-01-31 | D. Colo. | Stip of dismissal 02/10/2026 | Anthony Paronich | |
| Wilson v. Finmax Smart Cap. LLC, No. 6:25-cv-173 | 2025-01-31 | D. Or. | Notice of Settlement 01/26/2026 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Pharmacenter LLC, No. 0:25-cv-60212 | 2025-02-06 | S.D. Fla. | Notice of settlement 01/22/2026 Stipulation of dismissal 03/16/2026 | Avi and Rachel Kaufman | |
| Wilson v. Blue Moon Fabrics, No. 6:25-cv-333 | 2025-02-27 | D. Or. | Notice of settlement 04/25/2025 Notice of voluntary dismissal 05/05/2025 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Consumer Cellular Inc., No. 2:25-cv-745 | 2025-03-04 | D. Ariz. | Notice of settlement 04/02/2026 Order of dismissal 04/03/2026 | Avi Kaufman | |
| Wilson v. Skopos Fin, LLC, No. 6:25-cv-376 | 2025-03-04 | D. Or. | Pending before J. McShane | Neal Weingart, Patrick Peluso | |
| Wilson v. Norco, Inc., No. 6:25-cv-410 | 2025-03-09 | D. Or. | Notice of resolution 06/25/2025 Notice of voluntary dismissal 08/06/2025 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Roman Health Ventures Inc., No. 1:25-cv-3479 | 2025-04-27 | S.D.N.Y. | Notice of settlement 09/19/2025 Order of dismissal 10/06/2025 | Anthony Paronich | |
| Wilson v. Mountainside Fitness Acquisition LLC, No. 2:25-cv-1481 | 2025-05-01 | D. Ariz. | | Anthony Paronich, Dana Oliver, Gupta Wessler | |
| Wilson v. Craftie Fox, Inc., No. 1:25-cv-22069 | 2025-05-05 | S.D. Fla. | Notice of voluntary dismissal 07/24/2025 | Avi and Rachel Kaufman | |
| Wilson v. Medvidi Inc., No. 5:25-cv-3996 | 2025-05-08 | N.D. Cal. | Notice of voluntary dismissal 03/06/2026 | Anthony Paronich, Dana Oliver | CIP FILED, Heidarpour not listed |
| Wilson v. MAH Grp., Inc., No. 6:25-cv-855 | 2025-05-19 | D. Or. | Pending before J. McShane | Anthony Paronich, Andrew Perrong, Dana Oliver | |
| Wilson v. Inogen, Inc., No. 6:25-cv-1168 | 2025-07-06 | D. Or. | Stipulation of dismissal 11/20/2025 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Better Mortg. Corp., No. 1:25-cv-5503 | 2025-07-02 | S.D.N.Y. | Original stipulation of dismissal 02/24/2026 Case closed 07/01/2026 | Anthony Paronich | |

| Case | Date | Court | Status | Attorneys | Notes |
|---|---|---|---|---|---|
| Wilson v. AMP FIT, Inc., No. 3:25-cv-1741 | 2025-07-06 | N.D. Cal / D. Or. | Pending before J. McShane | Anthony Paronich, Andrew Perrong, Dana Oliver | |
| Wilson v. Atlanta Med. Day Spa & Surgery Ctr., LLC, No. 1:25-cv-4023 | 2025-07-21 | N.D. Ga. | | Anthony Paronich, Valerie Chinn | CIP FILED, Heidarpour listed |
| Wilson v. Home Warranty of Am., Inc., No. 6:25-cv-1331 | 2025-07-29 | D. Or. | Notice of resolution 12/19/2025 Notice of voluntary dismissal 01/28/2026 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Roof Max Techs., No. 2:25-cv-872 | 2025-08-06 | S.D. Ohio | Notice of settlement 10/15/2025 Stipulation of dismissal 11/05/2025 | Anthony Paronich, Brian Giles | |
| Wilson v. Nat'l Gen. Ins. Co., No. 1:25-cv-719 | 2025-08-07 | M.D.N.C. | Stipulation of dismissal 07/15/2026 | Anthony Paronich, Dana Oliver, Ryan Duffey | |
| Wilson v. Tabak Law LLC, No. 2:25-cv-1197 | 2025-08-11 | E.D. Wis. | Notice of voluntary dismissal 10/29/2025 | Anthony Paronich | |
| Wilson v. Liberty Home Guard LLC, No. 1:25-cv-1075 | 2025-08-11 | N.D.N.Y. | Stipulation of dismissal 01/09/2026 | Anthony Paronich | |
| Wilson v. Monarch Recovery Mgmt., Inc., No. 2:25-cv-4845 | 2025-08-24 | E.D. Pa. | Stipulation of dismissal 07/13/2026 | Andrew Perrong | |
| Taylor & Wilson v. Savvy Ins. Sols., LLC, No. 1:25-cv-12393 | 2025-08-29 | D. Mass. | Notice of settlement 01/20/2026 Order of dismissal 01/21/2026 | Anthony Paronich | |
| Wilson v. Lifestation, Inc., No. 1:25-cv-7246 | 2025-08-30 | S.D.N.Y. | Notice of Settlement 07/21/2026 | Anthony Paronich | |
| Wilson v. Inbox Health Corp., No. 3:25-cv-1417 | 2025-09-02 | D. Conn. | Notice of resolution 11/24/2025 Notice of voluntary dismissal 02/03/2026 | Anthony Paronich | |
| Wilson v. Disability Servs. of Am., LLC, No. 1:25-cv-10578 | 2025-09-03 | N.D. Ill. | Notice of voluntary dismissal 12/01/2025 | Anthony Paronich | |
| Wilson v. McNeil & Meyers Rec. Mgmt. Grp., LLC, No. 2:25-cv-1810 | 2025-09-04 | E.D. La. | Notice of voluntary dismissal 01/23/2026 | Anthony Paronich, Joseph David Andress | No CIP filed |
| Wilson v. Vozzcom, Inc., No. 0:25-cv-61793 | 2025-09-05 | S.D. Fla. | Notice of settlement 06/12/2026 Stipulation of dismissal 07/12/2026 | Avi and Rachel Kaufman | |
| Wilson v. MIA Aesthetics Holdings, LLC, No. 1:25-cv-24103 | 2025-09-09 | S.D. Fla. | Stipulation of dismissal 04/22/2026 | Avi and Rachel Kaufman | |
| Wilson v. TRA Med. Imaging Found., No. 3:25-cv-5808 | 2025-09-10 | W.D. Wash. | | Avi Kaufman, Eric Draluck | |
| Wilson v. Nissan N. Am., Inc., No. 3:25-cv-1042 | 2025-09-16 | M.D. Tenn. | Only Autoweb dismissed 03/27/2026 | Avi Kaufman, Susan S. Lafferty | |
| McGonigle & Wilson v. MRS BPO LLC, No. 1:25-cv-15811 | 2025-09-19 | D.N.J. | Stipulation of dismissal as to Wilson only 07/14/2026 | Anthony Paronich, The Weitz Firm, Nicholas Moschella Jr. | |
| Wilson v. Get Away Today, Inc., No. 6:25-cv-1716 | 2025-09-23 | D. Or. | Notice of voluntary dismissal 10/21/2025 | Andrew Perrong | |
| Wilson v. TPH Paralegal Prof. Corp., No. 6:25-cv-1703 | 2025-09-23 | D. Or. | Pending before J. McShane | Andrew Perrong | |
| Wilson v. Lumen Techs. Inc., No. 3:25-cv-1471 | 2025-10-02 | W.D. La. | Notice of settlement 01/23/2026 Stipulation of dismissal 02/24/2026 | Anthony Paronich, Joseph David Andress | No CIP filed |
| Wilson v. Freeway Ins. Servs. Am., LLC, No. 6:25-cv-1869 | 2025-10-12 | D. Or. | Pending before J. McShane | Andrew Perrong | |
| Wilson v. GameChanger247, LLC, No. 6:25-cv-1870 | 2025-10-12 | D. Or. | Pending before J. McShane | Anthony Paronich, Andrew Perrong | |
| Wilson v. Salespromis, LLC, No. 9:25-cv-81268 | 2025-10-14 | S.D. Fla. | | Avi and Rachel Kaufman | |
| Wilson v. Cirkul Inc., No. 6:25-cv-2036 | 2025-11-02 | D. Or. | Stipulation of dismissal 07/10/2026 | Anthony Paronich, Andrew Perrong | |
| Wilson v. Cont'l Tire the Ams., LLC, No. 6:25-cv-2052 | 2025-11-04 | D. Or. | Stipulation of dismissal 02/18/2026 | Anthony Paronich | |
| Wilson v. Coverright Ins. Servs. Inc., No. 1:25-cv-6357 | 2025-11-17 | E.D.N.Y. | Stipulation of dismissal 04/02/2026 | Anthony Paronich | |
| Wilson v. Mortg. One, Inc., No. 3:25-cv-3648 | 2025-12-17 | S.D. Cal. | Notice of voluntary dismissal 05/20/2026 | Anthony Paronich, Dana Oliver | |
| Wilson v. Dealmed Med. Supplies, LLC, No. 1:26-cv-9 | 2026-01-02 | E.D.N.Y. | Notice of voluntary dismissal 05/20/2026 | Anthony Paronich | |
| Wilson v. Autoweb, Inc., No. 4:26-cv-39 | 2026-01-04 | N.D. Cal. | Notice of settlement 03/25/2026 Notice of voluntary dismissal 04/17/2026 | Anthony Paronich, Dana Oliver | CIP FILED, Heidarpour not listed |
| Wilson v. The HELOC Co, No. 8:26-cv-25 | 2026-01-05 | D. Md. | | Andrew Perrong, John Thomas McGowan, Jr. | No CIP filed |
| Wilson v. AnyTime Fitness Franchisor, LLC, No. 6:26-cv-19 | 2026-01-06 | D. Or. | Notice of voluntary dismissal 05/07/2026; Still pending before J. McShane | Andrew Perrong | |
| Wilson v. Yakima Valley Farm Workers Clinic, No. 1:26-cv-3003 | 2026-01-07 | E.D. Wash. | Stipulation of dismissal with prejudice 05/22/2026 | Anthony Paronich, Samuel Strauss | |
| Wilson v. Gen. Audit Corp., No. 3:26-cv-207 | 2026-01-27 | N.D. Ohio | Order re: resolution of case 07/22/2026 | Anthony Paronich, Brian Giles | |
| Wilson v. Pyxis Sols., No. 6:26-cv-344 | 2026-02-22 | D. Or. | Pending before J. McShane | Andrew Perrong | |
| Wilson v. HomeLand Ins. LLC, No. 6:26-cv-345 | 2026-02-22 | D. Or. | Pending before J. McShane | Anthony Paronich, Andrew Perrong | |
| Wilson v. Wayfair Inc., No. 1:26-cv-11420 | 2026-03-24 | D. Mass. | | Anthony Paronich | |
| Wilson v. AMS Moving Inc., No. 9:26-cv-80334 | 2026-03-25 | S.D. Fla. | Notice of settlement 06/25/2026; Notice of voluntary dismissal 07/15/2026 | Avi and Rachel Kaufman | |
| Wilson v. Staples, Inc., No. 1:26-cv-11489 | 2026-03-29 | D. Mass. | Notice of voluntary dismissal 05/29/2026 | Anthony Paronich | |
| Wilson v. Umpqua Health Alliance, LLC, No. 6:26-cv-668 | 2026-04-03 | D. Or. | Pending before J. McShane | Andrew Perrong | |
| Wilson v. Cascades Ins., LLC, No. 6:26-cv-667 | 2026-04-03 | D. Or. | Pending before J. McShane | Andrew Perrong | |
| Wilson v. Med. Air Servs. Assoc., No. 6:26-cv-666 | 2026-04-03 | D. Or. | Pending before J. McShane | Andrew Perrong | |

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : | CASE NO. 6:24-cv-01956-AA |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PACIFICORP, | : | |
| | : | |
| Defendant. | : | |
| | : | |

This Class Action Settlement Agreement ("Agreement") is made and entered into by and between Representative Plaintiff Chet Michael Wilson ("Representative Plaintiff"), on behalf of himself and the Settlement Class, and Defendant PacifiCorp ("PacifiCorp" or "Defendant"). Representative Plaintiff and PacifiCorp are collectively referred to as the "Parties," and each, individually, as a "Party." This Agreement is intended by the Parties to settle this action and discharge the Released Claims, as defined below, according to the terms and conditions herein.

## RECITALS

**WHEREAS**, *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA, was filed November 21, 2024, and is currently pending before the Honorable Ann L. Aiken of the U.S. District Court for the District of Oregon (the "Litigation"), alleging Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*;

**WHEREAS**, Defendant denies each and every one of Representative Plaintiff's allegations of unlawful conduct, damages, or other injuries;

**WHEREAS**, based upon the investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, motions practice to date, plus the risks and uncertainties of

1

continued litigation and all factors bearing on the merits of settlement, Representative Plaintiff, Defendant, and Class Counsel (as defined below) have agreed to settle the claims asserted in the Litigation pursuant to the provisions of this Settlement;

**WHEREAS**, in an effort to facilitate a resolution of the Litigation, on October 31, 2025, the Settling Parties (as defined below) participated in a mediation with Bradley Winters, Esq. of JAMS, Inc.;

**WHEREAS,** the Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of the claims that have or could have been asserted in this Litigation.  This Agreement is inadmissible as evidence except to enforce the terms of the Agreement and is not an admission of wrongdoing or liability on the part of any Party to this Agreement;

**NOW THEREFORE**, subject to the Final Approval Order of the Court as required herein and applicable law and rules, the Settling Parties hereby agree, in consideration of the mutual promises and covenants contained herein, that all Released Claims against any Released Parties shall be settled, compromised and forever released upon the following terms and conditions.

<u>**TERMS AND CONDITIONS OF THE SETTLEMENT**</u>

1.    **DEFINITIONS**

1.1    As used herein, the following terms have the meanings set forth below.

1.1.1    "Appeal" means a request for appellate review of any order or judgment of the Court entered in this Litigation, including but not limited to appeals as of right, discretionary appeals, interlocutory appeals, any order reinstating an appeal, and proceedings involving writs of certiorari and/or any proceedings thereon.

1.1.2    "Approved Claim" means a claim that: (a) is received by the Settlement Administrator or postmarked on or before the Claims Deadline; (b) is fully and truthfully completed by a Settlement Class Member with all information requested in the Claim Form, and in accordance with the directions on the Claim Form; (c) is signed by the Settlement Class Member, physically or electronically; and (d) is approved by the Settlement Administrator pursuant to the provisions of this Agreement as a valid claim eligible to receive payment from the Settlement Fund under the Agreement and the Final Approval Order and Judgment.

1.1.3    "CAFA Notice" means the notice of this Settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and as further described in Paragraph 6.4.

1.1.4    "Claims Deadline" means the date that is approximately sixty (60) days after the Notice Date.

1.1.5    "Claim Form" means the document to be submitted by Settlement Class Members seeking payment pursuant to this Settlement, attached as Exhibit A.

1.1.6    "Class Counsel" means Anthony Paronich of Paronich Law and Avi R. Kaufman of Kaufman P.A.

1.1.7    "Class Settlement Website" means the following internet website that can be found at www.pacificorpTCPAsettlement.com or a substantially similar URL.

1.1.8    "Court" means the U.S. District Court for the District of Oregon.

1.1.9    "Complaint" means the operative complaint in this Litigation at the time the Court enters the Preliminary Approval Order.

1.1.10   "*Cy Pres* Distribution" means monies that may be distributed in connection with the Settlement pursuant to Paragraph 7.7 of this Agreement.  *Cy Pres* will only be distributed for uncashed or undeposited payments or checks and only then if a second

3

distribution to eligible Settlement Class Members is not feasible pursuant to Section 7.7 of this Agreement.

1.1.11 "Defendant" means PacifiCorp.

1.1.12 "Defense Counsel" means Defendant's counsel of record in the Litigation, Markowitz Herbold PC.

1.1.13 "Effective Date" means the first date by which any Judgment entered pursuant to the Agreement becomes Final.

1.1.14 "Fee Award" means the amount of attorneys' fees and reimbursement of expenses that may be awarded by the Court and that will be paid out of the Settlement Fund.

1.1.15 "Final" means one business day following the later of the following events: (i) the expiration of the time to file a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to file an Appeal of any judgment entered pursuant to this Agreement has passed without any Appeal having been taken; and (iii) the resolution of any such Appeal in a manner that does not reverse or vacate the Judgment and in a manner that permits the consummation of the Settlement substantially in accordance with the terms and conditions of this Agreement. Any proceeding or order, or any Appeal pertaining solely to any request or order regarding the Fee Award will not in any way delay or preclude the Judgment from becoming Final.

1.1.16 "Final Approval Hearing" means the final hearing, held after the Preliminary Approval Order is issued and Settlement Class Members have been given reasonable notice and an opportunity to object or to exclude themselves from the Settlement, at which the Court will determine whether to finally approve the Settlement and to enter Judgment.

1.1.17 "Final Approval Order" means an order, providing for, among other things, final approval of the Settlement.

4

1.1.18  "Judgment" means the judgment to be entered by the Court in this Litigation pursuant to the Settlement that is consistent with this Agreement in all material respects.

1.1.19  "Litigation" means *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA, which is currently pending before the Honorable Ann L. Aiken of the U.S. District Court for the District of Oregon.

1.1.20  "Notice Date" means the deadline by which to send notice by mail pursuant to the Notice Plan.

1.1.21  "Notice Plan" means the proposed plan of disseminating to Settlement Class Members notice of the proposed Settlement and of the Final Approval Hearing, as approved by the Court.

1.1.22  "Opt-Out Deadline" means the date that is approximately (60) days after the Notice Date.

1.1.23  "Parties" means, collectively, Representative Plaintiff and Defendant.

1.1.24  "Person" means, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.  "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General office.

1.1.25  "Preliminary Approval Order" means an order, providing for, among other things, preliminary approval of the Settlement and dissemination of notice to the Settlement Class according to the Notice Plan.

1.1.26  "Released Claims" means any and all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses, and attorneys' fees of any nature whatsoever (including "Unknown Claims," as defined below), whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, of every nature and description whatsoever, as of the date of the Preliminary Approval Order, that arise out of or relate in any way to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), the TCPA's implementing regulations, 47 C.F.R. § 64.1200, et seq., the Telemarketing Sales Rule, 16 C.F.R. § 310, et seq. (the "TSR"), any corollary or state laws similar to the TCPA and TSR, or enactment of any other statutory, regulatory or common law claim arising thereunder for calls or text messages transmitted by or on behalf of Defendant between November 21, 2020 and the date of the Preliminary Approval Order.

1.1.27  "Released Parties" means Defendant, as well as any and all of its respective present or past or future heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, sister companies, subsidiaries, divisions, licensors, licensees, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, reinsurers, directors, managing directors, officers, partners, vendors, joint ventures, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

1.1.28  "Releasing Parties" means Representative Plaintiff, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past or future heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

1.1.29  "Representative Plaintiff" means Plaintiff Chet Michael Wilson.

1.1.30  "Service Award" means the amount paid to the Representative Plaintiff for service as class representative.

1.1.31  "Settlement" means the settlement set forth in this Agreement.

1.1.32  "Settlement Administration Expenses" means the expenses incurred by the Settlement Administrator in providing notice, processing claims, administering the Settlement, and issuing payments to Settlement Class Members. Settlement Administration Expenses shall be paid exclusively from the Settlement Fund.

1.1.33  "Settlement Administrator" means Simpluris Inc.

1.1.34  "Settlement Class" means all persons throughout the United States (1) to whom PacifiCorp placed, or caused to be placed, a call (i) to collect a debt or (ii) concerning returned mail or undeliverable email communications, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person who was a customer of PacifiCorp or in collections with PacifiCorp, (3) in connection with which PacifiCorp used an artificial or prerecorded voice, (4) between November 21, 2020 and the date of the Preliminary Approval

7

Order.  Plaintiff estimates that there are approximately 14,000 identifiable unique telephone numbers associated with potential members of the Settlement Class.

1.1.35  "Settlement Class Member" means a person who falls within the definition of the Settlement Class and who does not opt out of the Settlement as set forth in Paragraph 9.4.

1.1.36  "Settlement Fund" means a segregated qualified settlement fund as defined and meeting the requirements of and administered in accordance with Section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Section 1.468B-1, to which Defendant will contribute $850,000.  The Settlement Fund will be non-reversionary and represents Defendant's maximum possible payment.

1.1.37  "Settling Parties" means, collectively, Defendant, Representative Plaintiff, and all Settlement Class Members.

1.1.38  "Unknown Claims" means claims that could have been raised in the Litigation and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement.  Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory

of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

1.1.39  The plural of any defined term includes the singular, and the singular of any defined term includes the plural.

## 2.   DENIAL OF WRONGDOING AND LIABILITY

2.1   Defendant denies all the material factual allegations and legal claims asserted by Representative Plaintiff in the Litigation, including any and all charges of wrongdoing or liability arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.  Further, Defendant maintains that it has strong, meritorious defenses to the claims alleged in the Litigation and that it was prepared to vigorously defend all aspects of the Litigation.

2.2   Defendant's Position on Conditional Certification of the Settlement Class. Defendant disputes that a class would be manageable or that common issues predominate over individual ones, and denies that a litigation class properly could be certified on the claims asserted in the Litigation.  However, solely for purposes of avoiding the expense and inconvenience of further litigation, Defendant does not oppose and hereby agrees to certification of the Settlement Class defined in Paragraph 1.1.34, for settlement purposes only, pursuant to Fed. R. Civ. P. 23(b)(3).  Certification of the Settlement Class for settlement purposes will not be deemed a concession that certification of any litigation class in the Litigation is, or was, appropriate, nor would Defendant be precluded from challenging class certification in further

proceedings in the Litigation or in any other action if the Settlement is not finalized or finally approved.  If the Settlement is not finally approved by the Court for any reason whatsoever, the certification of the Settlement Class resulting from this Agreement will be void, and no doctrine of waiver, estoppel or preclusion will be asserted in any proceedings involving Defendant.  No agreements made by or entered into by Defendant in connection with the Settlement may be used by Plaintiff, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Litigation, or any other judicial or administrative proceeding or other tribunal.

2.3    Admissibility.  Additionally, this Agreement, any negotiations or proceedings related to it, the implementation of it, and any papers submitted in support of the motions for approval of it (collectively, the "Settlement Proceedings") are not to be construed as or deemed to be evidence of any admission or concession by any of the Parties regarding liability, damages, or the appropriateness of class treatment, and are not to be offered or received in evidence in any action or proceeding for any purpose whatsoever; provided, however, that this Agreement and the Settlement Proceedings may be presented to the Court in connection with the implementation or enforcement of this Agreement, or as may be necessary or appropriate to further the purposes sought to be achieved by this Agreement.

**3.    THE BENEFITS OF SETTLEMENT**

3.1    Class Counsel and Representative Plaintiff recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendant through trial and appeals.  Class Counsel also has taken into account the strength of Defendant's defenses, difficulties in obtaining class certification and proving liability, and the uncertain outcome and risk of the litigation, especially in complex actions such as this one, and the inherent delays in such litigation.  Class Counsel believes that the proposed

Settlement confers substantial benefits upon the Settlement Class.  Based on their evaluation of all of these factors, Representative Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Representative Plaintiff and the Settlement Class.

**4.     SETTLEMENT TERMS**

4.1     Settlement Fund.  Defendant will cause to be created a Settlement Fund in the amount of $850,000 for the purpose of making all required payments under this Settlement within fifteen (15) days following the entry of the Preliminary Approval Order.  The Parties agree that Defendant's maximum monetary obligation under this Agreement shall not exceed $850,000.  Upon payment of the full $850,000, Defendant's payment obligations under this Agreement shall be deemed to have been fully satisfied.

4.2     The Settlement Fund shall be a Qualified Settlement Fund (QSF) under Section 468B of the Internal Revenue Code and 26 C.F.R. § 1.468B-1, established pursuant to the Preliminary Approval Order.  The Settlement Administrator shall be the Administrator of the QSF.

4.3     Except as required to pay the Settlement Administrator, no payments or withdrawals whatsoever from the Settlement Fund shall be made unless and until the Final Approval Order and Judgment are Final.

4.4     Payment to Settlement Class Members.

4.4.1   Each Settlement Class Member shall be entitled to submit one claim per telephone number they used or subscribed to for a payment.  Adequate and customary procedures and standards will be used by the Settlement Administrator to prevent the payment of fraudulent claims and to pay only legitimate claims, including, but not limited to, verifying claims with information provided by Defendant where feasible and requiring a unique identifier in connection with all claims.

4.4.2    Each Settlement Class Member who submits an Approved Claim shall be entitled to payment in an amount equivalent to their *pro rata* share of the Settlement Fund on a per telephone number basis after any approved Service Award, Fee Award, and Settlement Administration Expenses are deducted.  Payments will be made directly to Settlement Class Members by the Settlement Administrator.

## 5.    ATTORNEYS' FEES, EXPENSES, AND COSTS AND SERVICE AWARD

5.1    Class Counsel shall apply to the Court for attorneys' fees and documented and reasonable expenses and costs and for a Service Award for Representative Plaintiff.  Class Counsel's application for fees, expenses, and costs and a Service Award for Representative Plaintiff shall be filed no later than thirty (30) days prior to the Opt-Out Deadline.  Any Fee Award and/or Service Award approved by the Court shall be paid solely out of the Settlement Fund and shall not increase Defendant's total financial liability with respect to this Agreement or Settlement.

5.2    In the event the Court approves the Settlement, but declines to award a Fee Award and/or Service Award in the amount requested by Class Counsel, the Settlement will nevertheless be binding on the Parties and the Settlement Class Members.

5.3    Defendant shall have no liability to Class Counsel or any other Person arising from any claim regarding the division of any award of attorneys' fees, expenses, and costs between and among Class Counsel or any other counsel who may claim entitlement to any portion of the Fee Award.

5.4    The Fee Award and Service Award, if approved by the Court, shall be paid by wire transfer from the Settlement Fund no later than sixty (60) days following the Effective Date, provided that the Person being paid has executed a Form W-9 to the Settlement Administrator.

The Fee Award shall be paid from the Settlement Fund, and Defendant shall have no additional obligation to pay for attorneys' fees, costs and/or expenses of any kind.

5.5     The Court shall retain jurisdiction of any dispute regarding the Fee Award and any repayment of any amount of the Fee Award.

## 6.     ADMINISTRATION AND NOTICE

6.1     All costs and expenses of administering the Settlement and providing reasonable notice in accordance with the Preliminary Approval Order shall be paid out of the Settlement Fund, including the cost of CAFA Notice.

6.2     The Settlement Administrator will facilitate the notice process by assisting the Parties in the implementation of the Notice Plan, as well as CAFA Notice.

6.3     Class Settlement Website.

6.3.1     The Settlement Administrator will create and maintain the Class Settlement Website, to be activated within thirty (30) days after Preliminary Approval.  The Settlement Administrator's responsibilities will also include securing an appropriate URL to be agreed upon by the Parties.  The Class Settlement Website will contain information about the Settlement and case-related documents such as the Agreement, the Long-Form Notice in the form attached hereto as Exhibit B, subject to Court modification and/or approval, the Claim Form, the Preliminary Approval Order, Class Counsel's application for a Fee Award and Service Award, and the Complaint.  Settlement Class Members shall have the option to file a claim electronically using the Class Settlement Website.

6.3.2     The Class Settlement Website will terminate (be removed from the internet) and no longer be maintained by the Settlement Administrator thirty (30) days after either (a) the Effective Date or (b) the date on which the Agreement is terminated or otherwise not approved in full, if the Settlement is terminated or otherwise not approved in full.

13

6.3.3    All costs and expenses related to the Class Settlement Website shall be paid out of the Settlement Fund and Defendant shall have no obligation to pay any additional money for expenses related to the Class Settlement Website.

6.4    CAFA Notice.

6.4.1    The Parties agree that the Settlement Administrator shall serve notice of the Settlement that meets the requirements of CAFA, 28 U.S.C. § 1715, on the appropriate federal and state officials no later than ten (10) days after the filing of this Agreement with the Court.

6.4.2    All costs and expenses related to the CAFA Notice shall be paid out of the Settlement Fund and Defendant shall otherwise have no obligation to pay any additional money for expenses related to the CAFA Notice.

6.4.3    The Settlement Administrator will file a certification with the Court stating the date(s) on which the CAFA Notices were sent.  Each Party will provide the other Party with any substantive responses received in response to any CAFA Notice.

6.5    Notice Plan.

6.5.1    The Notice Plan shall conform to all applicable requirements of the Federal Rules of Civil Procedure, the U.S. Constitution (including the Due Process Clauses), and any other applicable law, and shall otherwise be in the manner and form agreed upon by the Parties and approved by the Court.

6.5.2    The Settlement Administrator will use customary procedures, including third party services, to identify mailing addresses for Settlement Class Members.

6.5.3    Subject to Court approval, within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall send direct notice substantially in the form of the Summary Notice in Exhibit C, as modified and/or approved by the Court, via

U.S. Postal Service to any Settlement Class Member for which a mailing address is identified. The Settlement Administrator will use customary procedures, including third party services, to identify mailing addresses for Settlement Class Members, including alternate mailing addresses for any Settlement Class Members for whom a mailed notice is returned as undeliverable to promptly remail notice to them.  The Settlement Administrator will also use customary procedures, including a search of the United States Postal Service's National Change of Address database, to update Settlement Class Members' addresses.

**7.    CLAIMS PROCESS**

7.1    Submission of Claims.  To apply for a payment from the Settlement, Settlement Class Members must timely submit by mail or online via the Class Settlement Website a valid Claim Form substantially in the form attached as Exhibit A, as modified and/or approved by the Court, by the Claims Deadline.  All Claim Forms must be submitted to the Settlement Administrator by the Claims Deadline. To be a valid Claim Form the Claim Form submitted must be fully and truthfully completed and contain all required information, including a unique claimant identifier, and which is signed under penalty of perjury by the claimant and is timely submitted.  Any Claim Form which is not timely submitted shall be denied.  In the event a Settlement Class Member submits a Claim Form by the Claims Deadline but the Claim Form is not complete, then the Settlement Administrator shall give such Settlement Class Member a reasonable opportunity to provide any requested missing information.  For any Settlement Class Member who submits a Claim Form determined by the Settlement Administrator to be incomplete, the Settlement Administrator shall mail and/or email a notice directly to such Settlement Class Member, notifying him or her of the missing information and providing him or her with an opportunity to cure (the "Cure Notice").  Settlement Class Members must cure incomplete claims on or before the Effective Date.

7.2     Claims Processing.  The Settlement Administrator shall apply the terms of this Agreement and the requirements set forth in the Claim Form, and any Claim Form submitted that does not meet the requirements of this Agreement is not eligible to be an Approved Claim.  The Settlement Administrator also shall employ reasonable procedures to screen claims for abuse, fraud, or duplication, and shall deny Claim Forms where there is evidence of abuse, fraud, or duplication.  The Settlement Administrator's decisions regarding the Settlement Class Members' eligibility for a claims payment shall be final.  The Parties, the Released Parties, and their respective counsel shall have no responsibility or liability whatsoever for the Settlement Administrator's conduct, omissions, or actions.

7.3     Payment of Claims.  No later than sixty (60) days after the Effective Date, or such other date as the Court may set, the Settlement Administrator shall issue payment by check or electronic payment from the Settlement Fund to each Settlement Class Member who has submitted a valid Claim Form and the Claims Administrator has determined the claim is an Approved Claim.

7.4     All payments to Settlement Class Members will state on their face that they will expire and become null and void unless cashed or redeemed within ninety (90) days after the date of issuance.

7.5     To the extent that any payments to Settlement Class Members expire and become null and void, the Settlement Administrator shall distribute the funds associated with those payments on a *pro rata* basis per telephone number to Settlement Class Members who were issued and cashed or redeemed their initial payments, if doing so is administratively and economically feasible (i.e., those Settlement Class Members would receive a second distribution of more than $1 after costs of administration).

16

7.6    To the extent the amount due in payments to any Settlement Class Member in any single calendar year exceeds $1,999.99 (or as otherwise required by law), the Settlement Class Member will be issued payments totaling $1,999.99 (or as otherwise permitted by law) with a request to complete a Form W-9 electronically through the Settlement Website to receive any additional amounts due.  If the Settlement Class Member does not complete a Form W-9, they will not be issued any additional payment, and any amount associated with the unissued additional payment shall be distributed on a *pro rata* basis per telephone number to Settlement Class Members whose claim the Settlement Administrator has determined to be an Approved Claim and has submitted a completed Form W-9, if necessary.

7.7    Any remaining monies, including to the extent a second distribution is not administratively feasible, shall be paid as *cy pres* to the Oregon Energy Fund, subject to Court approval.  No money remaining in the Settlement Fund shall revert to or otherwise be paid to Defendant.

7.8    No decisions by the Settlement Administrator shall be deemed to constitute a finding, admission, or waiver by Defendant as to any matter of fact, law, or evidence having any collateral effect on any claim hereunder or in any other proceeding or before any other forum or authority.  Further, such decisions shall not be submitted to or admissible in any other proceeding or before any other forum or authority.

8.    **RELEASES**

8.1    Upon the Effective Date, the Releasing Parties will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties.

8.2    After entering into this Agreement, Representative Plaintiff or Settlement Class Members may discover facts other than, different from, or in addition to, those that they know or

believe to be true with respect to the Released Claims.  Representative Plaintiff and Settlement Class Members expressly waive and fully, finally, and forever settle and release any known or unknown, suspected or unsuspected, contingent or noncontingent claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such other, different, or additional facts.

8.3    Upon the Effective Date, Representative Plaintiff, and any Settlement Class Member who does not opt out as set forth in Paragraph 9.4 is hereby barred against bringing any action against any of the Released Parties for any of the Released Claims whether directly, indirectly, representatively, or in any other capacity.  Additionally, Representative Plaintiff and Settlement Class Members agree and covenant, and each Settlement Class member will be deemed to have agreed and covenanted, not to sue any of the Released Parties with respect to any of the Released Claims, and agree to be forever barred from doing so, in any court of law, equity, or any other forum.  For the avoidance of doubt, Settlement Class Members are not precluded from addressing, contacting, dealing with, or complying with requests or inquiries from any governmental authorities relating to the issues raised in this Settlement or Litigation.

## 9.    APPROVAL PROCESS

9.1    Court Approval.

9.1.1    Class Counsel shall submit the Agreement together with its Exhibits to the Court and request that the Court grant preliminary approval of the Settlement, issue a Preliminary Approval Order, and schedule a hearing on whether the Settlement should be granted final approval (collectively, "Motion for Preliminary Approval").

9.1.2    In the Motion for Preliminary Approval, Class Counsel shall request that the Court schedule a Final Approval Hearing for a date approximately one hundred twenty (120) days from entry of the Preliminary Approval Order.

9.1.3    The date the Motion for Preliminary Approval is filed is the date by which the Settlement shall be deemed "filed" within the meaning of 28 U.S.C. § 1715.

9.1.4    If the Motion for Preliminary Approval is granted, Class Counsel shall be responsible for asking the Court to grant final approval of the Settlement and to enter a Final Approval Order and Judgment, in accordance with the date set by the Court for the Final Approval Hearing.

9.1.5    If the Court does not enter a Preliminary Approval Order or a Final Approval Order and Judgment or if the Final Approval Order or Judgment is reversed or vacated, by any court, this Agreement shall terminate and be of no force or effect unless the Parties voluntarily agree to modify this Agreement in the manner necessary to obtain Court approval.  If this Agreement is terminated, any portion of the Settlement Fund remaining shall be returned to Defendant.  Notwithstanding any provision of this Agreement, the Parties agree that any decision by any court as to any Fee Award to Class Counsel or Service Award to Representative Plaintiff shall not prevent the Agreement from becoming effective, prevent Final Judgment from being entered, or provide any grounds for termination of the Agreement or the Settlement.

9.2    Procedures for Objecting to the Settlement.

9.2.1    Settlement Class Members shall have the right to appear and show cause if they have any reason why the terms of this Agreement should not be given final approval, subject to each of the sub-provisions contained in this section.  Any objection to this Agreement, including any of its terms or provisions, must be in writing, filed with the Court by mail to, or electronically or in person at, the Wayne L. Morse United States Courthouse 405 East Eighth Avenue, Room 5300, Eugene, Oregon  97401-2706 by no later than the Opt-Out Deadline.  Settlement Class Members may object either on their own or through an attorney hired at their own expense.

9.2.2    Any objection regarding or related to the Agreement shall contain a caption or title that identifies it as "Objection to Class Settlement in *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA" and also shall contain the following information: (i) the objector's name, address, and telephone number; (ii) the phone number(s) at which he or she received calls or text messages covered by this Settlement; (iii) the factual basis and legal grounds for the objection; and (iv) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who properly files an appearance with the Court in accordance with the Local Rules).

9.2.3    Any Settlement Class Member who fails to comply with the applicable provisions of the preceding paragraphs concerning their objection shall waive and forfeit any and all rights he or she may have to object, appear, present witness testimony, and/or submit evidence, shall be barred from appearing, speaking, or introducing any testimony or evidence at the Final Approval Hearing, shall be precluded from seeking review of this Agreement by appeal or other means, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments in the Litigation.  By filing an objection, objectors and their counsel submit to the jurisdiction of the Court for all purposes, including but not limited to subpoenas and discovery.

9.3      Right to Respond to Objections.

9.3.1    The Parties shall have the right, but not the obligation, to respond to any objection no later than seven (7) days prior to the Final Approval Hearing.  The Party so responding shall file a copy of the response with the Court, and shall serve a copy, by email or overnight delivery, to the objector (or counsel for the objector).

9.4      Opt-Outs.

9.4.1    Any Settlement Class Member who does not wish to participate in this Settlement must write to the Settlement Administrator stating an intention to be "excluded" from this Settlement.  This written request for exclusion must be sent via mail to the Settlement Administrator at the address set forth in the Summary Notice and Long-Form Notice and postmarked no later than the Opt-Out Deadline.  A request for exclusion must be signed by the Settlement Class Member, include the Settlement Class Member's name, address, and the phone number(s) at which he or she received calls covered by this Settlement, and clearly state that the Person wishes to be excluded from the Litigation and the Settlement.  A request for exclusion that does not include all of this information, or that is sent to an address other than that designated in the notices, or that is not postmarked within the time specified, shall be invalid, and the Person serving such a request shall be a member of the Settlement Class and shall be bound as a Settlement Class Member by the Court's Orders in this Litigation and by this Agreement, if approved.  The request for exclusion must be personally signed by the Settlement Class Member.  So-called "mass" or "class" opt-outs shall not be allowed and such exclusions shall be deemed invalid.  The Settlement Administrator will make the determination of whether a Settlement Class Member's request for exclusion is valid.  The Settlement Administrator's decisions regarding the Settlement Class Member's request for exclusion shall be final.

9.4.2    The Settlement Administrator will retain a copy of all requests for exclusion and will provide copies of any such requests to counsel for the Parties on a weekly basis.  Class Counsel will keep any such opt-out information confidential and use it only for purposes of determining whether a person in the Settlement Class has properly opted out.  The names of those persons who have properly excluded themselves from the Settlement will be provided to the Court in connection with the motion for final approval of the Settlement.

9.4.3    All Settlement Class Members who did not submit a valid request for exclusion will be bound by all determinations and judgments in the Litigation.  In the event that the number of persons in the Settlement Class who validly and timely submit requests for exclusion exceeds 350, Defendant, following good faith discussions, may terminate the Settlement.

9.4.4    Any Person in the Settlement Class who submits a request for exclusion may not file an objection to the Settlement.  If a Settlement Class Member submits a written request for exclusion pursuant to Paragraph 9.4.1 above, he or she shall be deemed to have complied with the terms of the opt-out procedure and shall not be bound by the Agreement if the Agreement is approved by the Court.

9.4.5    After notice is disseminated and at least fifteen (15) days prior to the Final Approval Hearing, the Parties shall request and seek to obtain from the Court a Final Approval Order and Judgment, which will (among other things):

(i)    find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject-matter jurisdiction to approve the Agreement, including all exhibits hereto;

(ii)    approve the Agreement and the proposed Settlement as fair, reasonable, and adequate as to, and in the best interests of, Settlement Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have preclusive effect on all pending and future lawsuits or other proceedings maintained by or on behalf of Representative Plaintiff and the Releasing Parties;

(iii) find that the notice and the Notice Plan implemented pursuant to the Agreement (1) constitute the best practicable notice under the circumstances; (2) constitute notice that is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Litigation, their right to object to or exclude themselves from the proposed Settlement, and to appear at the Final Approval Hearing; (3) are reasonable and constitute due, adequate, and sufficient notice to all Persons entitled to receive notice; and (4) meet all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

(iv) find that the Class Representatives and Class Counsel adequately represent the Settlement Class for purposes of entering into and implementing the Agreement;

(v) dismiss the action (including all individual claims and Settlement Class Member claims asserted therein) on the merits and with prejudice, without fees or costs to any Party, except as provided in the Agreement;

(vi) incorporate the releases set forth above and make those releases effective as of the date of the Final Approval Order and Judgment;

(vii) forever discharge the Released Parties as set forth herein; permanently bar and enjoin all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction related to the Released Claims; and

> (viii) without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose.

## 10.  WITHDRAWAL FROM SETTLEMENT

10.1  If any of the conditions set forth below occurs and either (a) Class Counsel, (b) Representative Plaintiff, or (c) Defendant gives notice that such Party wishes to withdraw from this Agreement (subject to the terms below and herein), then this Agreement shall terminate and be null and void, and the Parties will be returned to the *status quo ante* as if no settlement had been negotiated or entered into:

> (i) Any objections to the proposed settlement are sustained, which results in changes to the Settlement described in this Agreement that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);
>
> (ii) The Final Approval of the Settlement described in this Agreement results in changes that the withdrawing Party deems in good faith to be material (e.g., because it increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement);
>
> (iii) More than 350 of the Settlement Class Members exclude themselves from the Settlement as set out in Paragraph 9.4.3; or
>
> (iv) The Final Approval of the Settlement described in this Agreement is (i) substantially modified by an appellate court and the withdrawing Party deems any such modification in good faith to be material (e.g., because it

increases the cost of settlement or deprives the withdrawing Party of a benefit of the settlement) or (ii) reversed by an appellate court.

## 11.    TAXES

11.1    Settlement Class Members, Representative Plaintiff, and Class Counsel shall be responsible for paying any and all federal, state, and local taxes due on any payments made to them pursuant to the Agreement.

11.2    Qualified Settlement Fund.  The Parties agree that the Escrow Account into which the Settlement Fund is deposited is intended to be a separate taxable entity and is and will at all times constitute a "Qualified Settlement Fund" within the meaning of § 1.468B-1(c) of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended from time to time.  The Settlement Administrator will timely make such elections as necessary, including if necessary, the "relation back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)) back to the earliest permitted date.  Such elections must be made in compliance with the procedures and requirements contained in such Treasury regulations promulgated under § 1.468B of the Internal Revenue Code of 1986, as amended (the "Code").  It is the responsibility of the Settlement Administrator to cause the timely and proper preparation and delivery of the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

11.3    Settlement Administrator is "Administrator."  For the purpose of § 1.468B of the Code and the Treasury regulations thereunder, the Settlement Administrator must be designated as the "administrator" of the Settlement Fund.  The Settlement Administrator must cause to be timely and properly filed all information and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns must reflect that all taxes (including any estimated taxes, interest

or penalties) on the income earned by the Settlement Fund will be paid out of the Settlement Fund.

11.4     Taxes Paid By Administrator.  All taxes arising in connection with income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon Defendant or any of the other Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, will be paid by the Settlement Fund.

11.5     Expenses Paid from Fund.  Any expenses reasonably incurred by the Settlement Administrator in carrying out the duties, including fees of tax attorneys and accountants, will be paid from the Settlement Fund.

11.6     Responsibility for Taxes on Distribution.  Any person or entity that receives a distribution from the Settlement Fund will be solely responsible for any taxes or tax-related expenses owed or incurred by that person or entity by reason of that distribution.  Such taxes and tax-related expenses will not be paid from the Settlement Fund.

11.7     Defendant Is Not Responsible.  In no event will Defendant or any of the other Released Parties have any responsibility or liability for taxes or tax-related expenses arising in connection with the payment or distribution of the Settlement Fund to Representative Plaintiff, Settlement Class Members, Class Counsel or any other person or entity.  The Settlement Class Members shall indemnify and hold Defendant and other Released Parties harmless—through the Settlement Fund—for all such taxes and tax-related expenses.

11.8     Defendant shall timely deliver to the Settlement Administrator a "Section 1.468B-3 Statement" (as provided in Treas. Reg Section 1.468B-3(e)) with respect to any transfers made to the Settlement Fund.

11.9    The Settlement Administrator will report to the Internal Revenue Service and such other state and local taxing authorities as may be required by law.  The Parties acknowledge that the Settlement Administrator will comply with all withholding obligations as required under the applicable provisions of the Internal Revenue Code and such other state and local laws as may be applicable, and the regulations promulgated thereunder.  In addition, the Settlement Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Settlement Class Member any funds necessary to pay such amounts including the establishment of adequate reserves for any taxes and tax-related expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)).  The Parties agree to cooperate with the Settlement Administrator, each other, and their attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section 11.

11.10    Defendant makes no representation to Representative Plaintiff, Settlement Class Members, Class Counsel or any other person or entity regarding the appropriate tax treatment of the Settlement Fund, income earned on the Settlement Fund, or any distribution taken from the Settlement Fund.

**12.    CONDITIONS FOR EFFECTIVE DATE; EFFECT OF TERMINATION**

12.1    The Effective Date of this Agreement shall be the date the Final Approval Order and Judgment has become Final, as defined in Paragraph 1.1.15.

12.2    Performance of the obligations set forth in this Agreement is subject to all of the following material conditions:

(A)    execution of this Agreement by Defendant, Representative Plaintiff, and Class Counsel;

(B)    the granting of preliminary approval by the Court;

(C)    sending of the notices described herein;

(D)     the granting of final approval of the Agreement by the Court;

(E)     execution and entry of Judgment by the Court consistent with this Agreement in all material respects; and

(F)     the occurrence of all other circumstances necessary for the Effective Date to arise.

12.3     The Parties hereby covenant and agree to cooperate reasonably and in good faith for the purpose of achieving occurrence of the conditions set forth above, including, without limitation, timely filing of all motions, papers and evidence necessary to do so.  Class Counsel represent and warrant that they have authority to take all such actions required of them pursuant to this Agreement, and that by doing so they are not in breach or violation of any agreement with Representative Plaintiff or any third party.

12.4     If this Agreement is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with the terms of this Agreement, the Settling Parties will be restored to their respective positions in the Litigation as of February 24, 2026.  In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Settling Parties and will not be used in this Litigation or in any other proceeding for any purpose.

12.5     The Parties agree to request a stay of the Litigation pending preliminary approval of the Settlement.

## 13.     MISCELLANEOUS PROVISIONS

13.1     Cooperation of the Parties.  The Parties acknowledge that it is their intent to consummate this Agreement, and they agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement.  The Parties agree that they will not solicit, facilitate, or assist in any way, requests for exclusions or objections by

putative or actual Settlement Class Members, and will refrain from causing or encouraging directly or indirectly any appeal or petition for writ proceedings by third parties seeking review of any order contemplated by this Agreement. Class Counsel recognize that they have an obligation to support the Settlement and to seek the Court's approval of its terms. Class Counsel will abide by all applicable and governing ethical rules, opinions, and obligations precluding their representation of Settlement Class Members who have filed valid requests for exclusion from the Settlement. If the Court suggests any modifications to the Agreement or conditions entry of the Preliminary Approval Order, Final Approval Order, or Judgment on modifications to the Settlement, the Parties shall, working in good faith and consistent with the Settlement, endeavor to address any such concerns identified by the Court.

13.2    Resolution of Dispute without Admission. The Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement covers claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.

13.3    Use In Subsequent Proceedings. Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, or of any claim of wrongdoing or liability of Defendant; or is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal. Any party to this Litigation may file this Agreement and/or the Judgment in any action that may be brought against it in order to support any defense or counterclaim, including without limitation those based on principles of *res judicata*, collateral

29

estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.4    Confidential Information.  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information will survive this Agreement.

13.5    Incorporation of Exhibits.  Any and all Exhibits to this Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

13.6    Modification.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

13.7    Integration.  This Agreement and any Exhibits attached hereto constitute the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants covered and memorialized in such documents.  Except as otherwise provided herein, the Parties will bear their own respective costs.

13.8    Class Counsel's Authority.  Class Counsel, on behalf of the Settlement Class, are expressly authorized by Representative Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Agreement to effectuate its terms, and are expressly authorized to enter into any modifications or amendments to this Agreement on behalf of the Settlement Class.

13.9    Parties' Authority.  Each counsel or other Person executing this Agreement or any of its Exhibits on behalf of any Party hereby warrants that such Person has the full authority to do so.

13.10   Receipt of Advice of Counsel.  Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering this Agreement and

the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.  Each Party to this Agreement warrants that he, she, or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

13.11　Counterparts.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.

13.12　No Prior Assignments.  Representative Plaintiff and Class Counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

13.13　Binding on Assigns.  This Agreement will be binding upon, and inure to the benefit of, the successors and assigns of the Parties and the Settlement Class Members.

13.14　Interpretation.  None of the Parties, or their respective counsel, will be deemed the drafter of this Agreement or its Exhibits for purposes of construing the provisions thereof.  The language in all parts of this Agreement and its Exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any of the Parties as the drafter thereof.

13.15　Change of Time Periods.  The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the Court or by written agreement of Class Counsel and Defense Counsel and as approved by the Court, without notice to Settlement Class Members.  The Parties reserve the right, by

agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this Agreement.

13.16    Governing Law.  This Agreement and any Exhibits hereto will be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Oregon without giving effect to that State's choice-of-law principles.

13.17    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

13.18    No Waiver.  The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

13.19    Publicity and Confidentiality.  Neither the Parties nor their counsel will initiate any public statement intended to be disseminated through the press, internet, television, radio, or other media that includes an opinion or editorial comment about the effect of the Settlement or the merits of any Parties' positions in the Litigation.  This provision does not apply to any communications between any Settlement Class member and Class Counsel or any communications with the Court.

13.20    Notices.  All notices to counsel provided for herein shall be sent by email with a hard copy sent by overnight mail to:

| *As to Representative Plaintiff and the Settlement Class*: | *As to PacifiCorp*: |
|---|---|
| KAUFMAN P.A. | MARKOWITZ HERBOLD PC |
| Avi R. Kaufman | Dallas DeLuca |
| kaufman@kaufmanpa.com | dallasdeluca@markowitzherbold.com |
| 237 S Dixie Hwy, 4th Floor | 1455 SW Broadway, Suite 1900 |
| Coral Gables, FL  33133 | Portland, OR  97201 |

IN WITNESS WHEREOF, the Parties have executed this Agreement dated as of June 8,
2026.

*Karen Kruse*

Defendant PacifiCorp

_____

Representative Plaintiff Chet Michael Wilson

_____

Class Counsel

IN WITNESS WHEREOF, the Parties have executed this Agreement dated as of June 08 , 2026.

_____
Defendant PacifiCorp

_____
Representative Plaintiff Chet Michael Wilson

_____
Class Counsel

# EXHIBIT A

## CLAIM FORM

| Section I - Instructions |
|---|

**This Form must be received by the Settlement Administrator no later than [Month] [Day], [Year].**

This Claim Form may be submitted in one of two ways:

1.  Electronically through www.[xxx].com.

2.  Mail to: *PacifiCorp TCPA Settlement,* c/o ___, [Address], [City] [State], [Zip Code].

To be effective as a Claim under the proposed settlement, this form must be completed, signed, and submitted, as outlined above, **no later than [Month] [Day], [Year].** If this Form is not postmarked or submitted by this date, you will remain a member of the Class but will not receive any payment from the Settlement.

If you received a notice regarding the Settlement by mail, the notice includes your Claimant Identification Number, which is required to make a Claim. If you do not have a Claimant Identification Number, you can request one by contacting the Settlement Administrator via email to [xxx]@[xxx].com or by calling ###-###-####.

| Section II - Class Member Information |
|---|

**Claimant Name (Required):**

**Claimant Identification Number (Required):**

**Current Contact Information**

**Street Address (Required):**

**City (Required):**          **State (Required):**     **Zip Code (Required)**

**Email (Optional):**

1

**Preferred Phone Number (Required):**

| | | | |   | | | | |   | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*Your contact information will be used by the Settlement Administrator to contact you, if necessary, about your Claim. Provision of your email address is optional. By providing contact information, you agree that the Settlement Administrator may contact you about your Claim.*

## Section III – Confirmation of Class Membership

Cellular telephone number(s) you are associated with to determine if it is within the unique telephone numbers related to the Settlement Class Members:

| | | | |   | | | | |   | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | |   | | | | |   | | | | |

## Section IV – Election of Payment

Please select your preferred method of payment for any approved Claim:

_____ Check mailed to the address identified above in Section II

Alternatively, to elect an electronic payment, you must submit your claim electronically through www.[xxx].com.

## Section V – Required Affirmations

IF SUBMITTED ELECTRONICALLY:

☐ **I agree that, by submitting this Claim Form, the information in this Claim Form is true and correct to the best of my knowledge. I understand that my Claim Form may be subject to audit, verification, and Court review. I am aware that I can obtain a copy of the full notice and Settlement Agreement at www.[xxxx].com or by writing the Settlement Administrator at the email address [xxxx]@[xxxx].com or the postal address [Address], [City], [State] [Zip Code]. Checking this box constitutes my electronic signature on the date of its submission.**

IF SUBMITTED BY U.S. MAIL:

**I agree that, by submitting this Claim Form, the information in this Claim Form is true and correct to the best of my knowledge. I understand that my Claim Form may be subject to audit, verification, and Court review. I am aware that I can obtain a copy of the full notice and Settlement Agreement at www.[xxxx].com or by writing the Settlement Administrator at the email address [xxxx]@[xxxx].com or the postal address [Address], [City], [State] [Zip Code].**

Dated:_____          Signature: _____

# EXHIBIT B

United States District Court for the District of Oregon

**If You Received a Prerecorded Debt Collection or Returned Mail / Email Call from PacifiCorp to Your Cellular Phone Number and Were Not a Pacific Power or Rocky Mountain Accountholder You May Be Entitled to a Payment from a Class Action Settlement.**

*A FEDERAL COURT authorized this notice. THIS IS NOT A SOLICITATION FROM A LAWYER.*

- A Settlement with a $850,000 cash fund has been reached in a class action lawsuit claiming that PacifiCorp ("Defendant") made prerecorded debt collection calls to the cellular telephone numbers of persons who were not PacifiCorp accountholders in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Defendant denies the allegations in the lawsuit and the Court has not decided who is right.

- If you are a Settlement Class Member, your legal rights are affected whether you act or do not act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| DO NOTHING | If you do nothing, you will not receive a payment from the Settlement Fund and will give up your right to bring your own lawsuit against Defendant about the claims in this case. |
| MAKE A CLAIM | You may make a claim to receive a payment from the Settlement Fund. |
| EXCLUDE YOURSELF | You may request to be excluded from the Settlement. If you do, you will not receive a payment from the Settlement Fund but will not give up your right to bring your own lawsuit against Defendant about the claims in this case. |
| OBJECT | Write to the Court if you do not like the Settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the Settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still must decide whether to approve the Settlement. If it does, and after any appeals are resolved, payments will be distributed as specified. Please be patient.

2

| WHAT THIS NOTICE CONTAINS |
|---|

BASIC INFORMATION...............................................................................................................PAGE 3
    1. Why is there a notice?
    2. What is this litigation about?
    3. What is the Telephone Consumer Protection Act?
    4. Why is this a class action?
    5. Why is there a settlement?

WHO IS PART OF THE SETTLEMENT.........................................................................................PAGE 4
    6. Who is included in the Settlement?
    7. What if I am not sure whether I am included in the Settlement?

THE SETTLEMENT BENEFITS....................................................................................................PAGE 4
    8. What does the Settlement provide?
    9. When will I receive my payment?

EXCLUDING YOURSELF FROM THE SETTLEMENT................................................................PAGE 5
    10. How do I get out of the Settlement?
    11. If I do not exclude myself, can I sue Defendant for the same thing later?
    12. What am I giving up to stay in the Settlement Class?
    13. If I exclude myself, can I still get a payment?

THE LAWYERS REPRESENTING YOU........................................................................................PAGE 6
    14. Do I have a lawyer in the case?
    15. How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT...........................................................................................PAGE 6
    16. How do I tell the Court I do not like the Settlement?
    17. What is the difference between objecting and asking to be excluded?

THE FINAL APPROVAL HEARING..............................................................................................PAGE 7
    18. When and where will the Court decide whether to approve the Settlement?
    19. Do I have to attend the hearing?
    20. May I speak at the hearing?

IF YOU DO NOTHING...................................................................................................................PAGE 8
    21. What happens if I do nothing at all?

GETTING MORE INFORMATION................................................................................................PAGE 8
    22. How do I get more information?

## BASIC INFORMATION

| **1.** Why is there a notice? |
| :--- |

A Court authorized this notice because you have a right to know about a proposed Settlement of a class action lawsuit known as *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA, and about all of your options before the Court decides whether to give Final Approval to the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Ann Aiken of the U.S. District Court for the District of Oregon is overseeing this case. The person who sued, Chet Michael Wilson, is called the "Plaintiff." PacifiCorp, which does business as Pacific Power and Rocky Mountain Power, is called the "Defendant".

| **2.** What is this litigation about? |
| :--- |

The lawsuit alleges that Defendant made prerecorded debt collection calls to cellular telephone numbers of persons who were not PacifiCorp accountholders in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227("TCPA"); and seeks statutory damages under the TCPA on behalf of the named Plaintiff and a class of individuals in the United States.

Defendant denies each and every allegation of wrongdoing, liability and damages that were or could have been asserted in the litigation, and that the claims in the litigation would be appropriate for class treatment if the litigation were to proceed through trial.

The Plaintiff's Complaint, Settlement Agreement and other case-related documents are posted on the website, www.XXX.com. The Settlement resolves the lawsuit. The Court has not decided who is right.

| **3.** What is the Telephone Consumer Protection Act? |
| :--- |

The Telephone Consumer Protection Act (commonly referred to as the "TCPA") is a federal law that restricts, among other things, unsolicited prerecorded calls to cellular telephone numbers. The Plaintiff here alleged that Defendant made prerecorded calls to his cellular telephone number without consent in violation of the TCPA.

| **4.** Why is this a class action? |
| :--- |

In a class action, one person called the "Class Representative" (in this case, Chet Michael Wilson) sues on behalf of itself and other entities and people with similar claims.

All of the people who have claims similar to the Plaintiff's claims and are associated with the unique telephone numbers identified are members of the Settlement Class, except for those which exclude themselves.

| **5.** Why is there a settlement? |
| :--- |

The Court has not found in favor of either Plaintiff or Defendant. Instead, both sides have agreed to a Settlement. By agreeing to the Settlement, the parties avoid the costs and uncertainty of a trial, and if the Settlement is approved by the Court, Settlement Class Members who submit valid claims will receive the Settlement's benefits described in this notice. Defendant denies all legal claims in this case. Plaintiff and its lawyers think the proposed Settlement is best for everyone who is affected.

## WHO IS PART OF THE SETTLEMENT

| 6. | Who is included in the Settlement? |
|---|---|

The Settlement includes: all persons throughout the United States (1) to whom PacifiCorp placed, or caused to be placed, a call (i) to collect a debt or (ii) concerning returned mail or undeliverable email communications, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person who was a customer of PacifiCorp or in collections with PacifiCorp, (3) in connection with which PacifiCorp used an artificial or prerecorded voice, (4) between November 21, 2020 and the date of the Preliminary Approval Order.

Excluded from the Settlement Class are (1) the Judges presiding over this action and members of their families; (2) the Defendant, Defendant's respective agents, subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded person(s).

| 7. | What if I am not sure whether I am included in the Settlement? |
|---|---|

If you are not sure whether you are in the Settlement Class, or have any other questions about the Settlement, you may (1) visit the Settlement Website at www.XXX.com, (2) contact the Settlement Administrator at PO Box XXXX, City, State XXXXX-XXXX, email address, or telephone number, or (3) contact Class Counsel at info@kaufmanpa.com or 305-469-5881.

## THE SETTLEMENT BENEFITS

| 8. | What does the Settlement provide? |
|---|---|

Defendant has agreed to pay $850,000.00 to create a cash Settlement Fund. The Settlement Fund will be used to pay all Settlement Administration Expenses, a Fee Award, and a Service Award. The remaining funds will be distributed on a pro rata basis to Settlement Class Members who timely submit a valid claim.

| 9. | When will I receive my payment? |
|---|---|

Payments to Settlement Class Members will be made only after the Court grants Final Approval to the Settlement and after any appeals are resolved (*see* "Final Approval Hearing" below).  If there are appeals, resolving them can take time. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want benefits from the Settlement, and you want to keep the right to sue or continue to sue Defendant on your own about the legal issues in this case, you must take steps to get out of the Settlement. This is called excluding yourself – or it is sometimes referred to as "opting-out" of the Settlement Class.

| 10. | How do I get out of the Settlement? |
|---|---|

To exclude yourself from the Settlement, you must send a timely letter by mail to:

Settlement Administrator

PO Box XXXX City, State
XXXXX-XXXX

Your request to be excluded from the Settlement must be personally signed by you, include your name, address, and the telephone number at which you received calls covered by the Settlement, and contain a statement that indicates your desire to be "excluded from the Settlement Class." Absent excluding yourself or "opting-out" you are otherwise a member of the Settlement Class.

**QUESTIONS? VISIT www.XXX.com**

Your exclusion request must be postmarked no later than **Month Day, 2026** ("the Opt-Out Deadline"). You cannot ask to be excluded by phone, by email, or at the website.

You may opt-out of the Settlement Class only for yourself.

| **11.** If I do not exclude myself, can I sue the Defendant for the same thing later? |
|---|

No. Unless you exclude yourself, you give up the right to sue Defendant for the claims that the Settlement resolves. You must exclude yourself from this Settlement Class in order to pursue your own lawsuit.

| **12.** What am I giving up to stay in the Settlement Class? |
|---|

Unless you opt-out of the Settlement, you cannot sue or be part of any other lawsuit against Defendant about the issues in this case, including any existing litigation, arbitration, or proceeding. Unless you exclude yourself, all of the decisions and judgments by the Court will bind you.

The Settlement Agreement is available at www.XXX.com. The Settlement Agreement provides more detail regarding the release and describes the Released Claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can talk to the law firms representing the Class listed in Question 14 for free or you can, at your own expense, talk to your own lawyer if you have any questions about the Released Claims or what they mean.

| **13.** If I exclude myself, can I still get a payment? |
|---|

No.  You will not get a payment from the Settlement Fund if you exclude yourself from the Settlement.

## THE LAWYERS REPRESENTING YOU

| **14.** Do I have a lawyer in the case? |
|---|

The Court has appointed the following lawyers as "Class Counsel" to represent all members of the Settlement Class.

>       Anthony Paronich
>       PARONICH LAW
>
>       Avi R. Kaufman
>       KAUFMAN P.A.

You will not be charged for these lawyers. If you want to be represented by another lawyer, you may hire one to appear in Court for you at your own expense.

| **15.** How will the lawyers be paid? |
|---|

Class Counsel intend to request up to one-third of the value of the Settlement for attorneys' fees, plus reimbursement of reasonable, actual out-of-pocket costs and expenses incurred in the litigation. The fees and expenses awarded by the Court will be paid out of the Settlement Fund. The Court will decide the amount of fees and expenses to award.

Class Counsel also will request that a service award not to exceed $5,000 be paid from the Settlement Fund to the Class Representative for his service as representative on behalf of the whole Settlement Class.

## OBJECTING TO THE SETTLEMENT

| **16.** How do I tell the Court if I do not like the Settlement? |
|---|

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement.  To object, you must timely submit a letter containing a caption or title that identifies it as "Objection to Class Settlement in *Chet Michael Wilson v. Pacificorp*, No. 6:24-cv-01956-AA," and also contain the following information: (i) your name, address, and telephone number; (ii) the phone number(s) at which you received calls covered by this Settlement; (iii) the factual basis and legal grounds for the objection; and (iv) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who properly files an appearance with the Court in accordance with the Local Rules).

If you wish to object, you must file your objection with the Court by mail to, or electronically or in person at, Wayne L. Morse United States Courthouse 405 East Eighth Avenue, Room 5300, Eugene, Oregon 97401-2706 by no later than the Opt-Out Deadline. Settlement Class Members may object either on their own or through an attorney hired at their own expense.

| **17.** What is the difference between objecting and asking to be excluded? |
|---|

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself. Excluding yourself is telling the Court that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object to the Settlement because it no longer affects you.

## THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses ("Final Approval Hearing").

| **18.** When and where will the Court decide whether to approve the settlement? |
|---|

The Court has scheduled a Final Approval Hearing on **[DATE] at [TIME]**, at the _____ [LOCATION]. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.XXX.com for updates. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  The Court will also consider the requests by Class Counsel for attorneys' fees, costs, and expenses. If there are objections, the Court will consider them at that time. After the hearing, the Court will decide whether to approve the Settlement. It is unknown how long these decisions will take.

| **19.** Do I have to attend the hearing? |
|---|

No.  Class Counsel will answer any questions the Court may have.  But, you are welcome to attend the hearing at your own expense.  If you send an objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, to the proper addresses, and it complies with all the other requirements set forth above, the Court will consider it. You also may pay your own lawyer to attend the hearing, but it is not necessary.

| **20.** May I speak at the hearing? |
|---|

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must submit a timely objection and include a statement of whether you intend to appear at the Final Approval Hearing.

You cannot speak at the hearing if you exclude yourself from the Settlement

**IF YOU DO NOTHING**

| **21.** What happens if I do nothing at all? |
|---|

If you do nothing, you will not receive a payment from the Settlement Fund and will give up your right to bring your own lawsuit against Defendant about the claims in this case.

**GETTING MORE INFORMATION**

| **22.** How do I get more information? |
|---|

This notice summarizes the proposed Settlement. You are urged to review more details in the Settlement Agreement. For a complete, definitive statement of the Settlement terms, refer to the Settlement Agreement at www.XXX.com. If you have any questions, you also may contact the Settlement Administrator at PO Box XXXX, City, State XXXXX-XXXX, email address, or telephone number, or contact Class Counsel at info@kaufmanpa.com or 305-469-5881.

# EXHIBIT C

United States District Court for the District of Oregon

**If You Received a Prerecorded Debt Collection or Returned Mail / Email Call from PacifiCorp to Your Cellular Phone Number and Were Not a Pacific Power or Rocky Mountain Accountholder You May Be Entitled to a Payment from a Class Action Settlement.**

*A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.*

A Settlement with a $850,000 cash fund has been reached in a class action lawsuit claiming that PacifiCorp, which does business as Pacific Power and Rocky Mountain Power ("Defendant") made prerecorded calls to cellular telephone numbers of persons who were not PacifiCorp accountholders in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Defendant denies the allegations in the lawsuit and the Court has not decided who is right.

**Who's Included?** You received this notice because records produced in the Litigation show that you may be a Settlement Class Member. The Settlement includes all persons throughout the United States (1) to whom PacifiCorp placed, or caused to be placed, a call (i) to collect a debt or (ii) concerning returned mail or undeliverable email communications, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person who was a customer of PacifiCorp or in collections with PacifiCorp, (3) in connection with which PacifiCorp used an artificial or prerecorded voice, (4) between November 21, 2020 and the date of the Preliminary Approval Order.

**What Are the Settlement Terms?** Defendant has agreed to pay $850,000 to create a fund that will be used to (1) pay persons who submit valid claims, (3) pay the costs of providing notice and administering the settlement, (3) pay a service award to the Representative Plaintiff for the Settlement Class for its service on behalf of the Settlement Class, and (4) pay Class Counsel's attorneys' fees, costs, and expenses incurred in the litigation.

**How can I get a Payment?** By completing the Claim Form available online on the Class Settlement Website, www.xxxxxTCPAsettlement.com, or by downloading a Claim Form from the Class Settlement Website and submitting it by U.S. Mail to the Settlement Administrator at **[address]**. If you send in a Claim Form by regular mail, it must be postmarked on or before **DATE**. If you file a Claim Form online it must be completed and submitted by **11:59 p.m. PST on DATE**.

**What are my other Options?** If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month DD, 2026**. If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at the Settlement website. You may object to the Settlement by **Month DD, 2026** by timely complying with the objection procedures detailed in the Preliminary Approval Order. The Long Form Notice available on the Settlement Class Website explains how to exclude yourself or object. The Court will hold a Final Approval Hearing on **Month DD, 2026 at [location]** to consider whether to approve the Settlement, a request for a service award of up to $5,000 for the Representative Plaintiff, and a request for attorneys' fees of up to one-third of the Settlement Fund as well as reasonable costs and expenses incurred in the litigation. You may appear at the hearing, either yourself or through an attorney hired by you, but you don't have to. For more information, call or visit the website.

www.XXX.com // The Settlement Administrator, [TELEPHONE NUMBER], [ADDRESS]

2452283.5

**QUESTIONS? VISIT www.XXX.com**

# EXHIBIT D

Chet Michael  Wilson
December 12, 2025

APP. 001

UNITED STATES DISTRICT COURT DISTRICT OF OREGON

EUGENE DIVISION

CHET WILSON, individually and on
behalf of all others similarly
situated,

       Plaintiff,

   v.               Case No.: 6:25-cv-00376

SKOPOS FINANCIAL, LLC d/b/a
REPRISE FINANCIAL,

       Defendant.
_____

AND ALL RELATED CROSS-ACTIONS.

_____


VIDEOCONFERENCE DEPOSITION OF CHET MICHAEL WILSON

FRIDAY, DECEMBER 12, 2025

9:02 AM

APPEARING REMOTELY FROM

EUGENE, OREGON


REPORTED BY:

Cheryl L. Haase
NCRA RPR No. 12443/WA CCR No. 3503
(541)409-2190 - cheryl.haase@gmail.com

Chet Michael Wilson
December 12, 2025

APP. 002

Page 2

                         A-P-P-E-A-R-A-N-C-E-S


     For the Plaintiff:

     PELUSO LAW, LLC
     865 Albion Street, Suite 250
     Denver, Colorado 80220
     (720) 805-2008

     By:  Patrick Peluso
          ppeluso@pelusolawfirm.com
          (Pro Hac Vice)


     For Defendant Skopos Financial, LLC dba Reprise Financial:

     BILES WILSON, PLLC
     457 Laurence Drive, Suite 195
     Heath, Texas 75032
     (972) 345-2626

     By:  Dunham Biles
          dunham@bileswilson.com
          (Pro Hac Vice)


     Also Present
     Julia Coons, Paralegal

Chet Michael Wilson
December 12, 2025

APP. 003

Page 3

INDEX OF EXAMINATIONS

Exam          by Mr. Biles                                    4

INDEX OF EXHIBITS

Exhibit 1    Defendant's First Request for          17
             Production to Plaintiff

Exhibit 2    Plaintiff's Responses and              18
             Objections to Defendant's First Set
             of Requests to Produce

Exhibit 3    Class Action Complaint                 39

Exhibit 4    Screenshots                            44

Exhibit 5    Facebook Marketplace ad               46

Exhibit 6    Conviction Table                       53

Exhibit 7    Chet Tank Wilson Facebook post        66

Exhibit 8    Chet Tank Wilson Facebook Post        66
             dated December 12, 2022

Exhibit 9    Facebook post                          68

Exhibit 10   Chet Tank Wilson December 10, 2024     72
             Facebook posts

Exhibit 11   Chet Tank Wilson Facebook page         77
             dated 11/11/2024

Chet Michael  Wilson                      APP. 004
December 12, 2025

Page 4

REPORTED REMOTELY FROM LINN COUNTY, OREGON

FRIDAY, DECEMBER 12, 2025

9:02 AM


CHET MICHAEL WILSON,

called as a witness,

having been first duly affirmed,

was examined and testified as follows:


EXAMINATION

BY MR. BILES:

Q.   Good morning, Mr. Wilson.

A.   Good morning.

Q.   Could you please state your full name for the record?

A.   Chet Michael Wilson.

Q.   And Mr. Wilson, have you ever had your deposition taken before?

A.   Yes, sir.

Q.   Okay.  How many times?

A.   For these matters, this will be the third time, I believe.

Q.   And when you say "these matters," what do you mean?

A.   The TCPA.

Chet Michael  Wilson
December 12, 2025                                    APP. 005

Page 5

Q.   When was the last time you had your deposition taken in a TCPA case?

A.   Roughly a week ago.

Q.   Okay.  And what case was that?

A.   It was -- I forget the exact name of the company, it was a mortgage company, I believe.

Q.   Were you working with any other plaintiffs in that case?

A.   I believe there was one other plaintiff on that case with me.

Q.   Okay.  Is that Sara Taylor?

A.   Yes, sir.

Q.   Who is Sara Taylor?

A.   What's that?

Q.   Who is Sara Taylor?

A.   She was a co-plaintiff, if that's the correct wording for it.

Q.   She's a co-plaintiff on several cases with you, right?

A.   I am not certain.  I deal --

Q.   Sorry.  Go ahead.

A.   I deal with numerous of these cases, so it's hard to, you know, get the names exactly with them, so --

Q.   Who is Antwane Johnson?

A.   I know the name's really familiar, but I -- I'm

Chet Michael  Wilson
December 12, 2025                  APP. 006

Page 6

not certain.

Q.   He's a co-plaintiff with you on cases, isn't that correct?

A.   I just -- I recognize the name.  I can't specify exactly.

Q.   You have so many cases you don't recognize all the ones you have with Antwane, is that right?

A.   Yeah, I have a lot going on, so --

Q.   How many TCPA cases do you have going on?

A.   I'm not sure which are pending or still active, but there's upwards of somewhere around 70, 69, 70, something like that.

Q.   So that 70 would be ones, that's you think the grand total of number of cases you've ever filed under the TCPA including ones that are active and ones that are no longer active?

A.   I believe that's fairly accurate, yes.

Q.   Approximately how many of those are currently active?

A.   I am not certain.

Q.   When did you first file your TCPA case?

A.   It was around a year ago, I think.

Q.   So in a year you've filed approximately 70 TCPA cases as a plaintiff, is that correct?

A.   I -- I think that's -- that's fairly accurate.

Chet Michael Wilson
December 12, 2025

APP. 007

Page 7

Q.   Okay.  How many of those have been concluded in one way or another?

A.   I think somewhere around 20 or so.  I don't have the exact number.

Q.   And were those all concluded by settlement?

A.   I -- I think there was a few that were dismissed, but yeah, that's -- that's correct.

Q.   Approximately how many do you believe were settled?

A.   Some in the 20 area, somewhere -- something like that.

Q.   How much did you get paid?

MR. PELUSO:  Objection.  I'm going to object to the relevance of that, you know, a lot of these settlements obviously are going to be confidential.

BY MR. BILES:

Q.   Sir, would you answer the question, please?

A.   Will you repeat it so I get it accurately again?

Q.   Yeah.  How much have you received in settlement cases on TCPA cases?

MR. PELUSO:  Same objection.

A.   I am not certain to an accurate number, so --

BY MR. BILES:

Q.   Is it more than a hundred thousand?

A.   I don't believe so, no.

Chet Michael Wilson
December 12, 2025

APP. 008

Page 8

Q.   Is it more than 10,000?

A.   Yes.

Q.   Okay.  More than 50,000?

A.   I think we're getting close to somewhere in there. I'm not certain.

Q.   Okay.  And what are the terms of the agreement with your counsel in this case should you -- should this case be concluded?

A.   I -- I believe we're going off of the claim standards as far as TCPA actions, so I'm not certain the entirety of it, but --

Q.   What does that mean to you?

A.   From my understanding it's -- it's 500 per infringement, and then if it's -- if it's intentional, it's $1,500 per incident, so --

Q.   What I -- well, let me ask you:  Are you paying your attorney on an hourly basis?

A.   No, sir.

Q.   So it's a contingency fee, correct?

A.   Yes.  Yes.  I -- yes.

Q.   What percentage does your lawyer get?

MR. PELUSO:  Objection to the relevancy. I -- I think we've turned over the retainer agreement, so you already have the terms.

Chet Michael Wilson
December 12, 2025

APP. 009

Page 9

MR. BILES:  I don't think I have it, but --

MR. PELUSO:  If not, I'm happy to turn it over.

MR. BILES:  Okay.  That will be sufficient.

BY MR. BILES:

Q.   And, sir, just to back up and talk about depositions for a minute, you understand you're under oath today, correct?

A.   Yes, sir.

Q.   And what I'm going to ask of you for the benefit of our court reporter, actually, is that I will ask questions and if you would let me finish the question before you respond, and then you'll respond and I will do my best not to interrupt you.

Your -- your lawyer may object at some point, and the reason why we need to do this is our court reporter is trying to get literally every single word we say down.

And so if we speak over each other, we make our court reporter's job impossible and annoying.  So can we agree to do our best not to speak over each other?

A.   Yes, sir.

Q.   And then I'd ask you that if I ask you a question and you don't understand it, will you let me know?

A.   Yes, sir.

Q.   If you don't say you don't understand it, can we

Chet Michael Wilson
December 12, 2025

Page 10

agree that that means you did understand the question?

A.   Yes, sir.

Q.   Okay.  And then the way this works, of course, today is -- at any point if you'd like a break, just let me know.  We all have to use the restroom, we all may need food, whatever.

Let me know and I'll do my best to grant it right then.  The exceptions to that are like if I literally have a question pending to you, I'm going to need you to answer it before we take a break, and it may be a situation where I have a few more questions I want to finish in a line before I agree to take a break.

Does that work for you?

A.   Yes, sir.

Q.   Now, what if anything did you do to prepare for this deposition today?

A.   I just -- I reviewed the documents with the texts again that were from the defendant and just previously went over things.

Q.   What documents did you review?

A.   The complaints, the dismissal, that paperwork that was overturned, and I believe that there's a few documents in there, I don't remember the exact titles of them, so --

Q.   And when you say you briefly went over things, what did you mean?

Chet Michael Wilson
December 12, 2025

APP.011

Page 11

A.    Well, I briefly went over them with Mr. Peluso.

Q.    Okay.  Now, let's be -- let's be clear about this today.  I may ask you if you met with your counselor, so forth, but there's almost no chance I want to know anything about what your counsel told you or what you told your counsel.  So let's -- you understand?

A.    Yes.  Yes.

Q.    When did you meet with Mr. Peluso --

A.    I spoke --

Q.    -- about the deposition?

A.    I spoke with him briefly this morning.

Q.    Did you otherwise speak with Mr. Peluso about your deposition before some time this morning?

A.    We also had a brief conversation yesterday.  Just basically going over the same stuff, just making sure I was --

Q.    I don't -- I don't -- honestly, I promise you I don't need to know about your communications with your -- I'm just asking you when you met with him, and I'll ask you how long you met with him.  I'm not going to ask you what you discussed with him.  Okay?

A.    Okay.

Q.    That's -- I don't want to know.

A.    Okay.

Q.    Okay.  So how long did you speak to Mr. Peluso

Chet Michael Wilson
December 12, 2025

APP. 012

Page 12

yesterday?

A.   I'd say 15, 20 minutes, maybe.

Q.   Okay.  Did you speak with your attorney or anyone else in preparation for your deposition other than the conversation you had yesterday and the one you had this morning?

A.   I don't believe so.

Q.   Did you speak with any of your other lawyers who are not part of this case about this deposition?

A.   I don't believe so.

Q.   Of those 70 cases, does Mr. Peluso represent you in any of those other than this one?

A.   I believe this is the first time I've worked with Mr. Peluso.

Q.   How did you come to contact Mr. Peluso?

A.   Excuse me?

Q.   How did you come to contact Mr. Peluso about this case?

A.   I was -- he was referred to do the litigation from my -- the law firm that I deal with, mostly, so Heidarpour.

Q.   How do you get in contact with Heidarpour?  I forget how to pronounce them, but that law firm initially?

A.   I did a web search for TCPA and that's who it pulled up, so --

Q.   Now, are they the law firm that you've given

Chet Michael Wilson
December 12, 2025

APP. 013

Page 13

access to your cell phone to go back five years and searched for all the text messages?

A.    Sir, to be accurate, I have -- there's several attorneys that I deal with on these cases, so I just don't want to be inaccurate.  I'm not certain who specifically I've dealt with on all these, but it's -- I have -- there's a group of attorneys that are all under the kind of same umbrella.

Q.    Who are those attorneys under that umbrella?

A.    So we have -- we have Anthony Paronich.  We have Andrew Heidarpour.  I know -- and then I'd -- I think there's a guy, Mr.  Berrong that I was dealing with, too. Yeah, they're all underneath kind of the same group, they all work together, so --

Q.    And do all of them have access to your Cloud account for your phone number (541) 999-9999?

A.    I -- I'm not certain on how that works, so --

Q.    Okay.  Can you tell me every cell phone number you've had since January 1, 2024?

A.    It's been this phone number.

Q.    You don't have any other phone numbers?

A.    No, sir.

Q.    Where is that cell phone right now?

A.    It is in my bathroom.

Q.    When is the last time you called somebody on it?

Chet Michael Wilson
December 12, 2025

Page 14

A.   I spoke with Mr. Peluso this morning.

Q.   Is there a reason why you haven't given me your cell phone records so I could verify that you actually use that phone?

A.   Is there a reason why I hadn't given it to you?

Q.   Yeah.  I've requested them, right?

Let me ask you this:  Did you see the document request that I sent?

A.   For my cell phone?

Q.   For documents in this case, I sent what we call a Request for Production of Documents.  Did you review that document?

A.   I'm assuming so.  I -- I didn't -- I don't remember that exact detail though so.

MR. BILES:  Okay.  Julia, will you pull that document up, please?  Go ahead and give us Exhibit 1.

MS. COONS:  Yes, sir.  One moment.

BY MR. BILES:

Q.   While she's doing that, sir, is it correct that you received something like 50 to 70 texts a day that you consider violations of the TCPA?

A.   I can't --

MR. PELUSO:  Objection to the extent it calls for a legal conclusion.  Go ahead.

A.   I can't answer to the exact number.  You know,

Chet Michael Wilson
December 12, 2025

Page 15

because it varies.  It's kind of random.  But I'd say I get at least probably 15 to 20 a day and some serious days potentially upward of, you know, 50, 60, 70, you know.  But I'd say that's more of a --

MR. BILES:  Julia, you can hang on now.  You can hang off.  That's fine.  We can have it up there.

BY MR. PELUSO:

Q.   Let's just finish this question, then we'll put it up there.  Okay.  So when you receive one of those texts, as I understand it your lawyers already know about it, because they have access to your account just the same as you do, right?

MR. PELUSO:  Objection to the form.  It's leading, lacks foundation.

BY MR. BILES:

Q.   You can answer, sir.

A.   I -- I don't know the process of how that works exactly.

Q.   Well, do you contact your lawyers and say, Look, I just received another text, sue somebody?

MR. PELUSO:  Objection to the extent attorney-client privilege, you've already told him you don't want to hear what he says to his lawyers.

BY MR. BILES:

Q.   I'll -- do you initiate contact with your

Chet Michael Wilson
December 12, 2025

APP. 016

Page 16

attorneys when you receive a text that you consider to violate the law?

A.   Yes, I send screenshots of my -- of my messages.

Q.   And in regards to -- let's make sure.  I believe you -- you have sued over four texts in this case, correct?

A.   Yes, sir.  Well, I -- I believe at least four, yes.

Q.   Out of more than four?

A.   I'm not certain.

Q.   Okay.  There's no voicemails, though, right?

A.   Not to my memory, no.

Q.   There were no phone calls either, correct?

A.   I can't speculate to that.

Q.   Are you suing Reprise based on them having called you?

A.   I don't believe so.

Q.   You're suing them only because of the text messages that you've alleged in the lawsuit, correct?

A.   From my understanding.

Q.   Someone other than you have a better understanding of what you're claiming?

A.   Well, I know at times I received more in the process of litigation, so at this time I'm not certain.

Q.   Julia, why don't you put up the doc request now.

Okay.  Mr. Wilson, this is, as you'll see

Chet Michael Wilson
December 12, 2025

APP. 017

Page 17

towards the top right, it says, "Defendant's First Request for Production to Plaintiff."

A.    Yes.

MR. BILES:  I will mark this as Exhibit 1.

(Deposition Exhibit No. 1 was

marked for identification.)

BY MR. BILES:

Q.    And I'm happy to have Julia walk you, scroll through this document.  But my -- my question really is only have you ever seen this document?

A.    Yes, it looks familiar.

Q.    Okay.  Do you have an issue with producing to me your phone records from September of 2024 to present?

MR. PELUSO:  Objection to the form.

A.    I leave -- I leave all, you know, legal stuff like that, I'd have to correspond with my representation (sic).

BY MR. BILES:

Q.    Okay.  What kind of -- who's your carrier currently?  Your cell phone carrier, just to be clear?

A.    Verizon.

Q.    And who was your carrier at the time that you received the texts that this lawsuit is based on?

A.    I've used Verizon as long as I can remember.

Q.    And what type of account do you have with Verizon, by which I mean what do you, how are you being charged?

Chet Michael Wilson
December 12, 2025

APP. 018

Page 18

A.   I have a prepaid account.

Q.   Okay.  What -- what does a prepaid account mean?

A.   It's just without the contract.  And it ends up, I think it's cheaper with the same benefits, so --

Q.   And I assume like -- like me, you have unlimited text messaging?

A.   Yes, sir.

Q.   And you're not paying per phone call, right?

A.   Nothing specifically, it's all included, all inclusive.

Q.   And so you're not paying for each text message received, correct?

A.   That's accurate.

MR. BILES:  Julia, would you put up the -- what we'll mark as Exhibit 2, Plaintiff's Responses and Objections to Defendant's First Set of Requests to Produce.

(Deposition Exhibit No. 2 was

marked for identification.)

MS. COONS:  Yes, sir, one moment.

BY MR. BILES:

Q.   All right, sir, can you see this document is titled "Plaintiff's Responses and Objections to Defendant's First Set of Requests to Produce"?

A.   Yes.  I'm reading it now.

Q.   Yeah.  Have you seen this document before today?

Chet Michael  Wilson
December 12, 2025

APP. 019

Page 19

A.   I believe so, yes.  It looks familiar.

MR. BILES:  Julia, if we go to Page 5 of that document -- can you go to Page 5 of that document, and can you make this big enough that everybody can read it?

And maybe they can, I don't know.  I need to make mine bigger.  Oh, now, I can.  I had my screen too small.

BY MR. BILES:

Q.   All right, sir.  If we look at Request No. 7, it says, "All documents that evidence" -- whoa.

Okay.  "All documents that evidence, refer or relate to any opt-out messages, (e.g., 'STOP'), consumer complaints, carrier complaints, or regulatory submissions made by Plaintiff regarding the alleged messages, and any responses or outcomes."

And then the response says, "Plaintiff possesses no responsive documents."  Is it correct that you have no responsive documents?

A.   To clarify, that would be of any action I had taken to opt out of the messages, is that correct?

Q.   That is one of the things requested, yes.

A.   And we're talking specifically about the Request No. 7, correct?

Q.   We're -- and we're specifically talking about Reprise and Reprise -- we're only talking about this

Chet Michael  Wilson
December 12, 2025

APP. 020

Page 20

lawsuit, not your other --

A.   Yes.

Q.   So is it correct that you did not respond to those messages at all?

A.   Yes, that is true.  And --

Q.   Go ahead?

A.   I -- I've found in the past that when I do respond it's more of click bait, and a lot of these companies, they'll wait until they find an actual person to respond, and then you get inundated with ten times as much stuff.

So, you know, from my past experience, it doesn't -- it's a very rare occasion when actually replying "Stop" works.

Q.   Did you apply to Reprise, "Stop"?

A.   If --

Q.   Did you apply "Stop" to Reprise's text messages?

A.   No, sir, I did not.

Q.   And at that point in time how many TCPA lawsuits had you filed?

A.   Once again, I'm not certain, exact number.

Q.   Approximately how many?

A.   Upwards of 70.

Q.   Okay.  Based on your knowledge, how many text messages would it take from Reprise before you could possibly sue them?

Chet Michael Wilson
December 12, 2025

APP. 021

Page 21

MR. PELUSO:  Objection, calls for a legal conclusion.

MR. BILES:  I'm just asking his -- his knowledge based on 70 cases.

A.   I believe it's more than one.

BY MR. BILES:

Q.   Okay.  And you already told us this, but remind us again how statute damages are calculated in the TCPA case.

A.   From my understanding is if they are intentional, it's $1,500.  If they are found not intentional, it's 500.

Q.   So if you'd applied "Stop" on the first text you received from Reprise, and if Reprise didn't send another text, you wouldn't have a lawsuit, would you?

MR. PELUSO:  Objection, calls for a legal conclusion.  Go ahead.

A.   If -- if you're -- I mean, if it's actually how it works.  You know, a lot of these companies I've seen completely the opposite, so I can't speculate on what would happen.  So --

BY MR. BILES:

Q.   And for each text they send you, you think you get more money, right?

A.   Yes, depending on the terms.

Q.   So to be clear, you didn't respond "Stop" because you wanted a lawsuit and you wanted more money, correct?

Chet Michael Wilson
December 12, 2025

Page 22

MR. PELUSO:  Objection, mischaracterizes testimony, leading.

BY MR. BILES:

Q.   You may answer, sir.

A.   It's -- I don't believe that's accurate at all, because I've taken every step that I can to try to get rid of these telemarketer phone calls.  And that's what has brought me here, prior to me knowing anything about TCPA action.

Q.   You said you took every step possible to stop text messages from Reprise and other lenders, correct?

A.   From anyone harassing me on my phone that's not -- that I'm not expecting to contact me, yes.  This has been five years plus I've been dealing with this.  And just now I've finally come to a situation where it's -- something's being done about it.

Q.   What steps did you take to stop text messages that you are complaining of from coming in?

A.   When I first received the phone, I started blocking every phone number that called me that wasn't somebody that I recognized, and I just got overwhelmed with that.

At that point, I -- I called, made sure that the phone number was on the Do Not Call registry and which it was and it still is.

Chet Michael Wilson
December 12, 2025

Page 23

And then after a matter of years of dealing with this, you know, feels like parasites harassing me all day long, every day, I can't answer phone calls, I can't text people, I can't listen to music without my phone going off.

So I did a web search, and -- and I think we went over this fact, it -- it led me to this law firm that's now helping me fix the situation, so to speak.

Q.   You said when you received the phone.  That's not really accurate, is it?

A.   When I received the phone number, yes.

Q.   Yeah.  You bought it, right?

A.   I --

MR. PELUSO:  Objection to the form.

BY MR. BILES:

Q.   Did you buy the phone number, sir?

A.   I did not buy the phone number.

Q.   You traded a title to a vehicle for it, correct?

A.   Yes, because for one, it was probably the only way I'd ever get compensation for the vehicle, because there had been no payments made.  And the specific person had a problem paying his bills is why I gave him the title for the number.

And I thought that it was a neat number that, you know, my friends, family and people in my life would be

Chet Michael  Wilson
December 12, 2025

APP. 024

Page 24

able to recognize easily.  So I was -- I was attracted to it for that reason.

Q.   When did you acquire the number, sir?

A.   On or about 2019, 2018, 2019, somewhere in there.

Q.   And from whom did you acquire it?

A.   It was an acquaintance of mine, a friend named Warren Brownlee.

Q.   And where does Mr. Brownlee live?

A.   I'm not certain, I haven't heard from him for years.

Q.   Where did he live at the time?

A.   He lived in Florence, Oregon, where I lived.

Q.   Do you know Mr. Brownley's date of birth?

A.   No, sir.

Q.   Can you spell his name for the record, please?

A.   I -- I believe this is correct, it's W-A-R-R-E-N, and last name is Brownlee, B-R-O-W-N-L-E-E.

Q.   So when you say you -- well, let's back up.  How exactly did you exchange title for the phone number?  How did that transaction happen?

A.   Okay.  He called me.  Actually the number showed up on my phone, I didn't have it in my contacts.  And I almost didn't answer it, I thought it was fake.  So I answered the phone and Warren was like, Hey, what's up, man?

And I said, What's going on with this phone

Chet Michael Wilson
December 12, 2025

APP. 025

Page 25

number?  How are you calling me from this?  Is it fake or what?

And he said, No, it's not fake, it just got generated to him.  Because he didn't pay his bill, got a new phone.  And so it got generated to him, so I was thinking about it.

I told him, I said, Hey, you owe me on the -- on the car.  If you give me, if you port the number over to me, I'll just give you the title to that car that you owe me on and we can be done with this.

And he agreed and that was the end of it.

Q.   How much did he owe you on the car?

A.   It was somewhere around a thousand, I believe.  Give or take.

Q.   I'm sorry, what was your friend's last name?

A.   Brownlee.

Q.   Did Mr. Brownlee tell you anything about that phone number?

A.   He didn't tell me anything, no.

Q.   Did he complain about receiving solicitations?

A.   No, sir.

Q.   When did you register the (541) 999-9999 number on the Do Not Call Registry?

A.   I -- I don't have a specific date.  I'm not certain.  I'd have to look back at the records.  I think I

Chet Michael Wilson
December 12, 2025

APP. 026

Page 26

do have that information somewhere.

Q.   What year?

A.   I believe, I mean, it's between 2019 and 2021, so I'm not sure the exact time when, you know, how long I took after blocking all the numbers didn't work, so --

Q.   When -- when did you -- when did you first become concerned that you were receiving text messages that you didn't want to receive?

A.   Almost instantly.

Q.   Since you acquired the phone number, approximately how many text messages do you think you receive on a daily basis, that you object to?

A.   I'd say at the very least ten, so --

Q.   So -- go ahead.

A.   Anywhere from ten to, you know, 50, 60 a day, you know, so it varies.

Q.   So those ten to 50 to 60 a day, you -- you find to be unauthorized solicitations, is that right?

A.   That's accurate.

Q.   So for approximately six years you've been receiving ten to 60 text messages a day that you consider inappropriate solicitations, correct?

A.   That's accurate.

Q.   And yet you didn't change your phone number, correct?

Chet Michael  Wilson
December 12, 2025

APP. 027

Page 27

A.    That's correct, for various reasons.

Q.    Okay.  What various reasons did you choose not to change your cell phone number for?

A.    For one, my life is driven by networking and my -- my collection of people that -- and resources.  So between that, my family, and everybody that's important to me, it's, you know, in a way it's a special phone number because all my family, my children, everybody can remember my phone number, without having to look it up.

And so that's, you know, the main benefit to me is, you know, I have this collection of people I care about that depend on access to me.  Some of which I might not even have their contact, just in passing, and so I think that I'd -- yeah, at this point the number's a part of -- a part of my life, so --

Q.    Any other reasons?

A.    No, sir.

Q.    Let's go back.  You just mentioned networking is a part of your life, is that correct?

A.    That's true.

Q.    And you've been convicted of distribution of cocaine, correct?

MR. PELUSO:  Objection to the relevance.

A.    I believe everything is in documents that you've been provided.

Chet Michael  Wilson
December 12, 2025

APP. 028

Page 28

BY MR. BILES:

Q.   No, that would be incorrect.  I -- I may have the documents, it's not because you gave them to me, you objected to them.  But have you been convicted of a felony?

Well, in the last ten years have you been convicted of a felony?

A.   No, sir.

Q.   Have you been convicted of any crimes in the last ten years?

A.   Just traffic.

MR. PELUSO:  Objection again to the relevance.

BY MR. BILES:

Q.   Go ahead, sir.

A.   I don't know if it's considered a crime, but only traffic stuff.

Q.   So you haven't been convicted of possession of marijuana?

A.   In the last -- no, sir, in the last ten years?  I don't believe so.

Q.   How is networking part of your life today?

A.   For one, I'm a holistic healer.  I get people off pharmaceuticals, help them deal with cancer and all kinds of different things.

I know some world healers that have helped me

Chet Michael Wilson
December 12, 2025

APP. 029

Page 29

along that path of knowledge.  I, yeah, just a lot of all my food is sourced through farms and through people that have ranches and I try to circumvent commercial food and sources. I just, yeah, there's a lot, lot of different reasons why networking is important, so I'm being self reliant, not depending on everybody else or anyone else for what I need, so --

Q.   What if anything is your current job?

A.   I do not have a current job.  I have an online health food, health store.  But that's more education than anything else, so I just -- I like sharing stuff with people, it's not about monetary.

Q.   When is the last time you were employed?

A.   I had -- I owned a moving company that I ended up dissolving around 2020.

Q.   What was the name of the moving company?

A.   It's called Barter Movers.

Q.   And how long were you affiliated with Barter Movers?

A.   I had -- it was about, I'd say about five years.

Q.   Why did you dissolve it?

A.   For one, the COVID thing messed up a lot of my work.  And multiple injuries, it was hard for me to do that hard of manual labor so I got ride of my equipment.

Q.   Where do I find your online health store?  What's

Chet Michael Wilson
December 12, 2025

APP. 030

Page 30

the web site?

A.   It is tank, T-A-N-K, dot, cultureforgood.com.

Q.   And are you able to earn any money from that online health store?

A.   I've say -- maybe made, I've made under a hundred dollars probably for the whole time.  I usually just order the stuff and then just resell it to my friends personally, so --

Q.   What does -- what does the term "tank" mean to you in the sense of why do you use "tank?"

A.   A while back I bought a bunch of military stuff. I trade, barter and trade military equipment, like decommissioned military stuff, like auction stuff.  And so everybody -- I'm a bigger guy and everybody just started calling me Tank, so --

Q.   Where do you live currently?

A.   I live in Eugene, Oregon.

Q.   What's the address?

A.   It is 29798 Willow Creek Road.

Q.   Is that a house, apartment, condo?

A.   Townhouse.

Q.   Townhouse.  And do you own the townhouse?

A.   No, sir. I just rent.

Q.   How much is your monthly rent?

A.   Roughly 2600.

Chet Michael Wilson
December 12, 2025

Page 31

Q.   And are you married?

A.   No, sir.

Q.   Do you have any kids?

A.   I have six children.

Q.   And do those six kids live with you?

A.   I have three full time.

Q.   And how old are the three?

A.   Thirteen, eight and five.

Q.   And the other three that you do not have full time, where are they?

A.   One is 19 and then the other two are with their mothers.

Q.   Are they with their mothers full time?

A.   Yes, during the school year, yes.  During the summer, I have them full time also.

Q.   I assume you have to pay child support, correct?

A.   Yes, I'm actually working with my ex right now, we're getting it all dissolved, so -- and, yeah.

Q.   So how do you earn sufficient money to pay for your rent, children, your other needs?

A.   I was --

            MR. PELUSO:  Objection to the relevance.

A.   Yeah, I have -- I have, you know, multiple assets that I can liquidate at any time.  Many resources that I've collected over the years and kind of squirreled away for

Chet Michael Wilson
December 12, 2025

APP.032

Page 32

myself and so, yeah, I'm doing pretty well for myself.

BY MR. BILES:

Q.    Do you have any income besides selling assets?

A.    No, sir.

Q.    When is the last time you had an income, other than from selling off assets?

A.    The moving company.

Q.    Okay.  Before -- before the moving company, what was your last employment before that?

A.    I had -- it's kind of always been the same thing, just networking, barter, trading.  You know, I lived a lot of my life without needing any kind of money or anything because of my collection of people.  I have everything I need at my fingertips, so --

Q.    Between -- after you shut down the moving company, we know you generate money from selling assets, correct?

A.    Yes.

Q.    Settling TCPA cases?

A.    Come again?

Q.    You also generate income from settling TCPA cases, right?

A.    If that's considered an income, I guess, yes.

Q.    Okay.  You -- you have money come in to you by selling assets and settling TCPA cases, correct?

A.    Correct.

Chet Michael Wilson
December 12, 2025

Page 33

Q.   Anything else?

A.   No, sir.

Q.   Let's go back and just do some basic background. Where did you go to high school?

A.   Siuslaw, Florence, Oregon.

Q.   Did you graduate?

A.   Yes, sir.

Q.   When did you graduate?

A.   2000.

Q.   And what did you do after you graduated?  Did you go to college, did you get a job, join the military, what?

A.   I did -- I worked with concrete a lot, pumping concrete, forms, foundations, construction stuff.

Q.   Okay.  And how long did you do that for?

A.   Maybe a couple years max.

Q.   And then what did you do after that?

A.   Then I started throwing events, charity events, festivals, gatherings.  And I kind of got into the holistic medicine scene.

Q.   How -- where is the money coming from for you to be able to throw events?

A.   I -- I've always just kind of bartered and traded up so, you know, vehicles I trade for better stuff or, you know, so I've really done amazingly well, even in my younger years straight out of high school, just, you know, trading

Chet  Michael  Wilson
December 12, 2025                                APP. 034

Page 34

vehicles and stuff like that, like the Barter Kings.

Q.    You've mentioned holistic medicine a few times now.  So do you have any degrees, certificates, other things that -- in regard to holistic medicine?

A.    No, I think western medicine has missed -- missed the target for a long time now, and I've just done a lot of my own research and I know some world healers that have taught me a lot of stuff about the simplicity of how your body works, and how to escalate your level of existence so, with natural stuff.

Q.    So I've asked you about sources of money, income, what have you.  You haven't listed holistic medicine.  Is that because you're not generating money from holistic medicine?

A.    That's accurate.

Q.    So in -- in what way are you practicing holistic medicine?

A.    Through education.  And giving folks the resource after they get the knowledge to make the choice on what kind of fuel they would like to put in their body to -- to, you know, get rid of deficiencies, which I believe are the basis of most disease is based on a deficiency.

Q.    Are you charging for that?

A.    No.  My compensation is watching people be healed and learn about themselves.

Chet Michael  Wilson
December 12, 2025

Page 35

Q.   All right.  So I'm just trying to get your work history.  So from -- you graduated in 2000, for a couple years you did construction?

A.   Yes.

Q.   And then you got into throwing events, is that right?

A.   Yes, sir.

Q.   Did that financially support you in some way?

A.   Yeah, I made -- I made some pretty good money doing that.

Q.   What kind of -- okay.  And how, for what period of time did you financially support yourself through throwing events?

A.   I mean it's hit and miss because that's an industry you can't really depend on always making money on, but, you know, on and off for a decade after high school.

Q.   I'm going to give you a chance to just -- because this is just background stuff, I'll give you a chance just to give me a narrative.  Between 2000 when you graduated and today --

A.   Mm-hmm.

Q.   -- other than what we've covered, what jobs, professions, et cetera, were you involved in to earn a living?

A.   Very few.  I've always been dependent on myself,

Chet Michael  Wilson
December 12, 2025

APP. 036

Page 36

followed a different route rather than the nine to five, and

it's -- I don't know, it's set me up in a situation where

I'm not dependent on the government.  I'm not dependent on

anyone else to provide for my family, because like I said

before, it's -- my network provides everything for me.  Just

a phone call away.

Q.    I understand being independent.  But, I mean,

there are many ways to be independent.  You can own a

business, you can -- what have you, but how are you

generating the ability to take care of yourself other than

there was a period of time where you did construction?

A.    Yes.

Q.    You did some events which is according to you hit

and miss and whether that works out well.

A.    Mm-hmm.

Q.    Then you -- you're buying and selling collectibles

or other things.

A.    Yeah.

Q.    And you settled some lawsuits.  Is there anything

else that you were doing to make money?

A.    That's -- I think that's -- I'm sure there's more,

but that's about -- that's all that I can think of.

Q.    Okay.  Are you on any medications today?

A.    No, sir.

Q.    Is there any reason that you would not be able to

APP. 037

Page 37

testify truthfully today?

A.   No, sir.

Q.   Have you been diagnosed with any mental, emotional issues?

A.   No, sir.

Q.   Do you know Brian ██████?

A.   I do not know Brian ██████.

Q.   Have you ever communicated with Brian ██████?

A.   Absolutely not.

Q.   Do you know anybody who does know Brian ██████?

A.   Who does know Brian ██████?  Nope, not to my knowledge.

Q.   Because you paused for a minute when I asked you if you knew Brian ██████?

A.   I don't -- I wasn't trying to, I think I didn't hear you correctly.

Q.   Have you ever indirectly communicated with Mr. ██████?

A.   No, sir.

Q.   Do you know any of his family members?

A.   No, sir.

Q.   Do you have -- strike that.

A.   I believe the first time I heard of Brian ██████, the full name, was in -- yeah, in this situation, in this case, so --

APP. 038

Page 38

Q.   You said full name.  Were you familiar with less than his full name prior to this case?

A.   Whose full name?

Q.   You said the first time you heard of Brian ████, you became familiar with his full name was in regard to this litigation.  Did you somehow know of his name separate and apart of this litigation?

A.   Well, in the text messages from the defendant, it stated Brian, so --

Q.   So when you received those text messages you knew they weren't intended for you, correct?

A.   Yes, sir.

Q.   And you didn't respond "Stop," correct?

A.   Like I said, I believed it was click bait.

Q.   It was yes or no.  Did you or did you not respond with "Stop"?

A.   I did not respond with "Stop."

Q.   Did you respond saying, Hey, you got the wrong person?

A.   There was no response.

Q.   And in this lawsuit you've alleged that Reprise is an auto lender, correct?

A.   Reprise is an auto lender?

Q.   Yeah.

A.   I don't know if that's all that they lend, I'm not

Chet Michael  Wilson
December 12, 2025

Page 39

certain.

Q.   Do you know if they lend on autos at all?

A.   I -- I'm not certain if what they -- what all they lend on.

Q.   Did you review the complaint before it was filed?

A.   Yes.

MR. BILES:  Julia, let's go ahead and mark Exhibit 3 and let's go through some issues with the complaint.

(Deposition Exhibit No. 3 was

marked for identification.)

BY MR. BILES:

Q.   All right.  Mr. Wilson, do you recognize this document?

A.   Yes.

Q.   And you reviewed it before it was filed?

A.   Yes, sir.

Q.   So if we go to Page 3, Paragraph 8, do you see that you allege that "Reprise is an auto-loan lender based in Texas"?

A.   Yeah.  Yes, sir.

Q.   What's your basis for that assertion?

A.   Well, it's -- I believe that -- was had to do with the investigation on my attorney's part.

Q.   So you don't have any knowledge, personal

APP. 040

Chet Michael Wilson
December 12, 2025

Page 40

knowledge of what Reprise is in the business of doing, is that correct?

A.   No, sir.

Q.   This is the problem with double negatives.  When you say, "No, sir," let me ask you, do you have personal knowledge about what Reprise is in the business of doing?

A.   Just lending.  I believe that's all.

Q.   But you don't know what type of lending?

A.   I think it's just one of those databases connected with like Lending Tree that connects with a bunch of different people to give a loan.  I'm not certain what all they do loans for but, you know.

Q.   Let's go down to Paragraph 11.  I'm sorry, I got the wrong number.  14, please.

Sir, if you can look at Paragraph 14, I'll read it first, "Unfortunately for consumers, Defendant casts its marketing net too wide.  That is, in an attempt to promote its business, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that repeatedly sends unsolicited telemarketing text messages to consumers' cellular telephones, including to those whose numbers are on the National Do Not Call Registry who did not provide prior express invitation or permission to receive such messages."

A.   Yes, sir.

Q.   Did I read that correctly?

APP. 041

Page 41

A.    Yes, sir.

Q.    What's the basis of your personal knowledge in regard to that paragraph?

A.    That the process of the way the defendant uses had the telemarketing campaign is too broad to where it includes people that are not involved whatsoever with their company, or not requesting any kind of interaction.

Q.    But what factual basis do you have to make that allegation?  How do you know that?

A.    Well, because I never -- I never contacted the business, and I never asked for this contact, and I'm the one that's forced to deal with it, so --

Q.    But as far as you know, have personal knowledge of, you're the only person that happened to, right?

A.    Yes, that's as far as my personal knowledge, but I would assume there's more.

Q.    Okay.  So it's just an assumption, correct?

A.    That's correct.

Q.    You're aware that Brian ███████ consented to receive text messages, correct?

A.    I'm not certain if he consented to text messages. I do understand that he was the one that -- that put my phone number into the database thinking it was fake.

Q.    So why are you suing Reprise for Mr. ███████ having entered your number?

Chet Michael Wilson
December 12, 2025

APP. 042

Page 42

A.   Because I was the one that had my privacy violated because of it and -- yeah.

Q.   Any other reasons for it?

A.   It's -- it's just a hassle.  You know, it's -- you know, hopefully in the end of this we can change the way that the defendant operates, and more people won't be bothered by similar situations.

MR. BILES:  Okay.  Well, Julia, why don't you pull up the four text messages with the Wilson Bates number on them.

We have a better copy, don't we?  Or, yeah, maybe not.  Maybe that's the right one.  All right.  I'm sorry, Court Reporter.  I forget, are we now on Exhibit 4, I think?

MR. PELUSO:  Yeah.

THE REPORTER:  I can look.

MR. BILES:  You're on mute.

THE REPORTER:  Sorry.  My automatic -- my automatic counter is not working, so --

MR. BILES:  That's okay.  I think -- I think Patrick and I agree we're on 4.

MR. PELUSO:  Yeah, I think you're on -- you're on 4.  You did sort of two versions of the request to produce, one that you served, one was the responses, then the complaint, now this, that's 4.

Chet Michael Wilson
December 12, 2025                                      APP. 043

Page 43

MS. COONS:  And I'm on No. 4 as well.

MR. BILES:  Julia, it's most important because you have to keep track of this, because you, after this is all over you have to send the court reporter the --

MS. COONS:  Yes.  Yes, sir, and Madam Court Reporter, if you wouldn't mind putting the email in the chat so I know where to send, at your earliest convenience. Thank you.

BY MR. BILES:

Q.  All right.  So, Mr. Wilson, this is a document that has a Bates label at the end that's Wilson a bunch of zeroes and then a six.  Do you see that?

A.  Yes.

Q.  Do you understand that's a Bates label meaning that it was produced -- well, in this -- it was produced in this case?

A.  For the court, right, or for this litigation here.

THE REPORTER:  I can't hear you all of a sudden.  Can you speak up, Mr. Wilson?

THE WITNESS:  Yes.  Can you hear me?

THE REPORTER:  Yeah.  You need to speak up. For some reason you went really quiet.

THE WITNESS:  Okay.  Yeah, I -- I just assumed that number is, you know, attached for litigation for the document.

Chet Michael  Wilson
December 12, 2025

APP.044

Page 44

BY MR. BILES:

Q.   Yes.  Mr. Wilson, do agree that these are the four text messages that you are suing over?

A.   That looks accurate.

Q.   Okay.  Do you see that the very first one says, "TXT STOP to Stop messages from this number"?

A.   I see that.

Q.   And that's in the second text message as well?

A.   Yes.

Q.   Third text message as well?

A.   Yes.

Q.   And the fourth one?

A.   Yes.

Q.   Now, by the way, I showed you the document requests earlier and your responses.  Can you tell me what if anything you did to locate documents to produce in this case?

(Deposition Exhibit No. 4 was

marked for identification.)

A.   I believe that's a screenshot from my phone that I sent, and I'm assuming I sent the link attached to it.  I don't know if that answers --

BY MR. BILES:

Q.   Well, you produced some other documents, and so what did you do to go try to find documents that you have

Page 45

that were to be produced by you through your lawyer?

A.   I usually -- I usually just when I find a text like that, I usually do a search on my phone to see what other interactions there are, and I produce all documents to the law firm.

Q.   Okay.  Did you -- did you -- did you search your emails for any communications with Brian ████?

A.   I don't know Brian ████.  No.

Q.   Did you search your Facebook for any of your posts that were relevant to this case?

A.   No, sir.  I don't believe there's any relevant to this case.

Q.   Okay.  You did offer to sell your -- your cell phone number, correct?

MR. PELUSO:  Objection to the form.

A.   Yes, years ago there was a brief period of time I was in correspondence with someone interested in purchasing it.

BY MR. BILES:

Q.   When was that?

A.   I -- I can't remember the exact dates.

Q.   It was on Facebook Marketplace, is that correct?

A.   Yes, I did -- I did put it on Facebook Marketplace for a period of time.

Q.   And you said you were willing to accept nothing

Chet Michael Wilson
December 12, 2025

Page 46

less than $20,000, correct?

A.   I don't -- I'm not sure if that's the wording, but that's -- I was offered 20,000 but it never panned out.

MR. BILES:  Julia, can you pull up that document, please.

BY MR. BILES:

Q.   Mr. Wilson?  You're Chet Wilson; right?

A.   That is me.

Q.   And that's your phone number, correct?

A.   Correct.

MR. BILES:  We'll mark this -- we'll mark this as Exhibit 5.

(Deposition Exhibit No. 5 was

marked for identification.)

BY MR. BILES:

Q.   And you posted this; correct?

A.   Yes, sir.

Q.   Okay.  And you said it was "a once in a lifetime opportunity to own the coolest number ever," right?

A.   Yes, sir.

Q.   You said you "gave a car title up for the number," correct?

A.   That's correct.

Q.   We covered that, is that correct?

A.   Yes.

Chet Michael Wilson
December 12, 2025

Page 47

Q.    So you were owed about a thousand dollars on the car, so you swapped the debt and title in exchange for a number, for this number, correct?

A.    Yes, I believed I would never get payment any other way, so that was -- yeah.

Q.    And then you say, "I passed up 20,000 already so unless it sells over that, I'm in no hurry to part with it." Is that correct?

A.    That's correct.

Q.    And do you know what year this was?

A.    It was not -- it wasn't long after I had acquired the number.  Within the year probably.  Yeah.

Q.    Would you sell the number today?

A.    Would I sell it?

Q.    Yeah.

A.    Well, at that point I hadn't connected that phone number with as many people, so it didn't have a personal value to me.  But no, I -- I wouldn't sell it at this point. I have too many people connected to it.

Q.    And you make too much money off of it, right?

          MR. PELUSO:  Objection to the form.

A.    To tell you the truth, if -- if I could use my phone, I'm fine without this money.  If I could use my phone without being harassed every day, I'd be more than happy to have a regular cell phone that's -- so, yeah, I don't think

Chet Michael  Wilson
December 12, 2025

APP. 048

Page 48

that has any bearing on my keeping the phone number.

BY MR. BILES:

Q.    Did you review your Facebook post before this deposition?

A.    Yes, I believe those are attached in one of the documents.

Q.    I have no idea what that means, attached to what documents?

A.    I know that there's some Facebook posts.  Well, I have, I believe there was a couple Facebook posts that were attached to this litigation.

Q.    Attached to what in this litigation?

A.    As part of the discovery?  I don't know the legal stuff, but I remember seeing a couple pictures of my Facebook stuff attached, what I believe, I think it was this particular litigation.  As you know, I have many.

Q.    Yes, I do.  Now, you keep -- let me ask you this:  You don't actually call anybody based on memorizing their phone number these days, do you?

A.    Very few.

Q.    Because it's easier and faster to go to your phone and select the number, right?

A.    Unless you have a phone number like mine.

Q.    You think people just dial your number, don't go to their phone?

Chet Michael Wilson
December 12, 2025

Page 49

A.    Yeah.

Q.    With their contacts?

A.    Lot of time.

Q.    Mm-hmm.  Wouldn't be very hard for the rest of us to call anyone else just using our phones right, we don't memorize phone numbers anymore?

A.    No, I -- but like --

            MR. PELUSO:  Objection to the form.

A.    You know, my --

BY MR. BILES:

Q.    Go ahead.

A.    I know there's a lot of times people don't have their phones with them, especially my children or family members or whatever, and it's been very helpful.  I've, you know, I've encountered some situations where someone memorizing my number has helped them a great deal, so --

Q.    How many phone numbers do you have memorized?

A.    Maybe ten, 15 numbers.

Q.    That's nine more than me, but, okay.  Or 14 more than me.

A.    That's how we used to have to do it all the time.

Q.    I know, especially people my age.  So for the -- for the fact that a few people have your number memorized, you wouldn't sell it for 20,000?

A.    You know, money isn't as value to me as -- as

Chet Michael  Wilson
December 12, 2025

APP. 050

Page 50

having those connections and, you know, like I said, I --
you know, I've lived my life without having to worry about
exchanging cash, you know.  A lot of my life surrounds just
barter and trade and having people that I've helped out that
are willing to help me out and vice versa.

It's just -- it's really nice not having to
deal with the structured society a lot of the time.

Q.   What social media accounts do you have, sir?

A.   I have two Facebooks, an Instagram, and that's the
majority, that's my social media.

Q.   So what are the two Facebook pages?

A.   It's the Chet Tank Wilson and there's another one
that's Tank tha Dank, T-H-A --

Q.   Wait.  It's just T-I-N-K T-H-E T-A-N-K?

A.   T-H-A is the Tank Tha Dank, with an A., not E.

Q.   And what's your Instagram page?

A.   Bunker Plot.

Q.   Any other social media?

A.   That's all I use.

Q.   Do you communicate with other people about
bringing TCPA suits besides your own lawyers?

A.   No, I've referred some people towards the process.
Other people that were being harassed.  And with no details
of any specific case or anything of that nature.

Q.   And you've referred them to your own lawyers, is

Chet Michael Wilson
December 12, 2025

APP. 051

Page 51

that correct?

A.  No, not -- just in general, the process.  You know, so --

Q.  Who if anybody have you spoken to about your lawsuit against Reprise besides your lawyers?

A.  Absolutely no one.

Q.  Not Sara -- it's not Sara Taylor?

A.  I have no direct communication with Sara Taylor whatsoever.

Q.  Ever?

A.  Not that I --

Q.  You have never heard of Sara Taylor in your life?

A.  I don't believe so.

Q.  You never communicated with Sara Taylor in your life?

A.  Uh -- no, I don't think so.

Q.  How about Antwane Johnson?  You ever communicated with Antwane?

        MR. PELUSO:  Objection, the relevance of this.  Neither one of those people is a plaintiff in this case.

BY MR. PELUSO:

Q.  I might make them a witness depending on what Mr. Wilson told them.  Those would be admissions.

A.  I've never spoken to any one of those people

Chet Michael Wilson
December 12, 2025

APP. 052

Page 52

whatsoever about this case or any matter to my recollection.

Q.   Never spoken to your own kids about your case?

A.   I mean, there's no reason why I'd ever talk to them about details of this case.  They wouldn't even be interested.

Q.   Okay.  So you've never spoken to anybody other than your lawyers in any way, and I see you -- let's back up.

You've never communicated with anybody, literally anybody besides your lawyers about your case against Reprise?

A.   Not to my knowledge, no.

Q.   How much money are you looking for from Reprise?

A.   Whatever the statutes direct, you know, whatever the Judge thinks fair.

MR. BILES:  Can we take like a ten-minute break?  I've got to use the restroom.

MR. PELUSO:  Sure.

(Recess.)

MR. BILES:  Julia, would you put up D11?

MS. COONS:  Yes.  One moment.  Which will be Exhibit 6.  You said E11?

MR. BILES:  The conviction table.

MS. COONS:  Okay.  Got It.  Thank you.  Yes, sir.

Chet Michael Wilson
December 12, 2025

APP. 053

Page 53

(Deposition Exhibit No. 6 was

marked for identification.)

BY MR. BILES:

Q.    All right.  Mr. Wilson, I've gone through your criminal history and I've attempted to limit it down to actual convictions.

A.    Okay.

Q.    Can you review this and tell me, one, if there's any of these that is wrong, and then two, if there's any I left out.

MR. PELUSO:  Just going to lodge a standing objection.  I'm not going to keep jumping in every time with a relevance objection.  It will be too choppy, but to all the questions related to criminal history, I object as to the relevance.

MR. BILES:  Understood.

A.    I mean, it looks all accurate.

BY MR. BILES:

Q.    So --

A.    I don't believe there's anything missing.

Q.    So we go down below -- so we go to 6, we get, "Possession of Marijuana," correct?

A.    Yes, sir.

Q.    And then 7 is "Manufactured/delivery of a controlled substance, Schedule 1.  Do you see that?

Chet Michael Wilson
December 12, 2025

APP. 054

Page 54

A.    Yes.

Q.    Can you tell me what that was?

A.    I'm not sure what the exact thing was.  This was all -- actually all that -- there was evidence planted on me for that one.  I don't know if that's relevant.  But, yeah, I don't know -- I don't now what the exact 7 or 8 are.

Q.    Okay.  For the items that are listed at 7 and 8, though, you were convicted, correct?

A.    Correct.

Q.    Do you agree that all 1 through 16 are things that you were convicted for?

A.    Looks accurate.

Q.    Okay.  Now, Mr. Wilson, earlier we showed you the four text messages -- actually, Julia, why don't you just put those back up.

This has got to be Exhibit 3 if my recollection is right.  No, it's -- well, it doesn't matter.

MS. COONS:  I have it as Exhibit 4.

MR. BILES:  As what?

MS. COONS:  Exhibit 4.

MR. BILES:  Yeah, that's what I thought.  I had it wrong.

BY MR. BILES:

Q.    All right.  Mr. Wilson, I'm showing you again which is Exhibit 4, which is the four text messages at issue

Chet Michael  Wilson
December 12, 2025

Page 55

with Bates label Wilson ending in 06.  Do you see that?

A.   Yes, sir.

Q.   When the text at the top came in, did you even read it?

A.   I don't recall if I read the first one or if I noticed after there was several or more than one.

Q.   Did you read the second text at the time?

A.   I've read -- I've read all the texts.

Q.   I understand that.  When that text came in, did you read it?

A.   I don't recall if I did directly at that time or not.

Q.   Did you read the third text, and we're numbering them from top to bottom, the third text, did you read that when it came in?

A.   I don't recall.

Q.   The fourth text, the bottom text, did you read that when it came in?

A.   I don't recall.  I just constantly have an inundation of similar messages, so hard to remember if I did at the exact time.

Q.   And you didn't respond to any of those, right?

A.   No, sir.

Q.   So to the best of your recollection the first time you dealt with these texts, you took an image of it and sent

Chet Michael Wilson
December 12, 2025

APP. 056

Page 56

it to your lawyers; is that right?

MR. PELUSO:  Objection to the form.

A.  I don't recall.

BY MR. BILES:

Q.  Before sending this to lawyers, how much of your life did this take up?

MR. PELUSO:  Objection to the form again.

BY MR. BILES:

Q.  None, right?  You didn't even -- you don't even remember reading them?

A.  I don't remember the time that I read them, but I do remember reading them, yes.

Q.  Sure.  You know that you read them when you took an image of it and sent it to your lawyers; right?

MR. PELUSO:  Objection to the form.

A.  At the very latest date.  I assume I had read them earlier, too.

BY MR. BILES:

Q.  How, if at all, do you claim receipt of those four texts hindered you?

MR. PELUSO:  Objection.  Calls for a legal conclusion.

A.  I didn't even understand your question.

BY MR. BILES:

Q.  Do you contend that you suffered an injury because

Chet Michael Wilson
December 12, 2025

APP. 057

Page 57

you received those four texts?

A.    Absolutely.  This added to my harassment that I deal with every day, so, yeah, it definitely did.

Q.    Well, if you're receiving ten to 60 a day, it's not that much a big of a deal to receive one more, right?

MR. PELUSO:  Object to form.

A.    Every one -- honestly every one is a huge harassment to me.  And, you know, it's all these together that cause a huge problem to me.  And this is definitely, you, it's not helping the issue whatsoever.

BY MR. BILES:

Q.    How did -- just tell me, how did the very first text skip all the others?  How did that first text cause you to be harassed, if at all?

A.    It's -- I mean, it's been a matter of time.  I don't understand, I don't remember the exact frustration that I had in the moment that I had read those, but I don't -- I don't like any of these texts.

Q.    That's not true, sir.  But we'll get to that.  But you love these?

MR. PELUSO:  Objection.

BY MR. BILES:

Q.    You said so on line, right, sir?  You've said you love this.

MR. PELUSO:  Objection, harassment, form,

Chet Michael  Wilson
December 12, 2025

APP. 058

Page 58

relevance.

A.   I don't -- I don't believe that's accurate at all.

BY MR. BILES:

Q.   This is how you make money right, sir?

MR. PELUSO:  Objection.  Same objections, plus asked and answered.  We've already extensively gone over them.

BY MR. BILES:

Q.   Sir, you want these text messages -- sir, you want these text messages, don't you?

MR. PELUSO:  Object to form.  Objection. Harassment.

BY MR. BILES:

Q.   You can answer.

A.   We've -- we've been over this.  I absolutely do not want these, as I stated earlier on the record under oath.

Q.   How did receiving the first text -- well, do you, let's make sure I understand everything you're saying. You're claiming that you're injured because this harassed you, is that correct?

A.   It's a huge -- it's a huge burden to me, yes.

Q.   Anything else?

A.   No.

Q.   Okay.  How is it a huge burden when you received

Chet Michael  Wilson
December 12, 2025

Page 59

the first text that you didn't read or that you don't recall reading until after you sent it to your lawyers?

A.  Oh, this is an ongoing burden that these text messages has led me to.  You know, I had to go buy a computer so that I could do this, I had to sit here and do all this, I had to go over all these documents.

I'd rather just have not gotten the messages in the first place and never dealt with this, honestly.  I don't need the money from it, but I'm going to hold these people accountable if I'm being harassed, because I guarantee I'm not the only person.

And that's my main goal here is to stop these and create a situation where these people can respect consumers and not harass them as a class, as for everybody. Not for myself only.

Q.  You've never had a class certified, though, have you, sir?

A.  Excuse me?

Q.  You've never had a class certified, have you?

A.  I'm not sure what that means.

Q.  How many cases have you settled?

A.  Upwards of 20.  I don't know.  I'm not certain exactly.

Q.  Did anybody besides your -- you or your attorneys receive anything from those settlements?

Chet Michael Wilson
December 12, 2025

APP. 060

Page 60

A.    I assume so, yeah.  I think so.

Q.    On what basis do you assume so, sir?

A.    Well, I know there's at least one incidence where I've been a co-plaintiff and I believe the case was settled, so --

Q.    Okay.  Fair enough.  Did anybody besides you, a named co-plaintiff, your attorney and any named co-plaintiffs receive any money?

A.    I can't -- I can't speculate on how funds are disbursed, you know, but, yeah, I don't -- I don't know all the -- that's all -- my attorneys do all of that stuff, so --

Q.    Did you ever get a class any relief whatsoever?

A.    I don't understand the question.

Q.    Sir, you've filed 70 potential class actions, right?

A.    Somewhere around there.

Q.    And you understand as a result there's a difference between you receiving money, and the class receiving money, correct?

A.    I believe the same standards of compensation are for everybody.  I don't -- I don't necessarily understand how that's distributed.  And I -- I don't actually understand the -- how the difference, how the class -- I -- I don't understand all the little -- the verbiage as far as

Chet Michael  Wilson
December 12, 2025

APP. 061

Page 61

how it goes.

Q.   Okay.  Okay.  Do you know whether you ever got a class certified?

A.   I don't believe that it's moved to a class certification on this case as of yet.  But I believe.

Q.   How about the other cases?

A.   I don't -- I don't recall exactly, no.

Q.   You do, you recall that you have not had a class certified, don't you?

A.   I don't know what the class certified, I don't know what that means.

Q.   Sir, I think you'd remember if you got a class certified, don't you think so?

A.   I don't -- I don't know -- I don't know what class certified, actually the --

Q.   So you brought 70 class actions, you don't know what a class, getting a class certified is?

A.    I've never been told that term directly like that, class certified, no.

Q.   Okay.  Now, I understand that what you say is receiving all these texts from all these lenders in conglomeration, you say that's a burden, a huge burden.

But that's not my question.  My question is how, if at all, do you claim that receiving the four texts that are currently up on the screen burdened you, or

Chet Michael Wilson
December 12, 2025

APP. 062

Page 62

otherwise harmed you in any way?

A.   Every time I get a text it's -- it just irritates me.  It's irritating, it's like a little gnat just bothering me.  So every single time that I get one of these texts that's not meant for me, it upsets me, and I don't enjoy it and that's why we're here.

Q.   Well, we're here because you want money, right, sir?

MR. PELUSO:  Objection to the form.
Objection, harassment.

A.   I'd be -- oh, go ahead.

BY MR. BILES:

Q.   Go ahead.

A.   I'm -- I'm content without any money just as long as this stuff stops.  I mean, I'd -- I don't -- you know, I think I should be compensated for what's been done so far, and I think the biggest thing to me is making sure that if anybody else is in this situation that they're compensated even over myself -- that's the least of my worries is my own personal compensation.

Q.   Yet you care so much that you can't tell me whether you ever got a class certified, right?

MR. PELUSO:  Objection, asked and answered.

A.   I just don't know what that means.  So it's not me avoiding anything, I just don't understand what that all

Chet Michael  Wilson
December 12, 2025

Page 63

pertains to.

MR. BILES:  Okay.  Julia, can we go back to the complaint?  Can we go to the prayer, Page 9?

BY MR. BILES:

Q.   All right.  Mr. Wilson, do you see Paragraph B there?

A.   Yes.

Q.   So you're asking for, An award of statutory damages in the amount of $500 for each violation, whichever is -- which is greater -- what -- oh, whichever is greater all to be paid into a common fund for the benefit of the plaintiff and the class members, correct?

A.   Yes, sir.

Q.   All right.  So for you personally, how much money is that?

A.   That would be $2,000 if -- as long as they weren't found to be intentional.

Q.   Well, you haven't pleaded intentional, right?

A.   What's that?

Q.   You haven't requested the $1,500 version, correct?

MR. PELUSO:  Objection to the extent it calls for a legal conclusion.

A.   Yeah, I believe we're waiting on a legal conclusion before.

Chet Michael Wilson
December 12, 2025

APP. 064

Page 64

BY MR. BILES:

Q.   Do you know why you haven't pleaded for $1,500 per violation?

A.   I believe that's, you know, I give that to my attorneys to kind of find out what standards that -- yeah.

Q.   Okay.  So -- and to be frank, you also asked for attorney's fees if we went down -- Julia, scroll down.  He's asking for attorney's fees, too.

And you want attorney's fees, correct?

A.   I believe that's how it's written out in the statute.

Q.   So on your best day you personally would get, according to you, $2000 plus attorney's fees, correct?

A.   Uh --

MR. PELUSO:  Objection.  That mischaracterizes the testimony.  Also calls for a legal conclusion.

A.   Yeah, I don't understand if these have only been found to be nonintentional or if they -- more information is, could possibly change that, so I'm not certain.

BY MR. BILES:

Q.   I'll help you out.  You haven't pleaded intentional because then you could never get a class, and so you're not asking for $1,500 because then you're -- your lawyers have made -- made a decision about this that you've

Chet Michael Wilson
December 12, 2025

Page 65

agreed to.  So how much is it that you want from my client to have this case go away?

A.  I guess according to this, probably 2,000 and attorney fees, I'm assuming, at least.

Q.  Would you settle on that?

A.  I'm not certain I'd have to talk with my counsel.

Q.  Okay.  That's fair enough.

MR. BILES:  Julia, let's start pulling the Facebook ones.  Let's -- I'll tell you which one in a second, Julia.

MS. COONS:  Okay.

BY MR. BILES:

Q.  All right.  Let's go with tab 10.

Mr. Wilson, I think you covered this already, but Chet Tank Wilson is one of your Facebook pages; right?

A.  Mm-hmm.

Q.  Did you make this post?

A.  I did.

Q.  Okay.

A.  Yes.  Shows my frustration in getting all these calls.

Q.  You got no calls from Reprise, though, right?

A.  I'm not certain at this point.  That was quite some time ago.

Q.  All right.  So, and so, but you were saying you're

Chet Michael  Wilson
December 12, 2025                               APP. 066

Page 66

getting 30 to 70 telemarketer calls a day, is that correct?

A.    I don't recall how accurate that is, but that seems to be the case.

Q.    You wouldn't post something that was inaccurate, would you?

A.    No, but it's five years ago, so hard to remember details.

Q.    How do you know this was five years ago?

A.    Because it says at the bottom.  Five years ago. The screenshot or whatever it is.

Q.    Oh, I see.  Okay.  Thank you.

MR. BILES:  Julia, let's go with tab 9.

MS. COONS:  Are we marking this one?

MR. BILES:  Oh, I'm sorry, yeah.  Let's mark this as Exhibit -- I think we're on 7 now.

MS. COONS:  Yes, sir.  Okay.  And you said 9?

MR. BILES:  9.

(Deposition Exhibit No. 7 was

 marked for identification.)

(Deposition Exhibit No. 8 was

 marked for identification.)

BY MR. BILES:

Q.    All right.  So now we're at Exhibit 8.

Mr. Wilson, this is posted by you, is that correct?

Chet Michael Wilson
December 12, 2025

APP.067

Page 67

A.   Yes.

Q.   Well, top one is posted by you and then there's other people communicating, and then we go down a little bit later and we get you responding to Liz Anderson, is that correct?

A.   Yes, sir.

Q.   So this post you originally posted on December -- well, 2022, right?

A.   Yes, sir.

Q.   And at that time you were receiving, what, 30 to 70 solicitations a day?

A.   I mean, I'm sure there's a variance, but, you know, it's random, but, yes, somewhere in that vicinity.

Q.   Okay.  And then you tell Liz Anderson, "I literally got to say all the 9's.  Definitely once in a lifetime.  The universe loves me."

That's what you told her, right?

A.   Yes.  That's what I said.

Q.   Okay.

A.   I do think it's important you read the rest of that comment, though, because it's -- I'm an optimist, so I'm going to turn anything negative hopefully into something positive.

Q.   Move to strike, nonresponsive.

MR. BILES:  Let's go to tab 6, Julia, so this

Chet Michael  Wilson
December 12, 2025

APP. 068

Page 68

will be the next exhibit, 8, I think.

(Deposition Exhibit No. 9 was

marked for identification.)

BY MR. BILES:

Q.   All right.  So Mr. Wilson, do you see, first of all, you see where it says Chet Tank Wilson?

A.   Yes, sir.

Q.   And then you're responding to a Celeste Gable, is that correct?

A.   Yes, sir.

Q.   And did you in fact make this post?

A.   Yes.

Q.   Did you refer her to one of your attorneys?

A.   I don't believe she ever followed through with anything, or we spoke anymore other than this post.

Q.   And in this message you then -- you go on to say, "What I did is just gave her tech guy my iCloud and they stay on top of it.  They are going back five years, the biggest thing is keeping all the voicemails."  Did I read that correctly?

A.   Yes, sir.

Q.   And do you know when you posted this?

A.   It says one year, but I'm not certain how long it's been.  Yeah, probably, that's probably accurate because that's right about when I started learning about how to do

Chet Michael Wilson
December 12, 2025

APP. 069

Page 69

these cases, so, yeah.

So I didn't have the exact accurate details to give her, it was just kind of -- obviously I was in the introductory stages of learning this process.

Q.   So you gave the tech guys at one of your law firms access to your iCloud so they could stay on top of the text messages you were receiving, is that right?

A.   I don't believe -- it's not necessarily stay on top of it, but to -- I had five years of all this stuff gathered, and it was nearly impossible for me to go through all of it and get all the details and stuff without some kind of technical, somebody to help me go through it all.

Q.   Okay.  So you were -- you wanted to go back and find every lawsuit you could bring under TCPA, right?

A.   Yeah, you know, after years of being harassed, I definitely wanted compensation for all that.  I've spent so much of my personal time trying to resolve this situation, prior to them even acknowledging there was any kind of claim or TCPA action, you know.

And I, as in the last document you showed me, I said I'm going to keep this number and that's prior to me ever knowing there was money involved in it, so it just goes to show, and documents and supports everything I'm saying here, so, yeah.

Q.   So I mean you've got to have help going back

Chet Michael Wilson
December 12, 2025                                    APP. 070

Page 70

through all your text messages because you didn't really pay that much attention to all of them, so now you got to go back and find the ones that you want to sue over, right?

MR. PELUSO:  Object to the form.

A.   I don't think that's accurate whatsoever.  I believe that when you deal with such a volume of harassment, it's -- it's hard to decipher which is what.

So you have to, you know, you have to organize that to where you can acknowledge who's all at fault for all these period of years that I have been harassed.  Before I knew there was any kind of compensation.

BY MR. BILES:

Q.   And when you have a large volume of text messages coming in, you don't really read every one of them, right?

MR. PELUSO:  Object to the form, leading.

A.   I go through them all.

MR. BILES:  Go ahead, sir.  You may answer.

A.   I usually go through the majority of my texts and calls, yes, I do.

BY MR. BILES:

Q.   Every single text that comes in, as it comes in you read it?

A.   Well, it pops up on my screen usually when I'm trying to do something else, and I get the -- I get the text message and I read it and then, you know, and then sometimes

Chet Michael Wilson
December 12, 2025

APP. 071

Page 71

I get multiple and then I'm like, Wow, okay.  This person is really harassing me, so let me send this, so --

Q.   So you're claiming that unbelievably, unlike the rest of us, you read the text messages that come in as they come in, every single one of them?

A.   I did not say that.

Q.   Even though you can tell -- even though you can tell the second you see it that it's not something you want to deal with.

MR. PELUSO:  Objection to the form.

A.   Well, when it -- when it pops up in a notification I'm forced to read it right there, usually, and so yes, I do, the majority of them while I'm awake anyways, I -- I -- I read them.

BY MR. BILES:

Q.   Why?

A.   To see what they're about.

Q.   Why?

A.   Because I have to weed through all this stuff to find out what has to do with me and what could be connected to something I'm doing, or if I have a bill or whatever because I do have a lot of different things attached to my private phone number.  So if I'm getting something, I'm going to make sure it's not something important that I have to -- that I'm going to overlook.

Chet Michael Wilson
December 12, 2025

APP.072

Page 72

Q.   How long would that take you?  Tenth of a second?

A.   I mean it doesn't matter.  When they all add up, it's a waste of my life.

Q.   I didn't ask you that question.  I asked you how long did it take per text?

A.   Every text is different, sometimes there's links, so, you know, that's not -- that's not -- that's not something I can answer accurately.

MR. BILES:  Julia, let's go to tab 5.

MS. COONS:  Okay.  We're marking this one as Exhibit 9, correct?

MR. BILES:  Yes.

MS. COONS:  Okay.

MR. BILES:  Better mark this one that's coming up as the next exhibit.

MS. COONS:  Okay.  Tab five.

(Deposition Exhibit No. 10 was

marked for identification.)

BY MR. BILES:

Q.   Sir, this is a post you made on your Chet Tank Wilson Facebook account on -- I need my glasses -- on December 10th, 2024, correct?

A.   Yes, sir.

Q.   And on that day you said you had "36 class action lawsuits so far, and this is my first offer."  Correct?

Chet Michael Wilson
December 12, 2025

APP. 073

Page 73

A.    Yes, sir.

Q.    How much was the offer?

A.    I don't remember.

Q.    Did you settle it?

A.    I don't recall.

Q.    What case was it?

A.    I don't recall.

Q.    You don't remember the very first time you got a settlement offer, you can't tell me what case it was in?

A.    I don't know.

Q.    I mean, you're a professional.  You have 70 of these.  You don't remember which one?

A.    That's why I don't.

        MR. PELUSO:  Object to the form.

A.    That's why I don't remember, because there's a lot of them.

BY MR. BILES:

Q.    Too many to keep track of, right, sir?

A.    Accurately, yes, without looking at documents.

Q.    Because as you said right there, "I sign several new claims each week so looks like my phone number is gonna be another line of steady income for me," exclamation point.  Correct, sir?

A.    That's what I wrote.

Q.    So these lawsuits including the lawsuit against

Chet Michael Wilson
December 12, 2025

Page 74

Reprise under the TCPA are a line of steady income for you, correct, sir?

A.  Yes, that's what I wrote.

Q.  And it' true?

A.  Yes, that's true because after all this harassment it's like a light at the end of the tunnel, I was excited. Yeah, I was excited that I'm finally going to be compensated for all this time that I've wasted in my life dealing with people that I don't even know.

Q.  And you kind of enjoy these lawsuits, right?

A.  I don't --

MR. PELUSO:  Objection to the form.

A.  I don't enjoy any part of this, to tell you the truth.

BY MR. BILES:

Q.  You're out there posting telling other people how to do it, right?

A.  To help other people.  Just why I'm -- why I'm trying to bring these class actions.  Exactly.

Q.  Um-hmm.  Do you know how -- I'm going to ask you this again:  Do you know how much you've received in settlement under TCPA?

A.  I thought we went over this.

Q.  Do you know if your lawyers in other cases have settled for six figures?

Chet Michael Wilson
December 12, 2025

APP. 075

Page 75

A. On larger cases I believe that wouldn't be that far off.

Q. So how much did you get?

A. Without looking at documents, I can't --

Q. What documents would we need to see in order for us to determine how steady of a line of income this is for you, sir?

A. Will you repeat that one more time?

Q. What documents would I need to review in order to determine how steady of a line of income TCPA lawsuits are for you?

A. It would have to be something that you'd received from my attorneys, or, you know, I mean, I sign every document, so I don't know.

Q. So I asked for every document in every lawsuit, right, you saw that in the doc requests?

A. Yes, I believe so.

Q. And you know that you said that that was overly burdensome and too hard for you to do, right?

MR. PELUSO: Objection. Calls for a legal conclusion and these were legal objections.

A. This is all -- this is all things that I would refer to my attorneys to produce. I'm not very tech savvy.

BY MR. BILES:

Q. You don't have to be, but in order to say it's

Chet Michael Wilson
December 12, 2025

APP. 076

Page 76

harass -- it's too much for you to do you'd have to know that it's too much for you to do. How hard is it for you to produce the files that your lawyers have, sir?

A. Accurately without missing anything, I wouldn't feel comfortable that I'm good enough at doing computer work and stuff.

Q. Wouldn't be hard for them to produce the settlement agreements, though. You'd agree with that, right?

A. I'm not certain. That's a question for them.

Q. That's a question for you, then, you could produce them, is that right?

A. So --

MR. PELUSO: Objection to form.

A. I try not to add any more burden to this than I have to. That's why I have attorneys.

BY MR. BILES:

Q. Yeah, so you get to sue people and add burden to them, but you won't produce basic documents, sir. Is that your position?

MR. PELUSO: Objection to form. Harassing.

A. It's -- I don't know how that's in my hands. That's why I have attorneys.

MR. BILES: Oh. Julia, let's go to tab four which we'll mark as the next exhibit number, which -- what

Chet Michael Wilson
December 12, 2025

APP. 077

Page 77

are we on, 11 now?  It will be 11?

MS. COONS:  It will be 11.  Tab 4.

(Deposition Exhibit No. 11 was

marked for identification.)

BY MR. BILES:

Q.    Sir, do you recognize -- can you just tell us what this is?

A.    This is my Facebook account.

Q.    And a post that's down there under Chet Tank Wilson, you posted that, right?

A.    Yes, I did.

Q.    So in there you claim you got -- started getting blown up years ago with robot calls and prerecorded nonsense, right?

A.    Will you repeat that?  I was read -- I was trying to read it.

Q.    It says, "I've been getting blown up for years with robot calls and prerecorded nonsense."  Did I read that portion of that sentence correctly?

A.    Yes.

Q.    And when did you make that post?

A.    I'm not certain.  There should be a date on it, but it doesn't, it was just -- I don't know.  Within the last year.

Q.    How do you know it's within the last year?

Chet Michael  Wilson
December 12, 2025

APP. 078

Page 78

A.    Because I just started the TCPA actions, I just got knowledge of the TCPA actions a year ago when I contacted the law firm to help me decipher all this.

Q.    So you contacted --

A.    So has to be within the year.

Q.    Okay.  So in a year you filed 70 lawsuits?

A.    Roughly.

Q.    And do you see there you just -- it says, "I just signed two more class actions this morning and I have been signing 1 - 3 per day since I started a month ago."

A.    Yes, sir.  Lots of work to be done.

Q.    And you've mentioned there at that point you had brought 30 suits so far, is that correct?

A.    That looks accurate.  I'm sure I wasn't exaggerating.  I think this outlines my stance from the get-go is that, you know, I was finally excited that this burden is actually bringing me some compensation, because I'd been frustrated for years.

It's absolutely, yeah, it's insane for what I've had to go through to get to this point.

Q.    Just to be clear, for years you were being, receiving 30 to 70 text messages a day you thought were violations of the TCPA, right?

A.    Yes, sir.

Q.    Okay.  And not one time did you respond to any of

Chet Michael Wilson
December 12, 2025

APP. 079

Page 79

those with "Stop," correct?

A.   Yeah, I did with multiple, and I told you earlier in the previous comments that I believe I found it's click bait.  And the majority of the time when you do respond in any form whether its "Stop" or what have you, it just entices them to realize there's somebody real on the other end and it makes it worse.

Q.   When is the last time you responded "Stop"?

A.   I'd have to look back through my texts, but at least, you know, it's -- I just had -- I just had some the other day that I found that I pushed "Stop" and it was, there were multiple messages afterwards.

Then I said "Stop" again and there's more multiple messages, and so, yeah, I do have documents but it would take me some time to track them down.

Q.   So you did -- okay.

A.   I have proof of when I typed "Stop," it's not working.  So at least, you know, at least one occasion that is in my memory.  So --

Q.   You didn't give Reprise that chance, though, right?

A.   After over and over and not working, it -- yeah, there's -- I mean it just seems like it could make that situation worse, so it's just more time I'd have to invest in something that would never come to fruition.

Chet Michael  Wilson
December 12, 2025

APP.080

Page 80

Q.   But just to be clear, you did not send "Stop" in response to Reprise text messages, right?

A.   I did not because I thought it would be detrimental.

Q.   Earlier you said you had to invest in doing these lawsuits and you bought a computer, is that right?

A.   I'd invested, yeah, I had to buy a computer and then -- I mean, my time is far more valuable than that.

Q.   So why did you buy a computer to do these lawsuits?

A.   Because it was my understanding I needed an actual PC rather than my iPad that I already had, and I believe it was at the request of the defendant, so that's -- that's why.  Otherwise I wouldn't spend a penny on this.

Q.   What were you using -- what are you using the computer to do in regard to the lawsuits?

A.   I believe it was the connection with the Zoom and having a steady camera, and that's my understanding.  I don't -- I don't -- I'm absolutely the least technical savvy person you'll ever meet.  So I just, yeah, I was told that that's what's needed, so I went and got a computer.  And here I am.

Q.   What else have you done to invest in these lawsuits?

A.   Mostly my time, you know, it takes a lot of time

Chet Michael Wilson
December 12, 2025

APP. 081

Page 81

and, yeah, you know, I've -- I've learned a lot over the last year.

Q. How much time do you -- how much time do you invest in this on a weekly basis?

A. I don't know. Maybe five to ten hours, depending on how -- how much harassment I get a week. And that's just on -- actually more than that because -- I don't know, I'd say potentially upwards of 20 hours a week.

Q. And what are you doing for those 20 hours you invest into litigation?

A. Gathering information, sending documents that I think would pertain to TCPA actions, forwarding voicemails, transcripts of voicemails, you know, going through documents, preparing for depositions.

Just paperwork and paperwork and paperwork, all, you know, looking in my emails all the time. There's -- it's a lot to it. It's, you know, it's a -- it's a job. A job I never -- I never asked for, so --

Q. Well, no one is making you file these lawsuits, right?

A. Nobody's making me.

Q. And I assume the law firm didn't ask you to file them, you went to the law firm, right?

A. Yes, sir.

Q. Are you sure you found the law firm you're using,

Chet Michael Wilson
December 12, 2025

APP.082

Page 82

not Mr. Peluso, the law firm that referred you to Mr.

Mr. Peluso by Googling them?

A.   Yes.  I believe in a previous discovery we even produced that.  My search -- not with this case in particular, but I believe the search, there is search history of me looking for representation.

Q.   They're not the easiest firm to find on the internet, are they?

A.   I believe I clicked one of the first options so I had never heard of them prior, that's for sure.

MR. BILES:  I'm pretty much done, so we'll take a five-minute break and then I'll make sure we're done?

MR. PELUSO:  Okay.

(Recess taken.)

BY MR. BILES:

Q.   Mr. Wilson, I just want to understand one issue. You say in order to make ends meet you're doing that by selling things.  What are you selling?

A.   I have multiple pieces of equipment.  I collect decommissioned military equipment, semi-trucks, transport buses, Unimogs, 6 by 6 cranes, you know, many different military things.  And, you know, cars, trucks, what have you.

And I do a lot of bartering and trading and it works really well.  I'm really good at it.

Chet Michael Wilson
December 12, 2025

APP. 083

Page 83

Q.   In order to barter or trade, you have to already own stuff which requires money.  I'm still trying to figure out where the money is coming from for these lawsuits.  So you haven't had an income in forever, right?

A.   About five years.

Q.   Okay.

A.   I made really good money moving people with my moving company that I owned.

Q.   How much did you make?

A.   I'm not certain exactly, but --

Q.   Well, you're the one who said really good money, so what does really good money mean to you?

A.   Well, a lot of the things is barter movers, so to put into clarification, a lot of these elderly people that are moving into retirement facilities, they'd give me basically all their assets that wouldn't fit in their place, in trade for doing the move.

So then I'd, in return I'd put them online or, you know, sell whatever kind of stuff that I get out of it, furniture, what have you.  And, you know, so I had an accumulation of many, many things that I acquired while doing this moving, and, you know.

So I'd say a lot of my assets come from like kind of a residual based on the work I put in years ago. So, you know.

Chet Michael Wilson
December 12, 2025

APP. 084

Page 84

Q.   Okay.  Well, how much were those items of the estates -- that's not right, they're still alive, but of the materials, equipment, stuff they gave you, how much was it worth at the time because you'd have to know that in order to fill out your tax returns?

A.   I had a CPA so he handled all that stuff.  I mean it would be something I'd have to like go back into documents about, so, yeah.  I always have different little, facets of, you know, things trickling in because of my network and, you know, I just -- it's kind of neat.

MR. BILES:  Okay.  I'll pass the witness.

MR. PELUSO:  I don't have anything.

THE REPORTER:  Are you going to order, Mr. Biles?

MR. BILES:  Yes, I am.

THE REPORTER:  Did you want to order, Mr. Peluso?

MR. PELUSO:  Yes, please.

THE REPORTER:  Do you want him to read and sign?

MR. PELUSO:  Yeah, we'll read.

THE REPORTER:  And you'll handle that?

MR. PELUSO:  Yes.

(Whereupon the deposition concluded

at 11:27 AM)

Chet Michael  Wilson
December 12, 2025

APP. 085

Page 85

E-R-R-A-T-A

Deponent:  CHET MICHAEL WILSON
Case:  Wilson v. Skopos Financial
Date Taken:  December 12, 2025

Page / Line          Correction
_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

I declare under penalty of perjury that the foregoing 84
pages are true and correct except for such corrections as I
may have noted above.

Executed this _____ day of _____, 2025.


_____
CHET MICHAEL WILSON

Chet Michael Wilson
December 12, 2025

APP. 086

Page 86

C-E-R-T-I-F-I-C-A-T-E

I, CHERYL L. HAASE, a NCRA Registered Professional Reporter and Certified Court Reporter for the State of Washington, do hereby certify that the above and named witness, CHET MICHAEL WILSON, was first duly affirmed to testify the truth; that said witness did thereupon testify as is set forth; that the answers of said witness to the oral interrogatories propounded by counsel were taken by me in stenotype and thereafter reduced to typewriting under my personal direction and supervision.

I further certify that the facts stated in the caption hereto are true; and that all of the proceedings in the course of the hearing of said deposition are correctly and accurately set forth herein.

I further certify that I am not counsel, attorney or relative of either party, nor financially or otherwise interested in the event of this suit.

IN WITNESS WHEREOF, I have hereunto set my hand as such Registered Professional Reporter on this the 16th day of December, 2025, at Lebanon, Oregon.

_Cheryl L Haase_

_____
Cheryl L. Haase, RPR, CCR
NCRA RPR No. 12443/WA CCR No. 3503

# EXHIBIT E

## Chet Tank Wilson's Post





**Chet Tank Wilson**
May 6 at 11:06 AM · 🌐

Got some holes need filled boys & I need to know who's with me on this one! 🇺🇸👊😎

Play

 1:12 / 1:53 ⚙️ ⤢ 🔊

 101                37 comments   2 shares   3.2K views

Write a comment...                🖼️😊📷GIF🏷️

# EXHIBIT F









# EXHIBIT G



# EXHIBIT H



# EXHIBIT I





**bunkerplot** · **Follow**
Original audio

**bunkerplot** Raise leaders, not lil weak ass bitch queefs!
29w

**sahaliedabrat** 🙌🙌
28w    **Reply**

ⓕ  This reel has 8 comments from Facebook.



**60 likes**
October 23, 2025

Add a comment...                    Post

# EXHIBIT J

 **Chet Tank Wilson**
July 10, 2014 · 🌐

Hey guys... scope this group I just made and add your friends... this is one of the most important things we could do to keep the gov't out of our pockets and out of our business...

 **Chet Tank Wilson** ▸ **NW HOUR SHARE**
July 10, 2014 · 🌐

This is a page that we can share our skills and trade work for others returned work instead of dealing with monetary exchange. This nearly doubles the value of each of our work. It circumvents taxation, and builds a strong community independent of our government which has come to the point of enslaving it's own people and stealing their money every chance they can get running each if us through the gauntlet of their corrupt bureaucracy... this page will take a minute to grow into a fully operational group so make sure to add anyone that is on the same page with us that would be willing to be proactive with this idea... **See less**

 Like           Comment           Share

# EXHIBIT K

Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: 215-225-5529

Attorney for Plaintiff and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

| | | |
|---|---|---|
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION FILE NO. **6:25-cv-01869-MC** |
| | : | |
| | : | DECLARATION OF |
| Plaintiff, | : | CHET MICHAEL WILSON |
| | : | IN OPPOSITION TO |
| v. | : | MOTION TO DENY CLASS |
| | : | CERTIFICATION |
| FREEWAY INSURANCE SERVICES OF AMERICA, LLC, | : | |
| | : | TCPA (47 U.S.C. § 227) |
| | : | |
| Defendant. | : | DEMAND FOR JURY TRIAL |

**DECLARATION OF CHET MICHAEL WILSON
IN OPPOSITION TO MOTION TO DENY CLASS CERTIFICATION**

I, Chet Michael Wilson, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the Plaintiff in this action. I am over the age of eighteen, I am competent to testify, I make this declaration based on my own personal knowledge, and would testify to the following.

2. I reside in Oregon. I submit this declaration in support of my opposition to Defendant Freeway Insurance Services of America, LLC's Motion to Deny Class Certification, ECF No. 19.

1

3. I am the subscriber and sole, customary user of my cellular telephone number, and I have been since I acquired it more than five years ago.

4. The number is my personal cell phone number. It is the *only* telephone number I have. I use it every day in the manner ordinary consumers use their personal cell phones, such as communicating with family and friends and managing my personal affairs.

5. I did not obtain the number for any business purpose and I do not hold it out to the public as a business line. I pay for the number through an ordinary consumer wireless plan, not a business account.

6. I have never authorized any person or entity to use my number as a placeholder, "dummy," or fake number, or to enter it into any website, form, or database.

7. My number is on the National Do Not Call Registry, and it has remained registered at all times relevant to this case. It is on the Registry because I want telemarketing calls and text messages to my number to stop.

8. Despite that registration, I receive a large volume of unsolicited telemarketing calls and text message calls. Many of the calls and message calls I receive are plainly intended for other people because they address me by names that are not mine and reference transactions, applications, or accounts that have nothing to do with me.

9. In June 2024, I received multiple telemarketing text message calls from or on behalf of Freeway on my number, soliciting the purchase of personal automobile insurance.

10. I have never had any account, relationship, or business dealings of any kind with Freeway. I never provided my telephone number to Freeway, never requested an insurance quote from Freeway, and never consented to receive calls or text messages from Freeway or anyone acting on its behalf.

2

11. I understand that Freeway attributes its text message calls to a lead form submitted on June 4, 2024 through a website called usautoinsurancenow.com, which I understand is operated by a third-party, EverQuote, under the name "Dorianne Plageman," with the email address drp.work21@gmail.com, requesting insurance quotes for a 2019 Mitsubishi Outlander.

12. I did not submit that form. I did not visit usautoinsurancenow.com or, to my knowledge, any other EverQuote website. I did not authorize anyone to submit that form or to enter my number into any insurance quote website.

13. I do not know, and have never heard of, anyone named Dorianne Plageman. The email address drp.work21@gmail.com is not mine and I have never used it. I have never owned, leased, or driven a 2019 Mitsubishi Outlander, and I have never sought an insurance quote for one.

14. I had no reason to submit, and would never submit, a form inviting telemarketing to my number. I registered my number on the Do Not Call Registry because I want the calls and texts to stop. I do not want more of them.

15. In addition to Freeway's text message calls, I have also received telephone calls to my number from EverQuote which are not the subject of this instant litigation.

16. I had no contact or communication of any kind with the Heidarpour Law Firm, or with anyone I understood to be associated with that firm, before October 3, 2024, which is approximately four months after the alleged June 4, 2024 lead submission described above.

17. I did not retain counsel in connection with the claims asserted in this case until 2025. I had no lawyer, and no relationship with any lawyer, connected to my claims against Freeway on or before June 4, 2024.

18. I played no role, direct or indirect, in the creation or submission of the June 4, 2024 lead, and I am aware of no involvement by any lawyer or law firm in its creation or submission. Indeed, at the time of that alleged submission, I had over 300 voicemails from various companies in my voicemail to which I did not consent.

19. I have filed a number of lawsuits under the Telephone Consumer Protection Act. I file them because my number, though registered on the Do Not Call Registry, continues to receive high volumes of unlawful calls, and because I know my rights under the statute.

20. The outcomes of my cases have differed because the facts of each case have differed. In some cases, the information developed in the case showed that class treatment did not make sense based on any number of reasons and after discussions with my attorneys in each case. Those cases were either dismissed or resolved on an individual basis.

21. No settlement I have entered into in any case has released, waived, or otherwise compromised the claims of any absent class member absent Court approval. Every individual resolution I have reached resolved only my own individual claims.

22. I have never recovered more than my maximum statutory damages in any settlement of any of my cases. My retainer agreement expressly caps my recovery at my statutory damages.

23. In connection with the resolution of certain of my cases, certain defendants have agreed to change their calling practices going forward, such as implementing certain policies to ensure unwanted or erroneous calls are not placed, including to the general public and myself.

24. In other cases, the information developed supported pursuing relief for a class, and I have pursued it. I am the proposed class representative in *Wilson v. PacifiCorp*, No. 6:24-cv-01956-AA (D. Or.), in which a motion for preliminary approval of a classwide consent settlement, negotiated for the benefit of the class, is currently pending.

25. In this case, I understand that Freeway conveyed an offer early in the litigation to resolve my individual claims for an amount several times the maximum I could personally recover. I declined that offer.

26. I later decided that I no longer wished to pursue this case, and I asked my counsel to dismiss my claims with prejudice, meaning that I give up my individual claims against Freeway forever and receive nothing for them. I made that decision after discussing the case with my counsel. I did not make it to conceal anything, because there is nothing to conceal.

27. I understand that Freeway has submitted to the Court statements that I have posted online, and that it argues those statements disqualify me from representing a class.

28. The statements I posted online were intended to be private and not publicly accessible. They reflect my personal political views. I understand that many people find some of those statements deeply offensive.

29. I dispute Freeway's characterization of my statements as calling for or threatening violence. I have never threatened or intended to incite violence against any person, including as a result of my political views and online postings.

30. My personal political views have never factored into any decision I have made in any lawsuit, and they will not factor into any decision I make in this one or in any other case I prosecute for the benefit of a class. I have never treated any person differently in any business, legal, financial, or other dealing on the basis of that person's race, religion, ethnicity, national origin, sex, sexual orientation, or gender identity, and I never would.

31. I understand the duties of a class representative. I understand that a class representative acts as a fiduciary for every member of the class, that he must place the interests of the class as a whole above his own individual interests, that he must consider the interests of

all class members just as he would consider his own, and that any resolution of class claims is subject to court approval and must be structured in the best interest of the class as a whole. I have agreed to those obligations, in writing, in my retainer agreement with my counsel, after they were explained to me, and I accept them.

32. I am committed to representing all potential class members, in this case and in all of my class actions, fairly and equally, expressly including Jewish class members, Black class members, and LGBT class members, each of whom I would represent with the same diligence and loyalty as any other member of the class.

33. My interest in any class case is the same as every other class member's, to obtain for each the recovery the statute provides for each unlawful call or text. Because my retainer agreement caps my own recovery at my statutory damages, I have no financial or any other interest in any outcome that would favor me at the expense of the class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this July 13, 2026, at Oregon.

_____

Chet Michael Wilson

# EXHIBIT L



# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

|  |  |
|---|---|
| Chet Michael Wilson, individually and as representatives of the class, | NO. 2:25-cv-01481-MTL |
| Plaintiff, | **PLAINTIFF'S RESPONSES TO DEFENDANT MOUNTAINSIDE FITNESS ACQUISITIONS, LLC'S INTERROGATORIES** |
| v. | |
| Mountainside Fitness Acquisitions, LLC, | |
| Defendant. | |

**<u>INTERROGATORIES</u>**

1.    Identify all communications that You or anyone else acting on Your behalf had during the relevant time period with Mountainside, or anyone You contend to be an agent of Mountainside, specifically including:

      a.   The date and time of each communication;

      b.   The form of communication (verbal, text message, telephone, etc.).

      c.   The content of such communication, including any response or back-and-forth to such communication. Identify all contacts (visits, purchases of product from, requests, correspondence, calls, messages) with Mountainside You have had during the relevant time period.

**RESPONSE:**

Other than the unsolicited text messages at issue in this action, and pre-suit correspondence sent by Plaintiff's counsel to Defendant, Plaintiff did not have any communications with Mountainside Fitness or anyone Plaintiff contends was acting on its behalf during the relevant time period. Plaintiff did not visit Mountainside Fitness, make purchases from Mountainside Fitness, request information or promotional materials, respond to the subject text messages, or otherwise initiate contact with Defendant.

2.    State whether—regardless of date—You ever visited or contacted a Mountainside location or otherwise used any website related to Mountainside, including, without limitation,

www.mountainsidefitness.com. Your answer should include a description of any use You made of the website and include dates and times You accessed the website.

**RESPONSE:**

Plaintiff has not visited or contacted any Mountainside Fitness location and has not used any website related to Mountainside Fitness, including www.mountainsidefitness.com. Plaintiff did not access or interact with any such website at any time.

3.    For telephone number 541-999-9999, at which You allege Mountainside contacted You, identify:

      a.   The name of the telephone number account holder;

      b.   The individual who pays the bill for telephone number 541-999-9999;

      c.   The cellular service provider;

      d.   The date the account associated with telephone number 541-999-9999 was opened.

**RESPONSE:**

(a) Plaintiff; (b) Plaintiff; (c) Verizon; and (d) the account associated with telephone number 541-999-9999 was opened on or about January 2019.

4.    Identify each telephone number for which You are the subscriber for or regular user of in the last two years, including the telephone number 541-999-9999, and for each telephone number identify:

      a.   Where the telephone number was purchased;

      b.   From whom the telephone number was purchased;

      c.   Your relationship to any prior owner of the telephone number;

      d.   How the telephone number was purchased (*i.e.*, was it purchased with cash, a credit card, or some other means);

      e.   Why the telephone number was purchased;

      f.   Whether You registered the telephone number on the National Do Not Call

Registry, and if so, when.

**RESPONSE:**

Plaintiff is the subscriber for and user of telephone number 541-999-9999. (a) The number was obtained through a transfer/port; (b) the number was previously assigned to Warren Brownlee; (c) Warren Brownlee is a friend of Plaintiff; (d) Plaintiff did not purchase the number through a traditional retail transaction but obtained it as part of a broader personal arrangement; (e) Plaintiff obtained the number for personal use; and (f) the telephone number was registered on the National Do Not Call Registry on January 7, 2005, and Plaintiff confirmed the registration in or around October 2024.

Plaintiff is also the subscriber of telephone number 541-999-6537, which was obtained through Verizon in or around December 2024. (a) The number was issued by Plaintiff's wireless carrier; (b) the number was obtained from Verizon; (c) Plaintiff has no relationship to any prior owner of the number, if any; (d) the number was obtained through Plaintiff's wireless service account, and Plaintiff pays for the line associated with that number; (e) the number was obtained for personal and household purposes and is used by Plaintiff's minor daughter, and is not used by Plaintiff for personal communications; and (f) Plaintiff does not know whether the number has been registered on the National Do Not Call Registry.

5.    For every telephone number identified in Interrogatory No. 4, identify the brand and model of the telephone You used with that telephone number, the date You acquired each telephone, and from where You obtained each telephone.

**RESPONSE:**

With respect to telephone number 541-999-9999, to the best of his recollection, Plaintiff has used an Apple iPhone 14 Pro Max and currently uses an Apple iPhone 17 Pro Max in connection with that number. Plaintiff does not recall the exact dates of acquisition or the locations from which the devices were obtained.

With respect to telephone number 541-999-6537, to the best of his recollection, the device associated with that number is an Apple iPhone, believed to be an iPhone 13 Pro. Plaintiff

- 3 -

purchased the device secondhand through an online marketplace. Plaintiff does not recall the exact date of acquisition or the identity of the seller. The device is used exclusively by Plaintiff's minor daughter.

6. For every telephone number identified in Interrogatory No. 4, describe in detail how and for what purpose the telephone number is used, including whether it is used in connection with Your employment and/or any other business.

**RESPONSE:**

Plaintiff uses telephone number 541-999-9999 for personal and household purposes. The number is not used in connection with Plaintiff's employment or any business. The number is not used in connection with Plaintiff's employment or any commercial business. Plaintiff has not used the number for commercial or revenue-generating purposes. Plaintiff previously used the number in connection with nonprofit or educational activities, specifically CBD 101 from approximately 2019 to 2020, and Leaven No Trace from approximately 2020 to 2021. These activities were not commercial in nature and did not involve marketing goods or services for profit.

Plaintiff is the subscriber of telephone number 541-999-6537, which is used exclusively by Plaintiff's minor daughter and is not used by Plaintiff for personal, employment, or business purposes.

7. Describe Your employment history from age 18 to the present, including jobs held, job title, employer and employer location, job description, and dates of employment. (Note: You may provide this information by resume as long as it contains the information sought and/or such information is provided by way of supplement).

**RESPONSE:**

To the best of his recollection, Plaintiff has not maintained consistent traditional employment in recent years. Plaintiff previously owned and operated a moving company for approximately four years, ending approximately six to seven years ago. In that role, Plaintiff performed moving and logistics services for customers. Following high school, Plaintiff held a

limited number of short-term positions, but does not recall the specific employers, dates, or details of those positions.

8.      Describe in detail lawsuits of any kind and/or demands or complaints relating to unwanted calls, emails, or text messages, including claims made under the Telephone Consumer Protection Act or other, similar statutes, without regard to date, that You or anyone on Your behalf has filed, threatened to file, or sent (*i.e.*, a demand letter) to any person or entity. Your response should include, at minimum, the following:

      a.   The name, last known business and home address(es), and last known telephone number(s) of the person(s) or entity(ies) against which the claim was made or lawsuit was threatened or filed;

      b.   The date of the claim;

      c.   The nature of the allegations;

      d.   If a lawsuit, the court and case number, and resolution; and

      e.   The verdict, settlement terms or resolution of the matter.

This interrogatory excludes the instant case, but includes, without limitation, any other putative TCPA or similar class action lawsuit.

**RESPONSE:**

Plaintiff objects that this interrogatory is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks detailed information regarding all claims, demands, or complaints of any kind without limitation as to time. Plaintiff further objects to the extent the request seeks information that is equally available to Defendant through publicly available court records. Plaintiff also objects because the request seeks information that is already within Defendant's possession, custody, or control. Subject to the foregoing, Plaintiff has filed lawsuits alleging violations of the Telephone Consumer Protection Act (TCPA) relating to the Phone Number, which are identified below, including the case names, jurisdictions, and filing dates. These dates reflect the commencement of the actions. Plaintiff understands that a number of these cases have since been resolved, while

- 5 -

others remain pending.

**TCPA Actions Filed by Plaintiff:**

1. *Wilson v. Altria Group Distribution Company*, 1:2024cv01917 (E.D. Va., 10/29/2024, closed 6/3/2025)
2. *Wilson v. Professional Credit Service*, 6:2024cv01826 (D. Or., 10/31/2024, closed 1/30/2025)
3. *Wilson v. Elevate Patient Financial Solutions, LLC*, 4:2024cv04285 (S.D. Tex., 11/4/2024, closed 5/8/2025)
4. *Wilson v. Avid Ratings, Inc.*, 3:2024cv00782 (W.D. Wis., 11/4/2024, closed 6/2/2025)
5. *Wilson v. Nationstar Mortgage LLC*, 6:2024cv01855 (D. Or., 11/7/2024)
6. *Wilson v. Credit Suite Inc.*, 8:2024cv02711 (M.D. Fla., 11/21/2024, closed 7/17/2025)
7. *Wilson v. PacifiCorp*, 6:2024cv01956 (D. Or., 11/21/2024)
8. *Wilson v. The Savings Bank Mutual Life Ins. Co. of Mass.*, 1:2024cv12950 (D. Mass., 11/26/2024, closed 9/12/2025)
9. *Wilson v. Disability Help Group LLC*, 0:2024cv62319 (S.D. Fla., 12/7/2024, closed 3/3/2026)
10. *Wilson v. Southern Oregon Credit Service, Inc.*, 1:2024cv02087 (D. Or., 12/17/2024)
11. *Wilson v. Lower, LLC*, 1:2024cv03665 (D. Md., 12/18/2024, closed 5/15/2025)
12. *Johnson v. American Home Shield Corporation*, 1:2024cv02339 (E.D. Va., 12/20/2024, closed 3/25/2025)
13. *Wilson v. Fairway Independent Mortgage Corp.*, 3:2024cv00924 (W.D. Wis., 12/27/2024, closed 8/7/2025)
14. *Wilson v. Icon Creative Consulting, Inc.*, 1:2024cv25119 (S.D. Fla., 12/30/2024, closed 3/7/2025)
15. *Wilson v. Club 1 Hotels, LLC*, 1:2025cv00003 (N.D. Ill., 1/2/2025, closed 4/23/2025)
16. *Wilson v. AUM Insurance Services LLC*, 3:2025cv00260 (N.D. Cal., 1/7/2025, closed 8/11/2025)
17. *Wilson v. Zillow, Inc.*, 2:2025cv00048 (W.D. Wash., 1/8/2025, closed 7/8/2025)
18. *Wilson v. Centennial Medical Group East, LLC*, 6:2025cv00043 (D. Or., 1/9/2025, closed 4/8/2026)
19. *Wilson v. KUIU, LLC*, 2:2025cv00212 (E.D. Cal., 1/15/2025, closed 8/22/2025)
20. *Wilson et al. v. LeafFilter North, LLC*, 2:2025cv00039 (S.D. Ohio, 1/16/2025, closed 3/17/2025)
21. *Wilson v. Easy Spirit, LLC*, 3:2025cv00112 (D. Conn., 1/22/2025)
22. *Wilson v. Trajector, Inc.*, 1:2025cv00023 (N.D. Fla., 1/23/2025, closed 7/30/2025)
23. *Wilson v. Kaiser Foundation Health Plan, Inc.*, 3:2025cv00802 (N.D. Cal., 1/23/2025, closed 1/26/2026)
24. *Wilson v. FuturHealth, Inc.*, 3:2025cv00157 (S.D. Cal., 1/23/2025)
25. *Wilson v. BlendJet Inc.*, 2:2025cv00278 (E.D. Cal., 1/23/2025, closed 3/10/2025)
26. *Wilson v. Hard Eight Nutrition LLC*, 6:2025cv00144 (D. Or., 1/28/2025)
27. *Wilson v. CMRE Financial Services, Inc.*, 6:2025cv00152 (D. Or., 1/28/2025)
28. *Wilson v. Finmax Smart Capital LLC*, 6:2025cv00173 (D. Or., 1/31/2025, closed 1/25/2026)

29. *Wilson v. Fleet Financial, Inc. d/b/a iLending*, 1:2025cv00340 (D. Colo., 1/31/2025, closed 2/9/2026)

30. *Wilson v. Pharmacenter LLC*, 2025cv60212 (S.D. Fla., 2/6/2025, closed 1/21/2026)

31. *Wilson v. Blue Moon Fabrics, Inc.*, 6:2025cv00333 (D. Or., 2/27/2025, closed 4/28/2025)

32. *Wilson v. Skopos Financial, LLC*, 6:2025cv00376 (D. Or., 3/4/2025)

33. *Wilson v. Consumer Cellular Inc.*, 2:2025cv00745 (D. Ariz., 3/4/2025)

34. *Wilson v. Norco, Inc.*, 6:2025cv00410 (D. Or., 3/9/2025, closed 8/6/2025)

35. *Wilson et al. v. LeafFilter North, LLC*, 5:2025cv00522 (N.D. Ohio, 3/17/2025, closed 5/9/2025)

36. *Johnson v. American Home Shield Corporation*, 2:2025cv02347 (W.D. Tenn., 3/27/2025, closed 12/22/2025)

37. *Wilson v. Roman Health Ventures Inc.*, 1:2025cv03479 (S.D.N.Y., 4/27/2025, closed 10/6/2025)

**38. *Wilson v. Mountainside Fitness Acquisition LLC*, 2:2025cv01481 (D. Ariz., 5/1/2025)**

39. *Wilson v. Craftie Fox, Inc.*, 1:2025cv22069 (S.D. Fla., 5/5/2025, closed 7/24/2025)

40. *Wilson v. MEDVIDI INC*, 5:2025cv03996 (N.D. Cal., 5/8/2025, closed 3/5/2026)

41. *Wilson v. MAH Group, Inc.*, 6:2025cv00855 (D. Or., 5/19/2025)

42. *Wilson v. Better Mortgage Corp.*, 1:2025cv05503 (S.D.N.Y., 7/2/2025)

43. *Wilson v. AMP FIT, INC.*, 5:2025cv05656 (N.D. Cal, 7/6/2025, closed 9/25/2025)

44. *Wilson v. Inogen, Inc.*, 6:2025cv01168 (D. Or., 7/6/2025, closed 12/9/2025)

45. *Wilson v. Atlanta Medical Day Spa and Surgery Center, LLC*, 1:2025cv04023 (N.D. Ga., 7/21/2025)

46. *Wilson v. Home Warranty of America, Inc.*, 6:2025cv01331 (D. Or., 7/29/2025, closed 1/28/2026)

47. *Wilson v. Roof Max Technologies LLC*, 2:2025cv00872 (S.D. Ohio, 8/6/2025)

48. *WILSON v. NATIONAL GENERAL INSURANCE COMPANY*, 1:2025cv00719 (M.D.N.C., 8/7/2025)

49. *Wilson v. Liberty Home Guard LLC*, 1:2025cv01075 (N.D.N.Y., 8/11/2025, closed 1/13/2026)

50. *Wilson v. Tabak Law LLC*, 2:2025cv01197 (E.D. Wis., 8/11/2025)

51. *WILSON v. MONARCH RECOVERY MANAGEMENT, INC.*, 2:2025cv04845 (E.D. Pa., 8/24/2025)

52. *Taylor et al v. Savvy Insurance Solutions, LLC*, 1:2025cv12393 (D. Mass., 8/29/2025, closed 1/20/2026)

53. *Wilson v. Lifestation, Inc.*, 1:2025cv07246 (S.D.N.Y., 8/30/2025)

54. *Wilson v. Inbox Health Corp.* 3:2025cv01417 (D. Conn., 9/2/2025, closed 2/3/2026)

55. *Wilson v. Disability Services of America, LLC*, 1:2025cv10578 (N.D. Ill., 9/3/2025, closed 12/1/2025)

56. *Wilson v. McNeil & Meyers Receivables Management Group, LLC*, 2:2025cv01810 (E.D. La., 9/4/2025, closed 1/25/2026)

57. *Wilson v. Vozzcom, Inc.*, 0:2025cv61793 (S.D. Fla., 9/5/2025)

58. *Wilson v. MIA Aesthetics Holdings, LLC*, 1:2025cv24103 (S.D. Fla., 9/9/2025)

59. *Wilson v. TRA Medical Imaging Foundation*, 3:2025cv05808 (W.D. Wash., 9/10/2025)

60. *Wilson v. Nissan North America, Inc.*, 3:2025cv01042 (M.D. Tenn., 9/16/2025)

61. *ALMONTE v. MRS BPO LLC*, 1:2025cv15811 (D.N.J., 9/19/2025)

62. *Wilson v. TPH Paralegal Professional Corporation*, 6:2025cv01703 (D. Or., 9/23/2025)

63. *Wilson v. Get Away Today, Inc.*, 6:2025cv01716 (D. Or., 9/23/2025, closed 10/22/2025)

64. *Wilson v. AMP FIT, INC.*, 3:2025cv01741 (D. Or., 9/25/2025)

65. *Wilson v. Lumen Technologies Inc*, 3:2025cv01471 (W.D. La., 10/2/2025, closed 1/26/2026)

66. *Wilson v. Freeway Insurance Services of America, LLC*, 6:2025cv01869 (D. Or., 10/12/2025)

67. *Wilson v. GameChanger247, LLC*, 6:2025cv01870 (D. Or., 10/12/2025)

68. *Wilson v. Salespromis, LLC*, 9:2025cv81268 (S.D. Fla., 10/14/2025)

69. *Wilson v. Cirkul Inc.*, 6:2025cv02036 (D. Or., 11/2/2025)

70. *Wilson v. Continental Tire the Americas, LLC*, 6:2025cv02052 (D. Or., 11/4/2025, closed 2/17/2026)

71. *Wilson v. Coverright Insurance Services*, 1:2025cv06357 (E.D.N.Y., 11/17/2025, closed 4/1/2026)

72. *Wilson v. Mortgage One, Inc.*, 3:2025cv03648 (S.D. Ca., 12/17/2025)

73. *Wilson v. Dealmed Medical Supplies, LLC*, 1:2026cv00009 (E.D.N.Y., 1/2/2026)

74. *Wilson v. Autoweb, Inc.*, 4:2026cv00039 (N.D. Ca., 1/4/2026)

75. *Wilson v. The HELOC Company LLC*, 8:2026cv00025 (D. Md., 1/5/2026)

76. *Wilson v. AnyTime Fitness Franchisor, LLC et al*, 6:2026cv00019 (D. Or., 1/6/2026)

77. *Wilson v. Yakima Valley Farm Workers Clinic*, 1:2026cv03003 (E.D. Wash., 1/7/2026)

78. *Wilson v. General Audit Corp.*, 3:2026cv00207 (N.D. Ohio, 1/27/2026)

79. *Wilson v. Pyxis Solutions*, 6:2026cv00344 (D. Or., 2/22/2026)

80. *Wilson v. HomeLand Insurance LLC*, 6:2026cv00345 (D. Or., 2/22/2026)

81. *Wilson v. Wayfair Inc.*, 1:2026cv11420 (D. Mass., 3/24/2026)

82. *Wilson v. AMS Moving Inc.*, 9:2026cv80334 (S.D. Fla., 3/25/2026)

83. *Wilson v. Staples, Inc.*, 1:2026cv11489 (D. Mass., 3/29/2026)

84. *Wilson v. Medical Air Services Associates, Inc.*, 6:2026cv00666 (D. Or., 4/3/2026)

85. *Wilson v. Cascades Insurance, LLC*, 6:2026cv00667 (D. Or., 4/3/2026)

86. *Wilson v. Umpqua Health Alliance, LLC*, 6:2026cv00668 (D. Or., 4/3/2026)

9.    Identify each document You referred to or upon which You relied in answering these Interrogatories.

**RESPONSE:**

Plaintiff relied on the following documents: a screenshot of a text message received on May 31, 2024; a text message export reflecting text messages received on May 29, 2024 and May 31, 2024; screenshots of the "About" page for Plaintiff's Apple iPhone 17 Pro Max and Apple iPhone 14 Pro Max; and a confirmation email reflecting registration of telephone number 541-999-9999

- 8 -

on the National Do Not Call Registry.

10.    Identify any and all settlement agreements You have entered into with any party related to any alleged violations of the Telephone Consumer Protection Act from January 1, 2023, through the present.

**RESPONSE:**

Plaintiff objects that this interrogatory is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding settlement agreements in unrelated matters, including confidential agreements that are not relevant to the claims or defenses in this action.

11.    Identify any and all third-party websites and Social Media platforms, including but not limited to Facebook Groups, Discord channels, forums, that You have joined or communicated in regarding this lawsuit or other Telephone Consumer Protection Act lawsuits in which you are involved.

**RESPONSE:**

Plaintiff states that he maintains a Facebook account and has made general posts regarding telemarketing calls and TCPA-related issues. Plaintiff has not joined or participated in any specific third-party groups, forums, or channels for the purpose of discussing this lawsuit.

12.    Identify the total dollar amount You have received, from any source, as a result of claims, demands, or settlements arising under or relating to the Telephone Consumer Protection Act or any similar state or federal consumer protection statute, from January 1, 2023, through the present, and provide a year-by-year breakdown of such amounts.

**RESPONSE:**

Plaintiff objects that this interrogatory is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it seeks information regarding amounts received in unrelated matters. Plaintiff further objects that this interrogatory seeks confidential financial

- 9 -

information and information outside the scope of the claims and defenses in this action.

Dated: April 24, 2026                                  Respectfully submitted,

                                                        */s/ Anthony I. Paronich*
                                                        Anthony I. Paronich
                                                        Paronich Law, P.C.
                                                        350 Lincoln Street, Suite 2400
                                                        Hingham, MA 02043
                                                        Telephone: 508.221.1510
                                                        Email: anthony@paronichlaw.com

                                                        *Counsel for Plaintiff*

- 10 -

**VERIFICATION**

I, Chet Wilson, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, and upon information and belief.

Dated: April 24, 2026

_____

Chet Wilson, Plaintiff

- 11 -

## CERTIFICATE OF SERVICE

I hereby certify that, on April 24, 2026, this document was sent electronically to the registered participants as identified on the electronic filing notice

by: */s/ Andrew W. Heidarpour*
Andrew W. Heidarpour
E-mail: AHeidarpour@HLFirm.com
Heidarpour Law Firm, PLLC
1300 Pennsylvania Ave. NW, 190-318
Washington, DC 20004
Telephone: (202) 234-2727

*Attorney for Plaintiff*

# EXHIBIT N

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| *In re* SUBPOENA TO HEIDARPOUR LAW FIRM, PLLC. | Case No.: _____ |
| | Underlying action: |
| | United States District Court for the District of Oregon Eugene Division |
| CHET MICHAEL WILSON, individually and on behalf of all others similarly situated, | Case No. 6:25-cv-01869-MC |
| Plaintiff, | |
| v. | |
| FREEWAY INSURANCE SERVICES OF AMERICA, LLC, | |
| Defendant. | |

**DECLARATION OF ANDREW HEIDARPOUR**

Andrew Heidarpour, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.      I am an attorney and the principal of Heidarpour Law Firm, PLLC ("HLF"). I submit this declaration in support of HLF's Emergency Motion to Stay and Quash the Subpoena Defendant Freeway Insurance Services of America, LLC ("Freeway" or "Defendant") served on HLF on May 20, 2026 (the "Subpoena"). I make this declaration based on my personal knowledge, and if called to testify, I could and would testify competently to the matters stated below. I do not, by this declaration, disclose the substance of any privileged communication or attorney work product, and I expressly preserve all privileges, immunities, and protections asserted in HLF's responses and objections.

2.      HLF is a small law firm, which I founded.  I am barred in the District of Columbia, remain in good standing, and have never been disciplined or sanctioned for my conduct as an attorney.  HLF currently employs one other attorney and limited support staff.  From time to time, I employ others to provide non-legal services at HLF.  For example, occasionally, I have asked my mother, Farideh Heidarpour, to perform non-legal secretarial duties, such as answering telephone calls.  Those services are performed under my direction.

3.      HLF's primary source of business is helping clients evaluate potential claims under the Telephone Consumer Protection Act ("TCPA"), which provides remedies for those who receive unsolicited messages or telephone calls.  In general, HLF's role is to evaluate potential claims on behalf of the client and engage with the entity responsible for sending the messages in question in an effort to resolve the matter.  HLF obtains appropriate client authorization before resolving those matters, and HLF has successfully resolved numerous TCPA matters on behalf of its clients.

4.      Because of HLF's small size, HLF generally does not institute formal legal proceedings should they become necessary.  Rather, if a case may need to be litigated, HLF refers the case to another counsel, and that counsel decides whether to file, settle, or dismiss the case. HLF may continue to provide limited assistance on litigated cases, such as help responding to discovery requests, but HLF is not in charge of the prosecution of those cases and often does not appear as counsel of record.

5.      One of HLF's clients is Chet Wilson.  Mr. Wilson first contacted HLF in or about October 2024 and executed an engagement letter with HLF shortly thereafter.  Mr. Wilson contacted HLF concerning unsolicited text messages that were sent to him in June 2024 by

Defendant Freeway Insurances Services of America, LLC. Mr. Wilson had been receiving unsolicited messages on that same number from various entities since 2019.

6. On December 12, 2024, HLF sent Freeway a letter demanding compensation for the unsolicited June 2024 text messages. On December 20, 2024, Freeway responded by letter stating, among other things, that it believed it had consent to send the messages and identified the individual who had provided such consent. That individual has no connection with HLF.

7. Because I was unable to resolve Mr. Wilson's case directly with Freeway, I referred the case to Andrew Roman Perrong of Perrong Law LLC and Anthony Paronich of Paronich Law, P.C. Mr. Wilson subsequently executed an engagement letter with Mr. Perrong, Mr. Paronich, and HLF, to evaluate bringing a case against Freeway. Mr. Perrong then filed a lawsuit against Freeway in the District of Oregon, which is identified in the caption of this declaration. I did not make the decision to bring that case, which is being handled by Mr. Perrong. Pursuant to that engagement letter, I am entitled to receive 30% of any award of attorney's fees in the case against Freeway.

8. On May 20, 2026, Freeway served a subpoena on HLF (the "Subpoena") for documents and a deposition. Having reviewed the Subpoena, I believe many of the requests would require HLF to provide information protected by the attorney-client privilege and the attorney work-product doctrine, including privileged communications with Mr. Wilson and with co-counsel. Sitting for a deposition on the nine topics in the Subpoena would likewise require the firm to marshal and disclose privileged information. Complying with the Subpoena also would require HLF to divert resources from other representations to search for, collect, and review materials and to prepare for a corporate deposition, at significant expense to the firm.

-3-

9.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: June 24, 2026

Andrew Heidarpour

# EXHIBIT O

Regards,
Matt

Matthew Laroche | Milbank | Partner
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5514
MLaroche@milbank.com | milbank.com

---

**From:** Ryan Watstein <Ryan@wtlaw.com>
**Sent:** Sunday, June 14, 2026 10:36 PM
**To:** Farag, Peter <pfarag@milbank.com>; James Ruley <jruley@wtlaw.com>; Jennipher Borey <jborey@wtlaw.com>
**Cc:** Laroche, Matthew <MLaroche@milbank.com>; Rebecca Rhym <rrhym@wtlaw.com>
**Subject:** [EXT] Re: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC)

Hello Peter,

As I mentioned in our other email exchange, I have been in trial prep all weekend and am just now catching up on Friday emails.

As to your comment about me mischaracterizing our call, I'm not sure what you are referring to. My email below isn't about our call. The facts I recited from our call are non-controversial: (a) you said you would produce the engagement letter and some other documents, (b) you did not say the engagement letter would be redacted, (c) you asked for a standstill on next week's deposition, and (d) I said we would review your production and would agree to a standstill if, depending on what you produced, doing so wouldn't prejudice our client. **What about this is inaccurate?**

Your email, on the other hand, is going to change our relationship, because it confirms I cannot trust you—and before this email, I thought we had a good rapport. Also, I am very busy and dislike having to do blow-by-blow rebuttals by email on a weekend while preparing for trial. But given the seemingly intentional inaccuracies below, pls see your comments (in black) and my responses (in red) here:

> To recap what we discussed, we told you our production would address the timing of when HLF first became involved with Mr. Wilson because you were accusing our client of manufacturing a claim on Mr. Wilson's behalf. Our production answered that question. The text messages and engagement letter show that HLF had no relationship with Mr. Wilson until well after the messages alleged in the complaint, which is dispositive of any suggestion that HLF had anything to do with how the number entered Freeway's system. That is the point you said you cared about, and the production resolves it. The fee arrangement is irrelevant to that question.

There are several problems with this text. The most glaring is your statement that whether "HLF had anything to do with how the number entered Freeway's system" is "the point [I] said [I] cared about." You know that is not true. I emphasized, repeatedly, what you would know if you carefully read our motion: it is about a scheme where an undisclosed law firm, HLF, gets a client with legit claims by advertising and locks them in as a perpetual revenue stream for TCPA claims. (The engagement letter you produced is consistent with that, noting that client retains "HLF to represent them *for any and all* claims regarding" the "TCPA" and "FDCPA.") HLF then farms out hundreds of claims for that perpetual revenue stream to litigation counsel, which HLF, the plaintiffs, and litigation counsel file as "class actions" to extort companies into better-than-the-statute damages. HLF and its outside firms leave the class with nothing and their "clients" (like Chet Wilson) with next to nothing —a 90/10 or so contingency percentage that certainly violates applicable ethics rules. All while failing to disclose HLF's involvement and financial interest to dozens of federal courts across the country. That is an abuse of the class action mechanism. *That* abuse is our core adequacy challenge and *that* is why your production is so useless to us, particularly given its redaction of the "fee agreement" portion of the "contingent fee agreement" you produced.

Another point we make in our motion is that, once it has a client locked in, HLF also manufactures claims (either itself or in coordination with its perpetual revenue streams like Chet Wilson) by filling out lead forms and inputting their number. HLF generally only does this with people like Chet Wilson, who have strange numbers (like Wilson's 999-9999 number) such that it will be much easier to believe they have hundreds of TCPA claims, without raising too many eyebrows.

Our motion was never about fraud on Freeway, and you know that because I reiterated it to you, indicating that the timing you described was entirely consistent with what we have seen with every HLF client who we believed was bringing fraudulent claims. Of course, if Wilson worked with HLF to manufacture *other* claims, as is the typical HLF pattern, that is clearly relevant to his adequacy as a class representative (and counsel's adequacy, of course) regardless of whether they manufactured this exact claim here.

And all this is without even getting into the point that someone who would perpetrate this scheme would also likely fabricate documents.

In sum, the fee arrangement could not be more relevant to our motion, and your email both misstates my comments and our motion.

Nor does your motion for class certification seek this information; to the contrary, you argue that class certification should be denied without any further discovery.

I don't understand this comment. First, we didn't move for class certification. We did the opposite: we moved to deny class certification. Second, it's a motion, not a discovery request. Of course it doesn't seek information. The result of the motion is that, once granted, class discovery should not move forward. Only individual discovery would, though here that wouldn't happen either because Plaintiff moved to dismiss his own claim in response to our motion—generally a good indicator of merit. But none of this has anything to do with the subpoena to HLF, which we served *precisely* to gather information to bolster our pending motion and to oppose (in part) Plaintiff's counsel's motion to evade accountability for themselves and HLF. That Plaintiff's counsel is trying to pull this maneuver makes the HLF discovery more relevant and more needful, not less.

When you raised discovery about other cases, we told you, expressly, that we would not be producing information concerning other cases.  Your email now demands precisely that—the unredacted fee terms across 50+ other Wilson settlements and HLF's and Mr. Wilson's respective recoveries in those matters.  That information has no bearing on your pending motion, which turns on adequacy and predominance in this case, not on what HLF or anyone else recovered in unrelated settlements. Demanding it only confirms what this has become—a fishing expedition.  A conclusion underscored by your firm's efforts to serve us with yet another subpoena in a case HLF had nothing to do with.

See above. The primary point of the motion is the sue-and-settle exertion scheme that HLF is running in coordination with Wilson and its outside counsel. That Plaintiff's counsel moved to dismiss their own case with prejudice to avoid accountability for that proves the merit of our position more than any other action possibly could. Calling our attempts to bolster the scheme we describe in great detail and have experienced ourselves in hundreds of cases a "fishing expedition" is outlandish. As you conceded on our call, this is your first involvement with HLF. We,

on the other hand, have literally thousands of hours of experience with HLF and the abusive cases it brings and profits immensely from.

You told us on our call that you would work with us on deadlines given what we were producing.  Instead, you sent the email below.  To be clear, if you are willing to proceed with the standstill we discussed, pending the Court's ruling on the pending motion to dismiss and confirming in writing that the deposition is deferred, we will continue to work with you in good faith on a reasonable schedule. If you are not, we will move to quash and to modify, and we will seek our fees and costs under Rule 45(d).  We will also be compelled to alert the Court to your firm's misuse of the discovery process and to the false allegations you continue to make about our client. This would be a waste of the Court's and the parties' resources, particularly given the pending motion to dismiss this case.

If you are unwilling to provide us with an unredacted fee agreement or any additional information to support our positions on the two pending motions, then we are not agreeing to a standstill. Why would we do that? That would prejudice our client. If you are willing to work to provide us with information sufficient to support the pending motions, then we will absolutely work with you. The ball is in your court, and we are happy to discuss. Just let us know. To be clear, as we already have been: we don't necessarily need everything the subpoena asks for, but we cannot accept what is effectively nothing.

As to your threat of seeking fees and costs, we are not intimated by that. That would be frivolous.

We remain willing to discuss if it would be productive. But our client will not be pressured into portfolio-wide discovery, in this case or through the serial subpoenas your firm is now threatening, which appears designed to chill our client from pursuing meritorious litigation.

As I explained to you in detail, we have defended dozens of HLF claims that were voluntarily dismissed with prejudice under threat of sanctions. So many I've lost count. We describe some of them in great detail in our motion, but there are many, many others. Given that those cases are public record, this isn't legitimately in

dispute. Anyways, I guess we have very different definitions of "meritorious litigation."

We also have now asked you twice to identify any specific evidence that HLF engaged in wrongdoing, and twice you have declined.  We ask again.  If you have it, share it, and we'll discuss it with our client.  If you do not, the repeated, hyperbolic allegations about our client should stop.

By this point in this email, I'm exhausted. I explained some of HLF's wrongdoing above. I explained to you numerous instances where we have sent him letters explaining why claims HLF was threatening lack any merit. He farmed them out to litigation counsel and they were filed as class actions anyway, at a cost of *millions* to our clients. Litigation counsel confirmed that HLF never even shared the letters we sent to HLF and then dismissed the cases with prejudice after we shared those same letters. We cited cases in our pending motion that we believe were manufactured by HLF, and we explained why we believe that to be the case. We explained how HLF is not identifying its interest in its "class actions" in violation of various courts' rules. We explained how his financial arrangements with counsel and his perpetual clients are unethical.

Of course, we don't yet have forensic evidence from HLF's devices showing him filling out lead forms to generate claims. And we don't yet have much of the information we would like to further bolster the above because it is in HLF's possession and you have made clear you won't give it to us. Saying we don't have evidence of wrongdoing under these circumstances is kind of like someone avoiding a lineup to avoid being identified and then using his lack of identification as proof he is innocent.

If none of what we say above and know from our thousands of hours of experience with HLF-generated class actions is true, and if HLF really didn't do anything wrong and has nothing to hide, why doesn't it provide the evidence we're asking for to prove it?

As I note above, we are happy to discuss further if you will give us additional information. But we will not cancel the deposition absent that. Just let us know if you would like to discuss to try and reach a compromise.

Best,
-Ryan

**Ryan D. Watstein ([bio](#))**

WATSTEIN TEREPKA <sup>LLP</sup>
P: 404-782-0695
[ryan@wtlaw.com](mailto:ryan@wtlaw.com)
[www.wtlaw.com](http://www.wtlaw.com)

---

**From:** Farag, Peter <[pfarag@milbank.com](mailto:pfarag@milbank.com)>
**Date:** Friday, June 12, 2026 at 1:55 PM
**To:** Ryan Watstein <[Ryan@wtlaw.com](mailto:Ryan@wtlaw.com)>; James Ruley <[jruley@wtlaw.com](mailto:jruley@wtlaw.com)>; Jennipher Borey <[jborey@wtlaw.com](mailto:jborey@wtlaw.com)>
**Cc:** Laroche, Matthew <[MLaroche@milbank.com](mailto:MLaroche@milbank.com)>; Rebecca Rhym <[rrhym@wtlaw.com](mailto:rrhym@wtlaw.com)>
**Subject:** RE: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC)

[Warning – external]

Ryan,

We are disappointed with your response.  We disagree with both your characterization of our call and your characterization of our production.

To recap what we discussed, we told you our production would address the timing of when HLF first became involved with Mr. Wilson because you were accusing our client of manufacturing a claim on Mr. Wilson's behalf.  Our production answered that question.  The text messages and engagement letter show that HLF had no relationship with Mr. Wilson until well after the messages alleged in the complaint, which is dispositive of any suggestion that HLF had anything to do with how the number entered Freeway's system.  That is the point you said you cared about, and the production resolves it.  The fee arrangement is irrelevant to that question.  Nor does your motion for class certification seek this information; to the contrary, you argue that class certification should be denied without any further discovery.

When you raised discovery about other cases, we told you, expressly, that we would not be producing information concerning other cases.  Your email now demands precisely that—the unredacted fee terms across 50+ other Wilson settlements and HLF's and Mr. Wilson's respective recoveries in those matters.  That information has no bearing on your pending motion, which turns on adequacy and predominance in this case, not on what HLF or anyone else recovered in unrelated settlements.  Demanding it only confirms what this has become—a fishing expedition.  A conclusion underscored by your firm's efforts to serve us with yet another subpoena in a case HLF had nothing to do with.

You told us on our call that you would work with us on deadlines given what we were producing.  Instead, you sent the email below.  To be clear, if you are willing to proceed with the standstill we discussed, pending the Court's ruling on the pending motion to dismiss and confirming in writing that the deposition is deferred, we will continue to work with you in good faith on a reasonable schedule.  If

you are not, we will move to quash and to modify, and we will seek our fees and costs under Rule 45(d). We will also be compelled to alert the Court to your firm's misuse of the discovery process and to the false allegations you continue to make about our client. This would be a waste of the Court's and the parties' resources, particularly given the pending motion to dismiss this case.

We remain willing to discuss if it would be productive. But our client will not be pressured into portfolio-wide discovery, in this case or through the serial subpoenas your firm is now threatening, which appears designed to chill our client from pursuing meritorious litigation. We also have now asked you twice to identify any specific evidence that HLF engaged in wrongdoing, and twice you have declined. We ask again. If you have it, share it, and we'll discuss it with our client. If you do not, the repeated, hyperbolic allegations about our client should stop.

Peter Farag | Milbank | Associate
55 Hudson Yards | New York, NY 10001-2163
T: +1 212.530.5830
pfarag@milbank.com | milbank.com

---

**From:** Ryan Watstein <Ryan@wtlaw.com>
**Sent:** Friday, June 12, 2026 12:12 AM
**To:** Farag, Peter <pfarag@milbank.com>; James Ruley <jruley@wtlaw.com>; Jennipher Borey <jborey@wtlaw.com>
**Cc:** Laroche, Matthew <MLaroche@milbank.com>; Rebecca Rhym <rrhym@wtlaw.com>
**Subject:** [EXT] Re: Heidarpour Law Firm R&Os to Freeway's Subpoena (6:25-cv-01869-MC)

Thanks for your time as well, Peter and Matt.

But this is not consistent with our discussion.

Most importantly, the engagement letter you produced is redacted. We cannot see the language that you know we care about most and that is most relevant to our pending motion: the fee arrangement. So, this production effectively tells us nothing, after we already provided an extension to allow you time to gather information. On top of that, there is no principled basis to produce the engagement letter but redact the fee arrangement. A fee arrangement is not legal advice.

 You told us you wanted to agree to a standstill pending the court's decision on the pending motions. We are sensitive to that request, and told you we would accommodate it as long as it didn't prejudice our client. But this response leaves us with no information relevant to our pending motion, and that prejudices our client.

If you would like us to agree to a standstill, please confirm you will produce, by the end of the day tomorrow, the entire fee agreement in unredacted form, any other agreements between HLF and Wilson or his litigation counsel—which are contemplated by this agreement and which we have been informed exist. Please also confirm you will produce

# EXHIBIT P

Document ID: b39932f0a0154106b9467912ecb587e3b916f10d

1

# CONTINGENT FEE AGREEMENT

**Chet Michael Wilson, hereinafter referred to as "Client", and Heidarpour Law Firm, PLLC hereinafter referred to as "HLF", agree to the following contract for legal services.**

## EXPECTATION OF SERVICES

1. Client hereby retains HLF to represent them for any and all claims regarding Telephone Consumer Protection Act (TCPA) and Fair Debt Collection Practices Act (FDCPA) violations.

## SCOPE OF WORK AND INTENT

2. HLF will determine whether to pursue a claim on Client's behalf against the named parties. HLF has the right to refuse any claim without explanation. Client acknowledges that the initial intent in retaining HLF is to resolve their claim without litigation and to attempt to successfully negotiate a reasonable and amicable settlement between the alleged violator and the client. Client understands that if the alleged violator does not respond or settle, that litigation may be required.

## LITIGATION

**3. HLF MAY, AT ITS DISCRETION, CO-COUNSEL WITH A FIRM TO EFFECTIVELY AND FAITHFULLY RESOLVE CLIENT'S CLAIM. CLIENT AUTHORIZES HLF TO CO-COUNSEL ON ANY OR ALL OF CLIENT'S CLAIMS. CLIENT UNDERSTANDS THAT A PORTION OF THE FEES EARNED BY HLF MAY BE SHARED WITH CO-COUNSEL. CLIENT ALSO UNDERSTANDS, A NEW FEE AGREEMENT ACKNOWLEDGING CO-COUNSEL'S ROLE MAY NEED TO BE EXECUTED BY CLIENT. CLIENT UNDERSTANDS THE NEW FEE AGREEMENT SHALL SUPERSEED THIS AGREEMENT FOR THE SPECIFIC CLAIM IN WHICH THE NEW AGREEMENT WAS DRAFTED FOR .** _CMW_

## FEE AGREEMENT

4. Client understands that HLF will be paid on a contingency basis. HLF shall be compensated **40%** of the amount recovered if the case is settled before a lawsuit is filed, **45%** of the amount recovered after the filing of a lawsuit, unless the case is settled within **30 days** of filing of such suit, and **50%** of the amount recovered if there is a trial on the merits. The fees described above do not include any costs of litigation, including but not limited to, filing fees, mailing costs, witness expenses, or travel. The contingency fee shall be determined after a deduction of Costs. In the event there is no recovery on a claim, the Client will owe **NO FEES OR COSTS** to HLF.

## PAYMENTS

5. If successful, the settlement amount will either be deposited into HLF's IOLTA trust and the Client will be paid by check from HLF, or two checks will be written upon settlement, one of which will go directly to Client, the other to HLF.

## FEE SHARING

6. Client agrees that a portion of HLF's profits may be distributed to non-attorneys for services provided to HLF.

## POWER OF ATTORNEY

7. Client grants HLF power of attorney to act on their behalf and to execute all claims, contracts, settlements, checks, drafts, compromises, covenants, releases, verifications, dismissals and deposits, in every respect, as though Client were personally doing so.

CONFIDENTIAL                                                          HLF_Freeway_0000009

Document ID: b39932f0a0154106b9467912ecb587e3b916f10d

2

## SETTLEMENT AUTHORITY

8. Client acknowledges that based on HLF's expertise in TCPA claims, that it is best suited to negotiate and determine if any settlement offer received is reasonable based on the TCPA violation. Therefore, Client grants HLF settlement authority to authorize any settlement it deems practical and reasonable.

## TERMINATION

9. Client may terminate this Agreement by giving written notice to HLF at any time. Upon notice by Client, HLF has 30 days to settle or relinquish any claims that are in negotiation status at the time of the notice. HLF may terminate this Agreement by giving written notice to Client at any time. In the event the Client has outstanding claims in which HLF has incurred costs or fees, HLF will be reimbursed those costs by Client. HLF will also relinquish representation of all claims upon notice except those that are pending receipt of settlement.

## EXCLUSIVITY

10. Client agrees that upon retaining HLF, it will have no further contact with the alleged violator. This includes, but is not limited to: discussing settlements, discussing legality of violation, etc. If the Client receives any written, electronic or oral communication from the alleged violator or its representative, it will direct them to HLF immediately.

## JURISDICTION, VENUE AND CHOICE OF LAW

11. This Agreement shall be governed and construed in accordance with the laws of the District of Columbia, and the Parties agree to submit themselves to the exclusive jurisdiction of D.C. Courts in Washington, D.C. for any action arising out of or in connection with this Agreement.

## SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.

12. If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

## ACKNOWLEDGEMENT

13. This Agreement is inclusive of all TCPA and FDCPA claims submitted by the Client to HLF.

Dated: _10/04/2024_____        HLF:_*Andrew Heidarpour*_____

Client Signature: ___*Chet, Michael Wilson*_____        Dated: 10/04/2024_____

Client Name: _____        **Heidarpour Law Firm, PLLC**
**By: Andrew W. Heidarpour**
**D.C. Bar # 1022137**

Client Phone: ___5419999999_____

Client Address: _____

Emergency Contact: Name:___Brad Wilson_____Telephone Number:___5419999820____

CONFIDENTIAL        HLF_Freeway_0000010

# signNow

## Document History

SignNow E-Signature Audit Log

All dates expressed in MM/DD/YYYY (US)

| | |
|---|---|
| **Document name:** | Heidarpour Law Firm PLLC TCPA Retainer_Chet Michael Wilson |
| **Document created:** | 10/04/2024 16:30:13 |
| **Document pages:** | 2 |
| **Document ID:** | b39932f0a0154106b9467912ecb587e3b916f10d |
| **Document Sent:** | 10/04/2024 16:32:09 UTC |
| **Document Status:** | Signed |
| | 10/04/2024 16:40:33UTC |

| | |
|---|---|
| **Sender:** | info@hlfirm.com |
| **Signers:** | enzymaticathlete@gmail.com |
| **CC:** | |

| Client | Event | By | Server Time | Client Time | Response |
|---|---|---|---|---|---|
| SignNow Web Application | Uploaded the Document | info@hlfirm.com | 10/04/2024 16:30:13 pm UTC | 10/04/2024 16:30:09 pm UTC | Redacted |
| SignNow Web Application | Viewed the Document | info@hlfirm.com | 10/04/2024 16:30:20 pm UTC | 10/04/2024 16:30:19 pm UTC | |
| SignNow Web Application | Document Saved | info@hlfirm.com | 10/04/2024 16:31:19 pm UTC | 10/04/2024 16:31:17 pm UTC | |
| SignNow Web Application | Invite Sent to: enzymaticathlete@gmail.com | info@hlfirm.com | 10/04/2024 16:32:09 pm UTC | 10/04/2024 16:32:08 pm UTC | |
| SignNow Web Application | Viewed the Document | enzymaticathlete@gmail.com | 10/04/2024 16:33:05 pm UTC | 10/04/2024 16:33:04 pm UTC | |
| SignNow Web Application | Added a Text | enzymaticathlete@gmail.com | 10/04/2024 16:40:32 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Added a Text | enzymaticathlete@gmail.com | 10/04/2024 16:40:32 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Signed the Document | enzymaticathlete@gmail.com | 10/04/2024 16:40:32 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Signed the Document | enzymaticathlete@gmail.com | 10/04/2024 16:40:32 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Added a Text | enzymaticathlete@gmail.com | 10/04/2024 16:40:33 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Document Saved | enzymaticathlete@gmail.com | 10/04/2024 16:40:33 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Sender info@hlfirm.com received a signed document copy | info@hlfirm.com | 10/04/2024 16:40:40 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Signer enzymaticathlete@gmail.com received a signed document copy | enzymaticathlete@gmail.com | 10/04/2024 16:40:40 pm UTC | 10/04/2024 16:40:32 pm UTC | |
| SignNow Web Application | Viewed the Document | info@hlfirm.com | 06/26/2025 18:37:55 pm UTC | 06/26/2025 18:37:53 pm UTC | |

CONFIDENTIAL

# EXHIBIT Q

Docusign Envelope ID: F08F07B9-F58A-4135-BD26-653263E18984

## CONTINGENT FEE AGREEMENT

**CHET WILSON** ("Client") hereby retains **Heidarpour Law Firm, Paronich Law, P.C., Perrong Law** (collectively "the Attorneys"), and other lawyers they may need to associate with, to perform the legal services described below. The attorneys agree to perform these services faithfully and with due diligence.

1.   The Attorneys will investigate and prosecute potential bases for a class action suit against **FREEWAY INSURANCE SERVICES AMERICA, LLC** and/or associated entities, for transmitting telephone calls to the Client in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 (the "Class Action Claims"). I understand that the Attorneys have agreed to investigate claims and may assert claims on my behalf. The Attorneys make no guarantees or assurances with respect to the outcome of such a class action suit.

2.   I agree to be named by the Attorneys as a class representative in a suit asserting the Class Action Claims. I understand that as a class representative, I represent the interests of the entire class of consumers, and not just my own interest. I agree to cooperate fully in any discovery that is permitted of the class representatives, including the production of any documents. I understand that, at the Attorneys' discretion, other individuals may also serve as   additional class representatives. I understand that I must work with other class representatives   to serve the best interests of all class members. Client and the Attorneys affirm that Client is   not employed by nor related to any of the Attorneys.

3.   The Attorneys will advance all litigation costs and expenses that they determine are necessary for the investigation and prosecution of the Class Action Claims. I understand that  the Attorneys will be reimbursed for these costs and expenses, but only from any money   received in settlement or as a result of the entry of judgment.

4.   Unlike in personal injury cases, in TCPA cases, fees are negotiable rather than set by statute.   I understand that any attorneys' fees for services rendered regarding the Class Action Claims   will be contingent on a recovery from the defendant, and that my attorneys will receive their   out-of-pocket costs first. I understand that in most classwide resolutions, the court reviews   and awards appropriate attorney's fees. I agree that any attorney's fees for services incurred   prosecuting this litigation may be paid directly by the defendant to the attorneys and/or paid   from the net amount recovered for the entire class.

5.   I understand that the Attorneys will divide any attorney's fees recovered for the services rendered in prosecution of the claim as follows: 30% Heidarpour Law Firm PLLC, 60% Paronich Law P.C, and 10% Perrong Law. (Anthony Paronich will hire a local counsel). All attorneys carry liability insurance.

6.   I understand that I have no obligation to pay my attorneys' fees or costs except from amounts   collected on my behalf and on behalf of the class. If I incur any costs relating to my role as a   class plaintiff, my Attorneys will advance such costs. If class certification occurs, I  understand that the court controls the terms and conditions concerning the payment of  attorneys' fees and costs.

HLF_Freeway_0000012

Docusign Envelope ID: F08F07B9-F58A-4135-BD26-653263E18984

7.    In the event that this case is settled on an individual basis and not settled on a class action basis we will attempt to negotiate settlement/s for full statutory damages in the maximum amount of $500 for negligent violations and up to $1,500 for willful violations and independently negotiate our attorney's fees and costs; however, a negotiated settlement may  range anywhere up to $1,500 per violation, which is the maximum that you may be entitled  to recover under the statute. In the event we negotiate an individual settlement, that  settlement may include payment of attorney's fees directly to us based on the amount of time  spent on the matter multiplied by our hourly rates. At times, we may request the defendant  apply a multiplier based on certain risk factors in bringing this action. The amount of  payment of our attorney's fees (with or without a multiplier) may be greater than the amount  of statutory damages you recover. You further agree that any amount obtained in excess of  your statutory damages are either costs or attorney's fees and belong to us.    *C M W*

8.    The contingency arrangement agreed upon if this action settles on an individual basis is that you will receive up to your full statutory damages depending if the violations are determined  to be negligent or willful. The remainder will represent our attorney's fees and costs; Costs  will be paid directly to us, independent from any statutory damages you receive. Our  intention is that those costs will not reduce your recovery; Through the execution of this  agreement, we are not agreeing to represent you in any additional matters not directly  negotiated and discussed in this agreement. Any legal services not expressly outlined herein,   must be negotiated separately; This contingency fee is not set by law, but is negotiable  between us and you.

### **Duties of Client as a Class Representative**

A.    A class representative volunteers to represent many other people with similar claims and damages, because he/she believes: (1) it is important that all benefit from the lawsuit equally, (2) that a class lawsuit will save time, money and effort and will benefit all parties, and (3) that the class action is an important tool to assure compliance with the law, product safety and honest marketing practices.

B.    In order for Attorneys to effectively advocate Client's interests and the interests of all putative class members, Client's assistance and cooperation is required.  Client agrees to accept the duty to assist and cooperate with Attorneys as fully as possible during the pendency of the class action.  Client agrees and understands the duties as class representative, and agrees to:

1.    promptly furnish Attorneys with all information and documents in Client's possession or control when requested;
2.    be fully candid and truthful regarding all information and documents provided to Attorneys;
3.    represent the interests of all members of the class;
4.    always consider the interests of the class just as he/she would consider his/her own interests;

    HLF_Freeway_0000013

Docusign Envelope ID: F08F07B9-F58A-4135-BD26-653263E18984

5. participate actively in the lawsuit, such as by testifying at deposition and trial, answering written interrogatories and by keeping generally aware of the status and progress of the lawsuit;

6. recognize and accept that any resolution of the lawsuit, such as by settlement or dismissal, is subject to court approval and must be structured in the best interest of the class as a whole;

7. keep the Attorneys advised of Client's current address and telephone number at all times while this case is pending; and,

8. be generally knowledgeable with respect to the subject matter and progress of the lawsuit.

9. client is to advise the attorneys in advance of seeking any further relief under the bankruptcy laws (which may result in transfer of Client's claim to a trustee).

C. Client understands that if the lawsuit proceeds as a class action, Client's share of any judgment or any settlement will be determined on the same basis as that used to determine the share of the amount received by members of the entire class and that Client is not entitled to special treatment due to service as class representative. Client also understands that Client may apply for an incentive/service award, but any such award and any amount is in the court's discretion.

D. Client understands that a certified class action case cannot be settled or dismissed without the approval of the court.

I have read this fee agreement and agree to its terms and have signed it as my free act and deed this 29th day of August 2025.

_____
Chet Wilson

_Andrew Heidarpour_
Andrew Heidarpour

_____
Anthony Paronich

_Andrew Perrong_
Andrew Perrong

# EXHIBIT R

## **DECLARATION OF AUTHENTICITY**

I, Andrew Heidarpour, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney and authorized representative of Heidarpour Law Firm, PLLC ("HLF"), and I am familiar with the manner in which HLF maintains its records.

2. The documents produced herewith and Bates stamped HLF00001 through HLF00259 are true and correct copies of records maintained by HLF in the ordinary course of business.

3. These records were made and maintained at or near the time of the events reflected therein by persons with knowledge of those events or from information transmitted by persons with such knowledge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 11, 2026.

_____

Andrew Heidarpour
Authorized Representative of
Heidarpour Law Firm, PLLC

# EXHIBIT S

1

# <u>CONTINGENT FEE AGREEMENT</u>

**Erin E. Robertson**, hereinafter referred to as "Client", and Heidarpour Law Firm, PLLC hereinafter referred to as "HLF",

agree to the following contract for legal services.

## <u>EXPECTATION OF SERVICES</u>

1. Client hereby retains HLF to represent them for any and all claims regarding Telephone Consumer Protection Act (TCPA) and Fair Debt Collection Practices Act (FDCPA) violations.

## <u>SCOPE OF WORK AND INTENT</u>

2. HLF will determine whether to pursue a claim on Client's behalf against the named parties. HLF has the right to refuse any claim without explanation. Client acknowledges that the initial intent in retaining HLF is to resolve their claim without litigation and to attempt to successfully negotiate a reasonable and amicable settlement between the alleged violator and the client. Client understands that if the alleged violator does not respond or settle, that litigation may be required.

## <u>LITIGATION</u>

3. **HLF MAY, AT ITS DISCRETION, CO-COUNSEL WITH A FIRM TO EFFECTIVELY AND FAITHFULLY RESOLVE CLIENT'S CLAIM. CLIENT AUTHORIZES HLF TO CO-COUNSEL ON ANY OR ALL OF CLIENT'S CLAIMS. CLIENT UNDERSTANDS THAT A PORTION OF THE FEES EARNED BY HLF MAY BE SHARED WITH CO-COUNSEL. CLIENT ALSO UNDERSTANDS, A NEW FEE AGREEMENT ACKNOWLEDGING CO-COUNSEL'S ROLE MAY NEED TO BE EXECUTED BY CLIENT. CLIENT UNDERSTANDS THE NEW FEE AGREEMENT SHALL SUPERSEED THIS AGREEMENT FOR THE SPECIFIC CLAIM IN WHICH THE NEW AGREEMENT WAS DRAFTED FOR** . _EER_

## <u>FEE AGREEMENT</u>

4. Client understands that HLF will be paid on a contingency basis. HLF shall be compensated **40%** of the amount recovered if the case is settled before a lawsuit is filed, **45%** of the amount recovered after the filing of a lawsuit, unless the case is settled within **30 days** of filing of such suit, and **50%** of the amount recovered if there is a trial on the merits. The fees described above do not include any costs of litigation, including but not limited to, filing fees, mailing costs, witness expenses, or travel. The contingency fee shall be determined after a deduction of Costs. In the event there is no recovery on a claim, the Client will owe **<u>NO FEES OR COSTS</u>** to HLF.

## <u>PAYMENTS</u>

5. If successful, the settlement amount will either be deposited into HLF's IOLTA trust and the Client will be paid by check from HLF, or two checks will be written upon settlement, one of which will go directly to Client, the other to HLF.

## <u>FEE SHARING</u>

6. Client agrees that a portion of HLF's profits may be distributed to non-attorneys for services provided to HLF.

## <u>POWER OF ATTORNEY</u>

7. Client grants HLF power of attorney to act on their behalf and to execute all claims, contracts, settlements, checks, drafts, compromises, covenants, releases, verifications, dismissals and deposits, in every respect, as though Client were personally doing so.

HLF00110

2

## SETTLEMENT AUTHORITY

8. Client acknowledges that based on HLF's expertise in TCPA claims, that it is best suited to negotiate and determine if any settlement offer received is reasonable based on the TCPA violation. Therefore, Client grants HLF settlement authority to authorize any settlement it deems practical and reasonable.

## TERMINATION

9. Client may terminate this Agreement by giving written notice to HLF at any time. Upon notice by Client, HLF has 30 days to settle or relinquish any claims that are in negotiation status at the time of the notice. HLF may terminate this Agreement by giving written notice to Client at any time. In the event the Client has outstanding claims in which HLF has incurred costs or fees, HLF will be reimbursed those costs by Client. HLF will also relinquish representation of all claims upon notice except those that are pending receipt of settlement.

## EXCLUSIVITY

10. Client agrees that upon retaining HLF, it will have no further contact with the alleged violator. This includes, but is not limited to: discussing settlements, discussing legality of violation, etc. If the Client receives any written, electronic or oral communication from the alleged violator or its representative, it will direct them to HLF immediately.

## JURISDICTION, VENUE AND CHOICE OF LAW

11. This Agreement shall be governed and construed in accordance with the laws of the District of Columbia, and the Parties agree to submit themselves to the exclusive jurisdiction of D.C. Courts in Washington, D.C. for any action arising out of or in connection with this Agreement.

## SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.

12. If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

## ACKNOWLEDGEMENT

13. This Agreement is inclusive of all TCPA and FDCPA claims submitted by the Client to HLF.

**Dated:** _06/04/2024_____      **HLF:**___*Andrew Heidarpour*_____

**Client Signature:** ___*Erin E. Robertson*_____      **Dated:**_06/04/2024_____

**Client Name:** _____      **Heidarpour Law Firm, PLLC**
**By: Andrew W. Heidarpour**
**D.C. Bar # 1022137**

**Client Phone:** _____

**Client Address:** _____

**Emergency Contact:** Name:___Charles R. Godkin___Telephone Number:___(775) 224-9727___

HLF00111

# EXHIBIT T

# CLASS ACTION AUTHORIZATION

**Subject of representation**: **ERIN ROBERTSON**("CLIENT") retains and authorizes **KAUFMAN P.A., HEIDARPOUR LAW FIRM, PLLC AND PARONICH LAW, PC** (collectively "attorneys" or "LAW FIRMS") to (i) investigate potential claims and defenses against **AMERICAN PROTECTION PLANS LLC d/b/a ARW HOME (**DEFENDANT) concerning violations of the **Telephone Consumer Protection Act** (ii) if the attorneys' investigation shows that such a claim would have merit and that filing suit is appropriate, to file suit.

Client acknowledges that attorneys have not made any promise or prediction to Client about the outcome of Client's claims or causes of action.

As part of Attorneys' representation of Client, Attorneys will investigate whether some or all of Client's claims may be best pursued through a class action lawsuit.  If, after consultation with Attorneys, Client and Attorneys jointly elect to proceed with a class action, Client agrees to act as class representative(s) in that suit.  In that event, Client will be expected to act in the best interests of the entire class and not take any actions detrimental to the class.  It will be the goal of any potential class action pursued by the Client and the Attorneys to obtain just compensation for any losses sustained by Client and members of the class as well as to seek any other appropriate relief such as injunctive or declaratory relief for the benefit of Client and members of the class.  Client understands that in order for a case to be certified as a class action, it must be shown to the Court that there are common questions of law and fact which exist among all of the class members.  On that basis, the Client understands that any class action claims will be limited to those claims which can be shown to exist for each class member.  Client also understands that there are a number of special responsibilities associated with acting as a Class Representative, which have been explained to Client prior to the execution of this Agreement and which Client agrees to undertake.

## Duties of Client as a Class Representative

A.      A class representative volunteers to represent many other people with similar claims and damages, because he/she believes: (1) it is important that all benefit from the lawsuit equally, (2) that a class lawsuit will save time, money and effort and will benefit all parties, and (3) that the class action is an important tool to assure compliance with the law, product safety and honest marketing practices.

B.      In order for Attorneys to effectively advocate Client's interests and the interests of all putative class members, Client's assistance and cooperation is required.  Client agrees to accept the duty to assist and cooperate with Attorneys as fully as possible during the pendency of the class action.  Client agrees and understands the duties as class representative, and agrees to:

1.      promptly furnish Attorneys with all information and documents in Client's possession or control when requested;
2.      be fully candid and truthful regarding all information and documents provided to Attorneys;
3.      represent the interests of all members of the class;

HLF00001

4.    always consider the interests of the class just as he/she would consider his/her own interests;

5.    participate actively in the lawsuit, such as by testifying at deposition and trial, answering written interrogatories and by keeping generally aware of the status and progress of the lawsuit;

6.    recognize and accept that any resolution of the lawsuit, such as by settlement or dismissal, is subject to court approval and must be structured in the best interest of the class as a whole;

7.    keep the Attorneys advised of Client's current address and telephone number at all times while this case is pending; and,

8.    be generally knowledgeable with respect to the subject matter and progress of the lawsuit.

9.    client is to advise the attorneys in advance of seeking any further relief under the bankruptcy laws (which may result in transfer of Client's claim to a trustee).

C. Client understands that if the lawsuit proceeds as a class action, Client's share of any judgment or any settlement will be determined on the same basis as that used to determine the share of the amount received by members of the entire class and that Client is not entitled to special treatment due to service as class representative. Client also understands that Client may apply for an incentive/service award, but any such award and any amount is in the court's discretion.

D. Client understands that a certified class action case cannot be settled or dismissed without the approval of the court.

**Fees**. Client and the Attorneys agree that any fee for the Attorneys' services to Client or the class will be contingent upon effecting a recovery or successful result from the parties against whom the claims are brought. Client understands that Attorneys will advance all costs necessary for prosecution of Client's claims (to the extent applicable law and ethics rules allow), with these costs to be repaid to Attorneys solely out of any settlement, judgment or award, after the attorneys' fees have been deducted. Client further understands that Attorneys will pay any or all of Defendant' costs (to the extent applicable law and ethics rules allow) in the unlikely event that the Court orders such, if our litigation is unsuccessful.

Attorneys will receive the greater of (a) one-third (33 and 1/3%) of the total settlement proceeds, award or judgment, if any; or (b) the greater of the amount of any attorneys' fees incurred relating to the Claim. The Client also understands that the Attorneys will have the ability to negotiate an award for attorneys' fees separately from any recovery for the Client. Client understands that this fee is not set by law and was negotiable between Attorneys and Client. Client understands that no settlement of Client's individual claims will be made without Client's approval. Client agrees not to waive in whole or in part the right to recover attorneys' fees and/or costs as a condition of settlement.

In the event that this case is settled on an individual basis and not settled on a class action basis we will attempt to negotiate settlement/s for full statutory damages in the maximum   amount

HLF00002

of $500 for negligent violations and up to $1,500 for willful violations and  independently negotiate our attorney's fees and costs; however, a negotiated settlement may  range anywhere up to $1,500 per violation, which is the maximum that you may be entitled  to recover under the statute. In the event we negotiate an individual settlement, that  settlement may include payment of attorney's fees directly to us based on the amount of time  spent on the matter multiplied by our hourly rates. At times, we may request the defendant  apply a multiplier based on certain risk factors in bringing this action. The amount of  payment of our attorney's fees (with or without a multiplier) may be greater than the amount  of statutory damages you recover. You further agree that any amount obtained in excess of  your statutory damages are either costs or attorney's fees and belong to us.

*EER*

Client acknowledges and agrees that Heidarpour Law Firm will receive 30% of the fees after costs and that the remaining two Law Firms will split the remaining fees after costs. Kaufman P.A., and Paronich Law, PC shall retain local counsel on an hourly basis.
The Attorneys shall presume that the division in the previous sentences represents an equitable, just, proportional, and accurate reflection of the Law Firms' anticipated contributions to the resolution of the Action. If there is a material and substantial deviation from the anticipated work distribution, fees may be reallocated at the conclusion of the litigation to account for any such deviation.  Any reallocation does not affect Client's recovery.

**Expenses or Costs**.  Paronich Law and Kaufman P.A. will advance costs and litigation expenses, repayable only from a recovery as set forth above.  Expenses and costs include, but are not limited to: court filing fees, fees for service of process, messenger services, expert and consultant's fees, computer services, external photocopying expenses, travel and court reporter's fees.  Client will not have to pay fees or expenses of prosecution to Client's attorneys except as stated above.

Joint Costs associated with experts (including expert related travel costs), depositions (court reporters, videographers, and transcripts), class certification (including notice to the class), mediation and trial shall be paid as they are incurred based on each firm's percentage of the fee. Other costs such as travel related expenses for attorneys or support staff, external photocopying, printing, or PACER charges shall be reimbursed from any recovery prior to any calculation or allocation of that recovery to attorneys' fees. If recovery is insufficient to reimburse all costs, Joint Costs and expenses shall be reimbursed prior to the reimbursement of other costs and expenses.

**Assignment of right to fee award:**  Client assigns to the attorneys all rights conferred by statute or rule to recover attorneys' fees from Defendant.

**Other Counsel.** Client acknowledges and agrees that attorneys may retain co-counsel or local counsel to represent Client.  In such an event, these lawyers will be compensated out of the fees paid to attorneys and such representation will not affect Client's recovery.

**Statute of limitations:** There are short time frames provided by law for the filing of claims with some that expire within a year.  It is essential that this form be returned as soon as possible.

**Communication Via E-mail:**  In the Attorneys' experience, it is often necessary to

HLF00003

communicate with the CLIENT in writing.  Communications that the LAW FIRM would ordinarily make to the CLIENT by letter can often be made more quickly by email.  However, there may be risks associated with email communication.  The LAW FIRM has no control over the computer networks and systems through which messages between the LAW FIRM and CLIENT pass, or over the computer system networks and systems CLIENT uses to receive and store emails sent by the LAW FIRM.  Accordingly, it is impossible for the LAW FIRM to ensure that confidential communications between the LAW FIRM and CLIENT will not be seen or intercepted by third-parties.  Nevertheless, the CLIENT wishes to authorize the LAW FIRM to communicate with CLIENT by email as has been done already.

**Competing Suits** – Attorneys will not represent any other plaintiff in any other suit against the above Defendant without promptly notifying the other team members of their intent to do so. In the event that any member of the team participates in any other class action involving the same claims and against the above Defendant that suit is subject to the provisions of this agreement as if that action had been filed with the matter identified in this agreement.

**Sharing of Work** – The Attorneys anticipate that they will equally be responsible for this matter and allocate work by agreement.

**Contemporaneous Records** – Each Attorney agrees to keep detailed, contemporaneous records of all billable time expended and all necessary costs, disbursements and expenses incurred in these cases, and maintain separate records of such time and costs for each matter.  The attorneys will periodically exchange estimates of time expended in order balance the work load as envisioned by this agreement.

**Support for Recovery of Costs, Litigation Expenses, and Fees** – All Attorneys agree to fully cooperate and support each other's motions for fees and expenses in accordance with applicable law, if necessary.

**Statement Of Client's Rights.** Before signing this contract, Client acknowledges that they received and read the Statement of Client's Rights attached to this Agreement, and understand each of the rights set forth herein and therein. Client has signed the statement and received a signed copy to keep and to refer to while being represented by Law Firm.

**Right To Cancel.** This contract may be canceled by written notification to Law Firm at any time within three (3) business days of the date the contract was signed, as shown below, and if canceled, Client shall not be obligated to pay any fees to Law Firm for the work performed during that time. If Law Firm has advanced funds to others in representation of Client, Law Firm is entitled to be reimbursed for such amounts as it has reasonably advanced on behalf of Client.

**Governing Law.** This agreement shall be governed by the laws of the state of Florida.

**Dispute Resolution** – Any dispute between the ATTORNEYS to this Agreement must be subject of arbitration before a single arbitrator in accordance with the rules of JAMS. The arbitrator's fees and any other common expense will be shared equally by the parties, except the arbitrator will order that the reasonable expenses (other than attorneys' fees) of the prevailing party, if any, be borne by the other party.  **THIS PROVISION DOES NOT APPLY TO CLIENT.**

HLF00004

## STATEMENT OF CLIENT RIGHTS

Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:

1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.

2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.

3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer's actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.

4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.

5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.

6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary

HLF00005

costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered on the amount recovered minus the costs.

7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney's fees to the other side.

8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.

9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.

10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.

11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 904-561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit.

HLF00006

Dated: 08/02/2024

*Erin E. Robertson*
_____
Erin Robertson
2050 Longley Lane APT 506
Reno, NV 89502
Erin85alk@gmail.com

*Andrew Heidarpour*
_____
Andrew Heidarpour
Heidarpour Law Firm, PLLC
1300 Pennsylvania Ave NW
Washington, DC 20004
aheidarpour@hlfirm.com

_____
Avi R. Kaufman
Kaufman PA
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
kaufman@kaufmanpa.com

_____
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

HLF00007

# EXHIBIT U

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED,

Plaintiff,

v.

Choice Financial Management, Inc

Defendant.

:   **Case No**  3:24-cv-01086
:

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $40,000.00 |
| Less Attorneys' Fees and Costs | $35,500.00 |
| **AMOUNT to Erin Robertson** *EER* | **$4,500.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST CHOICE FINANCIAL MANAGEMENT, INC.**

*Erin E. Robertson*
_____
Erin Robertson

08/01/2024
Date:_____

HLF00228

Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED,

      :    **Case No**

      :

    Plaintiff,

    v.

Americor Funding, LLC

    Defendant.

## SETTLEMENT STATEMENT

| Settlement Amount | $50,000.00 |
|---|---|
| Less Attorneys' Fees and Costs | $45,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$5,000.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST AMERICOR FUNDING, LLC.**

*Erin E. Robertson*

_____

Erin Robertson

Date:_ 09/18/2024

HLF00235

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED, | : | **Case No** 8:24-cv-01760 |
| Plaintiff, | : | |
| v. | | |
| Freerateupdate.com Corp. | | |
| Defendant. | | |

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $20,000.00 |
| Less Attorneys' Fees and Costs | $17,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$3,000.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST FREERATEUPDATE.COM CORP.**

*Erin E. Robertson*
_____
Erin Robertson

Date:_  09/05/2024

HLF00236

United States District Court

for the Northern District of Illinois

| | | |
|---|---|---|
| Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED, | : <br> : | **Case No** No. 1:24-cv-05281 |
| Plaintiff, | | |
| v. | | |
| AccuQuote, Inc. | | |
| Defendant. | | |

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $40,000.00 |
| Less Attorneys' Fees and Costs | $35,500.00 |
| **AMOUNT to Erin Robertson** *EER* | **$4,500.000** |

**I, THE CLIENT, DECLARE THAT:**

    **(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

    **(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION** AGAINST ACCUQUOTE, INC.

*Erin E. Robertson*
_____

Erin Robertson

Date:_ 09/19/2024

HLF00241

United States District Court for the
Northern District of Texas

:

Erin Robertson, INDIVIDUALLY AND ON          :       **Case No** 24-cv-2233
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,

      Plaintiff,

v.

BH Security LLC d/b/a Brinks Home

      Defendant.

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $25,000.00 |
| Less Attorneys' Fees and Costs | $22,000.00 |
| **AMOUNT to Erin Robertson**  *EER* | **$3,000.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST BH SECURITY LLC d/b/a BRINKS HOME.**

*Erin E. Robertson*
_____                    Date:_ 11/11/2024
Erin Robertson

HLF00242

United States District Court

for the Central District of Florida

Erin Robertson, INDIVIDUALLY AND ON   :    **Case No** 8:24-cv-01722-JWH-DFM
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,   :

     Plaintiff,

     v.

CWPVA Inc. d/b/a Home Genius Exteriors

     Defendant.

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $45,000.00 |
| Less Attorneys' Fees and Costs | $40,500.00 |
| **AMOUNT to Erin Robertson** *EER* | **$4,500.000** |

**I, THE CLIENT, DECLARE THAT:**

    **(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

    **(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST CWPVA, INC. D/B/A HOME GENIUS EXTERIORS.**

*Erin E. Robertson*
_____       Date:_ 10/21/2024

Erin Robertson

HLF00243

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED,

    Plaintiff,

    v.

*NextGen Leads, LLC*

    Defendant.

:    **Case No**   3:24-cv-01361

:

## SETTLEMENT STATEMENT

| Settlement Amount | $65,000.00 |
|---|---|
| Less Attorneys' Fees and Costs | $59,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$6,000.000** |

**I, THE CLIENT, DECLARE THAT:**

    **(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

    **(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST *NextGen Leads, LLC.***

*Erin E. Robertson*
_____
Erin Robertson

Date:_    08/23/2024

HLF00248

United States District Court for the
District Court of Maryland

:

Erin Robertson, INDIVIDUALLY AND ON      :      **Case No:** 1:24-cv-02312-JKB
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,

     Plaintiff,

v.

CLEARONE ADVANTAGE, LLC

     Defendant.

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $46,500.00 |
| Less Attorneys' Fees and Costs | $43,500.00 |
| **AMOUNT to Erin Robertson** | **$3,000.000** |

*EER*

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST CLEARONE ADVANTAGE, LLC .**

_____

Erin Robertson

Date:_____     03/26/2025

HLF00249

United States District Court for the
Western District of Missouri

:

Erin Robertson, INDIVIDUALLY AND ON
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,

     Plaintiff,

v.

MORTGAGE RESEARCH CENTER, LLC
D/B/A VETERANS UNITED

     Defendant.

:    **Case No**. 2:24-cv-04106-MDH

## SETTLEMENT STATEMENT

| Settlement Amount | $45,000.00 |
|---|---|
| Less Attorneys' Fees and Costs | $42,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$3,000.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST MORTGAGE RESEARCH CENTER, LLC D/B/A VETERANS UNITED .**

_____
Erin Robertson

Date:_ 01/28/2025

HLF00250

United States District Court for the
Central District to California
:

| | | |
|---|---|---|
| Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED, | : | **Case No:** 5:24-cv-02138-KK-SHK |
| Plaintiff, | | |
| v. | | |
| OFFERPAD BROKERAGE CA INC | | |
| Defendant. | | |

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $19,000.00 |
| Less Attorneys' Fees and Costs | $16,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$3,000.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST OFFERPAD BROKERAGE CA INC .**

Date:_ 02/26/2025

_____
Erin Robertson

HLF00251

United States District Court for the
Central District of California

:

| Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED, | : | **Case No** |
| | | 2:24-cv-09085-HDV-AJR |

Plaintiff,

v.

GREAT LLC

Defendant.

## SETTLEMENT STATEMENT

| Settlement Amount | $5,000.00 |
|---|---|
| Less Attorneys' Fees and Costs | $4,000.00 |
| **AMOUNT to Erin Robertson** | **$1,000.000** |

*EER*

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST GREAT LLC .**

*Erin E. Robertson*

Date:_  12/18/2024

Erin Robertson

HLF00252

# IN THE UNITED STATES DISTRICT COURT

Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED,

       Plaintiff,

       v.

HealthPlanOne, LLC and Lead Generation Inc.,

       Defendant.

:    **Case No**

:

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $42,000.00 |
| Less Attorneys' Fees and Costs | $37,500.00 |
| **AMOUNT to Erin Robertson** | **$4,500.000** |

*EER*

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST HEALTHPLANEONE, LLC AND LEAD GENERATION INC.**

*Erin E. Robertson*

_____

Erin Robertson

Date:_ 08/23/2024

HLF00253

United States District Court for the
Nevada District Court
:

Erin Robertson, INDIVIDUALLY AND ON      :      **Case No** 3:25-cv-00294
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,

     Plaintiff,

v.

INSURANCE PIPELINE, INC

     Defendant.

## SETTLEMENT STATEMENT

| Settlement Amount | $65,000.00 |
|---|---|
| Less Attorneys' Fees and Costs | $59,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$6,000.000** |

**I, THE CLIENT, DECLARE THAT:**

    **(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

    **(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

    **(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE , HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, PELUSO LAW LLC , PATRICK PELUSO FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST INSURANCE PIPELINE, INC**

Date:_ 09/09/2025

_____

Erin Robertson

HLF00254

United States District Court for the
Southern District Of Florida
:

Erin Robertson, INDIVIDUALLY AND ON     :     **Case No** 0:24-cv-61826,
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,

    Plaintiff,

v.

LEOSOURCE INSURANCE AGENCY,
LLC

    Defendant.

## SETTLEMENT STATEMENT

| Settlement Amount | $25,000.00 |
|---|---|
| Less Attorneys' Fees and Costs | $20,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$5,000.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST LEOSOURCE INSURANCE AGENCY, LLC .**

*Erin E. Robertson*                 Date: 11/12/2024
_____
Erin Robertson

HLF00255

United States District Court for the
Southern District of Florida

:

Erin Robertson, INDIVIDUALLY AND ON          :          **Case No**1:24-cv-23156-KMW
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,

     Plaintiff,

v.

NETWORK CAPITAL FUNDING
CORPORATION

     Defendant.

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $45,000.00 |
| Less Attorneys' Fees and Costs | $42,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$3,000.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST NETWORK CAPITAL FUNDING CORPORATION .**

Date:_ 01/28/2025

_____
Erin Robertson

HLF00256

United States District Court for the
Southern District Court of Florida

:

Erin Robertson INDIVIDUALLY AND ON      :      **Case No:** 9:2025cv80558
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,

    Plaintiff,

v.

PATRIOT HEALTH FLORIDA, INC

    Defendant.

## SETTLEMENT STATEMENT

| Settlement Amount | $20,000.00 |
|---|---|
| Less Attorneys' Fees and Costs | $17,500.00 |
| **AMOUNT to Erin Robertson** | **$2,500.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST PATRIOT HEALTH FLORIDA, INC .**

Date:_ 11/05/2025

_____
Erin Robertson

HLF00257

:

Erin Robertson, INDIVIDUALLY AND ON      :
BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,

     Plaintiff,

v.

SOLIDQUOTE LLC

     Defendant.


## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $30,000.00 |
| Less Attorneys' Fees and Costs | $25,000.00 |
| **AMOUNT to Erin Robertson** *EER* | **$3,000.000** |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST SOLIDQUOTE LLC**

_____     Date:_ 05/29/2025

Erin Robertson

HLF00258

United States District Court for the
District Court of Nevada
:

| | | |
|---|---|---|
| Erin Robertson, INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED, | : | **Case No:** 3:24-cv-00366-ART-CSD |
| Plaintiff, | | |
| v. | | |
| WINTRUST FINANCIAL CORPORATION D/B/A VETERANS FIRST MORTGAGE | | |
| Defendant. | | |

## SETTLEMENT STATEMENT

| | |
|---|---|
| Settlement Amount | $6,000.00 |
| Less Attorneys' Fees and Costs | $5,000.00 |
| **AMOUNT to Erin Robertson** | **$1,000.000** |
| *EER* | |

**I, THE CLIENT, DECLARE THAT:**

**(1) I HAVE READ THIS SETTLEMENT STATEMENT.**

**(2) I AUTHORIZE AND AGREE TO ALL DISBURSEMENTS REFLECTED IN THIS SETTLEMENT STATEMENT.**

**(3) I, ERIN ROBERTSON, RELEASE, ACQUIT, AND FOREVER DISCHARGE RELEASE PARONICH LAW, P.C., ANTHONY PARONICH, HEIDARPOUR LAW FIRM, PLLC, ANDREW HEIDARPOUR, KAUFMAN PA, AVI KAUFMAN, AND RACHEL KAUFMAN FROM ANY AND ALL MANNER OF ACTIONS, CAUSES OF ACTION, SUITS, JUDGMENTS, DEMANDS, CLAIMS, RIGHTS, INTERESTS, REMEDIES OF ANY NATURE, KIND OR DESCRIPTION WHATSOEVER IN LAW OR IN EQUITY THAT I HAD, NOW HAVE, OR MAY HAVE AGAINST THEM, WHETHER KNOWN OR UNKNOWN, UP TO AND INCLUDING THE DATE OF MY SIGNATURE, INCLUDING BUT NOT LIMITED TO IN RELATION TO LITIGATION AGAINST WINTRUST FINANCIAL CORPORATION D/B/A VETERANS FIRST MORTGAGE .**

_____
Erin Robertson

Date:_ 04/11/2025

HLF00259

# EXHIBIT V



**Source URL:** https://www.threads.com/@bunkerplot/post/DafvcDdG0-R?xmt=AQG03dy4Or3GmyihM0FtomeSXRczI67N95F4I47z6id_TA

**Collection Timestamp:** Tue Jul 21 2026 14:57:57 GMT-0500 (Central Daylight Time)



**Source URL:** https://www.threads.com/@bunkerplot/post/DafvcDdG0-R?xmt=AQG03dy4Or3GmyihM0FtomeSXRczI67N95F4I47z6id_TA

**Collection Timestamp:** Tue Jul 21 2026 14:57:57 GMT-0500 (Central Daylight Time)

# EXHIBIT W

Kevin J. Jacoby, OSB No. 063783
Email: kevin@saltlawgroup.com
Neal S. Shechter, OSB No. 185119
Email: neal@saltlawgroup.com
SALT
100 SW Main St, Ste 1025
Portland, OR 97204
Phone: 503.417.7777

*Of Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **CHET MICHAEL WILSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MAH GROUP, INC. D/B/A WOLFPAK**,<br><br>Defendant, | Case No. 6:25-cv-00855-MTK<br><br>**DECLARATION OF NEAL SHECHTER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS** |

I, Neal Shechter, hereby declare and state as follows:

1.      I am one of the attorneys for Defendant MAH Group, Inc. d/b/a WolfPak

("Defendant") in this matter and I have personal knowledge of the information in this

declaration. I am over 18 years of age and competent to testify to the information in this

declaration. I make this declaration in support of Defendant's Opposition to Plaintiff's Second

Motion for Attorneys' Fees and Other Sanctions.

2.      Since this law firm appeared as counsel for Defendant, Defendant has been

PAGE 1 – DECLARATION OF NEAL SHECHTER IN SUPPORT
OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS



100 SW Main Street, Suite 1025
Portland, OR 97204
T: 503.417.7777  F: 503.214.8816

cooperative and diligent in responding to all requests and has provided significant discovery to Plaintiff including contacting nonparty vendors and producing at least 560 pages of discovery including evidence of how Defendant received consent from consumers and multiple lengthy spreadsheets of messages sent by nonparty marketing vendors, Yotpo and Klaviyo.

3.      Defendant provided Plaintiff with records that Plaintiff consented to receiving the text messages at issue in the Complaint and that Yotpo, Inc. does not use an ATDS system. A true and accurate copy of the record is attached as Exhibit A, MAH000001-MAH000002.

4.      Defendant provided Plaintiff with records that an individual at IP address 73.240.49.37 signed up for 541-XXX-9999 to receive marketing messages via Yotpo. Plaintiff's Counsel denied the IP address was Plaintiff's, however Plaintiff subsequently admitted it was. True and accurate copies are attached as Exhibit B, Email Conversation between Counsel and Exhibit C, Plaintiff's RFA Response.

5.      Defendant requested a stay to address the consent issue and the lack of veracity in the allegations in the Complaint and Plaintiff refused.

6.      Defendant's Counsel repeatedly requested that Plaintiff's Counsel identify with particularity what records from Yotpo were being requested, but Plaintiff refused. Plaintiff instead asserted that Defendant has control over all of Yotpo's records and that unspecified records in response to RFP 17 had not been produced. A true and accurate copy of the email discovery conversation between counsel is attached as Exhibit D, Counsel Discovery Emails.

7.      A true and accurate copy of the Declaration of Alan Birch, Yotpo's in-house counsel, is attached as Exhibit E, Birch Declaration.

8.      Since providing the Birch Declaration to Plaintiff's Counsel on April 2, 2026, Plaintiff has filed a Request to Supplement Plaintiff's First Motion for Sanctions, demanded

PAGE 2 – DECLARATION OF NEAL SHECHTER IN SUPPORT
OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS



100 SW Main Street, Suite 1025
Portland, OR 97204

T: 503.417.7777  F: 503.214.8816

privileged communications, and requested an additional Informal Discovery Conference with the presiding judge.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED ON: April 14, 2026

_____
Neal Shechter

PAGE 3 – DECLARATION OF NEAL SHECHTER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS

**Salt**

100 SW Main Street, Suite 1025
Portland, OR 97204

T: 503.417.7777  F: 503.214.8816

## CERTIFICATE OF SERVICE

I hereby certify that I served the attached **DECLARATION OF NEAL SHECHTER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR ATTORNEY'S FEES AND OTHER SANCTIONS** on the following:

Anthony I. Paronich
Email: anthony@paronichlaw.com
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043

Andrew R Perrong
Email: a@perronglaw.com
Perrong Law LLC
2657 Mt. Carmel Ave.
Glenside, PA 19038

by the following indicated method(s):

☒    by **e-service** through filing the document with the Court's CM/ECF system.

☐    by **emailing** full, true, and correct copies thereof to said attorney to the email address noted above, which is the last known email address for said attorney, on the date set forth below.

☐    by causing full, true and correct copies thereof to be **mailed** to the attorney(s) at the attorney(s) last-known office address(es) listed above on the date set forth below.

DATED: April 14, 2026          **SALT**

By: */s/ Kevin J. Jacoby*
Kevin J. Jacoby, OSB No. 063783
Email: kevin@saltlawgroup.com
Neal S. Shechter, OSB No. 185119
Email: neal@saltlawgroup.com
*Of Attorneys for Defendant*

PAGE 1 – CERTIFICATE OF SERVICE

**Salt**
100 SW Main Street, Suite 1025
Portland, OR 97204
T: 503.417.7777  F: 503.214.8816

**yotpo.**

Dear Mr. Michael Henderson
Founder & CEO
Mah Group, Inc. (DBA Wolfpak) ("**Company**").

RE: <u>**TCPA SMS CLAIM**</u>

We are following up with you regarding the claim from the holder of phone number +1-541-999-9999 (the "**Claimant**"), arguing that the Company violated the TCPA by sending SMS text messages.

We sincerely appreciate you bringing these concerns to our attention. Here at Yotpo, we take compliance very seriously and collaborate with our clients and partners to protect the rights of their customers and ensure the best possible consumer experience.

For a text message to violate the TCPA, it must have been initiated using an Automatic Telephone Dialing System ("**ATDS**") without the recipient's consent[1]. Systems that send text messages to existing lists of telephone numbers do not meet the definition of ATDS. Because Yotpo utilizes existing lists of telephone numbers provided by customers – and does not utilize a random or sequential number generator – Yotpo's system is not an ATDS as a matter of law. Accordingly, text messages initiated using Yotpo are not subject to the TCPA.

Furthermore, we confirm that Claimant subscribed to the Company's SMS campaign in a compliant manner in accordance with the TCPA requirements. As described in detail in **Exhibit A**, we have records of the logs and proof of Claimant's opt-in into your Company SMS campaign.

For the reasons set forth above and considering that (i) Yotpo's system is not an ATDS; and (ii) the Company has obtained the required opt-in consents in accordance with the TCPA, the current claim is baseless and any lawsuit based on such a claim would be frivolous.

If you have any questions or need additional information, please let us know.

DocuSigned by:

*Alan Birch*

81E0EA6AB1DD4BD...

Alan Birch
Director, Legal

---

[1] The United State Supreme Court addressed the definition of ATDS in a case called *Facebook v. Duguid* (592 U.S. ___ ) (2021). There, the Supreme Court found that only systems that utilize random or sequential number generators as part of the messaging process can constitute an ATDS.

MAH000001 **EXHIBIT A**
**Page 1 of 2**

<u>Exhibit A</u>

**Opt-in data**

The holder of phone number **+1-541-999-9999** opted-in on 2025-01-01 at 23:09:56 New York Time through the subscription form.

**Form of subscription**

Screenshot of subscription form Claimant used to subscribe by phone number +1-513-497-8392 at the time stated above:



Highlight of the compliance language displayed in the form as can be seen in the screenshot:
*By signing up via text you agree to receive recurring automated marketing messages and shopping cart reminders at the phone number provided. Consent is not a condition of purchase. Reply STOP to unsubscribe. HELP for help. Msg & Data rates may apply. View Privacy Policy & ToS*

**Message history**

PFA attached doc with all the messages sent to Claimant from the moment they subscribed until 2025-05-12 (they are still subscribed), including the date and time of each message and its copy. The message timestamps are in UTC.

**Opt-out data**

Claimant is still subscribed (has not opted out).

 Outlook

## RE: Wilson v. MAH Group; Supplemental Production

**From** Anthony Paronich <anthony@paronichlaw.com>
**Date** Tue 2/24/2026 10:44 AM
**To** Neal Shechter <neal@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>; Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc** Andrew Shute <Andrew@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>

Counsel:

Of course, you should feel free to serve whatever discovery you think is appropriate and we will provide a response. However, there are a few things you are simply ignoring or should further consider.

First, we've already indicated, but allow us to be clear, that is not our client's IP address. Even though he did not need to, Andrew Perrong indicated that there's a process for a motion you can file to find out whose it is. Notably, as Andrew also pointed out, your basing your consent off of (a) someone else's name and (b) someone else's phone number. That's insufficient to be our client's consent.

Second, as Andrew also already pointed out, you're basing your consent on language that is insufficient under the TCPA.

Third, as you should know from a review of the production and your client's file (including multiple communications with your client's attorney), your client has continued to text our client after the filing of the lawsuit. While there is not consent in the first place, the filing of this lawsuit would clearly be a revocation of any purported consent and your client's continued contact of him is in violation of the statute.

In sum, if you want to file a motion seeking "every dollar" of whatever costs your client has incurred, we will respond appropriately and with our own request for relief as we have also indicted. However, since we have given you many reasons why your position is factually and legally insufficient, I hope that won't be necessary.

Finally, I've never had an attorney tell me that I need to "cut out this nonsense", and perhaps the Court will view that differently, but we don't believe that to be an appropriate course of conduct. This is especially true when it is your client that made the decision not to participate in discovery for months, then sent us AI generated discovery responses and did not meet the Court's (extended) deadline for production under the Court's Order and is facing a pending sanctions motion. It is our hope that you will able to litigate this case more professionally going forward.

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

**EXHIBIT B**
**Page 1 of 11**

This email message may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**From:** Neal Shechter <neal@saltlawgroup.com>
**Sent:** Tuesday, February 24, 2026 12:32 PM
**To:** Andrew Perrong <a@perronglaw.com>; Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Andrew Shute <Andrew@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

I've got an even better idea. Why don't we just serve the two of you an RFA today to admit that's an IP Address either previously or currently used by your client. If you deny it, you'll pay the entire fees and costs of this lawsuit, since consent is the entire crux of the matter, and although we'll still move for sanctions, cost-shifting will be required instead of optional.
When the two of you are ready to cut out this nonsense, we can talk about putting all of this on pause until we jointly determine whether there's any truth behind your client's lawsuit, which most Oregon judges will expect you to do. Whether that is by subpoena, or you simply asking your client, or otherwise.
If you're not ready to have that conversation, I have advised you of what we intend to inform the Court of and the relief we will be seeking. Feel free to give me a call on my cell if you'd like to discuss further 917-993-3878.



**Neal Shechter** | Attorney

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Tuesday, February 24, 2026 9:23 AM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; Neal Shechter <neal@saltlawgroup.com>; Andrew Shute <Andrew@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Wilson v. MAH Group; Supplemental Production

You're free to send us a discovery request, perhaps along with a 47 U.S.C. § 551 motion for leave to serve a subpoena on Comcast, which we won't object to.

On Tue, Feb 24, 2026 at 9:21 AM Kevin Jacoby <<u>Kevin@saltlawgroup.com</u>> wrote:

I guess we'll have to wait for the confirmation I asked for. How long can we expect to wait?

**Sal̤t**

**Kevin Jacoby** | Attorney

T: 503.417.7777
F: 503.214.8816
E: <u>Kevin@SaltLawGroup.com</u>

<u>SaltLawGroup.com</u>

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Andrew Perrong <<u>a@perronglaw.com</u>>
**Sent:** Tuesday, February 24, 2026 9:16 AM
**To:** Kevin Jacoby <<u>Kevin@saltlawgroup.com</u>>
**Cc:** Anthony Paronich <<u>anthony@paronichlaw.com</u>>; Neal Shechter <<u>neal@saltlawgroup.com</u>>; Andrew Shute <<u>Andrew@saltlawgroup.com</u>>; Christin Grieser <<u>ChristinG@saltlawgroup.com</u>>; LegalOps <<u>LegalOps@saltlawgroup.com</u>>
**Subject:** Re: Wilson v. MAH Group; Supplemental Production

We would also draw your attention to the fact that MAH 00002 references another telephone number entirely, 513-497-8392, as well as to MAH000016, which seems to indicate that the subject sign up was completed in the name of "Taken Rosins" and the email of "<u>no@gmail.com</u>." That seems to be confirmed by the document you produced in this email thread as MAH000525, which shows a screenshot with the same information. That is not our client's information and is just junk information insufficient to establish TCPA-specific consent. *See Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 984 (N.D. Cal. 2019).

On Tue, Feb 24, 2026 at 9:05 AM Kevin Jacoby <<u>Kevin@saltlawgroup.com</u>> wrote:

See MAH000001-2. See also MAH000521, the message immediately preceding the email you referenced as the first day our client requested all the text logs from Yotpo.

Please let us know as soon as possible whether you're able to confirm that your client is not associated with IP address 73.240.49.37 in any way.

**Salt**

**Kevin Jacoby** | Attorney

T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com

SaltLawGroup.com

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Tuesday, February 24, 2026 4:03 AM
**To:** Neal Shechter <neal@saltlawgroup.com>; Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

Neal:

I will be on a flight on March 5, but can be available at 11:00 your time on March 11.

We'll review any properly served Rule 11 motion and for anything done in contravention of the rules, we will seek appropriate 28 U.S.C. § 1927 sanctions. I'm interested in seeing your case law in support of a "cross motion" for Rule 11 sanctions as our motion was required by a Court Order. Additionally, with your client's various violations of Court Orders, sporadic productions after the Court Ordered deadline and rotating attorneys, I have no idea what you mean by "the first two pages of the discovery".

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are

hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

---

**From:** Neal Shechter <neal@saltlawgroup.com>
**Sent:** Monday, February 23, 2026 11:04 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

Anthony:

I am available to confer next week on 3/5. Please advise a time that works for you.

However, we have reviewed this file in detail and are now prepared to cross-move for Rule 11 sanctions against your client in light of the first two pages of the discovery we have provided to you. It is now apparent that paragraphs 21, 23 and 24 of the Complaint are false and need to be withdrawn and the case dismissed. You need to review those pages we have produced to you and advise your client to withdraw this action immediately. We feel that it is inappropriate to accrue additional attorney fees in light of these issues. If you refuse to withdraw this action and force us to serve you with formal papers under Rule 11 and oppose your existing motion, we will be forced to advise the court that Plaintiff is hiding behind an FRCP 11 safe harbor period to cause us to accrue additional fees in discovery and motion practice, and we will cross-move for every dollar of those fees to be assessed against counsel. I urge you to withdraw this action promptly, before we begin to unwind this mess and seek all available remedies.

Neal

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Monday, February 23, 2026 4:53 PM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>
**Cc:** Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>; Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Wilson v. MAH Group; Supplemental Production

Counsel:

Our notes on these issues are below now that we've reviewed the supplement:

- For Interrogatory No. 2, the Defendant does not disclose where the numbers came from with respect to the texts sent through Klayvio. **We will amend our response to this interrogatory as soon as possible, but my understanding is that the numbers were imported from Yotpo.**
- For Interrogatory No. 9 and Document Request No. 18, we believe all communications with Klayvio and Yotpo should be identified. **We have produced all communications with Yotpo. Communications from Klayvio are being produced later today.**

- **It appears the first date your client requested all of the text logs from Yotpo was February 12, 2026 based on this production. Please advise if there are more documents forthcoming.**

- Documents responsive to Document Request No. 5 are relevant to damages and class ascertainability and should be produced. **The objection to this request was not overruled in the discovery order. Indeed, you did not move against this objection in your motion to compel. I'm happy to confer on this further, but I'd like to focus on what was ordered to be produced.**

  - **Please advise when you are available to confer next week.**

- Document Request No. 7 and 9 appear to be limited to the Plaintiff, which we do not agree is appropriate. **But that's specifically what those requests asked for. Request 7: "All internal communications at your company regarding any vendor that provided you with *the Plaintiff's* telephone number or information." Request 9: "All communications with any third party that dialed the calls to *the Plaintiff*."**

  - **No, it identifies the entity in terms of who interacted with the Plaintiff. It does not say "All communications <u>about the Plaintiff</u> with any third party that dialed the calls to *the Plaintiff*." So, please advise when you can confer next week.**

- Document Request No. 13 does not include a denial letter or other correspondence to allow us to understand the current claim status of the policies produced. **We will locate and produce the denial letter.**
- Document Request No. 17 relates to your client's affirmative defense of consent. It should be produced or withdrawn. **We did produce, however I believe there are additional documents that were discovered since we produced, which will be produced later today. This includes the IP address of the person who entered Plaintiff's phone number into the opt-in form, which I understand is located in the Eugene area.**

  - **This request is also not limited to the Plaintiff, so please advise when you are available to confer next week.**

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Fri, Feb 13, 2026 at 2:42 PM Kevin Jacoby <Kevin@saltlawgroup.com> wrote:

Responding in line below in red.

**Salt**

**Kevin Jacoby** | Attorney

T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com

SaltLawGroup.com

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Friday, February 13, 2026 8:02 AM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>; Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Wilson v. MAH Group; Supplemental Production

Counsel:

As we have been preparing our sanctions motions and have also further reviewed the discovery responses now that we are well beyond the extended deadline. Please provide us your position with respect to the failure to produce the following:

- For Interrogatory No. 2, the Defendant does not disclose where the numbers came from with respect to the texts sent through Klayvio. We will amend our response to this interrogatory as soon as possible, but my understanding is that the numbers were imported from Yotpo.
- For Interrogatory No. 9 and Document Request No. 18, we believe all communications with Klayvio and Yotpo should be identified. We have produced all communications with Yotpo. Communications from Klayvio are being produced later today.
- Documents responsive to Document Request No. 5 are relevant to damages and class ascertainability and should be produced. The objection to this request was not overruled in the discovery order. Indeed, you did not move against this objection in your motion to compel. I'm happy to confer on this further, but I'd like to focus on what was ordered to be produced.
- Document Request No. 7 and 9 appear to be limited to the Plaintiff, which we do not agree is appropriate. But that's specifically what those requests asked for. Request 7: "All internal communications at your company regarding any vendor that provided you with *the Plaintiff's* telephone number or information." Request 9: "All communications with any third party that dialed the calls to *the Plaintiff*."

**EXHIBIT B**
**Page 7 of 11**

- Document Request No. 13 does not include a denial letter or other correspondence to allow us to understand the current claim status of the policies produced. We will locate and produce the denial letter.
- Document Request No. 17 relates to your client's affirmative defense of consent. It should be produced or withdrawn. We did produce, however I believe there are additional documents that were discovered since we produced, which will be produced later today. This includes the IP address of the person who entered Plaintiff's phone number into the opt-in form, which I understand is located in the Eugene area.

----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

On Thu, Feb 12, 2026 at 2:25 PM Anthony Paronich <anthony@paronichlaw.com> wrote:

> How have you complied with the Court's Order by not producing documents? The Court Ordered you all to produce these text records, you simply haven't done it and I don't see the production of any correspondence about their efforts or a motion to extend the deadline to comply.

> **From:** Kevin Jacoby <Kevin@saltlawgroup.com>
> **Sent:** Thursday, February 12, 2026 2:24 PM
> **To:** Anthony Paronich <anthony@paronichlaw.com>; Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
> **Cc:** Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
> **Subject:** RE: Wilson v. MAH Group; Supplemental Production

> We have complied with the court's order and are working on obtaining documents that are not currently in my client's possession. Mr. Cartee is the party that caused you to incur expenses associated with the motion to compel, and my client has been diligently working on complying with the court's order as soon as it became aware of it through local counsel on 12/31.



> **Kevin Jacoby** | Attorney

T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com


**SaltLawGroup.com**


**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Thursday, February 12, 2026 11:16 AM
**To:** Kevin Jacoby <Kevin@saltlawgroup.com>; Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

To make sure I understand, your client still has not complied with the Court's Order but thinks that their former attorney is the only individual or entity that should receive a sanction of any kind?

---

**From:** Kevin Jacoby <Kevin@saltlawgroup.com>
**Sent:** Thursday, February 12, 2026 2:09 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

Well, we produced the Yotpo texting records to Wilson, but I see now that the full universe of records requested has not yet been produced. My client is working with Yotpo to get those records as soon as possible.

On the request for expenses, my client will oppose the motion and argue that the court should award any reasonable expenses against Anthony Cartee.


**Salt**


**Kevin Jacoby** | Attorney


T: 503.417.7777
F: 503.214.8816
E: Kevin@SaltLawGroup.com

**SaltLawGroup.com**


**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Anthony Paronich <anthony@paronichlaw.com>
**Sent:** Wednesday, February 11, 2026 4:40 AM
**To:** Andrew Shute <Andrew@saltlawgroup.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Kevin Jacoby <Kevin@saltlawgroup.com>; Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Wilson v. MAH Group; Supplemental Production

These were received, but we are beyond the deadline and we still do not have any of the Yotpo texting records. Please advise.


----
Anthony Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
[o] (617) 485-0018
[c] (508) 221-1510
[f] (508) 318-8100

This email message may contain legally privileged and/or confidential information.  If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.


---

**From:** Andrew Shute <Andrew@saltlawgroup.com>
**Sent:** Tuesday, February 10, 2026 6:53 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; Andrew Perrong <a@perronglaw.com>
**Cc:** Kevin Jacoby <Kevin@saltlawgroup.com>; Neal Shechter <neal@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Wilson v. MAH Group; Supplemental Production

Good afternoon:

Please see the attached correspondence from Kevin regarding this supplemental production of documents from MAH Group. The referenced documents may be accessed using the Dropbox link below. Please let me know if you encounter any technical issues.

(CONFIDENTIAL) MAH Group Production 20260210

Thank you.

**Salt**

**Andrew Shute** | Litigation Specialist

T: 503.417.7777
F: 503.214.8816
E: Andrew@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**

This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION**

_____

CHET MICHAEL WILSON, individually and
on behalf of a class of all persons and entities
similarly situated,

     Plaintiff

vs.

MAH Group, Inc.

     Defendant.

Case No. 6:25-cv-00855-MTK

RESPONSE TO
DEFENDANT'S FIRST REQUESTS
FOR ADMISSION
TCPA (47 U.S.C. § 227)

**RESPONSE TO
DEFENDANT'S FIRST REQUESTS FOR ADMISSION**

Plaintiff, by and through undersigned counsel, submits the following Response to

Defendant's First Request for Admission pursuant to Rule 36 of the Federal Rules of Civil

Procedure. Plaintiff expressly reserves all objections, including but not limited to relevance,

overbreadth, undue burden, vagueness, ambiguity, attorney–client privilege, and the attorney

work-product doctrine. Plaintiff further reserves the right to supplement, modify, or amend these

responses as discovery proceeds and additional facts are developed.

**EXHIBIT C
Page 1 of 3**

**RESPONSES TO REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:** Admit that you have utilized IP address 73.240.49.37 on a device that you currently or previously owned or had in your possession.

**RESPONSE:** Plaintiff objects to the extent that the request is not relevant to any party's claim or defense or proportional to the needs of the case other than the telephone numbers or contacts at issue in this case. Plaintiff objects in that this request seeks information that is not relevant to any claim or defense, which cannot be proven through an admission, denial, or qualified denial, and which is further outside the scope of the discovery ordered by the Court. Plaintiff objects to this Request as vague and ambiguous as it does not specify a time frame for which it seeks an admission. Plaintiff further objects insofar as this request is technologically unsound, as IP addresses are associated with connections, not devices, and insofar as the request does not account for network address translation. The Plaintiff objects insofar as this request seeks disclosure of the contents of attorney-client communications, common interest privilege, communications with experts, and/or trial preparation materials. The Plaintiff further objects in that he is without sufficient information to provide a complete response to this Request, insofar as the Plaintiff does not maintain records of every IP address which he was assigned, nor the duration and time periods during which they were assigned. However, to the best of the Plaintiff's knowledge, and upon a review of records applicable to him, the Plaintiff Admits that this was an IP address assigned to Plaintiff on January 30, 2025, based on the documents available to him. Insofar as the Plaintiff lacks personal knowledge of the fact sought to be admitted for other dates or times as he has no record of the same, the Plaintiff cannot in good faith respond by admission, denial, or qualified denial.

Response to RFA                                    2

**EXHIBIT C**
**Page 2 of 3**

Dated: March 27, 2026

                                    s/Andrew Roman Perrong
                                    Andrew Roman Perrong, OSB No. 243320
                                    a@perronglaw.com
                                    Perrong Law LLC
                                    2657 Mount Carmel Avenue
                                    Glenside, PA 19038
                                    215-225-5529
                                    *Lead Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

        I certify that I emailed a copy of the foregoing to counsel for the Defendant at Andrew

Shute <Andrew@saltlawgroup.com>, Kevin Jacoby <Kevin@saltlawgroup.com>, Neal Shechter

<neal@saltlawgroup.com>, Christin Grieser <ChristinG@saltlawgroup.com>, LegalOps

<LegalOps@saltlawgroup.com>

I further certify that I mailed a copy of the foregoing to:

Neal Shechter
Salt Law Group
100 SW Main St, Ste 1025
Portland, OR 97204

Dated: March 27, 2026

                                    */s/ Andrew Roman Perrong*
                                    Andrew Roman Perrong, OSB No. 243320
                                    a@perronglaw.com
                                    Perrong Law LLC
                                    2657 Mount Carmel Avenue
                                    Glenside, PA 19038
                                    215-225-5529
                                    Lead Attorney for Plaintiff and the Proposed Class

Response to RFA                      3

**EXHIBIT C**
**Page 3 of 3**

 Outlook

---

**RE: Outstanding Discovery Deficiencies - Wilson v. MAH Group**

---

From  Neal Shechter <neal@saltlawgroup.com>
Date  Tue 3/31/2026 10:21 AM
To    Andrew Perrong <a@perronglaw.com>
Cc    Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby
      <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Christin Grieser
      <ChristinG@saltlawgroup.com>

You have deliberately misquoted me. Your threat to file a motion because we have not read your mind about what additional records you want from a third party is ridiculous and a waste of the Court's resources. Fortunately, because this action will be dismissed and because you continued to pursue it based on dishonest representations and continue to pursue it without a good faith basis, my client will recover significant pecuniary damages against your firm. And that is what was truthfully conveyed to you during our call. Whether additional disciplinary action should result is not for me to say.



**Neal Shechter** | Attorney

---

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Tuesday, March 31, 2026 10:16 AM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

We are requesting that you obtain from Yotpo precisely what the Court ordered to be produced in Request 17.

We will also be addressing your use of profanity during our meet and confer call, including your contention that "[we're] fucked" and that our position that such records are within your

**EXHIBIT D**
**Page 1 of 8**

possession, care, custody and control because you have demonstrated an ability to obtain such records from Yotpo as "the stupidest fucking thing you've ever heard."

On Tue, Mar 31, 2026 at 1:12 PM Neal Shechter <neal@saltlawgroup.com> wrote:

> Counsel, as discussed on our meet and confer call just now, please send me your exact request of Yotpo so that we can pass it along to Yotpo. Please also advise if you requested this information from Yotpo previously and what their response to the request was. Thank you.
>
>
> Thank you.
>
>
>
> **Neal Shechter** | Attorney
>
> ───────────────
>
> T: 503.417.7777
> C: 971.266.8027
> E: Neal@SaltLawGroup.com
>
> **SaltLawGroup.com**
>
> **Confidentiality Notice:**
> This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.
>
> ──────────────────────────────
>
> **From:** Andrew Perrong <a@perronglaw.com>
> **Sent:** Monday, March 30, 2026 10:10 AM
> **To:** Neal Shechter <neal@saltlawgroup.com>
> **Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>
> **Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group
>
> I am available then.
> We can discuss further on the call, but we have not received, from any source, the metadata (i.e. the actual database record of what was submitted on the "pop up" on your client's webiste) associated with any Yotpo submission; as you indicate, the only information that you have for Type 1 consent is "The screenshots of the "opt-in" pop-up utilized by the Plaintiff were produced as MAH00001-2. Our client does not have further documents regarding consent in our client's possession and control and we do not have further documents upon which we intend to rely that have not been produced."
>
>
> On Mon, Mar 30, 2026 at 1:00 PM Neal Shechter <neal@saltlawgroup.com> wrote:

I'm available tomorrow morning at 10AM PST / 1PM EST. Please advise what "metadata and underlying website submissions" you are talking about. Thanks.

**Salt**

**Neal Shechter** | Attorney

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**

This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Monday, March 30, 2026 9:51 AM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Christin Grieser <ChristinG@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

Thanks, upon review, we still intend to move as to the Yotpo data, as the metadata and underlying website submissions for each of the class members, including Plaintiff, were not produced. Let me know what time you are free to finalize our meet and confer today.

On Mon, Mar 30, 2026 at 12:28 PM Neal Shechter <neal@saltlawgroup.com> wrote:

One additional note: we will be producing by end of day screenshots of WolfPak's current "opt-in" website pop-up.

**Salt**

**Neal Shechter** | Attorney

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**

This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Neal Shechter
**Sent:** Monday, March 30, 2026 9:24 AM
**To:** 'Andrew Perrong' <a@perronglaw.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** RE: Outstanding Discovery Deficiencies - Wilson v. MAH Group

Counsel,

Your recap of our conferral call stated that you would follow up last week. Instead you sent a sanctions threat and demanded immediate conferral. Please review the chain below.

That said, to the best of Defendant's knowledge, Yotpo and Klaviyo have produced directly to the Plaintiff information regarding when and how putative class members enrolled in the SMS marketing campaigns. The screenshots of the "opt-in" pop-up utilized by the Plaintiff were produced as MAH00001-2. Our client does not have further documents regarding consent in our client's possession and control and we do not have further documents upon which we intend to rely that have not been produced.

We did reach out to our client regarding the "website" information collected from customers that we discussed on our conferral call. However, after further review and investigation, we are informed that WolfPak does not utilize phone numbers provided at website checkout for marketing purposes, such numbers are only utilized to contact the customer if there is an issue or problem with their order. Thus, there are no further documents to collect/produce regarding consent from website checkouts and we have no further documents upon which we intend to rely that have not already been produced.

Please let me know if you would like to schedule a call.

Best,

Neal



**Neal Shechter** | Attorney

T: 503.417.7777
C: 971.266.8027
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**

This message and any accompanying attachments contains confidential communications and privileged information. If you

have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Saturday, March 28, 2026 1:39 PM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

Counsel,

We have not yet received any of the consent data. As such, we intend to file a second motion for sanctions with respect to the deficiencies in RFP 17. Although we contend that we have discharged our obligation under Local Rule 7-1, I am available on Monday to discuss if you feel that our prior conversation was inadequate.

On Tue, Mar 17, 2026 at 4:43 PM Andrew Perrong <a@perronglaw.com> wrote:

Thanks for the call.
To summarize our discussion, there exist two forms of consent data on which defendant intends to rely: information from website popup submissions (#1), and information related to customers who have purchased products on Defendant's website (#2).

Defendant contains that it does not maintain in its possession, care, custody, or control type #1 documents. Those are maintained by Yotpo.
Defendant is currently collecting documents responsive to type #2. We will reach out for an update next week as to the process of collecting and producing that information.

On Tue, Mar 17, 2026 at 4:16 PM Andrew Perrong <a@perronglaw.com> wrote:

That's fine. Thanks for the clarification. See you in 15

On Tue, Mar 17, 2026, 4:16 PM Neal Shechter <neal@saltlawgroup.com> wrote:

Apologies, I missed this. I will use your Zoom link.



**Neal Shechter** | Attorney

---

T: 503.417.7777
F: 503.214.8816
E: Neal@SaltLawGroup.com

**SaltLawGroup.com**

**Confidentiality Notice:**
This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

---

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Thursday, March 12, 2026 10:14:26 AM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

No, please see the below link:

https://zoom.us/j/96696923424?pwd=H9vZqTFkwwS741dAxuEabYc1n44cGD.1

On Thu, Mar 12, 2026 at 12:57 PM Neal Shechter <neal@saltlawgroup.com> wrote:

> Let's do 430PM EST if that works. Thanks. Do you want our office to send a call invite?
>
>
>
> **Neal Shechter** | Attorney
>
> ---
>
> T: 503.417.7777
> C: 971.266.8027
> E: Neal@SaltLawGroup.com
>
> **SaltLawGroup.com**
>
> **Confidentiality Notice:**
> This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Wednesday, March 11, 2026 5:51 PM
**To:** Neal Shechter <neal@saltlawgroup.com>
**Cc:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>;
Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>
**Subject:** Re: Outstanding Discovery Deficiencies - Wilson v. MAH Group

Free for the most part any time Oregon afternoon (3:00 to 8:00 Eastern).

On Wed, Mar 11, 2026 at 7:51 PM Neal Shechter <neal@saltlawgroup.com> wrote:

> Counsel - what is your Tuesday 3/17 like? I'm open if you have any availability in the afternoon your time.
>
>
>
> **Neal Shechter** | Attorney
>
> T: 503.417.7777
> F: 503.214.8816
> E: Neal@SaltLawGroup.com
>
> **SaltLawGroup.com**
>
> **Confidentiality Notice:**
> This message and any accompanying attachments contains confidential communications and privileged information. If you have received this communication in error, please notify me and delete the original and all copies from your system.

**From:** Andrew Perrong <a@perronglaw.com>
**Sent:** Wednesday, March 11, 2026 2:50:19 PM
**To:** Anthony Paronich <anthony@paronichlaw.com>; anthony cartee <acartee@ac-legal.com>; Kevin Jacoby <Kevin@saltlawgroup.com>; LegalOps <LegalOps@saltlawgroup.com>; Neal Shechter <neal@saltlawgroup.com>
**Subject:** Outstanding Discovery Deficiencies - Wilson v. MAH Group


Counsel,

Now that our motion to compel is fully briefed, we wish to meet and confer with you regarding outstanding deficiencies in the Defendant's production that the Court compelled. Specifically, we seek all evidence of consent for all putative class members under Request for Production 17 (and the corresponding part of our RFP 15 concerning consent, for similar reasons). Please let us know if you have any availability the remainder of this week or next for a meet and confer regarding these matters. To date, Defendant has not produced any evidence of purported consent to contact class members, despite the Court ordering Defendant to do so.


--

Thank you kindly,

Andrew Perrong, Esq.

Perrong Law LLC

2657 Mount Carmel Avenue

Glenside, PA 19038

215-225-5529 (CALL-LAW)

Kevin J. Jacoby, OSB No. 063783
Email: kevin@saltlawgroup.com
Neal S. Shechter, OSB No. 185119
Email: neal@saltlawgroup.com
SALT
100 SW Main St, Ste 1025
Portland, OR  97204
Phone: 503.417.7777

*Of Attorneys for Defendant*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **CHET MICHAEL WILSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**MAH GROUP, INC. D/B/A WOLFPACK**,<br><br>Defendant, | Case No. 6:25-cv-00855-MTK<br><br>DECLARATION OF ALAN BIRCH IN SUPPORT OF DEFENDANT'S MOTION FOR RULE 11 SANCTIONS |

I, Alan Birch, hereby declare and state as follows:

1. I am the in-house counsel for Yotpo and I have personal knowledge of the information in this declaration. I am over 18 years of age and am competent to testify to the information in the declaration.

2. On January 20, 2026, a letter was sent to counsel for WolfPak stating that "the holder of phone number +1-541-999-999 opted-in" to marketing messages from Wolfpak on January 1, 2025, at 23:09:56. The letter includes a typo of an unassociated number.

PAGE 1 – DECLARATION OF ALAN BIRCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS



Docusign Envelope ID: C3635BFE-8407-8257-8160-2C63C0D8518D

3. Counsel for Wolkpak requested that I confirm that this opt-in record dated January 1, 2025, for the holder of phone number +1-541-999-999 is associated with the IP address of 73.240.49.37. We have confirmed that to be the case.

4. The screenshot included below is a query of Yotpo's internal Customer Data Platform (CDP). A CDP is an advanced customer data management solution consisting of a centralized customer database platform with the ability to ingest, integrate, manage, activate, orchestrate, and deliver customer data to other technology solutions to personalize the customer experience at scale.

```
[POST]  https://cdp-http-default.yotpo.xyz/cxs/yotpoProfiles/search

{
"offset": 0,
"limit": 100,
"condition": {
"type": "yotpoCondition",
"parameterValues": {
"storeId": "vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf",
"conditions": [
{
"type": "profilePropertyCondition",
"parameterValues": {
"propertyName": "properties.phone",
"comparisonOperator": "equals",
"propertyValue": " +15419999999 "
}
}
],
"operator": "and"
}
}
}
```

5. Yotpo's CDP can only be accessed internally. For the holder of phone number +15419999999, the data was queried by making the HTTP request in the screenshot

PAGE 2 – DECLARATION OF ALAN BIRCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS



Salt
100 SW Main Street, Suite 1025
Portland, OR 97204
T: 503.417.7777  F: 503.214.8816

**EXHIBIT E**
**Page 2 of 6**

image above.

6.  The query that is described in the screenshot above produced the response attached hereto as **Exhibit A**, including metadata. Exhibit A includes a true and full copy of the results of this query.

7.  **Exhibit A** demonstrates that the phone number +15419999999's utilized the IP address of 73.240.49.37 at the opt-in event on January 1, 2025. <mark>Yotpo's collection of IP Address information occurs specifically at opt-in</mark>, and not at the time of subsequent outgoing SMS message delivery.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: April 1, 2026

DocuSigned by:

*Alan Birch*

81E0EA6AB1DD4BD...

Alan Birch

PAGE 3 – DECLARATION OF ALAN BIRCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS

**Salt**

100 SW Main Street, Suite 1025
Portland, OR 97204
T: 503.417.7777  F: 503.214.8816

**EXHIBIT E**
**Page 3 of 6**

{"list":[{"itemId":"225de67b8a0fe43f5f0ae328f938a974","itemType":"profile
","version":54,"properties":{"lastName":"Rosins","lastKnownIp":"73.240.49
.37","emailSubscriptionSources":[{"id":"signup","since":"2022-06-
04T23:27:26.970Z"}],"emailMarketing":{"lastUnsubscribed":"2025-08-
12T09:32:35.666000Z","subscriptionSources":[{"id":"form_298153","since":"
2024-04-12T00:58:48.280000Z"}],"lastSubscribed":"2025-06-
14T16:32:32.913000Z","lists":[{"id":"3657724","since":"2024-04-
12T00:58:48.280Z"},{"id":"8952508","since":"2024-06-
27T10:01:13Z"}],"acceptsMarketing":false},"hasVerifiedEmail":true,"platfo
rm":"6213258215671","externalCreatedAt":"2022-05-
11T19:10:19Z","emailSuppressed":{"reason":"GLOBAL_SUPPRESSION: The email
is rejected due to hard bounce global
suppression.","source":"communication_campaigns","timestamp":"2023-11-
25T02:26:04.543000Z"},"createdAt":"2022-06-
04T23:27:28Z","defaultCurrency":"USD","sms":{"lastUnsubscribed":"2024-12-
04T09:18:14.556000Z","subscriptionSources":[{"id":"form_298153","since":"
2024-10-08T13:38:57.447000Z"}],"lastSubscribed":"2025-01-
02T04:09:57.296000Z","campaigns":[{"converted":null,"id":"4955198","click
ed":null},{"converted":null,"id":"4962598","clicked":null},{"converted":n
ull,"id":"4965039","clicked":null},{"converted":null,"id":"4966448","clic
ked":null},{"converted":null,"id":"4966973","clicked":null},{"converted":
null,"id":"4976314","clicked":null},{"converted":null,"id":"4977847","cli
cked":null},{"converted":null,"id":"4980182","clicked":null},{"converted"
:null,"id":"4981956","clicked":null},{"converted":null,"id":"4984103","cl
icked":null},{"converted":null,"id":"4985210","clicked":null},{"converted
":null,"id":"4985887","clicked":null},{"converted":null,"id":"4988770","c
licked":null},{"converted":null,"id":"4991071","clicked":null},{"converte
d":null,"id":"4992519","clicked":null},{"converted":null,"id":"4993905","
clicked":null},{"converted":null,"id":"4995802","clicked":null},{"convert
ed":null,"id":"4996373","clicked":null},{"converted":null,"id":"5000876",
"clicked":null},{"converted":null,"id":"5002676","clicked":null},{"conver
ted":null,"id":"5004495","clicked":null},{"converted":null,"id":"5007217"
,"clicked":null},{"converted":null,"id":"5008631","clicked":null},{"conve
rted":null,"id":"5009472","clicked":null},{"converted":null,"id":"5012783
","clicked":null},{"converted":null,"id":"5014606","clicked":null},{"conv
erted":null,"id":"5016355","clicked":null},{"converted":null,"id":"501850
5","clicked":null},{"converted":null,"id":"5243766","clicked":null},{"con
verted":null,"id":"5244163","clicked":null},{"converted":null,"id":"52462
23","clicked":null},{"converted":null,"id":"5248269","clicked":null},{"co
nverted":null,"id":"5251251","clicked":null},{"converted":null,"id":"5252
623","clicked":null},{"converted":null,"id":"5253274","clicked":null},{"c
onverted":null,"id":"5255335","clicked":null},{"converted":null,"id":"525
6438","clicked":null},{"converted":null,"id":"5258853","clicked":null},{"
converted":null,"id":"5259986","clicked":null},{"converted":null,"id":"52
62002","clicked":null},{"converted":null,"id":"5262565","clicked":null},{
"converted":null,"id":"5267480","clicked":null},{"converted":null,"id":"5
269260","clicked":null},{"converted":null,"id":"5270613","clicked":null},
{"converted":null,"id":"5272024","clicked":null},{"converted":null,"id":"
5274095","clicked":null},{"converted":null,"id":"5275741","clicked":null}
,{"converted":null,"id":"5277422","clicked":null},{"converted":null,"id":
"5278501","clicked":null},{"converted":null,"id":"5280521","clicked":null
},{"converted":null,"id":"5280763","clicked":null},{"converted":null,"id"
:"5283780","clicked":null},{"converted":null,"id":"5284436","clicked":nul
l},{"converted":null,"id":"5285563","clicked":null},{"converted":null,"id

":"5287708","clicked":null},{"converted":null,"id":"5288487","clicked":null},{"converted":null,"id":"5290362","clicked":null},{"converted":null,"id":"5290103","clicked":null},{"converted":null,"id":"5291633","clicked":null},{"converted":null,"id":"5293014","clicked":null},{"converted":null,"id":"5295021","clicked":null},{"converted":null,"id":"5296036","clicked":null},{"converted":null,"id":"5297475","clicked":null},{"converted":null,"id":"5297504","clicked":null},{"converted":null,"id":"5297589","clicked":null},{"converted":null,"id":"5302185","clicked":null},{"converted":null,"id":"5302990","clicked":null},{"converted":null,"id":"5304539","clicked":null},{"converted":null,"id":"5305534","clicked":null},{"converted":null,"id":"5306355","clicked":null},{"converted":null,"id":"5307431","clicked":null},{"converted":null,"id":"5309636","clicked":null},{"converted":null,"id":"5310486","clicked":null},{"converted":null,"id":"5310958","clicked":null},{"converted":null,"id":"5310871","clicked":null},{"converted":null,"id":"5310926","clicked":null},{"converted":null,"id":"5315477","clicked":null},{"converted":null,"id":"5317242","clicked":null},{"converted":null,"id":"5318510","clicked":null},{"converted":null,"id":"5319456","clicked":null},{"converted":null,"id":"5321362","clicked":null},{"converted":null,"id":"5322267","clicked":null},{"converted":null,"id":"5323253","clicked":null},{"converted":null,"id":"5324335","clicked":null},{"converted":null,"id":"5325833","clicked":null},{"converted":null,"id":"5327252","clicked":null},{"converted":null,"id":"5327811","clicked":null},{"converted":null,"id":"5330269","clicked":null},{"converted":null,"id":"5330294","clicked":null},{"converted":null,"id":"5331544","clicked":null},{"converted":null,"id":"5333321","clicked":null},{"converted":null,"id":"5333855","clicked":null},{"converted":null,"id":"5335010","clicked":null},{"converted":null,"id":"5335891","clicked":null},{"converted":null,"id":"5335973","clicked":null},{"converted":null,"id":"5336775","clicked":null},{"converted":null,"id":"5339514","clicked":null},{"converted":null,"id":"5340438","clicked":null},{"converted":null,"id":"5341724","clicked":null},{"converted":null,"id":"5342749","clicked":null},{"converted":null,"id":"5345677","clicked":true}],"flows":[{"converted":null,"id":"1642589","clicked":true},{"converted":null,"id":"1622619","clicked":null},{"converted":null,"id":"661049","clicked":true}],"lists":[{"id":"3657724","since":"2024-10-08T13:38:57.447000Z"}],"lastSent":"2025-08-19T22:03:01Z","lastEngaged":"2026-03-01T19:08:48Z","acceptsMarketing":true,"initialSource":{"id":"subscription_form","since":"2025-01-02T04:09:56.000000Z"}},"platformName":"Shopify","derived":{"emailDomain":"gmail.com","emailProvider":"Google","locationTags":[],"geoPointLocation":{"lon":-122.118,"lat":47.669}},"firstVisit":"2022-06-04T23:27:26Z","email":"no@gmail.com","acceptsEmailMarketing":true,"updatedAt":"2026-03-01T19:08:48Z","loyalty":{"vipLastChange":"EARNED","vipTierDescription":"$0","optInDate":"2024-10-08T13:39:07Z","pointsBalance":0,"nextPointsExpireOn":"2025-10-08","vipEntryDate":"2025-05-13T12:15:42Z","pointsExpireDate":"2025-10-08T00:00:00Z","vipStatsNeededNext":{"campaignsNeeded":[],"referralsNeeded":0,"amountCentsNeeded":25000,"amountCentsNeededInCustomerCurrency":25000,"purchasesNeeded":0,"pointsNeeded":0},"hasStoreAccount":false,"lastPointsChangedReason":"unknown","pointsEarned":50,"vipExpirationDate":"1970-01-28T12:38:10Z","lastSeen":"2024-10-08T13:39:08Z","campaigns":[{"campaignType":"Sign up for SMS","awarded":true,"statusUpdatedAt":"2024-10-

08T13:39:08Z","progressPercentage":100,"id":"2652277899","status":"COMPLE
TED","progressText":"1/1"}],"creditBalanceAmount":0,"referralLinkClicked"
:0,"isOptIn":true,"vipStatsNeededMaintain":{"campaignsNeeded":[],"referra
lsNeeded":0,"amountCentsNeeded":0,"purchasesNeeded":0,"amountCentsNeededI
nCustomerCurrency":0,"pointsNeeded":0},"vipTierRank":0,"creditBalanceCust
omerCurrency":"$0","nextPointsExpireAmount":50,"vipTierName":"RECRUIT","v
ipStats":{"pointsEarned":50,"amountSpentCentsInCustomerCurrency":0,"refer
ralsCompleted":0,"purchasesMade":0,"campaignsCompleted":[],"amountSpentCe
nts":0}},"custom":{"blackcrow_query_params":"eventId=019d289d3ce609616fec
8f762db8e83a7760d462e1fdc081a7a1ae0e3b6b9df4","blackcrow_eid":"019d289d3c
e609616fec8f762db8e83a7760d462e1fdc081a7a1ae0e3b6b9df4"},"externalId":"62
13258215671","storeId":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf","predic
tions":{"engagementWithMarketingMaterial":2,"learnableAudiences":{"emailG
eneralCampaignEngagementScore":0.03899593195434093},"churnRisk":{"score":
3,"value":"Insufficient
Data"},"likelyToPurchase":{"score":1,"value":"Insufficient
Data"}},"firstName":"Taken","phone":"+15419999999","orders":{"checkouts":
[{"createdAt":"2024-11-
28T15:29:52Z","landingSiteUrl":"/","abandonedCheckoutUrl":"https://wolfpa
k.com/50912329900/checkouts/ac/Z2NwLXVzLWVhc3QxOjAxSkRTUDk1Qk40V1NDRU42M1
Q0SEJOS1BO/recover?key=18ae99cc786faa68e7926429837860b1&locale=en-
US","id":"266e93741f042c99df75d6b914e198fc","abandoned":true},{"createdAt
":"2025-06-
15T13:47:36Z","landingSiteUrl":"/?tw_source=ig&tw_adid=120224463031670609
&utm_medium=paid&utm_id=120208464109160609_v2_s02_e109&utm_content=120224
463554590609&utm_term=120224189809450609&utm_campaign=120208464109160609&
fbclid=PAZXh0bgNhZW0BMABhZGlkAasfgz7zx1EBpyyq5wj0vQ4NMYyNazzms6hnmQUwmPdh
dOawmtHpgufj6J-J56I3ZhM26Cgz_aem_xEQ7kBm4QItW_9VMH-
g7_g&utm_source=facebook&campaign_id=120208464109160609&ad_id=12022446355
4590609","abandonedCheckoutUrl":"https://wolfpak.com/50912329900/checkout
s/ac/Z2NwLXVzLWNlbnRyYWwxOjAxSlhTWEdYVlJLTkMwOE5SSkNLNLNTVCODhC/recover?key
=c42d5e83f5b734dc814fda3eb690c481&locale=en-
US","id":"74c77ba06b910f350cfb4e56f85f6219","abandoned":true}]},"external
Status":"disabled","customerTags":[""],"defaultAddress":{"zip":"98052","c
ity":"Redmond
(Downtown)","countryCode":"US","state":"Washington"}},"systemProperties":
{"lastUpdated":"2026-03-
01T19:08:48Z","resolvingKeys":[{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7
MK70QLf_platform_6213258215671","category":"primary"},{"name":"vCVHsroIkl
psA0AqWFV3rIQzHP3atMuQ7MK70QLf_phone_+15419999999","category":"current"},
{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_email_no@gmail.com","ca
tegory":"current"},{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_phon
e_+12066321453","category":"current"},{"name":"vCVHsroIklpsA0AqWFV3rIQzHP
3atMuQ7MK70QLf_phone_+13142583695","category":"current"},{"name":"vCVHsro
IklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_phone_+15238652439","category":"current
"},{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_phone_+16192368323",
"category":"current"},{"name":"vCVHsroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf_p
hone_+15155615538","category":"other"},{"name":"vCVHsroIklpsA0AqWFV3rIQzH
P3atMuQ7MK70QLf_phone_+15143332246","category":"current"}]},"segments":[]
,"lists":[],"scores":null,"mergedWith":null,"consents":{},"storeId":"vCVH
sroIklpsA0AqWFV3rIQzHP3atMuQ7MK70QLf"}],"offset":0,"pageSize":100,"totalS
ize":1,"totalSizeRelation":"EQUAL","scrollIdentifier":null,"scrollTimeVal
idity":null,"lastSortValues":null}